## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| CT102 LLC d/b/a Metro Motors and H. Jeffrey Baker<br>            Plaintiffs,<br><br>            v.<br><br>Automotive Finance Corporation d/b/a AFC; NextGear Capital, Inc.; Southern Auto Sales, Inc., AUTOTEC, LLC d/b/a AUTOACCESS, LLC; Manheim, Inc. and ADESA, Inc.,<br>            Defendants. | Civil Action No.:1:20-cv-356 |

## **COMPLAINT**

## **INTRODUCTION**

1. This action is by a Connecticut car dealership which operated a J.D. ByRider franchise in Branford, Connecticut which was driven out of business by the collusive and illegal acts of two floor plan lenders, an accreditation firm and three automobile auction companies.

## **PARTIES**

2. Plaintiff CT102 LLC d/b/a Metro Motors   (hereinafter "Metro Motors") is a Connecticut limited liability company which formerly operated a car dealership at 3 Liesl Lane, Branford, Connecticut 06405 which was its principal and sole place of business.

3. Plaintiff H. Jeffrey Baker (hereinafter "Baker") is the sole member of CT102 LLC and is a resident of East Greenwich, Rhode Island.

4. Defendant Automotive Finance Corporation d/b/a AFC (hereinafter "AFC") is an Indiana corporation with a principal place of business at 13085 Hamilton Crossing Boulevard,

Suite 300, Carmel, Indiana 46032. AFC is a used automobile dealer floor plan lender. It

is a subsidiary of Cox Automotive which is a subsidiary of Cox Enterprises, Inc. AFC,

upon information and belief, is qualified to do business in Rhode Island.

5.  Defendant NextGear Capital Inc. (hereinafter "NextGear") is a Delaware corporation

with a principal place of business at 1320 City Center Drive, Suite 100, Carmel, Indiana

46032. NextGear is a used automobile dealer floor plan lender. It is a subsidiary of KAR

Global of Carmel, Indiana which is publicly traded on the New York Stock Exchange.

NextGear, upon information and belief, is qualified to do business in Rhode Island.

6.  Defendant Southern Auto Sales, Inc. d/b/a Southern Auto Auction (hereinafter

"Southern") is registered to do business in Connecticut with a principal place of business

at 164 South Main Street, East Winsor, Connecticut 06088 and conducts used car

auctions.

7.  AUTOTEC, LLC d/b/a AUTOACCESS, LLC (hereinafter "AUTOTEC") is an Alabama

Corporation with a registered office at 2200 Woodcrest Place, Suite 120, Birmingham,

Alabama 35209. AUTOTEC qualifies and disqualifies auto dealers for participation in

the used car auction system.

8.  Defendant Manheim, Inc. (hereinafter "Manheim") is a subsidiary of Cox Automotive

which is a subsidiary of Cox Enterprises, Inc. which is a Georgia corporation. Manheim

has a principal place of business at 6205 Peachtree Dunwoody Road, Atlanta, Georgia

30328. Manheim conducts used car auctions nationwide.

9.  Defendant ADESA, Inc. (hereinafter "ADESA") is a subsidiary of KAR Global, an

Indiana corporation. ADESA is an Indiana corporation with a principal place of business

at 13085 Hamilton Crossing Boulevard, Carmel, Indiana 46032.  ADESA conducts used

car auctions nationwide.

## JURISDICTION AND VENUE

10. Jurisdiction is in the District of Rhode Island pursuant to agreements between the

Plaintiffs and Defendants AFC and NextGear.

11. Upon information and belief, Defendants have sufficient minimum contacts with this

jurisdiction as they conduct business in Rhode Island.

12. Venue is appropriate in Rhode Island as the sole member of the Plaintiff LLC, H. Jeffrey

Baker (hereinafter "Baker") is a resident of East Greenwich, Rhode Island.

13. Jurisdiction in this Court is based on complete diversity between the Plaintiffs and

Defendants pursuant to 28 U.S.C. §1332(a)(1) and the amount in controversy exceeds

$75,000, exclusive of interest and costs.

## FACTUAL BACKGROUND

14. Metro Motors operated a J.D. ByRider used car franchise in Branford, Connecticut which

sold vehicles to many individuals who would not otherwise qualify for new car purchases

or bank financing.

15. Metro Motors acquired and sold vehicles through national auction companies Defendants

Southern, Manheim and ADESA.

16. Metro Motors financed its acquisition of vehicles through national lenders AFC and

NextGear which are both headquartered in Carmel, Indiana.

17. On January 31, 2014, Metro Motors entered into a Demand Promissory Note and Loan

and Security Agreement with NextGear for used automobile dealer floor financing.

18. On January 31, 2014 Baker entered into an Individual Guaranty with NextGear.

19. On October 3, 2017 Metro Motors entered into a Demand Promissory Note and Security Agreement with AFC for used automobile dealer floor financing.

20. On October 31, 2017 Baker entered into a Unconditional and Continuing Guaranty with AFC.

21. Defendants NextGear and AFC dominate the dealer floor plan financing market for used cars in the United States.

22. Although Baker's Guaranties are expressly governed by Indiana law, they were expressly modified to establish Rhode Island as the applicable jurisdiction and venue.

23. No other terms of the Promissory Notes or Personal Guarantees were negotiable by the Plaintiffs.

24. In April 2018 Metro Motors decided to wind down its business by liquidating its inventory of vehicles and paying off the floor plans.

25. In April 2018 Metro Motors brought a vehicle, which was fully paid off to NextGear, to auction for liquidation but Southern wrongfully remitted the sale proceeds to NextGear.

26. NextGear improperly withheld from Metro Motors the title to the paid-off vehicle and misinformed Southern about the unencumbered ownership by Metro Motors of the vehicle.

27. In the meantime, Metro Motors issued checks in the normal course of business in anticipation of receipt from Southern of the proceeds.

28. Because of Southern's incorrect payment of the proceeds to NextGear, and its failure to notify Metro Motors for three weeks after the transaction, many of  Metro Motors' checks were returned for insufficient funds.

29. NextGear without notice charged Metro Motors for one year for Garage Keeper's insurance from which Metro Motors had properly opted out because it was already insured.

30. NextGear charged excessive fees for late monthly payments.

31. NextGear directly accessed without notice Metro Motors' checking account for payments and fees.

32. The misdirection of Metro Motors' proceeds by Southern to NextGear together with NextGear's overcharges and interference, caused Metro Motors to bounce checks to its trade creditors to the detriment of Metro Motor's business reputation.

33. At the time Southern wrongfully paid Metro Motor's money to NextGear, Metro Motors had inventory of approximately $150,000 which included approximately $50,000 in equity. That inventory later grew and the equity increased to approximately $117,000.

34. After NextGear's actions described above, Metro Motor's fell into arrears with AFC in the approximate amount of $38,000. It was current with NextGear.

35. Despite Metro Motors's negotiations in good faith with AFC to pay off its obligation through Metro Motors' orderly liquidation of inventory and a tentative work-out agreement, Metro Motors was unable to liquidate cars because it was blacklisted by AFC and AUTOTEC from the auctions.

36. Upon information and belief during productive negotiations, AFC's Connecticut Branch Manager, Michael Flanagan, informed AUTOTEC to place Metro Motors on a "knockout list" of dealers ineligible to buy or sell vehicles at auction.

37. Upon information and belief, AFC's Michael Flanagan also contacted NextGear with information designed to injure and handicap Metro Motors.

38. As a result of being placed on AUTOTEC's knockout list, Metro Motors could not liquidate its inventory with Defendants Manheim, NextGear's sister company (both owned by Cox) or ADESA, AFC's sister company (owned by KAR).

39. Instead, AFC in bad faith during negotiations, and without notice, repossessed its 18 encumbered cars from Metro Motors.

40. That repossession resulted in damage to several four-wheel drive vehicles.

41. That repossession resulted in a loss to the Plaintiffs of $84,000 in vehicle equity.

42. After repossessing, upon information and belief, AFC gratuitously notified its "competitor" NextGear.

43. NextGear then swept the lot and repossessed the remainder of Metro Motors' inventory which included five vehicles with deal equity of $33,202.99.

44. AFC reportedly sold the vehicles it repossessed below market value at a private auction nine months after it took possession.

45. Neither AFC nor NextGear has provided an accounting of the liquidations but several vehicles appear to be missing altogether.

46. Independently obtained vehicle condition reports falsely indicate that the damaged autos repossessed by AFC are undamaged.


## COUNT I

### (Fraud by AFC)

47. Plaintiffs repeat and incorporate paragraphs 1 through 46 above if fully set forth herein.

48. During negotiations AFC advised Metro Motors that it should reduce its monthly payments (known as "curtailments") to improve cash flow.

49. During negotiations AFC advised Metro Motors that it would not repossess the vehicles while Metro Motors was liquidating.

50. AFC falsely reported the condition of the repossessed autos as undamaged.

51. Those representations were knowingly false or misleading when made, or were made with reckless disregard of their falsity, and were intended to be relied upon by the Plaintiffs.

52. Plaintiffs reasonably and rightfully relied on these misrepresentations to their detriment.

53. As a direct and proximate result of AFC's misrepresentations, Plaintiffs have been damaged.


WHEREFORE, Plaintiffs demand judgment against Defendant AFC for damages, interest, costs and attorneys' fees incurred in this action, an accounting and such other relief this Court deems just and appropriate.


## <u>COUNT II</u>

### (Intentional Tortious Interference with Contractual Relations by all Defendants)

54. Plaintiffs repeat and incorporate paragraphs 1 through 53 above if fully set forth herein.

55. Defendants knew or should have known that Metro Motors had contractual borrower/lender relations with AFC and NextGear.

56. Defendants knew or should have known that these financial arrangements were personally guaranteed by the principal of CT102 LLC (i.e., Baker).

57. Defendants knew or should have known that Plaintiffs had ordinary trade creditors.

58. Defendants' actions were not justified on any grounds.

59. Defendants knowingly and improperly interfered with these contractual arrangements by intentionally inducing breaches of these two loan agreements, as well as ordinary trade creditors, as follows:

(a) AFC repossessed in bad faith causing Metro Motors to fail in its contractual obligations to AFC and NextGear; and

(b) AFC blacklisted Metro Motors from the public auction market, causing Metro Motors to fail in its contractual obligations to AFC and NextGear; and

(c) AFC encouraged its competitor, NextGear, to also repossess causing Metro Motors to fail in its contractual obligations to AFC and NextGear; and

(d) NextGear wrongfully seized Metro Motors' proceeds from Southern Auctions causing Metro Motors to fail in its contractual obligations to trade creditors and AFC and NextGear; and

(e) NextGear crippled Metro Motors cash flow and ability to pay trade creditors; and

(f) Southern's wrongful payment of Metro Motors' funds to NextGear caused Metro Motors to fail in its contractual obligations to AFC, NextGear and trade creditors; and

(g) AUTOTEC's blacklisting and false reporting of Metro Motors from and to the public auction market, caused Metro Motors to fail in its contractual obligations to AFC, NextGear and trade creditors; and

(h) Manheim, ADESA, Southern and AUTOTEC's misplaced obedience to AFC and NextGear in excluding Metro Motors from the public auction market caused Metro Motors to fail in its contractual obligations to AFC, NextGear and trade creditors; and

(i) AFC and NextGear did not repossess and liquidate in a commercially reasonable manner causing Metro Motors to fail in its contractual obligations.

60. As a direct and proximate result of Defendants' actions, Plaintiffs were damaged.

WHEREFORE, Plaintiffs demand judgment against all Defendants for damages, interest, costs and attorneys' fees and such other remedies as the Court deems just and proper.

## COUNT III

### (Conspiracy to Tortiously Interfere with Contracts Against All Defendants)

61. Plaintiffs repeat and incorporate paragraphs 1 through 60 above if fully set forth herein.

62. Manheim and ADESA are owned by AFC and NextGear's respective parent corporations and are agents of AFC and NextGear for the purchase and liquidation of used automobiles for AFC and NextGear's borrowers.

63. Manheim and ADESA are also critically important agents of borrowers such as Metro Motors when they buy and liquidate used cars.

64. AUTOTEC is an apparent agent of AFC, NextGear, Manheim, ADESA and Southern in barring from the auctions blacklisted dealers identified by AFC and NextGear.

65. AFC and NextGear dominate the national used car dealer floor plan market and share information in an anti-competitive manner.

66. Manheim and ADESA dominate the national public used auto auction market and share information in an anti-competitive manner.

67. Southern and AUTOTEC, though separately owned, act on behalf of AFC and NextGear because it is in their financial interest to do so at the expense of individual dealers such as Metro Motors.

68. The Defendants' divided loyalties were devoted to AFC and NextGear at the expense of the Plaintiffs to whom duties were also due.

69. By fiat, either AFC or NextGear through their control of auctions, can put a dealership out of business.

70. The actions of Michael Flanagan and others at AFC show collusion between AFC and the auction companies to wrongfully exclude the Plaintiffs from public auctions which are the lifeblood of the used car business.

71. The actions of Michael Flanagan and AFC show collusion between AFC and NextGear to wrongfully wipe out Metro Motors' inventory in a commercially unreasonable manner.

72. The actions of AUTOTEC in knocking out or blacklisting Plaintiffs show collusion among all the defendants to improperly target Metro Motors and exclude it from auctions.

73. As a direct and proximate result of Defendants' collusion, Plaintiffs were damaged.

74. As a direct and proximate result of Defendants' concerted actions for which they are liable individually and collectively as co-conspirators, Plaintiffs were damaged.

WHEREFORE, Plaintiffs demand judgment against all defendants for damages, interest, costs, and attorneys' fees incurred in this action and such other relief as the Court deems just and proper.

## COUNT IV

### (Negligence against Southern, NextGear and AFC)

75. Plaintiffs repeat and incorporate paragraphs 1 through 74 above if fully set forth herein.

76. Southern owed Plaintiffs a duty to competently liquidate one vehicle on their behalf in April 2018 and supply Plaintiffs with the proceeds.

77. Southern breached that duty by incorrectly paying the proceeds to the wrong party, NextGear.

78. Southern breached that duty by failing to notify Metro Motors for three weeks during which time Metro Motors foreseeably issued trade payments against the proceeds.

79. NextGear owed Metro Motors a duty to supply Metro Motors with the title to the paid-off vehicle auctioned off by Southern.

80. NextGear owed Metro Motors a duty to immediately remit to Metro Motors the incorrectly received funds from Southern.

81. NextGear wrongfully directed Southern to pay the proceeds to NextGear instead of Metro Motors.

82. NextGear had a duty to Metro Motors to repossess in a commercially reasonable manner which it failed to do.

83. AFC also had a duty to Metro Motors to repossess in a commercially reasonable manner which it failed to do.

84. As a direct and proximate result of Defendants negligence, Plaintiffs have incurred damages including damage to reputation among trade creditors.


WHEREFORE, Plaintiffs demand judgment against Defendants Southern, NextGear and AFC for damages, interest, costs and attorneys' fees incurred in this action and such other relief as the Court deems just and proper.

## COUNT V

**(Breach of Covenant of Good Faith and Fair Dealing Against all Defendants )**

85. Plaintiffs repeat and incorporate paragraphs 1 through 84 above if fully set forth herein.

86. All the transactions referenced above including repossessions and auction exclusion, are subject to section 1-203 of the Uniform Commercial Code which requires good faith and fair dealings in contractual dealings.

87. All Defendants had actual or implied contracts with the Plaintiff Metro Motors.

88. Defendant lenders AFC and NextGear had an additional duty to Plaintiff Baker as guarantor.

89. All Defendants breached their duties to act in good faith and deal fairly with the Plaintiff Metro Motors.

90. AFC and NextGear also breached their duties to act in good faith and deal fairly with Plaintiff Baker.

91. As a direct and proximate result of these contract-based breaches, Plaintiffs have suffered damages.

WHEREFORE, Plaintiff Metro Motors demands judgment against all Defendants and Plaintiff Baker demands judgment against Defendants AFC and NextGear, plus interest, costs, attorneys' fees and such other relief as the Court deems just and reasonable.

## COUNT VI

### (Unjust enrichment against AFC and NextGear)

92. Plaintiffs repeat and incorporate paragraphs 1 through 91 above if fully set forth herein.

93. By retaining the repossessed vehicles and/or liquidation proceeds, defendants AFC and NextGear knowingly, intentionally and wrongfully retained equity belonging to Metro Motors.

94. These wrongful repossessions and commercially unreasonable sales went beyond the lenders' authority under their respective loan agreements.

95. Collateral was seized without notice, collateral was damaged and lost, collateral was held so unreasonably long it devalued, collateral was sold to limited private markets which further lessened its value, and the borrower has never received an accounting of the inventory and liquidation.

WHEREFORE, Plaintiffs demand that judgment against AFC for $84,000 and against NextGear for $33,202.99 plus interest, costs, and attorneys' fees plus an accounting and such other relief as this Court deems just and appropriate.

## COUNT VII

### (Lender Liability against AFC and NextGear)

96. Plaintiffs repeat and incorporate paragraphs 1 through 95 above if fully set forth herein.

97. Plaintiffs satisfy the writing requirement of Ind. Code §26-2-9 and are entitled to pursue common law lender liability remedies.

98. Defendants AFC and NextGear breached their loan agreements and guarantees with Plaintiffs, as referenced above, including bad faith work-out negotiations by AFC, wrongful repossession and mishandling of collateral by AFC and NextGear, failure to account, credit, offset or remit improperly withheld auction or private sale proceeds by AFC and NextGear, putting the borrower Metro Motors prematurely out of business and unnecessarily exposing the guarantor to liability, and most significantly, failing to substitute the modified page of the AFC guarantee which expressly changed the venue and jurisdiction from Indiana to Rhode Island where the guarantor resides.

99. As a direct and proximate result of these breaches, Plaintiffs have incurred damages.

WHEREFORE, Plaintiffs demand judgment against AFC and NextGear for damages plus interest, costs, attorneys' fees , an accounting and such other relief as this Court deems just and proper.

**Plaintiffs demand jury trial for all claims so triable.**


Dated: August 14, 2020                              Respectfully submitted,

**CT102 LLC d/b/a Metro Motors and H.
Jeffery Baker,
Plaintiffs**

*/s/ Harris K. Weiner*
Harris K. Weiner (#3779)
Salter, McGowan, Sylvia & Leonard, Inc.
56 Exchange Terrace, Suite 500
Providence, RI 02903
Office: (401) 274-0300
Fax: (401) 453-0073
hweiner@smsllaw.com