# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| CT102 LLC d/b/a METRO MOTORS and<br>H. JEFFREY BAKER,<br><br>              Plaintiffs,<br><br>      v.<br><br>AUTOMOTIVE FINANCE CORPORATION<br>d/b/a AFC; NEXTGEAR CAPITAL, INC.;<br>MANHEIM, INC.; and ADESA, INC.,<br><br>              Defendants. | CASE NO. 1:20-CV-00356-MSM-PAS |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT as to DEFENDANTS, AUTOMOTIVE FINANCE CORPORATION d/b/a AFC and ADESA, INC.

Defendants Automotive Finance Corporation d/b/a AFC ("AFC") and ADESA, Inc. ("ADESA" and sometime together with AFC, the "Defendants"), by counsel, for their *Memorandum of Law in Support of Motion to Dismiss Plaintiffs' First Amended Complaint* state as follows:

## I.  INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs CT102 LLC d/b/a Metro Motors ("Metro") and H. Jeffrey Baker ("Baker," and sometimes together with Metro, the "Plaintiffs") filed their *First Amended Complaint* ("Complaint"), seeking to impose liability upon Defendants for fraud, negligence, unjust enrichment, various breaches, and interference with contracts.  Plaintiffs' contracts with AFC and ADESA contain valid and enforceable forum selection clauses requiring Plaintiff's claims to be litigated in Indiana, and litigation involving these same claims has in fact been pending between Plaintiffs and AFC since 2018.  ADESA in particular is not subject to personal jurisdiction in Rhode Island as it conducts no business in and has no identifiable, direct contacts with Rhode

Island.  As Plaintiff's claims against ADESA must be brought in Indiana, and the claims against AFC are nothing more than compulsory counterclaims that were required to have been brought in the long pending Indiana Litigation (defined below), Plaintiff's Complaint should be dismissed, based both on the rules of procedure and principles of judicial comity.

Even assuming this Court were the proper venue with the requisite jurisdiction to hear this dispute, and accepting the Plaintiffs' threadbare allegations as true, Plaintiffs nevertheless fail to state any cognizable claims and their Complaint should be dismissed pursuant to FRCP 12(b)(6). Count I of the Complaint wholly fails to plead fraud with the particularity required by FRCP 9(b). Counts II and III defy credulity as it is axiomatic that a party cannot interfere with its own contract, that performance under the express terms permitted by the contract cannot give rise to claims, and such claims are also barred by Indiana's two-year statute of limitations applicable to such purported causes of action.  Plaintiffs' admission that valid and enforceable contracts exist between the parties precludes any tort or equitable recovery and therefore Counts IV and VI must be dismissed.  Established law provides no independent cause of action for an alleged breach of the duty of good faith and fair dealing, which necessitates dismissal of Count V.  Finally, Count VII of the Complaint fails because defendants have not identified the signed writings as required by the Indiana Lender Liability Act, and any such allegations clearly function as nothing more than compulsory counterclaims that must have been brought in the Indiana Litigation.

Accordingly, the entirety of the Complaint against AFC and ADESA should be dismissed.

## II.  CONSIDERATION OF MATTERS OUTSIDE THE COMPLAINT

Pursuant to Rule 201 of the Federal Rules of Evidence, the Defendants request this Court take judicial notice of the documents attached to this motion as Exhibit A, Exhibit B and Exhibit C as documents "not subject to reasonable dispute [and] . . . capable of accurate and ready

determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Specifically, a court may consider "matters of public record, and other matters susceptible to judicial notice." *Giragosian v. Ryan*, 547 F.3d 59, 65 (1st Cir. 2008). Such necessarily includes proceedings in other courts. *Kowalski v. Gagne*, 914 F.2d 299, 305 (1st Cir. 1990) ("[i]t is well-accepted that federal courts may take judicial notice of proceedings in other courts"). Generally, court filings are recognized not for the truth of the matters asserted within them, but instead only to establish the fact that related litigation has been initiated or to establish that documents have been filed in that related case. *Barnstable Cty. v. 3M Co.*, 2017 U.S. Dist. LEXIS 207414, *11 (1st Cir 2014). The judicial notice of documents does not convert a motion to dismiss into a motion for summary judgment. *Cruz v. Melecio*, 204 F.3d 14, 21 (1st Cir. 2000) (a court reviewing a 12(b)(6) motion may consider "not only the complaint but also matters fairly incorporated within it and matters susceptible to judicial notice."). Accordingly, Exhibits A, B, and C are official public records of pending court proceedings appropriate for judicial notice pursuant to Rule 201 of the Federal Rules of Evidence.

Further exception to the general rule that matters filed in support of a 12(b) motion convert it to one for summary judgment exists for documents "central to the plaintiff's claim or sufficiently referred to in the complaint, even if those documents are not physically attached to the pleading." *Carrero-Ojeda v. Autoridad De Energía Eléctrica*, 755 F.3d 711, 717 (1st Cir. 2014). Specifically, where "a complaint's factual allegations are expressly linked to -- and admittedly dependent upon -- a document . . . that document effectively merges into the pleadings." *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008). Plaintiffs readily acknowledge the existence of contracts with AFC and ADESA [Complaint ¶¶ 19, 20, 87] but inexplicably failed to attach any of them. Plaintiffs' contracts include the *Demand Promissory*

*Note and Security Agreement* ("Note") with AFC (*See,* Exhibit A to Exhibit A) and the ADESA Terms and Conditions (Exhibit D hereto) which govern the parties' dealings. As these documents are central to the Plaintiffs' claim, the Defendants submit Exhibit A and Exhibit D for the Court's review. *See* 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1327, at 762-63 (2d ed. 1990) ("when [the] plaintiff fails to introduce a pertinent document as part of his pleading, [the] defendant may introduce the exhibit as part of his motion attacking the pleading"). Accord, *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co*., 267 F.3d 30, 34 (1st Cir. 2001)("Under First Circuit precedent, when a complaint's factual allegations are expressly linked to … a document, then the court can review it upon a motion to dismiss.")(citations and internal quotation omitted).

Finally, the Plaintiffs' Complaint alleges that "Defendants have sufficient minimum contacts with this jurisdiction as they conduct business in Rhode Island." As shown by the Declaration of Michael Caggiano ("Caggiano Decl.") submitted herewith as Exhibit E, ADESA does not have any contacts with Rhode Island that would subject it to personal jurisdiction in Rhode Island. "It is clear beyond hope of contradiction that a district court confronted with a motion to dismiss under [12(b)(2)] must … look beyond the pleadings to examine not only the plaintiff's properly documented evidentiary proffers but also the defendant's undisputed jurisdictional facts." *Chen v. United States Sports Acad., Inc*., 956 F.3d 45, 56 (1st Cir. 2020), citing *PREP Tours, Inc. v. Am. Youth Soccer Org.*, 913 F.3d 11, 16-17 (1st Cir. 2019); *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 51 (1st Cir. 2002). "Such jurisdictional facts may be adduced by means of an affidavit made by a person who … has adequate knowledge of the situation." *Id.* (additional citations omitted). Accordingly, this Court's consideration of Exhibit E solely for purposes of whether it may exercise jurisdiction over

ADESA does not convert this motion to one for summary judgment under 12(b)(e).

## III. FACTUAL AND PROCEDURAL BACKGROUND

### A.    The AFC Note and Guaranty

On October 3, 2017, AFC and Metro entered into the Note for the extension of vehicle floorplan financing to Metro for use in its automotive dealership. [Complaint ¶¶ 16, 19].[1] The Note provides for the exclusive venue of all lawsuits involving the Note and "any and all agreements or authorizations in connection [therewith]" in the "circuit and superior courts of Hamilton County, Indiana and Marion County, Indiana, and in the United States District Court for the Southern District of Indiana." [Ex. A, Note, ¶ 9.11]. Pursuant to the express terms of the Note, AFC possesses all rights of a secured creditor under the Uniform Commercial Code, including the right to, without notice, "(a) notify any or all creditors, account debtors or obligor of [Metro]'s default. . . (f) take possession of the Collateral and sell the same." [Ex. A, Note, ¶ 8.1]. The Note further provides that Metro "waives any defenses based on . . . impairment of collateral." [Ex. A, Note, p. 1].

Simultaneously with the Note, Baker executed and delivered an *Unconditional and Continuing Guaranty* ("Guaranty") pursuant to which Baker "voluntarily, unconditionally, and absolutely" guaranteed to AFC the full and prompt payment of any and all obligations and liabilities of Metro to AFC under the Note. [Ex. A, Guaranty]. The Guaranty separately provides that Baker "**SUBMITS TO THE PERSONAL JURISDICTION OF THE STATE AND FEDERAL COURTS OF THE STATE OF INDIANA AND TO VENUE IN THE CIRCUIT AND SUPERIOR COURTS OF HAMILTON COUNTY. INDIANA AND MARION**

---

[1] Defendants do not necessary admit any of the allegations in the Complaint and state the facts as alleged therein for purposes of this Motion.

COUNTY, INDIANA, AND IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF INDIANA. ANY ACTION INITIATED BY [Baker] AGAINST [AFC] SHALL BE FILED AND CONDUCTED SOLELY IN SAID COURTS." (Capitalized and bold in original).

The Note provides Metro "authorizes [AFC] to release and disclose any and all of Dealer's account and inventory information now or hereinafter in [AFC's] possession, including but not limited to any and all inventory vehicle data, loan documents, any business financial information retained or maintained by [AFC] and/or any information relating to Dealer's performance history with [AFC] to any third party." [Note, Exhibit A, 9.17]. Identical authorization from Baker appears in the Guaranty [Exhibit A, p. 17].

### A. The Indiana Litigation

On December 3, 2018, AFC filed its *Complaint* in the Marion County (Indiana) Superior Court against the Plaintiffs for breach of the Note, liability on the Guaranty, and damages arising from their knowing and intentional conversion of the proceeds of financed vehicle sales (the "**Indiana Litigation**").[2] [Exhibit A]. On December 27, 2018, Metro and Baker filed their *Answer and Affirmative Defenses*, disputing the indebtedness but failing to file a counterclaim. [Ex. B]. Although subsequently alleging modification to the Guaranty's venue and jurisdiction provisions, Baker's responsive pleading in the Indiana Litigation failed to deny execution of the Note and Guaranty attached to AFC's Complaint under oath as required by Indiana Rule of Trial Procedure 9.2(B). [Ex. B, Ex. C]. Accordingly, execution and admissibility of the unaltered Note and

---

[2] In addition to the Indiana Litigation with AFC, Plaintiffs are participating in litigation with defendant NextGear Capital, Inc. ("NextGear") in Hamilton County, Indiana under cause number 29C01-1809-CC-008218. NextGear's claims were reduced to judgment with the liability of defendants having been affirmed by the Indiana Court of Appeals on April 1, 2020 in Cause No. 19A-CC-02960.

Guaranty has been established in the Indiana Litigation.  Further, at no time did Baker challenge Indiana's jurisdiction nor move to transfer venue in the Indiana Litigation under Indiana Rule of Trial Procedure 76.  [Ex. C].  The Indiana Litigation remains scheduled for trial in January, 2021.[3]

### B.    The ADESA Terms and Conditions

ADESA is a Delaware Corporation with its principal place of business in Carmel, Indiana.  The Complaint does not allege that any of the actions which led to this dispute occurred in Rhode Island and does not allege any specific contacts of ADESA to this state.  That is because there are none.  ADESA conducts no business in Rhode Island, is not licensed by Rhode Island authorities, and is not registered to do business in Rhode Island.  It does not own any property, maintain any office, or maintain any mailing address or post office box in the State of Rhode Island. [Ex. E; ¶¶ 2-7].

Prior to being permitted to purchase cars at auction from ADESA,[4] Metro was required to and did enter into a written contract with ADESA that was also omitted from the Complaint but is attached hereto as Exhibit D.  The ADESA Terms and Conditions (which bear the signature of Baker on behalf of Metro, at ¶ 32, provide for application of Indiana law and that Metro:

> submits to the exclusive jurisdiction of the courts of the State of Indiana and to venue in the Circuit and Superior Courts of Marion County Indiana and the federal courts of the Unites States, sitting in Indiana, for the adjudication of any matters arising under or in connection with these Terms and Conditions and Auction Rules.  ***Any action initiated by Customer relating to these Terms and Conditions shall be filed and conducted in said Courts.***" (emphasis added).

Elsewhere, the ADESA Terms and Conditions make clear that ADESA "reserves the right

---

[3] Plaintiffs failed to file the "Notice of Related Proceedings" required by LR 9.1 for "[w]henever a case pending in this Court involves a claim, occurrence, or event which is at issue in a proceeding before another tribunal."  The Defendants are contemporaneously filing herewith the proper Notice of Related Proceedings, identifying the Indiana Litigation.

[4] There is no claim by Plaintiffs that any such auctions occurred in Rhode Island.

to refuse to or terminate doing business with any Customer, and to place additional conditions or restrictions upon any Customer's activities at Auction, including but not limited to, limiting or barring access to one or more Auction locations." [Exhibit D., ¶ 7].

**C.      ADESA's Lack of Contacts with Rhode Island**

ADESA is incorporated in the State of Delaware and its registered agent is in Wilmington, Delaware. [Exhibit E; ¶ 2]. ADESA maintains its headquarters and principal place of business in Carmel, Indiana. *Id.,* ¶ 3. ADESA is not registered to transact business in the State of Rhode Island. *Id.,* ¶ 4. ADESA does not maintain any Rhode Island business license.. *Id.,* ¶ 5. ADESA does not own any property, maintain any office, or maintain any mailing address or post office box in the State of Rhode Island. *Id.,* ¶ 6. ADESA does not maintain any bank or other form of account in the State of Rhode Island. *Id.,* ¶ 7.

## IV.      LEGAL ARGUMENT

**A.      ADESA is not subject to Personal Jurisdiction in Rhode Island.**

"The burden of proving that personal jurisdiction may be exercised in the forum state lies squarely with the plaintiff." *Chen*, 956 F.3d at 54, citing *Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28, 34 (1st Cir. 2016). "When assessing whether personal jurisdiction exists with respect to a non-resident defendant, a federal court exercising diversity jurisdiction acts as the 'functional equivalent of a state court sitting in the forum state.'" *Id.* "The Due Process Clause dictates that, as a prerequisite to the exercise of personal jurisdiction, an out-of-state defendant must have certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.,* at 54-55, citing *Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)* (Internal quotation and additional citations omitted).

Plaintiff's Complaint does not allege that any of the acts giving rise to this dispute

occurred in Rhode Island.  Instead, the only jurisdictional basis alleged is that "Upon information and belief, Defendants have sufficient minimum contacts with this jurisdiction as they conduct business in Rhode Island." [Complaint ¶ 11].  Accordingly, Plaintiffs appear to be relying on general, rather than specific, jurisdiction of the Rhode Island court over ADESA.[5]   ADESA is not subject to either general or specific jurisdiction in Rhode Island. As established by the Caggiano Decl. filed herewith as Exhibit E, ADESA has no identified contacts with Rhode Island, and certainly none that "render [it] essentially at home in the forum state," recognized by the First Circuit as the "lodestar of the inquiry" for determining whether a foreign "corporation's general business contacts with the forum are sufficiently continuous and systematic" to exercise general jurisdiction over it.  *Chen*, at 57, (alteration in original, citations omitted).  The Complaint's conclusory (and demonstrably false) "upon information and belief" allegation that ADESA, Inc. conducts business in Rhode Island is insufficient, as a matter of law, to subject ADESA to personal jurisdiction in Rhode Island and ADESA should be dismissed forthwith pursuant to FRCP 12(b)(2).[6]

---

[5]  The Supreme Court summed up this distinction in *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)(internal citations and quotations omitted):

> A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State. Specific jurisdiction, on the other hand, depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation. In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919

[6]  AFC is registered to do business in Rhode Island and is not asserting it can never be subject to Rhode Island jurisdiction.  AFC's Motion to Dismiss is not based on 12(b)(2).

**B.      Standard of Review Pursuant to Federal Rule of Civil Procedure 12(b)(6).**

In order to survive a motion to dismiss, a "complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must allege facts supporting "each material element necessary to sustain recovery under some actionable legal theory." *Campagna v. Mass. Dep't of Envtl. Prot*., 334 F.3d 150, 155 (1st Cir. 2003) (citations omitted). When allegations in the complaint "do not permit the court to infer more than the mere possibility of misconduct," a plaintiff has failed to state a claim. *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 570 (requiring factual allegations in complaint "be enough to raise a right to relief above the speculative level"). This standard does not permit a plaintiff to rely on "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ." *Id*. at 678. The Court must ignore "statements in the complaint that simply offer legal labels and conclusions or merely re-hash cause-of-action elements." *Schatz v. Republican State Leadership Comm*., 669 F.3d 50, 55 (1st Cir. 2012).

**C.      The Entirety of Plaintiffs' Complaint Should Be Dismissed Due to the Forum Selection Provisions of the Parties' Contracts**

Courts in the 1st Circuit, "treat a motion to dismiss based on a forum selection clause as a motion alleging the failure to state a claim for which relief can be granted under Rule 12(b)(6)." *Claudio-de León v. Sistema Universitario Ana G. Méndez*, 775 F.3d 41, 46 (1st Cir. 2014), quoting *Rivera v. Centro Médico de Turabo, Inc*., 575 F.3d 10, 15 (1st Cir. 2009). "A forum selection clause is 'prima facie valid' and, absent a 'strong showing' by the resisting party that the clause is 'unreasonable under the circumstances' it should not be set aside." *Id.,* at 48, citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 15 (1972). The Plaintiff's Complaint was

improperly filed in this Court in contravention of enforceable forum selection clauses. Both the Note and the ADESA Terms and Conditions provide for exclusive venue and jurisdiction in the State of Indiana. [Ex. A, Note; Ex. D, ¶ 32]. As established by the Exhibits, Plaintiffs failed to properly deny execution of the Note and Guaranty as required by Indiana law. [Ex. C].[7] Accordingly, the Complaint was improperly filed in Rhode Island and should be dismissed pursuant to FRCP 12(b)(6).

**D.    The Complaint should be dismissed because the allegations against AFC were Compulsory Counterclaims in the Indiana Litigation and/or due to Principles of Judicial Comity.**

Pursuant to Ind. T.R. 13(A) (substantively identical to its corollary in FRCP 13(a)(1)), "[a] pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim[.]" A compulsory counterclaim which a party fails to assert is thereafter barred. *Emissive Energy Corp. v. Armament Sys. & Procedures, Inc.*, 2004

---

[7] That Baker subsequently claimed there was another version of the Guaranty where he changed the jurisdiction provision does not affect this conclusion as it is undisputed he failed to deny its execution "under oath in the responsive pleading or an affidavit filed therewith." Ind. T.R. 9.2(B). Plaintiffs' answer in the Indiana Litigation [Exhibit B] was not verified and execution of the Guaranty not challenged until well after the pleadings in the Indiana Litigation were closed. *See*, Exhibit C. The Ind. Ct. Appeals summed this up in *Weinreb v. TR Developers, LLC*, 943 N.E.2d 856, 862-863:

> Rule 9.2(B) requires that the validity of the execution of a document attached to the complaint be challenged by a verified responsive pleading or an affidavit attached to a responsive pleading. Taken collectively, Trial Rules 8(B), 9.2(B), and 11(A) mean that an attorney's signature on a general denial rejects the assertions in the claim, but does not constitute an oath by which the pleader denies execution of an instrument attached to the claim.

(Ind. Ct. App. 2011)(internal citations and quotations omitted). Baker's execution of the Guaranty is established for purposes of Indiana law, and Metro has never challenged execution of the Note, both containing identical, mandatory venue selection provisions.

U.S. Dist. LEXIS 18437, *28 (D. R.I. 2004).  As evidenced by the Exhibits, each claim raised by Plaintiff's Complaint arises from the same transaction, operative facts, and same evidence as that at issue in the Indiana Litigation.  *See Iglesias v. Mutual Life Ins. Co.*, 156 F.3d 237, 241 (1st Cir.1998).  The Complaint contains no allegations independent of the defenses set forth in the Indiana Litigation and instead was a compulsory counterclaim to the Indiana Litigation. *Southern Constr. Co. v. United States ex rel. Pickard*, 371 U.S. 57, 60 (1962) (compulsory counterclaims "prevent multiplicity of actions . . . The Rule was particularly directed against one who failed to assert a counterclaim in one action and then instituted a second action in which that counterclaim became the basis of the complaint.").[8]  Plaintiffs' affirmative defenses in the Indiana Litigation mirror the alleged facts underlying its Complaint herein. [Exhibit B, p. 2-3] As such, the Complaint is barred by operation of law.  *Baker v. Gold Seal Liquors*, 417 U.S. 467, 469 (1974) (holding a court may dismiss a claim under Rule 12(b)(6) if the compulsory counterclaim is barred.).

Further, principles of comity dictate these proceedings should be dismissed.  Specifically, "a federal court must abstain from hearing a case if doing so would 'needlessly inject' the federal court into ongoing state proceedings."  *Coggeshall v. Massachusetts Board of Registration of Psychologists*, 604 F.3d 658, 664 (1st Cir. 2010).  "Comity is a doctrine of 'equitable restraint' and operates to 'stay [the] hand' of the federal courts when state-law remedies are 'plain, adequate, and complete[.]'" *Coors Brewing Co. v. Mendez-Torres*, 678 F.3d 15, 28 (1st Cir. 2012) (*citing Fair Assessment in Real Estate Ass'n v. McNary*, 454 U.S. 100).  Filed in the face of a valid forum selection clause providing for Indiana jurisdiction, the Complaint encompasses

---

[8]  See also, Ind. T.R. 8(C) (and its FRCP 8(c)(2) corollary): if a party "designates a defense as a counterclaim or a counterclaim as a defense, the court shall treat the pleading as if there had been a proper designation."

the same set of operative facts as the pending Indiana Litigation and relies upon the same evidence. Developments in the Indiana Litigation continue and the matter remains set for trial, increasing the likelihood of inconsistent rulings between the two forums. *Goldhammer v. Dunkin' Donuts, Inc.*, 59 F. Supp. 2d 248, 254 (1st Cir. 1999) ("[S]imultaneous adjudications regarding identical facts and highly similar legal issues creates the risk of inconsistent judgments."). Accordingly, the Indiana Litigation should be permitted to proceed uninhibited and uninterrupted by the Plaintiffs' barred compulsory counterclaims brought herein, and dismissal of the Complaint based upon comity is proper.

**E.    Counts I through VII of the Complaint should be dismissed for failure to state claims upon which relief can be granted.**

Even assuming the Complaint is properly before this Court, which it is not, the allegations asserted therein nevertheless fail to state claims upon which relief may be granted and should therefore be dismissed.

   *i.  Defendants fail to plead fraud with particularity and Count I of the Complaint fails.*

FRCP 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud…". All parties agree that Indiana law controls, and cases discussing Indiana's corollary T.R. 9(B) hold that to meet this burden, a complaining party must "specifically allege the elements of fraud, the time, the place, the substance of false reports, and any facts that were misrepresented, as well as the identity of what was procured by fraud." *Kapoor v. Dybwad*, 49 N.E.3d 108, 132 (Ind. Ct. App. 2015) (citations omitted). Indeed, "[f]ailure to comply with the rule's specificity requirements constitutes a failure to state a claim upon which relief may be granted." *Id.* Such specificity ensures "vague and unsubstantiated accusations of fraud do not lead to costly discovery and public obloquy." *Id.* (citations omitted).

Rather than allege the exact time, place, by whom any statements were made, and what

exactly was procured by the alleged fraud, Plaintiffs ambiguously claim that "[d]uring negotiations AFC advised [Metro] that it should reduce its monthly payments"[9] and that "[AFC] would not repossess the vehicles." [Complaint, ¶¶ 48-49]. Such vague allegations fail to meet the specificity required to state a claim for fraud. Finally, Plaintiffs fail to allege any definitive injury, let alone how such alleged fraud proximately caused any injuries. It is settled law that "fraud without damage gives no cause of action." *Bodkin v. Merit*, 1 N.E. 625, 628 (Ind. 1885); s*ee also, Baxter v. I.S.T.A. Ins. Trust*, 749 N.E.2d 47, 50 (Ind. Ct. App. 2001). Having failed to plead fraud with the specificity required by the Federal Rules of Civil Procedure, or to show any conceivable way that damage from that alleged fraud occurred, Count I must be dismissed.[10]

> ii. *Counts II and III of the Complaint fail to state claims because a party may not tortiously interfere with its own contract, such claims are barred by the statute of limitations, and Plaintiffs consented to the alleged conduct in their contracts with Defendants.*

The Complaint alleges the Defendants "knew or should have known that [Metro] had contractual . . . relations with AFC," that "Defendants knowingly and improperly interfered with these contractual arrangements." [Complaint, ¶¶ 55, 59, 70].[11] Logic and law provide that "[a] party cannot 'interfere' with its own contracts, so the tort itself can be committed only by a third party." *Trail v. Boys & Girls Clubs of Northwest Ind*., 845 N.E.2d 130, 138 (Ind. 2006); *see also Winkler v. V.G. Reed & Sons*, 638 N.E.2d 1228 (Ind. 1994). The alleged interference of which

---

[9] Such statements regarding prior negotiations are inadmissible pursuant to Indiana Rule of Evidence 408.

[10] Moreover, Plaintiffs admit they were in default to AFC when the repossession occurred [Complaint ¶ 34], and AFC is entitled to repossess its collateral without notice pursuant to the express terms of the Note. [Ex. A, Note, ¶ 8.1].

[11] Plaintiffs rely exclusively upon their claim that the Note was violated as the basis for a claim of conspiracy to tortiously interfere. Accordingly, the two claims fail together.

Plaintiffs complain involve the Note itself—to which both AFC and Plaintiffs are parties.

Even assuming such claims were properly plead, they are nevertheless barred by the applicable statute of limitations and the contract documents themselves.  Pursuant to Ind. Code. § 34-11-2-4, an action for tortious interference with a contract must be commenced within two (2) years of the alleged injury. *C & E Corp. v. Ramco Indus*., 717 N.E.2d 642 (Ind. Ct. App. 1999); *McLaughlin Equip. Co. v. Newcourt Credit Group, Inc*., 2004 U.S. Dist. LEXIS 13939 (S.D. Ind. 2004)[12].  As the actions underlying the alleged tort occurred in or around April 2018 [Complaint ¶¶ 24-25], Plaintiffs' Complaint filed herein on August 14, 2020 is barred by the statute of limitations.

Furthermore, the Note provides that upon an event of default AFC is entitled to "notify any and all creditors, account debtors or obligors of [Plaintiffs'] default . . . and direct payment of same to [AFC]" and may also "take possession of the Collateral[.]" [Ex. A, Note, ¶ 8.1].  It is undisputed that Plaintiffs were in default under the Note. [Complaint, ¶ 34].  The language of the Note and Guaranty both expressly allow AFC to communicate with third parties concerning the status of Metro's account with AFC. [Ex. A, Note, ¶ 9.17]. Accordingly, the "interference" of which Plaintiffs complain is nothing more than an exercise of AFC's contractual rights under the Note and corresponding rights under Article 9 of the Uniform Commercial Code. See, Ind. Code 26-1-9.1-601, *et. seq.*  The ADESA Terms and Conditions similarly make clear that ADESA had the absolute right to stop doing business with Metro, for any reason or no reason.  It is axiomatic

---

[12] Plaintiffs admit Indiana law controls, even despite the unsubstantiated (and waived by virtue of failing to plead it under oath in Indiana) claim that Baker modified the Guaranty.  [Complaint ¶ 22].  Rhode Island is one of the few states that does not automatically apply the statute of limitations of the forum state and when certain policy considerations are met, is willing to apply the statute of limitations of the state where the parties agreed its law would control. *Harodite v. Warren Elec. Co.,* 24 A.3d 514 (R.I. 2011).

that actions taken pursuant to a contractual right do not give rise to a cause of action.

To survive a 12(b)(6) motion to dismiss of a tortious interference claim, plaintiffs must provide "at the very least a description of the tortious conduct." *Trail*, 845 N.E.2d at 141 (additional citations omitted). Moreover, the alleged tortious conduct cannot be something the parties had the contractual right to do so. See, *Id*, at 139. Plaintiff must also "state more than a mere assertion that the defendant's conduct was unjustified." *Morgan Asset Holding Corp. v. CoBank, ACB*, 736 N.E.2d 1268, 1272 (Ind. Ct. App. 2000). Plaintiffs altogether fail to mention the lack of justification element required for a claim of tortious interference. Indiana law provides that "the existence of a legitimate reason for the defendant's actions provides the necessary justification to avoid liability." *Id.*, at 1272. Plaintiffs admit they were in default with AFC. AFC and ADESA have a legitimate interest in preventing Plaintiffs from buying additional vehicles and incurring additional debt when they failed to pay for the outstanding loans and other vehicles they already bought. Finally, the conspiracy claims must fail as Indiana does not recognize civil conspiracy as an independent cause of action, especially in claims such as here where there is no underlying tort. *Birge v. Town of Linden*, 57 N.E.3d 839, 846 (Ind. Ct. App. 2016). Accordingly, Counts II and III fail to state claims upon which relief can be granted, and such should be dismissed as a matter of law.

iii. *Counts IV and VI of the Complaint for negligence and unjust enrichment are barred by the existence of enforceable contracts and by the applicable statute of limitations.*

Under Indiana law, where "the rights of parties are controlled by an express contract, recovery cannot be based on a theory implied in law." *Zoeller v. E. Chi. Second Century, Inc*., 904 N.E.2d 213, 217 (Ind. 2009). More specifically, "[w]hen the parties have, by contract, arranged their respective risks of loss . . . tort law should not interfere." *Greg Allen Constr. Co. v. Estelle*, 798 N.E.2d 171, 175 (Ind. 2003). Further, "[t]he existence of an express contract

16

precludes a claim for unjust enrichment because . . . a plaintiff may not pursue an equitable remedy when there is a remedy at law." *Coppolillo v. Cort*, 947 N.E.2d 994, 998 (Ind. Ct. App. 2011).

The Complaint acknowledges the existence and execution of the Note and Guaranty. [Complaint, ¶¶ 19, 20]. The allegations underlying Plaintiffs' negligence and unjust enrichment claims are that AFC had a "duty to repossess in a commercially reasonable manner" and that AFC "wrongfully retained equity belonging to Metro" through "wrongful repossessions and commercially unreasonable sales [which] went beyond the lenders' authority." [Complaint, ¶¶ 83, 93-94]. These very promises upon which Plaintiffs base their claims are the same promises and provisions contained in the Note. As set forth above, the Note provides that AFC "may comply with . . . any applicable state or federal law requirements in connection with a disposition of the Collateral" while simultaneously granting to AFC all rights of a secured creditor with respect to financed vehicles. [Ex. A, Note, ¶ 8.2]. There exists no duty(s) owed to Plaintiffs separate from those in the Note. Accordingly, this dispute lies in contract, not in equity or tort, and no separate claims for negligence and unjust enrichment may be maintained.[13]

    *iv.  Counts V and VII of the Complaint fail to state actionable claims because breach of the duty of good faith and lender liability are not independent causes of action.*

Plaintiffs allege Defendants each "breached their duties to act in good faith and deal fairly" and "breached their loan agreements and guarantees," thereby entitling Plaintiffs to relief under the Uniform Commercial Code and the Indiana Lender Liability Act, Ind. Code § 26-2-9 et. seq. Although the Defendants dispute the allegations, even if such were accurate, such

---

[13] Even assuming a claim for negligence did exist, Indiana law provides that reputational damages are not recoverable. *Greives v. Greenwood*, 550 N.E.2d 334 (Ind. Ct. App. 1990); *Indiana & Michigan Electric Co. v. Terre Haute Industries, Inc.*, 507 N.E.2d 588, 606 (Ind. Ct. App. 1987).

conduct fails to give rise to actionable claims as a matter of law.

It is settled law that "a breach of good faith cannot be maintained as an independent cause of action." *Best Distrib. Co. v. Seyfert Foods*, 714 N.E.2d 1196, 1205 (Ind. Ct. App. 1999); *Beraha v. Baxter Health Care Corp*., 956 F.2d 1436, 1443 (7th Cir 1992) (holding lack of good faith alone does not create cause of action); *Pain Ctr. of SE Ind. LLC v. Origin Healthcare Sols. LLC*, 893 F.3d 454, 462 (7th Cir. 2018) ("this section of the UCC 'does not support an independent cause of action for failure to perform or enforce in good faith.'") (applying Indiana law).

Contrary to the conclusory allegations in Count V of the Complaint, "Indiana law does not impose a generalized duty of good faith and fair dealing on every contract; the recognition of an implied covenant is generally limited to employment contracts and insurance contracts." *Gerdon Auto Sales, Inc. v. John Jones Chrysler Dodge Jeep*, 98 N.E.3d 73, 82 (Ind. Ct. App. 2018), *transf. denied*, 2018 Ind. LEXIS 484 (Ind. 2018), quoting *Old Nat'l Bank v. Kelly*, 31 N.E.3d 522, 531 (Ind. Ct. App. 2015). Indiana "courts will only impose a duty of good faith and fair dealing if the contract is ambiguous or expressly imposes such a duty on the parties." *Id.* None of the contracts identified by Plaintiffs (which they conspicuously failed to attach to their Complaint) are an employment or insurance contract, nor do any of them expressly impose a duty of good faith and fair dealing on the parties. [See, Exhibit A and D]. Plaintiffs do not claim the contracts are ambiguous. Accordingly, there is no duty of good faith imposed on the parties' contractual relationships as a matter of law, and Count V of the Complaint therefore fails to state a claim.

Similarly, the Indiana Lender Liability Act provides neither an independent cause of action nor affirmative relief. Instead, the Act limits breach of contract actions solely to the terms

of any loan or other credit agreement memorialized in writing executed by the statutorily defined

lender. *See, e.g., Sees v. Bank One, Ind., N.A*., 839 N.E.2d 154 (Ind. 2005). No such writing has

been put forth, nor have the factual bases for any such "common law" claims been alleged.

[Complaint ¶ 97]. Put simply, no separate "lender liability" causes of action exist and Plaintiffs

claims resound in contract, serving as nothing more than repackaging of the Plaintiffs' claims

and defenses already asserted or that must have been asserted in the Indiana Litigation.

Accordingly, Counts VII fails to state claims upon which relief can be granted and should be

dismissed.

## V.  CONCLUSION

Plaintiffs' Complaint should be dismissed against ADESA under FRCP 12(b)(2) and as

against AFC and ADESA in its entirety pursuant to FRCP 12(b)(6). ADESA is not subject to

jurisdiction herein. Even if it were, the Complaint represents causes of action that cannot be

maintained in this Court due to the pendency of the Indiana Litigation and the forum selection

provisions of the parties' agreements, nor in any other court in light of the permission granted

under those agreements and/or legal justification for the related conduct, the statute of

limitations, and Indiana law.

Respectfully submitted,

/s/ *Joseph V. Cavanagh, III*
Joseph V. Cavanagh, III (#6907)
Blish & Cavanagh, LLP
30 Exchange Terrace
Providence, RI 02903-1765
Tel: (401) 831-8900
Fax: (401) 751-7542
jvc3@blishcavlaw.com


Reynold T. Berry, Esq.
RUBIN & LEVIN, P.C.
135 N. Pennsylvania St.
Suite 1400
Indianapolis, IN 46204
317/860-2922 (Direct)
317/453-8622 (Fax)
rberry@rubin-levin.net

*Attorneys for Automotive Finance*
*Corporation d/b/a AFC and ADESA, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 14, 2020, I caused a true copy of the foregoing document to be filed using the CM/ECF System and it is available for viewing and downloading by all counsel of record as follows:

Harris K. Weiner
Salter McGowan Sylvia & Leonard, Inc.
56 Exchange Terrace
Providence, RI 02903
401-274-0300
Fax: 401-453-0073
hweiner@smsllaw.com

Katharine E. Kohm
Pierce Atwood LLP
One Financial Plaza
26th Floor
Providence, RI 02903
(401) 490-3429
Fax: 401-588-5166
kkohm@pierceatwood.com

/s/ *Joseph V. Cavanagh, III*