# Exhibit D

## ADESA and OPENLANE
## Terms and Conditions

Effective Date: March 17, 2012

These Terms and Conditions ("**Terms and Conditions**")[1] as set forth herein and which may be amended from time to time, shall govern the relationship and become a part of any and all transactions hereafter undertaken by, between, and among the persons or entities using the Auction's services ("**Customer**"), and ADESA, Inc., its U.S. auction subsidiaries (collectively, "**ADESA**") and OPENLANE, Inc. ("**OL**") (ADESA and OL, collectively "**Auction Company**" or the "**Auction**"). These Terms and Conditions and any amendments to them will be effective immediately upon the Effective Date. Customer's access or use of Auction's services following the Effective Date will constitute full acceptance of the then current Terms and Conditions. Auction Company complies with National Auto Auction Association's ("**NAAA**") policies, which are hereby incorporated herein by reference, except as set forth in Section 15 below.

### I. GENERAL TERMS

1. Scope and Purpose. Auction Company conducts periodic in-person and/or internet-based remote auction sales, both in real time and virtually (collectively "**Sales**"). Auction Company's Sales offer principally, but not exclusively, transportation-related consigned goods, including automobiles, motorcycles, recreational vehicles, power equipment, vessels, and recreational watercraft (collectively, "**Vehicles**"). Customer wishes to attend and/or otherwise participate in the Sales (via its "**Authorized Representative(s)**", as defined below), and voluntarily agrees to these Terms and Conditions in consideration of the Auction Company permitting such participation. Breach of these Terms and Conditions may result in the assessment of penalties, and/or temporary or permanent suspension of auction privileges.

2. Customer's Eligibility. Customer warrants that Customer is a licensed retail or wholesale dealer of one or more types of Vehicle(s) (collectively, "**Dealer**") and/or a corporation or other legal entity that is otherwise legally eligible to purchase or sell Vehicles at wholesale auto auctions. Customer agrees that these Terms and Conditions shall apply to all transactions by which Customer sells consigned Vehicles as "Seller", or in which Customer purchases consigned Vehicles as "Buyer". Customer acknowledges that its participation as Buyer or Seller, or to participate in certain Sales events, may be limited by applicable law, the scope of the Customer's license, or other rules of eligibility, as may be determined in Auction Company's sole discretion.

3. Buyer's Registration. Auction Company participates in the Auction ACCESS® registration system. Upon completion of the Auction Company's Auction ACCESS® registration package, Buyer and each of its Authorized Representative(s) will be issued an Auction ACCESS® number and/or photographic identification card ("**Auction Card**") authorizing it to buy Vehicles at all Auction Company physical locations and internet sales. For internet sales, in addition to registering through Auction ACCESS®, Buyer must register through the Auction Company online system in order to receive a username and password.

4. Seller's Registration. In order to participate in Auction Company's auctions, Seller shall complete a registration package and/or consignment agreement. For internet sales, Seller may also need to register through the Auction Company's online system in order to be authorized to sell Vehicles at all Auction Company's internet sales and to receive a username and password.

5. Sharing of Auction Card and/or Username/Password. Sharing or lending the Auction Card, and/or username and password is strictly prohibited. Customer is responsible for maintaining the confidentiality and security of its Auction Card and/or username and password. Customer will be liable and responsible for all actions, omissions, failures to act, and/or transactions conducted in Customer's name with any Auction Card and/or username or password issued to Customer or any of its Authorized Representatives, regardless of whether such action, omission, failure to act, and/or transaction was actually approved or authorized by Customer. Please immediately notify Auction Company in writing upon the discovery of any unauthorized use of Auction Card and/or username and password.

6. Authorized Representatives/Authorized Users. Customer authorizes the person(s) designated in the Application and other document as "**Authorized Representative(s)**" or **Authorized User(s)**" to take or perform the following actions with respect to Vehicles: (a) purchase and/or sell Vehicles on behalf of Customer including complete and execute papers conveying title, including endorsement of the certificate of title, odometer statements, bills of sale and other similar documents in connection with the sale of all Vehicles, and/or (b) complete and execute on behalf of Customer's checks and/or drafts in connection with the purchase or sale of Vehicles, and (c) to finance purchases using any floorplan lender with whom Dealer has an authorized account and which offers service to Auction. The authority of the Authorized Representatives shall continue in full force and

---

[1] The ADESA and OPENLANE Terms and Conditions replace OL's Terms of Use and are binding on all Customers except where Customer has a separate legal agreement with the Auction. However, in the event a Customer is not registered with Auction ACCESS®, the OL registration documents are binding on the Customer until it is registered with Auction ACCESS®.

Effective Date 17 MAR 12

ver 1 0

effect until terminated by Dealer. The addition or removal of Authorized Representatives or placement of any restriction on the authority of any Authorized Representative must be done in writing or electronically, and submitted according to procedures and/or with appropriate forms as may be developed by Auction Company, OL, Auction ACCESS® or ADESA from time to time. Attempted oral revocation, alteration, or naming of additional Authorized Representatives shall be of no effect whatsoever. Customer guarantees, as principal, all transactions made at the Auction by its Authorized Representatives, irrespective of any dispute regarding the actual authority to do the specific transaction. No Authorized Representative shall be under the age of eighteen (18) years and neither Customer nor its Authorized Representative(s) shall bring any person under such age onto the Auction premises as driver, assistant, observer, or otherwise. Auction Company, at its sole discretion, reserves the right not to do business with any Customer and/or Authorized Representative.

7. **Eligibility and Applicable Rules.** These Terms and Conditions, as may be supplemented or altered by additional requirements imposed by a particular Auction Company location at which Customer conducts a transaction, (collectively, "**Auction Rules**") shall govern Customer's attendance and participation at Auction and be deemed part of the Terms and Conditions of all Vehicle transactions at the Auction. The relationship between Auction Company and Customer is terminable at will by either party, with or without prior notice, and termination by either party shall not relieve either party of its obligations arising before the termination. Auction Company reserves the right to refuse to or terminate doing business with any Customer, and to place additional conditions or restrictions upon any Customer's activities at Auction, including but not limited to, limiting or barring access to one or more Auction locations. By participating in an Auction Sale, Customer represents that it is: (a) appropriately licensed in one or more states, or under the applicable laws of a country outside the United States; (b) registered with ADESA or OL, in addition to Auction ACCESS®; and (c) subject to the Terms and Conditions contained herein and other applicable Auction Rules. Customer's registration with Auction Company shall constitute (1) authorization to Auction Company to investigate the credit history of Customer, including obtaining, from time to time, credit history reports of Customer's principals and Authorized Representatives, and (2) authorization to release any information whatsoever regarding Customer to any subsidiary or other affiliate of Auction Company and Customer's active floorplan company, including but not limited to Automotive Finance Corporation ("AFC"). Failure of Customer and/or Authorized Representative's to comply with any or all of the Terms and Conditions set forth herein may result in the suspension or termination of Customer's and/or Authorized Representative's privileges of transacting business with Auction Company and its affiliates. Sales at ADESA auctions outside of the U.S. are governed by that region's auction policies, laws and regulations, as amended from time to time.

8. **Changes to Terms and Conditions.** Auction Company, at its sole discretion, may amend these Terms and Conditions and other Auction Rules ("**Auction Policies**") without sending notice to Customers. The amended Auction Policies will be effective immediately upon posting to the Auction Company's website or/and Customer's continued access and use of Auction Card, Auction ACCESS® number or username and password following such amendment will constitute full acceptance of any such changes. Notwithstanding the date executed by Customer, these Terms and Conditions are effective on any transaction that occurs on or after the Effective Date.

9. **Electronic Signature.** Customer will permit Auction Company to capture or otherwise acquire Customer's signature in digital or electronic form, and specifically authorizes Auction Company to apply the Customer's digital or electronic signature to Auction Sale documents.

10. **Auction Company as Consignee.** Auction Company is a service company and generally does not take title to, purchase or sell Vehicles. Rather, Auction Company facilitates the exchange of Vehicles between Seller and Buyer at the Auction. All Vehicles offered for sale at Auction by Seller are deemed consigned and are offered for sale by Auction Company on Seller's behalf. Auction Company, at its sole discretion, reserves the right to refuse to accept or to remove from an Auction any Vehicles to be offered for sale. In any Vehicle purchase transaction, Auction Company shall not be deemed or considered the Vehicle's Seller under any circumstances, except where Auction Company has specifically identified itself as Seller on the sale contract. Auction Company otherwise is not a party to any sale contract, but shall be deemed a third party beneficiary of such contract, entitled to the parties' performance and to seek legal remedies for the parties' breach.

11. **Service Fees.** Customer agrees to pay all service fees and charges of Auction for services rendered by Auction, including but not limited to, penalties for failure to comply with various provisions, or certain convenience features, each as applicable ("**Fees**"). Auction Company, in its sole discretion and at any time, may add, delete, or change some or all of the Fees, as applicable. Also, Auction Company reserves the right to and may have arrangements with certain customers that result in reduced Fees, the payment of discounts/rebates associated with the sales of Vehicles, and/or marketing assessments in the form of premium buyer fees. The purchase price of the Vehicle plus all applicable Fees payable by buyer in connection with the transaction is the "**Total Payment Amount.**"

12. **Payment Terms.** For In-Lane and LiveBlock® sales, the Total Payment Amount is due before the end of business on the day of sale and for Online sales, the Total Payment Amount is due within 2 business days from the day of sale (as applicable to the type

Page 2 of 16

Effective Date: 17-MAR-11                                                      ver 1.0

of sale, the "**Payment Due Date**"). With respect to any Fees which may become due from Customer, Auction Company may (a) set off, deduct or retain out of any amounts payable to Auction Company from amounts it owes Customer, (b) retain possession of any Vehicles owned or controlled by Customer, (c) withhold title documents until all amounts owed by Customer to Auction Company have been paid, (d) cancel the Transaction to which the amount owed relates, and/or (e) charge late payment fees of $10 per day, and/or charge interest on any past due payments at the rate of one and one half (1.5%) percent per month, calculated in US dollars, or the maximum rate allowed by law, whichever is less. Customer shall not under any circumstance stop payment on an instrument, refuse to honor an instrument or withdraw an instrument. In the event that Auction Company accepts faxing a copy of a check, Customer authorizes Auction Company to initiate debit entries to Customer's checking account at Customer's depository on which such check was written, which authorization will remain in force until Auction Company has received written notification from Customer of Customer's written termination of such debit authorization ("**Electronic Check**"). Notwithstanding the previous sentence, Auction Company may decline to process an Electronic Check for any reason. Customer represents and warrants, regardless of whether Customer is the drawer of the check, draft, or Electronic Funds Transfer ("**EFT**") that, at the time of issuance and at the time such instrument is or was presented for payment, the account upon which such instrument is drawn contains then available funds sufficient for payment of that instrument. Any instrument withdrawn or returned for non-sufficient funds ("**NSF**") must be settled and replaced immediately with cash or certified funds to prevent collection action. Upon return of any NSF, a service charge up to the maximum amount allowed by law will be imposed and must be paid immediately. Auction Company may review Buyer's financial position and, may at its sole discretion, impose whatever purchase or payment restrictions Auction Company may deem necessary to protect Auction Company's interest, which may include but is not limited to, requiring that all purchases be made in cash or certified funds. These rights set forth above will be in addition to and not exclusive of any other remedy available to Auction Company, whether at law or in equity. Customer shall pay all legal costs, including, without limitation, attorney fees, court costs and other expenses necessary for Auction Company to collect any monies owed by Customer.

Auction Company may charge storage fees for Customer's Vehicles not removed within time limits established by Auction Company. Storage charges may apply to unsold consigned Vehicles or purchased Vehicles. Auction Company reserves the right to charge storage fees in other circumstances. Customer acknowledges that notwithstanding any other language in these Terms and Conditions, Auction Company (1) may acquire a lien on any Vehicles for unpaid storage, as provided by law, (2) is authorized to refuse to release any Vehicle to Customer while fees are unpaid, and (3) may be entitled to dispose of the Vehicle to recover unpaid fees, as provided by law.

13. <u>Financial Information Representations</u>. Customer represents and warrants that the financial and other factual information presented to Auction is true, complete and accurate. Customer authorizes a review of Customer's credit history and any other history deemed necessary by Auction Company, including, without limitation, Customer's lending institution accounts. Customer shall notify Auction Company immediately of any change of its principal financial lending institutions; or any other material changes in information provided to Auction.

14. <u>Security Interest and Rights upon Default</u>. In order to secure final payment of any indebtedness owing to Auction Company by Customer, including but not limited to the Final Payment Amount, Customer hereby grants to Auction Company a security interest (including a purchase money security interest, where applicable) in any Vehicle, whether consigned or purchased, together with all additions, accessions, accessories and replacements, and proceeds thereof, which security interest shall continue until all funds are collected with respect to such sale. Customer authorizes Auction Company to prepare and file a financing statement, as required by Article 9 of the Uniform Commercial Code ("UCC") for such Vehicle without Customer's signature being required thereon. Customer acknowledges that AFC is authorized as agent to act on ADESA's behalf for filing of a financing statement. Auction Company's security interest in any Vehicles is assignable to any auction, subsidiary or other affiliate of Auction Company, including but not limited to AFC. Despite any alleged competing security interest in the Customer's Vehicles which may be asserted by a third party, Customer acknowledges that as between Customer and Auction Company, the security interest will be enforceable as to any consigned or purchased Vehicle, and Auction Company shall be entitled to all of the rights and remedies of a secured party as provided by law, including but not limited to the right of self-help repossession. Notwithstanding any other language in these Terms and Conditions, if Customer defaults in any obligation imposed upon Customer in conjunction with any Auction transaction, Customer agrees that Auction Company shall be entitled as third party beneficiary of the sales contract to enforce against Customer all legal and equitable remedies available to "seller" or "buyer" of goods, as appropriate to the particular transaction, available under Article 2 of the UCC or other applicable law.

15. <u>Arbitration</u>.
    a. <u>Policies</u>. Auction Company offers an arbitration service which is governed by the policies and procedures in this section (the "**Auction Arbitration Policy**") to resolve disputes between Buyers and Sellers. Our process is designed to be fair, impartial, quick, and economical. The Auction Arbitration Policy generally follows the National Auto Auction Association's Arbitration

Page 3 of 16

Effective Date: 17-MAR-12

ver 1.0

Policy- In-Lane and Online (the "**NAAA Arbitration Policy**"), as may be amended from time to time. (See www.naaamap.com/NAAA/standards/standards.html).

For Online sales, depending on the Vehicle Listing Category selected, some Sellers may offer their Vehicles for sale with enhanced arbitration rights that exceed the NAAA Arbitration Policy. If there is any conflict between the terms of the Auction Arbitration Policy and the terms of the NAAA Arbitration Policy, the terms of the Auction Arbitration Policy prevail.

Notwithstanding the above, certain commercial Sellers may adhere to their own arbitration policies and procedures.

b. Definitions. In addition to the terms defined in the NAAA Arbitration Policy and elsewhere in this Policy:

  i. "**Arbitrator**" means the Auction Company employee(s) responsible for adjudicating disputes and managing the dispute resolution process contemplated in this Policy.

  ii. "**Claim**" means a claim submitted by Buyer for arbitration.

  iii. "**In-Lane**" has the same meaning as set out in the NAAA Arbitration Policy.

  iv. "**LiveBlock®**" means ADESA's proprietary online sales platform for Vehicles that are offered simultaneously in an In-Lane sale.

  v. "**ADESA Location**" means a physical ADESA Auction facility.

  vi. "**Online**" has the same meaning as set out in the NAAA Arbitration Policy.

  vii. "**Off-site Sale**" means an Online sale where, at the time of sale, the Vehicle was not physically located at an ADESA Location[2].

  viii. "**Policy**" or "**Policies**" mean the Auction Arbitration Policy, NAAA Arbitration Policy and any applicable Seller Specific Policies.

  ix. "**Vehicle Listing Category**" means the category under which an Online Vehicle (excluding LiveBlock®) is listed for sale as set out below.

c. Seller Obligations. It is Seller's obligation to fairly represent its Vehicle and to correct any errors made regarding disclosed conditions. Seller is responsible for the accuracy and completeness of all disclosures regardless of whether Seller has relied on third party resources (e.g. inspection company, vehicle listing service, electronic data vehicle history report, etc).

d. Buyer Obligations. Before bidding on a Vehicle, Buyer is required to know the arbitration rules in place for the Vehicle. In addition, Buyer should carefully inspect the Vehicle (In-Lane sales), review all disclosed information including photos (as applicable), and listen to all announcements from the Auctioneer (In-Lane and LiveBlock® sales).

e. Disclosure Standards for In-lane and LiveBlock® Sales. NAAA Arbitration Policy applies.

f. Disclosure Standards by Vehicle Listing Category for Online Sales (excluding LiveBlock®). Seller is responsible for designating the appropriate Vehicle Listing Category and ensuring that the Vehicle satisfies the requirements of the category selected. If a seller fails to designate a Vehicle Listing Category, it will be offered for sale under the Standard Category.

| Vehicle Listing Category | Disclosure Requirements/Arbitration Rights | Arbitration Period |
|---|---|---|
| As Is | All As Is disclosures as per NAAA Arbitration Policy have been made (see Appendix I: NAAA Arbitration Policy Guideline to NAAA Arbitration Policy). | Per NAAA Arbitration Policy |
| Standard | All disclosures as per NAAA Arbitration Policy have been made (see Appendix I: NAAA Arbitration Policy Guideline to NAAA Arbitration Policy). | Per NAAA Arbitration Policy. |
| As Described | In addition to the arbitration rights available under the Standard Vehicle Listing Category, Buyer will be entitled to arbitrate the following conditions:<br>• Prior Repair - If the Sale Price is less than $35,000, 3 or more adjacent | 48 hours from receipt of vehicle, not to exceed 14 calendar days from date of purchase. |

---

[2] Sales by non-ADESA physical auction companies are considered to be Off-site Sales.

Page 4 of 16

Effective Date: 17-MAR-12

ver 1.0

| Vehicle Listing Category | Disclosure Requirements/Arbitration Rights | Arbitration Period |
|---|---|---|
| | panels (excluding bumper panels) have been painted or replaced.<br>• If the Sale Price is equal to or more than $35,000, 2 or more adjacent panels (excluding bumper panels) have been painted or replaced. | |
| OEM CPO Eligible | Seller Specific Policies apply. Buyer will be entitled to arbitrate conditions certified under the applicable OEM authorized certified pre-owned program in accordance with the terms of the applicable Seller Specific Policies. See specific program details referenced on vehicle listing page for further information. | 48 hours from receipt of vehicle, not to exceed 14 calendar days from date of purchase. |
| Front Line Ready | In addition to the arbitration rights available under the As Described Vehicle Listing Category, Buyer will be entitled to arbitrate the following conditions:<br>• Required mechanical or electrical repairs<br>• Modified Engine - Non-OEM engine modifications have been made.<br>• OEM specified scheduled maintenance has not been performed.<br>• Oil or oil filter has not been changed within the last 250 miles.<br>• Brake Standards[3] not met.<br>• Tire Standards[4] not met.<br>• Battery does not hold charge.<br>• Non-OEM engine or engine modifications<br>• Non-OEM modifications to Vehicle height, spring support or mounting.<br>• Failure to pass state required emissions standards at Grounding Location or ADESA Location, as applicable.<br>• Odometer rolled back, broken, or unreadable<br>• Leaks or excessive wear to shock absorbers<br>• Damage or excessive wear to springs, sway bars, bushings, ball joints, or mounts<br>• Clutch leaks, has excessive noise or play<br>• Windows, headlights or taillights do not function properly<br>• Alarm (if equipped) or parking brake do not function properly<br>• Holes or tears in carpet or upholstery<br>• Glass damage | 48 hours from receipt of vehicle, not to exceed 14 calendar days from date of purchase. |

[3] **"Brake Standards"** means that (i) the master cylinder should be full and fluid in good condition (ii) the hydraulic system has no leaks, cracks or signs of significant deterioration (iii) the rotors, drums, calipers and brake hardware are free of significant defects (iv) rotor thickness is more than the minimum thickness stamped on the inside of the rotor and does not have excessive lateral run-out or lack parallelism enough to cause pulsation (v) the calipers slide freely and do not stick (vi) the brake pads have a minimum of 50% material and measure to 5/16 inch or more (vii) the drums are not out of round enough to cause pulsation and have above the minimum thickness standard stamped inside the drum (viii) the brake shoes have a minimum of 3/16th of lining (ix) the parking brake maintains vehicle in parked position and releases without difficulty and (x) the brakes do not pull, clunk, scrape, squeal, grab or exhibit premature lockup.

[4] **"Tire Standards"** means that tires, excluding space saving spare tires, are (i) all of the same make, model and size (ii) not out of round (iii) free of flat spots (iv) without visible broken belts or excessive camber/toe wear (v) free of plugs or damage to walls and (vi) having tread depth of at least 4/32.

Effective Date: 17-MAR-12

ver 1.0

| Vehicle Listing Category | Disclosure Requirements/Arbitration Rights | Arbitration Period |
|---|---|---|
| | • Interior foul odor<br>• Prior: salvage, insurance total loss or theft recovery, taxi, limousine, donated or charity Vehicle, government, municipal, emergency services, or daily rental vehicle | |

g. <u>Online Photographs</u>. Photographs must accurately and fairly represent the condition of the Vehicle. Photographs of damage or other conditions that could materially affect the value of a Vehicle should be included. Below is a summary of the minimum photo recommendations for Off-site Vehicles:

| Vehicle Listing Category | # of Photos | Photo Details | |
|---|---|---|---|
| As Is | 2 to 4 | 2 photos | (1) Front, left side; (2) Rear, right side |
| | | 4 photos | (1) Exterior front; (2) Exterior rear; (3) Exterior, left side; (4) Exterior, right side |
| Standard & As Described | 3 to 6 | Same as for As Is plus: interior front section (driver or passenger).<br>Additional optional photos: engine bay; and if Vehicle is a pickup truck, the truck bed. | |
| OEM CPO Eligible (Seller Specific Rules) | 6 | Same as for Standard plus additional photos as per OEM CPO Seller rules | |
| Front Line Ready | 6 + | 1) Exterior front; (2) Exterior rear; (3) Exterior, left side; (4) Exterior, right side; (5) interior front section (driver or passenger); (6) engine bay; (7) if Vehicle is a pickup truck, the truck bed. | |

h. <u>Disclosure Conflicts</u>. Information regarding the description, condition, or history, of a Vehicle may come from multiple sources which occasionally may result in inconsistent or conflicting disclosure information. Unless otherwise stated, disclosure conflicts will be resolved in the following order of priority: (1) Auctioneer announcements on the block at an In-lane sale; (2) Specific disclosures in "Announcements" section of Vehicle information page, (3) Damage or conditions clearly visible in photographs of Vehicle on Vehicle Information page (note: this does not apply to pictures showing non-OEM equipment, such as bike/ski racks, , rims, etc. which should be presumed not to be included with the Vehicle unless also included in the Vehicle description) (4) Disclosures in an inspection/condition report (5) Disclosures in "options" section of Vehicle detail page.

i. <u>Arbitration Period</u>. The arbitration periods established under the NAAA Arbitration Policy apply to all Vehicles sold through an Auction Company channel unless otherwise stated in the Vehicle Listing category matrix above. The arbitration period may be longer if Buyer purchases a Post-sale Inspection (See the terms and conditions of local Auction's PSI program for further details.) To preserve their arbitration rights, Buyers are strongly encouraged to be diligent in their inspection and research of Vehicle purchases within the relevant arbitration period.

j. <u>Arbitration Process for All Transactions</u>.

  i. <u>Payment</u>. Initiating the arbitration process does not relieve Buyer of its payment obligations. Failure to pay may result in loss of arbitration rights and/or temporary or permanent suspension of Auction privileges.

  ii. <u>Start Claim</u>. Start Claim in manner indicated for type of sale.

  iii. <u>Review of Claim</u>. Auction Company will review only issues identified in the initial Claim. Auction Company may, but is not required to, consult with Buyer, Seller or both parties to gain a better understanding of the issue(s) in the Claim. When appropriate, Auction Company may refer the Vehicle to an Auction mechanic, inspector or external resource such as an authorized dealership or specialty shop for consultation. The unsuccessful party (Buyer or Seller) in the arbitration will be responsible for payment of all expenses (e.g. mechanical consultation) incurred in the Claim review.

  iv. <u>Decision</u>. After reviewing the Claim, Arbitrator will decide whether the Claim is valid. Before deciding what the remedy should be, Arbitrator may attempt to facilitate a resolution between Buyer and Seller. If agreement cannot be reached, Auction Company will decide the appropriate remedy, if any.

  v. <u>Arbitration Award</u>. It is understood that, as Arbitrator, Auction Company will grant any remedy or relief that it considers fair and reasonable in the circumstances, including but not limited to: cancellation of sale and full refund of

Effective Date: 17-MAR-12

ver 1.0

purchase price, partial refund of purchase price, repair of defect at Seller's expense, repair of defect with the costs apportioned between Buyer and Seller, partial or full reimbursement of transportation, reconditioning and/or repair costs. All amounts that the Arbitrator determines should be paid as a result of the Claim are referred to as the "**Award Amount**". Seller must pay the Award Amount within the time limits imposed under this Policy.

vi. <u>Payment of Award Amount by Seller</u>. Seller agrees to pay Award Amount on or before three (3) business days after Auction Company notifies Buyer and Seller of Arbitrator's final decision. If Seller fails to pay the Award Amount within the time limit, Auction Company reserves the right to charge Seller a late payment charge and/or to offset and deduct the Award Amount from any amounts payable by Auction Company to Seller.

vii. <u>Payment of Award Amount to Buyer</u>. Auction Company may withhold (or offset) all or part of the Award Amount from Buyer if (i) transferable title is not returned (when applicable), (ii) Buyer has unresolved past due amount payable to Auction Company, and/or (iii) Auction Company determines that the Vehicle's condition has changed while in Buyer's possession.

viii. <u>Returns</u>. If the Arbitrator has determined that the sale should be cancelled and the Vehicle returned, Buyer will follow the return procedure indicated for the type of sale.

ix. <u>Finality</u>. The decision of the Arbitrator is final and binding on Buyer and Seller. By doing business with Auction Company, Buyer and Seller hereby appoint Auction Company to serve as Arbitrator and empower it to render a final, binding decision in settlement of all Claims submitted for arbitration. Upon payment of the Award Amount and/or otherwise implementing the Arbitrator's decision, Buyer and Seller are deemed to release each other from all claims and demands regarding the matters referred to Arbitration.

k. Arbitration Process for In-Lane and LiveBlock® Sales.

i. <u>Start Arbitration Claim</u>. An arbitration Claim is started by contacting the ADESA Location where the Vehicle was purchased and following the instructions of the Arbitrator. All Claims must be made within the applicable arbitration period.

ii. <u>Returns</u>. If Arbitrator determines that the sale should be cancelled, Buyer will contact Auction Company and follow all directions given by Auction Company regarding return of the Vehicle. Buyer must give Auction Company at least 24 hours advance notice of any Vehicle return requests. A Vehicle is not considered returned until it is received, inspected and approved for return by Auction Company. A returned Vehicle must be in the same or better condition as when it was sold. Auction Company reserves the right to charge Buyer an excess mileage fee for returned Vehicles. Any Vehicle delivered to or left at an ADESA Location without Auction Company approval will remain the sole responsibility of Buyer. Buyer remains liable for the sale price of the Vehicle and assumes all risk of loss pending final arbitration decision and proper return of the Vehicle.

l. Arbitration Process for Online Sales (excluding LiveBlock®).

i. <u>Start Arbitration Claim</u>. Before starting a Claim, Buyer must pay Auction Company all amounts owing including any transportation costs. Buyer starts arbitration Claim by submitting appropriate information and documentation online to Auction Company arbitration department through Auction Customer Service Portal (or as otherwise directed by Auction Company) *before* the expiry of the arbitration period. Buyer submits the following information: Buyer's name and telephone number; contact person and telephone number; Vehicle VIN, model and year; Delivery Time; and a description of the issue(s) to be arbitrated.

ii. <u>Submit Supporting Documentation</u>. No later than 2 business days after starting the Claim, Buyer is required to submit supporting documentation, including but not limited to: (i) the original Online description of the Vehicle (condition report, Vehicle detail page, etc.) (ii) digital photographs of the defect(s) underlying the Claim, (iii) wholesale (not retail) repair estimates from an independent and reputable source; and (iv) Bill of Lading, transport release form, or other form of delivery receipt from transportation company, if applicable.

iii. <u>Buyer's Obligations</u>. Buyer will not use any Vehicle that is subject to an arbitration Claim. Other than for test-driving purposes (not to exceed 20 miles) Buyer may lose right to make or continue a Claim if Buyer drives Vehicle. Pending a final decision on the Claim, Buyer must, at its own expense, take reasonable steps to care for, preserve, secure and store the Vehicle until Vehicle is properly returned. Buyer is not entitled to charge any parking, marshalling or other fees in connection with its preservation of the Vehicle. Buyer will be charged the cost of damage repair and/or assessed a penalty fee for any breach of this provision.

Page 7 of 16

Effective Date: 17-MAR-12                                                                                             ver 1.0

    iv. **Returns**. If the sale is cancelled, Buyer and Seller will follow the instructions provided by the Arbitrator regarding arrangements for pick-up and delivery of the Vehicle. Seller will be responsible for all Vehicle return transportation costs and, if so determined by Arbitrator, Buyer's transportation costs.

        1. If Vehicle is returned to an ADESA Location, the return process applicable to In-Lane and LiveBlock® sales will be followed.

        2. If Vehicle is not returned to an ADESA Location, Risk of loss of the Vehicle remains with Buyer until the Vehicle is delivered to Seller or to Seller's carrier or other agent. Buyer is responsible for ensuring that at time of delivery to Seller, Vehicle is in the same or better condition as when it was sold.

    v. **Limited Arbitration Rights for Buyer at Grounding Location**. For Off-site sales, if at time of sale Vehicle is sited at Buyer's location (i.e. the grounding location), the arbitration rules for As Is In-Lane sales, including arbitration periods and disclosure requirements, apply (see Appendix I: NAAA Arbitration Policy Guideline to NAAA Arbitration Policy).

  m. **Additional Terms and Conditions**.

    i. Auction Company reserves the right to interpret, waive or vary any provision of these Policies if, in its sole discretion, Auction Company considers it fair and reasonable to do so in the circumstances.

    ii. If the sale is cancelled due to Seller's failure to disclose one of the conditions that permits extended arbitration under the NAAA Arbitration Policy (see Appendix I: NAAA Arbitration Policy Guideline to NAAA Arbitration Policy), Seller will re-pay to Auction Company the full purchase price, all Buyer and Seller fees, plus any other amount Auction Company, in its discretion, determines to be fair and reasonable compensation to Buyer. Auction reserves the right to assess additional fees against Seller or Buyer (e.g. dry run, late pick-up, late return, etc.) that Auction Company, in its discretion, determines to be fair and reasonable in the circumstances.

    iii. Auction Company reserves the right to deny or limit arbitration rights if Vehicle has been transported to a country different than the country of the Grounding Location.

16. **Warranties Regarding Title**. Customer warrants, represents and guarantees possession and conveyance of a certificate of title, properly executed, valid in the state where the transaction is occurring and clear of all liens and encumbrances (except current year DMV fees in California), and Customer warrants and will defend the title against the claims and demands of all person whatsoever. Customer further acknowledges that with respect to purchased Vehicles, Auction Company has assumed no responsibility to investigate Seller's title or to otherwise identify defects in Seller's title or title documents, and makes no warranty whatsoever regarding title or title documents.

17. **Vehicle Identification Numbers**. No Vehicles will be offered for sale without a proper Vehicle identification number plate. Auction Company reserves the right to refuse to sell any Vehicle on which the Vehicle identification number plate appears marred or in any way altered or any Vehicle not originally manufactured for sale in the United States (European or Canadian conversions). Those vehicles having a reassigned VIN plate by the State in place of the original VIN plate must be announced or will be subject to sale cancellation or Buyer return.

18. **No Warranties by Auction Company**. Auction Company is not responsible for, nor does it represent or warrant (a) the accuracy of odometer mileage, (b) the information contained in the odometer mileage statement, (c) warranties of title, merchantability or fitness for a particular purpose, (d) license plates, (e) Vehicle service or maintenance history, (f) information contained in Vehicle history reports, (g) Vehicle condition, (h) year the Vehicle was manufactured, (i) the accuracy of any market information, (j) mileage and other information printed on the windows, (k) the description of the Vehicle, (l) equipment and options for the Vehicle, (m) availability or validity of factory warranty, (n) fitness of Vehicle for export, and (o) any and all representations and warranties made by or on behalf of the Seller. Customer is responsible for reviewing all disclosures, announcements and information relative to a Vehicle's condition prior to making a purchase.

19. **Delivery of Vehicle and Title**. Buyer is liable for all expenditures, mileage, wear, damage, and all other losses to a Vehicle after it is purchased. Auction Company is not liable for any expense whatsoever incurred by Buyer in the event title is not delivered. Customer assumes all risk of loss related to or arising from titles or related documents lost, destroyed, or erroneously completed by the governmental agency processing a title, or any title lost in transit, whether sent by postal service or other courier. If the Vehicle is to be exported, Buyer is responsible for verifying that the Vehicle satisfies all export requirements of the originating country and all import requirements of the destination country. Auction Company is not the importer or exporter, and is not responsible for supplying export or import documentation. In the event a Vehicle does not meet export requirements, Buyer is responsible for all auction fees and any loss incurred on the resale of the Vehicle.

Effective Date: 17-MAR-12

ver 1.0

20. **Routed Export Transactions**. Any and all vehicle purchases that become export transactions shall be "routed export transactions" under section 30.3(e) of the Foreign Trade Regulations (15 C.F.R. § 30.3(e)), in which the Buyer is acting as the Foreign Principal Party in Interest ("**FPPI**"). As the FPPI, the Buyer will authorize a U.S. forwarding agent to facilitate the export of such vehicles from the United States and prepare and file any required Electronic Export Information ("**EEI**"). The Buyer or its forwarding agent shall provide Auction Company with a copy of this authorization if requested by Auction Company pursuant to section 30.3(e)(2) (15 C.F.R. § 30.3(e)(2)). Auction Company shall release the vehicles purchased by the FPPI through the Auction Company's auction facilities to the FPPI's U.S. Forwarding Agent in the United States.

FPPI agrees that neither Auction Company nor the providers who sell vehicles through the Auction Company's auction facilities will be the exporter under the Export Administration Regulations ("EAR") in such routed export transactions. The FPPI also acknowledges that vehicles purchased through the Auction Company's auction facilities could, potentially, be subject to export licensing requirements. The FPPI agrees to undertake, with respect to vehicles purchased through the Auction Company's auction facilities, the following responsibilities: (1) to determine any applicable export license requirements; (2) to obtain any required export license and/or any other required export authorization; (3) to carry out any customs formalities for the export of the vehicles; and (4) to authorize the U.S. Forwarding Agent, who will be the exporter for EAR purposes, to act on behalf of the FPPI in connection with the exportation of such vehicles and to prepare and file the EEI and any required export license applications.

21. **Claim Indemnity**. Customer shall indemnify, defend and hold harmless Auction Company, its parent company, subsidiaries, affiliates, directors, officers, agents, employees, representatives, and as necessary, other Customers, from and against any liability, loss, damage, cost, expense, claim, suit or demand, including, without limitation, attorneys' fees and other legal costs, resulting from, arising out of or connected, directly or indirectly, with any claim of breach of warranty or by a breach by Customer of any of these Terms and Conditions, including, but not limited to, all claims, allegations, and demands whatsoever challenging the validity of Seller's title or title documents.

22. **Assumption of Risk and Adherence to Safety**. Customer acknowledges there is a certain amount of risk inherent in auction activity including serious injury or death. Knowing, or having reason to know these facts, Customer appreciates said risk; and voluntarily accepts and assumes said risk. Customer acknowledges his/her responsibility to become familiar with Auction Company's posted and communicated safety measures and to strictly obey and adhere to such measures at all times while on Auction Company's premises. Customer shall be alert, aware and act in a safe manner at all times. Customer is a limited licensee on all Auction Company's premises, but said license does not extend to non-common areas of the premises, or where access is specifically limited to certain persons or personnel.

23. **Release of Liability**. By assuming the risk, Customer irrevocably and unconditionally waives and releases its rights (if any) to recover from Auction Company, its directors, officers, agents employees, representatives, subsidiaries, and affiliates any and all damages, losses, liabilities, cost or expenses and claims thereof, whether direct or indirect, known or unknown, or foreseen or unforeseen, through negligence or otherwise, which may arrive from, or be related to, bodily injury, property damage, or other occurrence on Auction Company's premises. Under no circumstances, including negligence, shall Auction Company be liable for any special, incidental, or consequential damage or lost profits that result from or are related to the sale, distribution or use of, or the inability to use, any Vehicle, even if Auction Company has been advised of the possibility of such damages. Customer, if a California resident, waives the benefits of California Civil Code §1542, which states: "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor." Furthermore, Customer agrees to indemnify, defend, and hold Auction Company harmless from any and all damages, losses, liabilities, costs or expenses, arising from claims made by Customer or Customer's Authorized Representatives of any injury or property damage occurring on Auction company's premises. When the basis of the claim is the alleged personal injury or death of Customer or Authorized Representative, and this release would be prohibited by law of the State of the Auction at which the alleged injury or death occurred, this provision will not apply to bar recovery or to require Customer's indemnification of Auction Company where it is established by a court of competent jurisdiction that Auction Company's negligence or intentionally tortuous act was the sole and proximate cause of the injury or death. It is otherwise the intent of the parties that this provision be enforced to the fullest extent of applicable law.

24. **Records/Compliance with Laws**. Customer will maintain complete and accurate records concerning all aspects of any Transaction. All business practices, acts and operations of Customer in connection with the Auction will be in compliance with all applicable federal, state and local laws and regulations.

25. **Representations Regarding Taxes**. Customer certifies that it holds the appropriate documentation issued by the sales tax authority of the state or province, or locality of its business, if necessary, which exempts Customer from the payment of sales tax. In the event that the property is used for any purpose other than for resale, Customer will pay directly to the proper taxing authorities such sale or use tax as may then accrue and be due and payable.

Page 9 of 16

Effective Date: 17-MAR-12 ver 1.0

26. **Transfer of Legal Ownership from Seller.** Notwithstanding any language in these Terms and Conditions and subject to Seller's obligations with respect to any arbitrated Vehicle, both parties have entered into an irrevocable contract of sale of a vehicle at the conclusion of the Auction sale, and Seller relinquishes legal ownership of the Vehicle at the earlier of (a) Auction Company's payment to Seller of the sale proceeds, or (b) upon Auction Company's Buyer taking possession of the Vehicle, regardless of whether title documents are provided to Buyer at that time.

27. **Outside of Auction Sales.** If Customer has consigned a Vehicle for sale at the Auction and it sells outside of Auction Company, it is Customer's sole responsibility to notify Auction promptly of the Vehicle's prior sale and to request that the Vehicle be pulled from any Auction sale or from any on-line listing. If Seller fails to timely notify Auction, resulting in the Vehicle's sale by Auction Company (a "double sale"), Seller shall be solely responsible for a double sale fee along with any and all resulting losses from the double sale, including but not limited to all fees owing to Auction Company arising from Auction Company's sale of the Vehicle (including buyer fees, off-site Vehicle sale proceeds if already paid and reasonable attorney fees), and all other incidental or consequential damages suffered by Auction Company, Buyer, or Seller's purchaser. In the event Customer has consigned a Vehicle for sale at the physical Auction and such Vehicle is sold on the Auction Premises but outside the Auction sale ("**Lot Sale**"), Customer is still responsible for the fees to Auction Company.

28. **Buyer Vehicle Condition Obligations.** Based upon the delivery method of the Vehicle, the Buyer's Vehicle condition obligations may vary. Such requirements are set forth on the chart below:

| Delivery Method | Inspection to be Conducted by Buyer or Buyer's Agent | Time of Inspection | Reporting Discrepancies |
|---|---|---|---|
| OL Arranged Transportation | • Visual inspection for exterior damage and missing equipment | • When Buyer's Agent takes delivery of Vehicle from **Grounding Location**. <br>• When Buyer takes delivery of Vehicle from carrier ("Delivery Time"). | • Buyer's agent must note all discrepancies on Bill of Lading, which must be signed by an authorized representative at the **Grounding Location**, and must be reported on or before the **Arbitration Timeframe** (see exhibit A). <br>• Buyer must note all discrepancies on Bill of Lading, which must be signed by carrier. Such discrepancies much be reported to Auction Company on or before the Transportation Damage Claim Deadline (as defined below). |
| Vehicle Driven or Towed by Buyer (Vehicle transported 50 miles or less), or Vehicle Not Driven | • Visual inspection for exterior damage and missing equipment <br>• Inspection of dash lights <br>• Inspect to confirm odometer reading | • Vehicle Pick Up Time | • Buyer's Agent must note all discrepancies on Bill of Lading which must be signed by Agent and Grounding Location Representative.* |
| Vehicle Drive or Towed by Buyer (Vehicle transported more than 50 miles) | • Visual inspection for exterior damage and missing equipment <br>• Inspection of mechanical defects <br>• Inspection of dash lights <br>• Inspect to confirm odometer reading | • Vehicle Pick Up Time | • Buyer's Agent must note all discrepancies on Bill of Lading, which must be signed by Transporter and Grounding Location Representative.* |

• If no Grounding Location Representative is present at Vehicle Pick Up Time, Buyer or Buyer's Authorized Person must immediately contact Auction Company to report discrepancies.

29. **Price Boosting.** Price boosting (aka "shilling"), or any other activity in which a Customer on its own or in concert with others attempts to artificially inflate or decrease the selling price of a Vehicle, is strictly prohibited. Neither Customer nor any of its

Page 10 of 16

Effective Date: 17-MAR-17                                                                                                     ver 1.0

Authorized Users, or agents may directly or indirectly bid on any Vehicles consigned by Customer to the Auction for the purposes of attempting to increase the sale price. "Self dealing" at the auction is also strictly prohibited. For purpose of this Agreement, "self-dealing" means activities by any person or entity selling or purchasing at auction in which both the seller and buyer are the same or substantially-related entities, and/or share Authorized Representatives or principals, where the Auction determines in its sole discretion that the intent and/or the result of such dealing is an artificial manipulation of the auction process to create an unfair advantage or disadvantage or to impose undue risk upon the Auction Company or others. Notwithstanding the prohibitions set forth in this section, Customer understands that such activity by others is beyond the control of Auction, and Auction assumes no duty to prevent or discover such activity, and is not responsible to Buyer or Seller for such activity by third parties. In the event Customer and/or its representatives are found to be engaged in such activities, Auction Company, in its sole discretion, may suspend or permanently revoke Customer's purchasing/selling privileges in the Auction regardless of whether Customer benefited from such activities.

30. <u>Market Guide</u>. Any and all materials contained in the ADESA Market Guide® or OL's market guide are provided to Customer as a courtesy for informational purposes only and are not intended to convey a warranty of any kind, express or implied, including warranty of merchantability or fitness for a particular purpose. Clerical errors by the Auction in such market guides shall not form the basis of any price adjustment or rescission of any sale unless the error is material, and subject to all other applicable arbitration guidelines. A clerical error, even if material, will not permit Buyer's arbitration or rescission on a vehicle sold "As Is", unless the error resulted in the exclusion or incorrect disclosure of information otherwise required to be made under applicable NAAA policy, and then only if brought to Auction's attention during the applicable arbitration period. Customer acknowledges that any statement in a market guide or condition report prepared by Auction or any third-party describing the mechanical, structural, or cosmetic condition of any vehicle as "fair", "rough", "average", or similar description shall be deemed a matter of subjective opinion, offered as a guideline only, and not as an objective statement of fact.

31. <u>Conducting Business</u>. Auction Company: (i) may rely and act upon any purported signature whether oral, written, or electronic and other communication in connection with the Auction purportedly sent by Customer and/or any Authorized User or person purporting to be an agent or employee of Customer, and (ii) has no obligation to scrutinize, inquire, or confirm any signature or communication with Customer, any Authorized User or other person purporting to be an agent or employee of Customer. Auction Company may conduct business with Customer through the (nonexclusive) use of electronic, computer, digital, or other paperless means, including the good faith reliance on electronic mail, facsimile transmittal, telephonic or other usual and regular forms of communication without confirmation or authentication of the communication by receipt of an original signature, document, paper or otherwise.

32. <u>Governing Law, Jurisdiction and Venue</u>. These Terms and Conditions, and any and all agreements or authorizations executed by Customer, Authorized Representative, or Auction Company in connection herewith shall be governed by and interpreted in accordance with the substantive laws of the State of Indiana without resort to principles of conflicts of laws. By execution of these Terms and Conditions, Customer submits to the personal exclusive jurisdiction of the courts of the State of Indiana and to venue in the Circuit and Superior Courts of Marion County, Indiana and the federal courts of the United States, sitting in Indiana for the adjudication of any matters arising under or in connection with these Terms and Conditions and Auction Rules. Any action initiated by Customer against Auction Company relating to these Terms and Conditions shall be filed and conducted in said Courts. Auction Company may bring any suit against Customer under or related to these Terms and Conditions in any Court of competent jurisdiction.

33. <u>Miscellaneous</u>. No waiver of the provisions hereof shall be effective unless in writing and signed by ADESA or OL. If any term or section of these Terms and Conditions is held invalid or unenforceable, under any statute or court decision, or any governmental rule or regulation, the remainder of these Terms and Conditions shall remain effective. These Terms and Conditions shall bind the respective heirs, executors, administrators, successors and assigns of Customer and inure to the benefit of Auction Company and its successors, assigns and subrogees.

II.  IN-LANE AND LiveBlock® AUCTION TRANSACTIONS

1. <u>Consummation and Finality of Sale</u>. All sales will be consummated and final when the auctioneer calls out the Buyer's bid badge number or acknowledges the online bidder's final bid and the block clerk records that sale and all of the specific terms thereof. Notwithstanding the above, "if" sales shall be final and binding only when the highest bid is accepted by the Seller and recorded or a subsequent offer or counteroffer is accepted and recorded. Recording of the purchase and sale and the terms thereof as orally announced shall bind Buyer and Seller. The Auction may, but is not necessarily required to, rely upon audio and/or video recordings of the bidding process in the case of a dispute.

2. <u>Video/Audio</u>. Most in-lane sales are video and audio recorded. By attending an in-lane sale, you are consenting to the use of video and audio recordings for the purposes of arbitrations, enforcement of these Terms and Conditions, and any other purpose

Page 11 of 16

Effective Date: 17-MAR-12

ver 1.0

that ADESA, at its sole discretion, feels is appropriate. Customers physically present at an in-lane sale may be identifiable in the audio or video recording. By participating in an in-lane sale, Customer consents to ADESA's use, retention and disclosure of any audio, photograph, or video recording containing Customer's image or voice.

3. <u>LiveBlock® Bids</u>. If Dealer clicks BID or BUY on LiveBlock®, Dealer is obligated to complete the transaction. Similarly, if a Dealer places an AutoBid on a Vehicle, Dealer is obligated to complete the transaction. An AutoBid cannot be changed within 2 hours of the start time of the auction. In the event that details change regarding the Vehicle, the AutoBid may automatically be removed. If two Dealers submit equal AutoBids on the same Vehicle, the first bid received by the Auction Company's server will have priority. If an AutoBid is tied with another bid, the auctioneer will determine the final bid on the Vehicle

4. <u>Risk of Loss</u>. Auction Company assumes no liability for loss or damage incurred while Vehicles are in the possession of Auction. ADESA is not liable nor responsible for acts of God, fire, storm, flood, war, civil disturbance, riot, wind, lightning, earthquake, terrorism, theft, collision, vandalism, or any other damage sustained by any Vehicle while on or off the Auction premises. Customer shall maintain insurance on Vehicles in ADESA's possession. Customer specifically agrees that use by Auction Company's representative or other designee operating Customer's Vehicles in furtherance of Auction Company's services provided hereunder shall for all purposes be deemed "permissive".

### III. OTHER ONLINE AUCTION TRANSACTIONS

1. <u>Completion of Sale Transaction</u>. Customer will complete on-line sales of Vehicles, in accordance with these Terms and Conditions, including the following:

   a. <u>Buy Now</u>. At Seller's option, Seller may assign a "fixed price" to any consigned Vehicle by which a potential Buyer will have the option to "Buy Now" at the stated price, without further competitive bidding. Seller's designation of a fixed price shall be deemed a binding offer to sell at that price, which a Buyer may accept by clicking on the appropriate on-screen button. Buyer's clicking on the button shall be deemed a binding acceptance of the sale at the designated fixed price. The fixed price designation may be withdrawn or modified by Seller at any time before a Buyer has indicated agreement to purchase the Vehicle at the fixed price. Once Seller has withdrawn or modified a fixed price, it is not required to accept any subsequent offer at the previously fixed price.

   b. <u>Place Bid Format</u>. At Seller's option, it may designate the minimum price Seller will accept for the Vehicle (the "Reserve"), and/or may designate a minimum opening bid amount (the "Minimum Bid"). Reserve may be disclosed or undisclosed, at Seller's option. The winning bid shall be the highest bid at the time that the auction cycle for that Vehicle closes which meets or exceeds any Reserve. Seller may decrease or remove Reserve or Minimum Bids at any time before an auction cycle begins in the manner that is established in these Terms and Conditions. A Reserve or Minimum Bid cannot be increased once bidding on the Vehicle has started. Errors in Reserve or Minimum Bid may be corrected by withdrawing the Vehicle from sale and relisting. If the auction cycle closes and the Vehicle fails to sell because no bids were received (a "No Sale"), Seller may remove or alter Reserves or Minimum Bids for subsequent Sales.

   c. <u>If Bid Process</u>. From the opening of a given Sale until up to three hours after the close of such Sale (the "Resolve Time"), a Seller may either:

      i. lower the hidden Reserve for the Vehicle. If the hidden Reserve price is lowered to a price that is equal to or less than the amount set by any Dealer as its Maximum Bid Amount (defined below) for that Vehicle, then the Seller will sell and such bidding Dealer will buy the Vehicle at such lowered Reserve price and such bidding dealer is the highest bidder at the end of the auction, if the auction has closed. If the auction has not closed, the competitive bidding will continue and the Vehicle will be sold to the highest bidding dealer at the end of the auction.

      ii. submit, or direct Auction Company in writing (including by e-mail) to communicate on Seller's behalf a counteroffer (the "Seller's Counteroffer Price") to the bidder with the highest bid showing for the Vehicle. Buyer may accept the Seller's Counteroffer Price (through the Auction Company's auction system or e-mail). Buyer and Seller agree that they will be bound by all acceptances communicated to the Auction during the Resolve Time. All unaccepted offers are deemed rescinded at the close of the Resolve Time. Buyer and Seller assume all risk of loss for any transaction not completed because of any failure in communication of offers and acceptance within the Resolve Time, regardless of cause.

   d. <u>Proxy Bidding</u>. Auction Company's proxy bidding process allows a bidding Dealer to enter a maximum price that such Dealer is willing to pay for a particular Vehicle under the box labeled "Your Maximum Bid Amount" (the "Maximum Bid Amount"). In the event such bid is greater than the current bid, the Maximum Bid Amount is not visible to the Seller or other bidding Dealers. The Auction Company's auction system will automatically increase such bidding Dealer's bid up to such Maximum Bid Amount as follows:

Page 12 of 16

Effective Date: 17-MAR-17

ver 1.0

i. The Auction Company's system will only increase the bidding Dealer's bid by the particular dollar increment that applies to that particular Vehicle or group of Vehicles. However, in the event there are no other competitive bids above the Reserve amount and the Maximum Bid Amount is at the Reserve Amount or higher, the Vehicle will be sold at the Reserve Amount to the Customer that placed said Maximum Bid Amount at the end of the auction. Auction Company will never increase the bidding Dealer's bid above such Dealer's Maximum Bid Amount.

ii. If more than one bidding Dealer designates the same Maximum Bid Amount for a Vehicle, the bids will be given priority in the order of the time that the Dealers designated their Maximum Bid Amount, with the earliest designated bid deemed the highest.

iii. A Seller may pre-configure the auction cycle of a Vehicle prior to release of the Vehicle to have the auction cycle automatically extend beyond the original close time in order to prevent bidding Dealers from "sniping" (i.e., placing a bid immediately before the auction close in order to prevent a competing bid from being placed).

iv. In the event of an error in the Reserve, Vehicle must be withdrawn from the sale and relisted in a new sale.

e. **Best Offer Format**. At Seller's option, a vehicle may be listed as "Best Offer", meaning that Seller will accept the highest offer made. Seller will sell and Buyer will purchase such Vehicle, if Buyer clicks on the appropriate button evidencing Buyer's agreement to purchase the vehicle at the price submitted by Buyer and if the price submitted is accepted by the Seller. Alternatively, the Seller may choose to decline Buyer's Best Offer or make a counteroffer. If the Seller makes a counteroffer, Seller will sell and Buyer will purchase such Vehicle, if Buyer agrees to the Seller's counteroffer price.

2. **Vehicle Pick Up Deadline**. As a Buyer, you acknowledge and agree that you are responsible to arrange for transport of Vehicles that you buy through the Auction. Unless alternative arrangements are approved by the Auction in advance, the Buyer (or its transportation company) will pick up the Vehicle on or before seven (7) calendar days after the Transaction Date (the "Vehicle Pick Up Deadline"); provided, however that if the seventh calendar day falls on a day that is not an Auction business day, then the Vehicle Pick Up Deadline is the next Auction business day, and provided further that in the case of a Vehicle for which a Pre-Delivery Inspection ("PDI") was ordered), the Vehicle Pick Up Deadline is the date that is two (2) business days after the PDI process end date ("PDI Process End Date"). If Buyer (or its transportation company) fails to comply with these provisions, Buyer agrees that Auction Company may do any or all of the following: 1) suspend Buyer's purchasing privileges in the Auction, 2) cancel the Transaction, and/or 3) arrange for delivery of the Vehicle to Buyer at Buyer's expense or 5) cancel Buyer's ability to initiate arbitration with regard to the Vehicle. In addition, Buyer agrees that Auction Company or the Vehicle Storage Location may charge Buyer a daily storage fee for the Vehicle after the 7th calendar day after the transaction date, and not to exceed $20 per day.

3. **Risk of Loss**. Except as otherwise expressly provided in these Terms and Conditions, the risk of loss for a Vehicle shifts from the Seller to the Buyer upon the closing of the sale.

4. **Off-Site Vehicle Sales**:

a. **Approval**. Pre-approved Customers may offer off-site Vehicles for sale on the appropriate selling platform. The off-site Vehicle must at all times be under the lawful possession, custody and control of the Seller. When an off-site Vehicle is sold, Seller or Seller's agent is required to retain the off-site Vehicle and all ownership documents in its custody and control until Auction Company has confirmed it has received payment from the Buyer and the funds have cleared the Buyer's bank.

b. **Vehicle Release**. Before releasing an off-site Vehicle to Buyer, Buyer must present an electronic or print-out gate pass issued by Auction Company and Seller must verify the authenticity of Buyer's electronic or print-out gate pass by comparing it to the electronic gate pass provided directly to Seller by Auction Company. The Seller will be liable to Auction Company for all losses due to the unauthorized or premature release of an off-site Vehicle.

5. **Seller's Responsibility for Accuracy of Disclosures and Release of Vehicle Listing to Auction**. A Seller may use a third party to prepare the vehicle detail page and list the Vehicle on Seller's behalf. The Seller remains responsible for the completeness and accuracy of the required disclosures regarding the Vehicle on the vehicle detail page. The Seller may not rely solely on information contained in vehicle history reports to satisfy its disclosure obligation. Conversely, a Buyer may not initiate an arbitration procedure and a Seller may not defend against an arbitration procedure by referencing information that is disclosed through an internet link to a non-Auction Company webpage except for links to Monroney Sticker information provided by OEMs. By either "releasing" a Vehicle for sale in the auction (or having Auction Company release such Vehicle on Seller's behalf) or listing a Vehicle for sale in the Auction through an automatic data feed, Seller confirms that: (i) Seller has reviewed all of the listing disclosures with regard to such Vehicle, (ii) all disclosures with regard to the Vehicle are complete and accurate, and (iii) Auction Company is released and indemnified from and against any and all claims in connection with any errors with regard to such disclosures.

Page 13 of 16

Effective Date: 17-MAR-17

ver 1.0

6. **Risk of Loss.** Risk of loss for a Vehicle transfers to the Buyer at the earlier time (i) that Buyer or Buyer's designated transportation company or other agent ("Buyer's Transporter") picks up the Vehicle from the grounding location (the "Vehicle Pick Up Time"), or (ii.) the Vehicle Pick Up Deadline.

### IV. OTHER AUCTION COMPANY SERVICES.

1. **OL-Arranged Transportation.** A Buyer may request that OL arrange transportation of a particular Vehicle on Buyer's behalf. OL provides this service for a fee and as a convenience for certain Buyers; however, OL does not warrant or otherwise endorse the services provided by the third party transportation company. By selecting "OL-Arranged Transportation" or "CarsArrive transport" for a Vehicle on the OPENLANE.com websites or through a telephone instruction to an OPENLANE employee, Buyer agrees to the terms in this Section in addition to any terms set forth on the "CarsArrive" section of OPENLANE.com:

    a. **Authorization to Arrange Transportation.** By selecting "OL-Arranged Transportation" or "CarsArrive Transport" for a specific Vehicle, Buyer authorizes and directs OL to arrange the transportation of such Vehicle on Buyer's behalf with a third party transportation company.

    b. **Payment of Fees Prior to Arrangement of Transportation.** Buyer will pay OL the fee as shown on the applicable webpage under either "OPENLANE-Arranged Transportation" or OL's CarsArrive System for the transportation of the Vehicle on or before the Payment Due Date. Transportation will not be arranged until Buyer has paid the Total Payment Amount, including all Fees, including transportation Fees to OL.

    c. **Standard Transport – Delivery Times are Estimates Only.** The "Standard Transport" section of the applicable webpage on OPENLANE.com or CarsArrive System shows the estimated days until delivery. This estimate is based on a mileage algorithm and the start date is the date payment is received by OL. Note that this delivery date is an estimate only, and OL does not guarantee that the Vehicle will be delivered within that timeframe and is not liable for any costs associated with the late delivery of any Vehicle. In the event of a delay in delivery, OL will not assume or be responsible for any claims, including but not limited to: a) decreases in the value of a Vehicle arising between the time of purchase and delivery for depreciation or other reasons, b) storage costs, c) lost sales, d) financing or floor planning costs, and e) any other fees or costs incurred by the Buyer and/or passed-on by the Seller or transportation company to the Buyer. (In certain geographic areas, OL offers an "Expedited Transport" service option, under which the Buyer may be refunded the transportation fee if the Vehicle isn't delivered within a specified period of time.)

    d. **Risk of Loss.** Risk of loss for a Vehicle remains with the Seller until the transportation company, arranged on Buyer's behalf by OL as a convenience to Buyer, picks up the Vehicle from the grounding location (the "Vehicle Pick Up Time"), at which point the risk of loss for the Vehicle is transferred to the Buyer. If the Vehicle is damaged in transit, OL will, as a convenience to Buyer, use commercially reasonable efforts to assist Buyer in making a claim against transportation company or its insurer, but OL is not liable for any damage that occurs to the Vehicle in transit or any other liability or claim that may arise and relates in any way to the transport of the Vehicle. OL is not responsible for prosecuting a claim against the transportation company or its insurer on Buyer's behalf.

    e. **Transportation Damage Claim Initiation.** A Buyer may initiate a claim for transportation damage on a Vehicle transported through OL-Arranged Transportation (a "Transportation Damage Claim") by notifying OL via the online OPENLANE Customer Service Portal on or before the Transportation Damage Claim Deadline and OL will use its commercially reasonable efforts to assist in facilitating such claim. The "Transportation Damage Claim Deadline" is the day that is two calendar days after the Delivery Time, provided however that if the second calendar day falls on a day that is not a business day, then the Transportation Damage Claim Deadline is the next business day (For example, if the Vehicle is delivered to Buyer on Thursday, then the Buyer may initiate a Transportation Damage Claim on the following Monday.) and provided further that if Buyer does not pay the transportation fee to OL and arrange for OL-Arranged Transport on or before the Payment Due Date, OL may in it is discretion cancel Buyer's right to initiate a Transportation Damage Claim with regard to such Vehicle.

    f. **Indemnification.** Buyer agrees to indemnify and hold harmless the Auction Company, its subsidiaries and other affiliates, and each of their officers, employees and agents from any and all claims, expenses, losses and costs associated with any personal injury, property damage or delay, that may occur and that relates in any way to the transportation of the Vehicle from the Vehicle Pick Up Time to the Delivery Time.

2. **Post-Sale Inspection Services.** Customer may request that an inspection be performed on a Vehicle.

    a. **ADESA PSI.** ADESA conducts a Post Sale Inspection ("PSI") on a Vehicle purchased from the physical auction site for a fee and as a convenience for Customers. ADESA will use commercially reasonable efforts to perform the PSI which will take place at the auction facility. See ADESA's posted PSI policy and forms

Page 14 of 16

Effective Date: 17-MAR-17

ver 1.0

b. **OL's PDI.** OL arranges for a PDI on a Vehicle purchased from a non-LiveBlock online sale. Auction Company provides this service for a fee and as a convenience for certain Customers; however, Auction Company does not warrant or otherwise endorse the services provided by the third party. OL will use commercially reasonable efforts to arrange for a third party inspection of such Vehicle as soon as practicable, which will take place at the grounding location. Seller will make the Vehicle available during normal business hours (or, if mutually agreed between inspection company and grounding location, after normal business hours) for inspection. Seller agrees that Vehicle Pick-Up Deadline will be extended until the date that is two business days after the PDI Process End Date. OL will as a convenience to Buyer review the inspection report prior to the Vehicle being transported to Buyer and may on Buyer's behalf submit a Dispute Eligible Claim to Seller based on a discrepancy between Vehicle disclosures on the vehicle detail page and inspection report, as determined in OL's reasonable judgment and in accordance with these Terms and Conditions. In addition, notwithstanding OL's review of the PDI report, Buyer may initiate arbitration in accordance with the applicable arbitration deadline. In no event will OL be liable to either Buyer or Seller for any failure by OL to correctly interpret the inspection report as against the Vehicle disclosures in the vehicle detail page. The date on which OL completes its review of the PDI inspection report and determines a Final Dispute Award (if any) based on the PDI report is the "PDI Process End Date."

c. **Certified Auction Partner provided PSI.** Auction Company arranges for one of its certified auction partners ("CAP") to conduct a PSI on a Vehicle on behalf of Customer for a fee; however, Auction Company does not warrant or otherwise endorse the services provided by the third party.

d. **Seller Ordered Inspection.** A third party inspection company conducts a PSI on a Vehicle. The Seller (and not Auction Company) is liable for any failure of the third party inspection company to adequately inspect the Vehicle or adequately disclose in the inspection report any discrepancy or defect of such Vehicle. Auction Company does not warrant or otherwise endorse the services provided by the third party.

3. **Auction Company Introduced Listing Agent.** A Seller may retain a third party listing agent to inspect and/or prepare listings of Vehicles, and list and sell such Vehicles on Seller's behalf in the Auction. Auction Company may arrange such an introduction as a convenience only for Seller and may pay such listing agent a fee in certain circumstances; however, Auction Company does not warrant the services provided by the third party listing agent to Seller. As between the Seller and Auction Company, the Seller (and not Auction Company) is liable for all actions and omissions of its third party listing agent, including any failure of the third party listing agent to adequately inspect Vehicles and/or prepare vehicle detail pages.

Page 15 of 16

Effective Date: 17-MAR-12

## ACCEPTANCE

By accessing or using the Auction, Customer agrees to abide by all the terms and conditions set forth in these Terms and Conditions, including those available by hyperlink to other Auction Company's web pages. These provisions include, among other things, payment deadlines, deadlines for delivery of title, listing requirements and purchase dispute guidelines. Please read these Terms and Conditions carefully before signing or clicking "I Accept", as applicable. By signing or clicking on "I Accept," Customer agrees to these Terms of Conditions.

IN WITNESS WHEREOF, Customer or a duly authorized representative(s) of Customer has (have) executed this Terms and Conditions this __18th__ day of __February__, 20__19__.

(If a Sole Proprietorship)

__5352091__
(Auction ACCESS® ID Number)

__C__
(Printed Name of Dealer)

____
(Signature of Dealer)

(If a corporation, partnership, limited liability company or some entity other than a sole proprietorship)

__CT102__
(Printed Name of Corporation, etc.)

____
(Signature of Officer)

__Jeremy Book, owner__
(Printed Name and Title of Officer, etc.)

__Josue Galan__
(Printed Name of Witness)

____
(Signature of Witness)

*Scanned Original*

Page 16 of 16