**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| CT102 LLC d/b/a Metro Motors and H. Jeffrey Baker<br>Plaintiffs,<br><br>v.<br><br>Automotive Finance Corporation d/b/a AFC; NextGear Capital, Inc.; Southern Auto Sales, Inc., AUTOTEC, LLC d/b/a AUTOACCESS, LLC; Manheim, Inc. and ADESA, Inc.,<br>Defendants. | Civil Action No.:1:20-cv-356-MSM-PAS |

**MEMORANDUM OF LAW IN SUPPORT OF OPPOSITION OF PLAINTIFFS CT102, LLC AND H. JEFFREY BAKER TO DEFENDANTS AUTOMOTIVE FINANCE CORPORATION D/B/A AFC AND ADESA, INC.'S MOTION TO DISMISS**

Now come Plaintiffs, CT102, LLC d/b/a Metro Motors ("Metro" or "Plaintiff") a Connecticut limited liability company whose sole member is a citizen of Rhode Island, and H. Jeffrey Baker ("Baker" or "Plaintiff") a Rhode Islander who is a party to a loan guaranty that he modified at execution to confer jurisdiction and venue on Rhode Island. Collectively, Metro and Baker are referred to herein as "Plaintiffs".

Introduction

Metro was a used car dealership that obtained financing for some of its vehicles from Defendant Automotive Finance Corporation ("AFC") which is a dominant nation-wide lender based in Indiana. Baker personally guaranteed Metro's loan from AFC. Metro bought sold used vehicles through Defendant ADESA, Inc. ("ADESA") which is an affiliate of AFC and a prominent nation-wide automobile auction company. In 2018 AFC, *inter alia*, wrongfully

repossessed some of Metro's vehicles, wrongfully diminished the value of the collateral, held the vehicles for a commercially unreasonable period, apparently lost vehicles, and wrongfully prevented Metro from utilizing ADESA and other vehicle auction venues. These actions released Baker's guaranty.

SUMMARY OF ARGUMENT

1. Jurisdiction

Metro has properly invoked the jurisdiction of the District of Rhode Island over the Defendants in this diversity action. Defendants have sufficient minimum contacts with this jurisdiction for general jurisdiction. As a preeminent national used car floor plan lender, AFC is registered to do business generally in Rhode Island. It does not contest jurisdiction in Rhode Island. It is not a party to ADESA's 12(b)(2) Motion.

AFC's affiliate, ADESA, however, contests jurisdiction here despite multiple sufficient contacts with Rhode Island. In addition to its affiliation with AFC which does business in Rhode Island, ADESA markets to dealers in Rhode Island and has been engaged by Rhode Island dealers who buy and sell vehicles at ADESA's auctions. ADESA delivers vehicles to Rhode Island dealers and it auctions vehicles repossessed from Rhode Island dealers. General jurisdiction applies to ADESA.

Regarding forum selection, a disputed material issue exists concerning amendment by Baker of the guaranty which substituted Rhode Island jurisdiction and venue for that of Indiana. These competing versions of the guaranty were successfully raised in Indiana state court litigation to defeat summary judgment. AFC's version fails to include and incorporate Baker's handwritten and initialed changes within his executed document. Only the signature page was included. Whether AFC and Baker by

agreement submitted this dispute to this Court's jurisdiction is a material issue of disputed fact that precludes dismissal.

2. Conversion

AFC and ADESA have loaded their Rule 12(b)(6) Motion to Dismiss with external documents which warrant conversion to a Rule 56 Motion for Summary Judgment and leave to conduct Rule 56(d)(2) discovery. The 12(b)(6) movants rely erroneously on the wrong guaranty and on an ADESA contract which the Plaintiffs contend is inapplicable. The ADESA terms do not apply to Baker individually as guarantor.

3. Indiana law

Count I of the Amended Complaint relates to fraud against AFC. Its duly authorized representatives lied to Metro about not repossessing, advised Metro to reduce its payments which knowingly worsened the borrower's loan standing, and covered up damage to repossessed autos. These particulars are sufficient to allege a plausible case of fraud.

Count II of the Amended Complaint relates to Intentional Tortious Interference with Contractual Relations against both AFC and ADESA, as well as all other remaining defendants. AFC and ADESA's argument that a party cannot interfere with its own contract misses the point of this Count. The actions of these Defendants caused Metro to become delinquent with its vendors, trade creditors and other auction venues. AFC wrongfully informed another industry leader (Defendant NextGear) about Metro's credit, prompting NextGear to repossess the remaining vehicles and preventing Metro from utilizing NextGear's affiliate Manheim to auction its cars.

Count III of the Amended Complaint relates to Conspiracy to Tortiously Interfere with Contracts. In accordance with Indiana law, the conspiracy claim is interrelated with a

tort. It differs from Count II in that it entails the defamatory communications made by AFC to its affiliate ADESA and to its competitors, Co-Defendants NextGear and Manheim, and others in the industry initially named in this action. This evidences collusion by these industry leaders to drive Metro out of business.

Count IV of the Amended Complaint relates to Negligence against AFC for its botched repossession. No contract insulates AFC from this gross mishandling of collateral to the borrower's detriment.

Count V of the Amended Complaint relates to breach of the Covenant of Good Faith and Fair Dealing against AFC, ADESA and others. AFC and ADESA misapprehend the gravamen of this Count which sounds in contract. For AFC, the contracts upon which good faith is imposed are the express contracts Baker signed – the Note and Guaranty. For ADESA, the contract is implied. Contractual bad faith in breach of an agreement cannot be rewarded with immunity from tort. Bad faith conducted with misperceived impunity is still bad faith.

Count VI of the Amended Complaint relates to Unjust Enrichment by AFC for retaining the proceeds from the repossessed vehicles without properly crediting Metro, and for retaining unsold vehicles taken from Metro. These actions deprived Metro of substantial equity in the automobiles which AFC wrongfully seized.

Count VII of the Amended Complaint relates to Lender Liability of AFC in its bad-faith work-out negotiations, wrongful and botched repossessions, prevention of Metro's mitigation through auctions, failure to include Baker's substitute jurisdiction and venue, and wrongful exposure of the guarantor.

Regarding the allegedly compulsory counterclaims, that requires this Court to substitute its judgment for the Indiana State Court for non-identical actions. That is well beyond the scope of 12(b)(6) consideration and beyond judicial notice of the existence of non-final foreign pleadings.

Regarding the guaranty, it has been released by virtue, *inter alia*, of the botched repossessions which changed the underlying obligation of the borrower Metro and impaired the collateral.

## STANDARD OF REVIEW

### Motion to Dismiss

To survive a motion to dismiss for failure to state a claim, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). The Court must accept a plaintiff's allegations as true and construe them in the light most favorable to him. Gargano v. Liberty Intl Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009). A Rule 12(b)(6) motion will be granted only if, when viewed in this manner, the pleading shows no set of facts which could entitle plaintiff to relief. Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988) (citing Conley v. Gibson, 355 U.S. 41, 45-48, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)).

Federal Rule of Civil Procedure 12(b)(6) tests the plausibility of the claims in a plaintiff's complaint. "To avoid dismissal, a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Garcia-Catalán v. United States, 734 F.3d 100, 102 (1st Cir. 2013) (quoting Fed. R. Civ. P. 8(a)(2)).

"The plausibility inquiry necessitates a two-step pavane. Garcia-Catalán, 734 F.3d at 103. "First, the court must distinguish 'the complaint's factual allegations (which must be accepted as true from its conclusory legal allegations (which need not be credited).'" *Id.* (quoting Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011). "In determining whether a complaint crosses the plausibility threshold, 'the reviewing court [must] draw on its judicial experience and common sense.'" *Id.* (quoting Iqbal, 556 U.S. at 679).

The Rule 12(b)(6) motion must be denied.

The Defendants' conduct in the current dispute is egregious and conspiratorial, making the asserted causes of action plausible. AFC baited Metro through misrepresentations into a false belief that it could conduct an orderly voluntary wind-down. First Amended Complaint at 35-42, 48-53 . These misrepresentations by AFC were that Metro could lower its loan payments and that its vehicles would not be repossessed. *Id.* at 48. AFC's affiliate, prominent nation-wide auto auction firm ADESA, refused to allow Metro to efficiently liquidate its inventory presumably because ADESA conspired with AFC to blacklist Metro. *Id.* at 38, 59, 69-73.

In furtherance of Metro's injuries, AFC badly mishandled its repossession of Metro's inventory. Amended Complaint at 40, 44-46, 59, 83. See also attached Baker Affidavit ¶¶ 8, 9. Cars with four-wheel drive were damaged when towed off the lot, vehicle reports were falsified to cover up the vehicle damage, vehicles were sold privately and not for fair market value at auctions, and vehicles were left unsold for unreasonable periods. All these factors lowered the value of the collateral to Metro's detriment. *Id.* at 41. See also Baker Affidavit ¶ 9.

To make matters worse, AFC poisoned Metro in the industry by informing its primary competitor, NextGear (and thus its affiliate Manheim, the other major auction company), that it

was repossessing the Metro vehicles to which AFC held title. Amended Complaint at 36, 37, 42. Expectedly, NextGear followed suit by barring Metro from its Manheim auctions and repossessing Metro's remaining automobiles. *Id.* at 43.

Because both AFC and Defendant NextGear coincidentally and suspiciously, are located in Carmel, Indiana, Baker expressly modified the forum selection clause to Rhode Island in his guaranty but the lenders disregarded this material change in the document. Amended Complaint at 22. This defense was raised in the Indiana litigation. Baker Affidavit at ¶ 3.

It follows that the allegations by the Plaintiffs of actionable conduct by AFC and ADESA, taken as true, satisfy plausibility as further discussed below in response to AFC's 12(b)(6) motion as to each Count.

Conversion and the Limits of Judicial Notice

At the motion-to-dismiss stage, the primary focus is on the complaint. See, e.g., Maloy v. Ballori-Lage, 744 F.3d 250, 251 (1st Cir. 2014). Ordinarily, courts may not consider any documents "outside of the complaint, or not expressly incorporated therein," without converting the motion into one for summary judgment. Alt. Energy, Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001) (citing Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).

When ruling on a Rule 12(b)(6) motion to dismiss, a district court is generally limited to considering "facts and documents that are part of or incorporated into the complaint." Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008). These limitations, however, are not absolute. A district court may also consider "documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice." In re Colonial Mortgage Bankers Corp., 324 F.3d 12, 20 (1st Cir. 2003). If the district

court relies on other material outside the complaint, not subject to the qualifications listed above, it must convert a motion to dismiss into a motion for summary judgment. Trans-Spec Truck Serv., 524 F.3d at 321. Before such a conversion occurs, however, parties must have a "reasonable opportunity to present all material made pertinent to such a motion." Clorox Co. P.R. v. Proctor & Gamble Commercial Co., 228 F.3d 24, 31 (1st Cir. 2000) (quoting Fed. R. Civ. P. 12(b)).

It is "well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand." Kowalski v. Gagne, 914 F.2d 299, 305 (1st Cir. 1990); see Giragosian, 547 F.3d at 66. Generally, court filings are recognized not for the truth of the matters asserted within them, but instead only to establish the fact that related litigation has been initiated or to establish that the fact that documents have been filed in that related case. See, e.g., Jergens v. Ohio Dep't of Rehab. & Corr. Adult Parole Auth., 492 F. App'x 56, 568-69 (6th Cir. 2012); Staehr v. Hartford Fin. Servs. Grp., Inc., 547 F.3d 406, 425 (2nd Cir. 2008); see Brody v. Hankin, 145 F. App'x 768, 771-73 (3d Cir. 2005) (concluding that the lower court impermissibly considered the facts found within a related arbitration proceeding instead of solely considering the existence of an arbitration award). That is, the Court may take judicial notice of the related state court documents "to establish the existence of the [related] litigation, what claims were asserted, and what issues were argued and decided." Barnstable Cty. V. 3M Co., 2017 U.S. Dist. LEXIS 207414.

It is established that federal courts may take judicial notice of the existence of relevant proceedings in other courts. See, e.g., E.I. DuPont de Nemours & Co. v. Cullen, 791 F.2d 5, 7 (1st Cir. 1986) (taking judicial notice of a complaint filed in a state action); However, it is improper for the Court to go beyond the existence of a pleading to the unresolved merits.

Defendants AFC and ADESA have submitted multiple exhibits to their Motion. Although the Note with AFC may be the subject of proper review by the Court in the context of this 12(b)(6) Motion, the other exhibits are outside proper consideration at this juncture. The Indiana litigation is not final or complete and its merits have not been be determined. Judicial notice is limited to the existence of pleadings and not the truth of the matters alleged or the merits which AFC and ADESA have proffered.

The ADESA Terms and Conditions should not be considered against Baker. Baker is not personally a party to the purported ADESA terms. Baker's guaranty goes to AFC (and NextGear) only. The forum designated by Baker in those guarantees is Rhode Island. See Baker Affidavit at 3.

Because the Defendants have introduced contested outside material to their Rule 12 Motion, conversion to a Rule 56 Motion for Summary Judgment is appropriate. Such conversion entails the opportunity for discovery under Rule 56(d)(2) and a hearing before a jurisdictional determination is made.

Jurisdiction

Courts "must accept the plaintiff's (properly documented) evidentiary proffers as true for the purpose of determining the adequacy of the prima facie jurisdictional showing." Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995). Defendants' cite Chen v. United States Sports Acad., Inc., 956 F.3d 45 (1st Cir. 2020) which contains language that supports Plaintiffs' position regarding jurisdiction. Under the prima facie approach – typically used at the early stages of a case – "the district court acts not as a factfinder, but as a data collector," Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir.

1995), asking only whether the plaintiff has proffered facts that, if credited, would support all findings "essential to personal jurisdiction," *id.* (quoting Boit v. Gar-Tec Products, Inc., 967 F.2d 671 (1st Cir. 1992)).

A complaint need not, however, "plead facts sufficient to establish a prima facie case," Carrero-Ojeda v. Autoridad De Energía Eléctrica, 755 F.3d 711 (1st Cir. 2014) or "allege every fact necessary to win at trial," Rodriquez-Vives v. R.R. Firefighters Corps of P.R., 743 F.3d 278, 283 (1st Cir. 2014), to make out a plausible claim.  See also Swierkiewicz v. Sorema, 534 U.S. 506, 515, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002).  "The prima facie standard is an evidentiary standard, not a pleading standard, and there is no need to set forth a detailed evidentiary proffer in a complaint." Carrero-Ojeda at 718.

The district court, faced with a motion to dismiss for lack of personal jurisdiction, Fed. R. Civ. P. 12(b)(2), may choose from among several methods for determining whether the plaintiff has met this burden.  Foster-Miller, 46 F.3d at 145; Boit, 967 F.2d at 674-75.  "The most conventional of these methods, "known as the "prima facie" method, Forster-Miller, 46 F.3d at 145, "permits the district court 'to consider only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction'" *id.* (quoting Boit, 967 F.2d at 675). If the court determines that it would be unfair to the defendant to proceed with the litigation without first requiring the plaintiff to make more than a prima facie showing of jurisdiction, the preponderance-of-the-evidence approach comes into play.  See id. at 145-46.  Under that approach, the district court holds "a full-blown evidentiary hearing at which the court will adjudicate the jurisdictional issue definitively before the case reaches trial" using a preponderance-of-the-evidence standard.  *Id.* at 146.

Courts take these facts "as true (whether or not disputed) and construe them in the light most congenial to the plaintiff's jurisdictional claim." Mass. Sch. Of Law at Andover, Inc. v. Am. Bar Ass'n. 142 F.3d 26, 34 (1st Cir. 1998); see also Sawtelle v. Farrell, 70 F.3d 1381, 1385-86 (1st Cir. 1995). "We then add to the mix facts put forward by the defendants, to the extent that they are uncontradicted." Mass. Sch. Of Law, 142 F.3d at 34.

In a contract case, federal courts evaluate the parties' "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" to determine whether the defendants purposefully established minimum contacts. Burger King, 471 U.S. 462 at 479 (1985).

ADESA's 12(b)(2) motion for alleged lack of jurisdiction must be rejected because this Court has general jurisdiction over this Defendant. (AFC is not contesting jurisdiction). ADESA's minimum contacts with Rhode Island have included marketing to dealers in this state. Baker Affidavit ¶ 10. In addition to its website, ADESA representatives contact dealers in Rhode Island via telephone, email and in person to have dealers both buy and sell vehicles at the ADESA auction. *Id*. ADESA's minimum contacts with Rhode Island included Rhode Island dealerships such as Tasca Auto Group of Cranston, Flood Auto Group of East Greenwich, Grieco Auto Group of Johnston and Bald Hill Auto Group of Warwick. *Id.* ¶ 11. ADESA's minimum contacts with Rhode Island also included Rhode Island dealerships such as Tasca Auto Group, Flood Auto Group, Grieco Auto Group and Bald Hill Auto Group buying and selling vehicles at ADESA's auctions. *Id*. ¶ 12. ADESA's minimum contacts with Rhode Island additionally include delivery of vehicles to Rhode Island dealerships such as Tasca Auto Group, Flood Auto Group, Grieco Auto Group and Bald Hill Auto Group. *Id*. ¶ 13. AFC, ADESA's affiliate, repossessed vehicles from dealers in Rhode Island. *Id*. ¶ 14.

In their First Amended Complaint, Plaintiffs alleged that ADESA conducts used car auctions nationwide, ¶ 9, and that it has sufficient minimum contacts with this jurisdiction as it conducts business in Rhode Island. ¶ 11. Bolstered by the Baker Affidavit, prima facie general jurisdiction has been established by ADESA. Given these extensive Rhode Island activities, it is reasonable for it to be haled into this Court.

Causes of Action Under Indiana Law

Regarding Count I, under Indiana law, the elements of actual fraud are (i) material misrepresentation of past or existing facts by the party to be charged (ii) which were false (iii) which was made with knowledge or reckless ignorance of the falseness (iv) was relied upon by the complaining party and (v) proximately caused the complaining party injury. Kapoor v. Dwybad, 49 N.E. 3d 108 (Ind. Ct. of App. 2015). There is a heightened pleading requirement for fraud which requires particularity. Ind. R. Civ. P 9(B). The pleadings must state the time, the place, the substance of the false representations, the facts misrepresented, and identification of what was procured by fraud. Kapoor at 21.

In the case at bar the elements and heightened pleading requirement have been met. See Baker Affidavit ¶¶ 5-9.. See First Amended Complaint ¶¶ 22, 36-46, 48-53. AFC's Michael Flanagan on or about May 29, 2018 told Metro by telephone that AFC would not repossess while Metro wound down its operation. That was a lie. That omission shows that Flanagan's feigned acceptance of the Rhode Island forum clause was a falsehood when made. AFC recommended to Metro that it lower its payments to help with cash flow when AFC knew it would default Metro. In connection with the repossession, AFC misrepresented the condition of the four-wheel-drive vehicles it damaged with its tow trucks. It is evident from the sequence of events that AFC knew these misrepresentations were false when made. Metro certainly and reasonably

relied on these falsehoods to its detriment, suffering significant losses as a proximate result of AFC's fraud. Baker Affidavit ¶ 7-9.

Concerning Count II, Intentional Tortious Interference with Contractual Relations, Plaintiffs have pled with uncontroverted facts the necessary elements. Felsher v. Univ. of Evansville, 755 N.E. 2d 589, 598 n.212 (Ind.2001). AFC knew Metro had contractual relations with trade creditors, including Co-Defendant NextGear which it improperly tipped off about AFC's repossession. Moreover, AFC constructively blacklisted Metro from selling its vehicles through auction firms which doomed Metro to insolvency and business failure. These actions were intentional, knowing, material, wrongful and the proximate cause of Metro's demise and damages. See Baker Affidavit ¶ 5-9.. This tortious conduct is not immunized by AFC's Note as it was outside the permissible bounds of the contract which does not cover fraud or negligent impairment of collateral.

The applicable statute of limitations for this tort is Rhode Island's three-year provision, not Indiana's two-year statute. Morel v. Daimler-Chrysler AG, 565 F.3d 20 (1st Cir. 2009); Spain v. Haseotes, 1997 U.S. App. LEXIS 13624 (1st Cir. 1997). The controlling statute of limitations is that of the forum state which is Rhode Island by virtue of Baker's amended guaranty. See Baker Affidavit ¶ 3. A statute of limitations is procedural and therefore governed by the forum state. Morel, Haseotes.

It follows that Metro and by extension Baker were directly damaged by this wrongful interference set forth in Count II as well as the next Count (III).

Count III relates to Conspiracy to Tortiously Interfere with contracts. A civil conspiracy is a combination of two or more persons who engage in a concerted action to accomplish an

unlawful purpose or to accomplish some lawful purpose by unlawful means. Boyle v. Anderson Fire Fighters Ass'n Local 1262, AFC-CIO, 497 N.E. 2d 1073, 1079 (Ind. Ct. of App. 1986). In Indiana there is no separate civil cause of action for conspiracy. K.M.K. v. A.K., 908 N.E. 2d 658 (Ind. Ct. of App. 2009). However, there is a civil cause of action for damages resulting from a conspiracy. *Id*. "Allegations of civil conspiracy sound in tort. Unlike criminal conspiracy, the gist of a civil conspiracy is not the unlawful agreement, but the damage resulting from that agreement. In other words, allegations of a conspiracy are just another way of asserting a concerted action in the commission of a tort." *Id*. at 663-64 (internal citations omitted).

The vertical integration of AFC as lender and ADESA as liquidator under the same parent (doc. 21 – Corporate Disclosure of AFC and ADESA), plus their location in the same city – Carmel, Indiana – as their primary competitors NextGear and Manheim, plus the industry "knockout list" to prevent dealers such as Metro from buying and selling, plus Michael Flanagan's misrepresentations and improper notification to the industry of AFC's repossession collectively indicate the existence of a conspiracy to tortiously harm Metro.

Evidence of fraud and conspiracy is seldom manifest prior to discovery as these actions are inherently secretive. In this case, however, the initial pleadings are replete with pertinent facts of relevant wrongdoing which clearly satisfy the 12(b)(6) standard.

Regarding Count IV for Negligence, APC's hapless repossession and mishandling of the collateral was commercially unreasonable. AFC had a duty to Metro not to impair its collateral. See Smith v. M & M Pump & Supply, Inc., 41 N.E. 3d 1026 (Ind. Ct. of App. 2015).

Concerning Count V related to Breach of Covenant of Good Faith and Fair Dealing against AFC and ADESA, that Count should be read in conjunction with the underlying

contractual relationships – express with AFC and implied with ADESA.  The buying and selling of automobiles is covered by the Uniform Commercial Code's provisions on sales.  The entire UCC is subject to good faith and fair dealing.  IND. CODE §26-1-1-203.  And, as discussed below, lenders are subject to the covenant of good faith, which AFC breached.

Count VI for Unjust Enrichment for AFC's wrongful retention of Metro's automobiles and proceeds is a viable alternative cause of action to contract and tort damages.  These damages total nearly $400,000.  See Baker Affidavit ¶¶ 8, 9.  This equitable remedy is a necessary and proper backstop to AFC and ADESA's egregious conduct.  See Niebert v. Perdomo, 54 N.E. 3d 1046 (Ind. Ct of App. 2016) (recognizing unjust enrichment as a quasi-contractual remedy); see also Good v. Ind. Teacher's Ret. Fund, 31 N.E. 3d 978 (Ind. Ct. of App. 2015) ("unjust enrichment is a legal fiction invented by the common-law courts to permit recovery when circumstances are such that under the law of natural and immutable justice there should be a recovery").

The seventh and final Count is for Lender Liability.  Plaintiffs assert in the First Amended Complaint that they satisfied the threshold writing requirement of IND. CODE §26-2-9.  The executed Note and guaranty are sufficient writings.  Paragraph 98 of the First Amended Complaint sets out the litany of breaches by AFC including its failure to honor Baker's choice of forum, the intentionally misleading workout negotiations, the botched repossession, and the failure to fully credit Metro.  Under Indiana law, Plaintiffs are entitled to pursue these common law lender liability actions against AFC, whether they sound in fraud, tort or contract. Like Count VI for Unjust Enrichment, Count VII is a viable alternate cause of action which is properly pled.

## CONCLUSION

For the foregoing reasons, Plaintiffs Metro and Baker respectfully request that this Court deny the Motion of Defendants AFC and ADESA to Dismiss.

Dated: November 13, 2020

Respectfully submitted,

**CT102 LLC d/b/a Metro Motors and H. Jeffrey Baker,**
**Plaintiffs**

*/s/ Harris K. Weiner*

Harris K. Weiner (#3779)
Salter, McGowan, Sylvia & Leonard, Inc.
56 Exchange Terrace, Suite 500
Providence, RI 02903
Office: (401) 274-0300
Fax: (401) 453-0073
hweiner@smsllaw.com

**CERTIFICATE OF SERVICE**

I, Harris K. Weiner, hereby certify that on November 13, 2020 a copy of the foregoing document, filed through the CM/ECF system, will be sent electronically to all counsel of record.

*/s/ Harris K. Weiner*