## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| CT102 LLC d/b/a Metro Motors and H. Jeffrey Baker<br>　　　　　Plaintiffs,<br><br>　　　　v.<br><br>Automotive Finance Corporation d/b/a AFC; NextGear Capital, Inc.; Southern Auto Sales, Inc., AUTOTEC, LLC d/b/a AUTOACCESS, LLC; Manheim, Inc. and ADESA, Inc.,<br>　　　　　Defendants. | Civil Action No.:1:20-cv-356-MSM-PAS |

## AFFIDAVIT OF H. JEFFREY BAKER

I, H. Jeffrey Baker do hereby state upon oath the following:

1. I have been at all times the sole member of CT102, LLC, a Connecticut company doing business as Metro Motors since 2013.

2. I have been a citizen of Rhode Island residing in East Greenwich since 2015.

3. I signed a Personal Guaranty to Automotive Finance Corporation d/b/a AFC which specifically, in hand-writing, initialed and dated by me, changed the jurisdiction and venue form Indiana to Rhode Island. A copy is attached as Exhibit A. I raised this defense in the Indiana litigation. See Exhibit B.

4. I have no record or recollection of agreeing to the ADESA Terms and Conditions.

5. AFC's regional manager, Michael Flanagan, with whom I dealt knew that I am a Rhode Islander when he required the Personal Guaranty.

6. AFC's Connecticut Branch Manager, Michael Flanagan, assured me during a telephone conversation around May 29, 2018 that AFC would not repossess Metro's vehicles.

7. As the subsequent repossession shows, that was a lie by AFC which caused Metro to lose substantial value in its inventory which otherwise was sufficient to voluntarily liquidate to satisfy creditors and avoid insolvency and premature closure of the business.

8. The losses due to the botched repossessions, which included damage to vehicles, significant delays in selling stale inventory and unaccounted for vehicles, exceeds $205,000.

9. The botched repossessions also caused Metro to be unable to pay its trade creditors in the normal course of business which would otherwise have been done. Unpaid trade credit exceeds $175,000.

10. ADESA's minimum contacts with Rhode Island included marketing to dealers in this state. By way of example, I know that in addition to its website, ADESA representatives contact dealers in Rhode Island via telephone, email and in person to have dealers both buy and sell vehicles at the ADESA auction.

11. ADESA's minimum contacts with Rhode Island included Rhode Island dealerships such as Tasca Auto Group of Cranston, Flood Auto Group of East Greenwich, Grieco Auto Group of Johnston, Bald Hill Auto Group of Warwick, signing up with ADESA for its services.

12. ADESA's minimum contacts with Rhode Island included Rhode Island dealerships such as Tasca Auto Group, Floor Auto Group, Grieco Auto Group, Bald Hill Auto Group buying and selling vehicles at ADESA`s auctions.

13. ADESA's minimum contacts with Rhode Island included delivery of vehicles to Rhode Island dealerships such as Tasca Auto Group, Flood Auto Group, Grieco Auto Group, Bald Hill Auto Group .

14. AFC, ADESA's affiliate, repossessed vehicles from dealers in Rhode Island.


Signed upon oath and personal knowledge or upon information and belief.


_____

H. Jeffrey Baker

On the 12 day of November 2020 H. Jeffrey Baker did appear before me and subscribed and swore upon oath to the truth and accuracy of the foregoing Affidavit.

Notary _____    11/12/2020
Date

My term expires on October 17, 2021

JOSSETTI A FINAMORE
Notary Public-State of Rhode Island
My Commission Expires
October 17, 2021

# EXHIBIT A

## UNCONDITIONAL AND CONTINUING GUARANTY

TO:    **AUTOMOTIVE FINANCE CORPORATION**                    DATE: October 3, 2017

FOR VALUE RECEIVED, and in consideration of credit and services given or to be given to **CT102 LLC DBA: METRO MOTORS** (hereinafter referred to jointly and severally as the "Debtor") by Automotive Finance Corporation ("LENDER"), the undersigned hereby jointly and severally, absolutely and unconditionally guaranty the full and prompt payment, when due, whether by acceleration or otherwise, together with interest and all costs, expenses and attorneys' fees, of any and all obligations, indebtedness and liabilities of the Debtor to LENDER, whether now existing or which may hereafter in any manner exist or be incurred, of every kind, nature and character and howsoever created, arising, evidenced or acquired, including such indebtedness as may be encompassed by the term "Obligations" as defined in the Demand Promissory Note and Security Agreement (the "Note") executed by and between LENDER and Debtor, as amended, supplemented or modified from time to time, whether or not such amounts exceed any advance limit applicable to Debtor or communicated to the undersigned (hereinafter collectively referred to as the "Liabilities"). Interest shall be charged from the date of demand until payment in full, both before and after judgment at the same rate per annum as set out in the Liabilities. This is an irrevocable, unconditional and continuing guaranty; it shall cover and secure any amount at any time owing on the Liabilities.

The undersigned each hereby waive any and all presentment, demand, protest and notice of dishonor, non-payment or other default with respect to any of the Liabilities. The undersigned each hereby grant to LENDER full power to deal in any manner with the Liabilities without notice to or consent from the undersigned, including, but without limiting the generality of the foregoing, the following powers: (a) to modify or otherwise change any terms of all or any part of the Liabilities or the rate of interest thereon, to grant any extension or renewal thereof, and any other indulgence with respect thereto, and to effect any release, compromise or settlement with respect thereto; and (b) to enter into any agreement of forbearance with respect to all or any part of the Liabilities or with respect to all or any part of the collateral related thereto and to change the terms of any such agreement. The obligations of the undersigned hereunder shall not be released, discharged or in any way affected, nor shall the undersigned have any rights or recourse against LENDER by reason of any action LENDER may take or omit to take under the foregoing powers.

If a claim is made upon LENDER at any time for repayment or recovery of any amount(s) or other value received by LENDER, from any source, in payment of or on account of any of the Liabilities of the Debtor guarantied hereunder and LENDER repays or otherwise becomes liable for all or any part of such claim by reason of: (a) any judgment, decree or order of any court or administrative body having competent jurisdiction; or (b) any settlement or compromise of any such claim, the undersigned shall remain jointly and severally liable to LENDER hereunder for the amount so repaid or for which LENDER is otherwise liable to the same extent as if such amount(s) had never been received by LENDER, notwithstanding any termination hereof or the cancellation of any note, instrument, or other agreement evidencing any of the Liabilities.

In case the Debtor shall fail to pay all or any part of the Liabilities when due, whether by acceleration or otherwise, according to the terms thereof, the undersigned will immediately pay the amount due and unpaid by the Debtor in like manner as if such amount constituted the direct and primary obligation of the undersigned. LENDER shall not be required, prior to any such payment by or demand on the undersigned, to make any demand upon or pursue or exhaust any of its rights or remedies against the Debtor or others with respect to the payment of any of the Liabilities.

Notwithstanding anything to the contrary in this guaranty, the undersigned each hereby irrevocably waive(s) all rights he/she may have at law or in equity (including, without limitation, any law subrogating the undersigned to the rights of LENDER) to seek contribution, indemnification, or any other form of reimbursement from the Debtor, any other guarantor, or any other person hereafter primarily or secondarily liable for any obligations of the Debtor to LENDER, for any disbursement made by the undersigned under or in connection with this guaranty or otherwise. The undersigned furthermore waive: (a) all defenses based on suretyship, notice, impairment of collateral, or LENDER's failure to perfect or keep perfected any security interest in the collateral; and (b) any defenses which the Debtor may assert on the Liabilities including but not limited to failure of consideration, breach of warranty, fraud, payment, statute of frauds, bankruptcy, lack of legal capacity, statute of limitations, lender liability, accord and satisfaction, and usury.

This guaranty is in addition to and not in substitution for any other guaranty or other securities which LENDER may now or hereafter hold for all or any part of the Liabilities, and LENDER shall not be under any other obligation to marshal in favor of the undersigned any other guaranties or other securities or any monies or other assets which LENDER may be entitled to receive or may have a claim upon. No loss of or in respect of or unenforceability of any other guaranties or other securities which LENDER may now or hereafter hold in respect of any of the Liabilities, whether resulting from the fault of LENDER or otherwise, shall in any way limit or lessen the undersigned's liability under this guaranty.

The undersigned understand and agree that no loans made by the undersigned to the Debtor are permitted to be repaid by the Debtor while this guaranty or any indebtedness to LENDER is outstanding. All debts and liabilities, present and future, of Debtor to the undersigned are hereby assigned to LENDER and subordinated and postponed to the Liabilities, and all monies received by the undersigned in respect thereof shall be received in trust for LENDER and forthwith upon receipt shall be paid over to LENDER, unless prior written authorization to the contrary has been obtained from LENDER, without in any way lessening or limiting the liability of the undersigned under this guaranty. This assignment and postponement is independent of the guaranty and shall remain in full force and effect until repayment in full to LENDER of all the Liabilities, notwithstanding that the liability of the undersigned under this guaranty may have been discharged or terminated.

By execution of this guaranty, the undersigned authorizes LENDER and any of its officers or employees to take any and all action to secure and perfect its interest in the foregoing assignment including but not limited to executing and filing, on behalf of the undersigned and without the undersigned's signature, original financing statements, amendments, continuation statements, and any other documents LENDER deems necessary or desirable to protect its interests.

This guaranty shall not be discharged or otherwise affected by the death or loss of capacity of the Debtor, by any change in the name of the Debtor, or (if a partnership, limited liability company or other membership organization) by any change in the membership of the Debtor or (if a corporation) by any change in the officers, capital structure, by-laws or articles of the Debtor, by the sale of the Debtor's business or any part thereof, by the Debtor being reorganized or being amalgamated with one or more other corporations or other entities, by the Debtor becoming bankrupt or insolvent or by any other matter or thing whatsoever but shall continue to apply to all Liabilities whether incurred before or after any such event. In the case of a change in the membership, partners or shareholders of the Debtor or in the case of the Debtor being reorganized or being amalgamated with one or more other entities, this guaranty shall apply to the liabilities of the resulting entity, and the term "Debtor" includes each such resulting entity. This guaranty shall not be discharged or otherwise affected by the death of the undersigned.

The undersigned hereby warrants to LENDER that the undersigned has by independent means made himself/herself fully aware of Debtor's financial condition. The undersigned agrees to pay all costs, expenses, and attorneys' fees incurred by LENDER in the enforcement of this guaranty.

**EXHIBIT C**
Page 1 of 3

The undersigned acknowledges that the undersigned is guaranteeing credit from LENDER. The undersigned authorizes LENDER to obtain credit information from a credit bureau and any financial institution or trade creditor that the undersigned has provided as well as any other credit investigation that LENDER in LENDER's sole discretion deems necessary. The undersigned also authorizes LENDER to contact any third parties and to disclose the undersigned's information for purposes of, including, but not limited to, assessing the undersigned's credit worthiness, collection of any outstanding debt, and obtaining intercreditor agreements and perfecting LENDER's security interest. The undersigned also authorizes LENDER to disclose the above described information to any of its affiliates, subsidiaries, and parent companies. Further, if credit is granted to the Debtor, the undersigned authorizes LENDER to review the account periodically, which could include obtaining additional credit reports regarding the undersigned. The undersigned also authorizes LENDER to disclose credit information into any credit database.

LIMITATION OF LIABILITY. LENDER'S LIABILITY TO THE UNDERSIGNED HEREUNDER FOR DAMAGES REGARDLESS OF THE LEGAL THEORY OF THE CLAIM SHALL NOT EXCEED, IN THE AGGREGATE, THE TOTAL AMOUNT OF FLOORPLAN FEES AND INTEREST THAT DEBTOR HAS PAID TO LENDER UNDER THE NOTE DURING THE TWELVE (12) MONTHS IMMEDIATELY PRECEDING THE EVENT UPON WHICH SUCH LIABILITY IS BASED. FURTHER, LENDER SHALL NOT BE LIABLE TO THE UNDERSIGNED FOR LOST PROFITS OR FOR ANY SPECIAL, PUNITIVE, INCIDENTAL OR CONSEQUENTIAL DAMAGES WHATSOEVER EVEN IF LENDER KNEW ABOUT THE POSSIBILITY OF SUCH DAMAGES.

The undersigned authorizes LENDER to share any and all information that it possesses regarding the undersigned's account and relationship to Debtor, including but not limited to information regarding loan history, account history, account balance, and credit worthiness with any third party. The undersigned does hereby authorize LENDER to release and disclose any and all of the undersigned's general business information now or hereinafter in LENDER's possession, including but not limited to information regarding the business name, address, and telephone number, to any third party. The undersigned also authorizes LENDER to release and disclose any and all account information now or hereinafter in LENDER's possession, including but not limited to any and all loan documents, any business financial information retained or maintained by LENDER, and/or any information relating to the undersigned's performance history with LENDER to any third party.

Whenever possible each provision of this guaranty shall be interpreted in such a manner as to be effective and valid under applicable law, but if any provision of this guaranty shall be prohibited by or invalid under such law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this guaranty.

THIS GUARANTY SHALL BE GOVERNED BY THE SUBSTANTIVE LAWS OF THE STATE OF INDIANA, AS AMENDED FROM TIME TO TIME, WITHOUT RESORT TO PRINCIPLES OF CONFLICTS OF LAWS. BY EXECUTION OF THIS GUARANTY, THE UNDERSIGNED SUBMITS TO THE PERSONAL JURISDICTION OF THE STATE AND FEDERAL COURTS OF THE STATE OF INDIANA AND TO VENUE IN THE CIRCUIT AND SUPERIOR COURTS OF HAMILTON COUNTY, INDIANA AND MARION COUNTY, INDIANA, AND IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF INDIANA. ANY ACTION INITIATED BY THE UNDERSIGNED AGAINST LENDER SHALL BE FILED AND CONDUCTED SOLELY IN SAID COURTS. LENDER MAY BRING ANY SUIT AGAINST THE UNDERSIGNED IN ANY COURT OF COMPETENT JURISDICTION, AND THE UNDERSIGNED HEREBY CONSENTS TO LENDER'S CHOICE OF FORUM. THE UNDERSIGNED FURTHER WAIVES ANY RIGHT WHICH IT MAY HAVE TO REMOVE SUCH LITIGATION OR MATTER TO A FEDERAL COURT OR TO REQUIRE THAT ANY SUCH LITIGATION OR MATTER TAKE PLACE IN A FEDERAL COURT. THE UNDERSIGNED AND LENDER AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN THE CLAIMANT'S INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING OR AS A NAMED OR UNNAMED MEMBER IN A CLASS, CONSOLIDATED, REPRESENTATIVE OR PRIVATE ATTORNEY GENERAL ACTION.

THE UNDERSIGNED AND LENDER EACH ACKNOWLEDGE THAT THE RIGHT TO TRIAL BY JURY IS A CONSTITUTIONAL ONE, BUT THAT IT MAY BE WAIVED. THEREFORE, EACH PARTY, AFTER CONSULTING, OR HAVING HAD THE OPPORTUNITY TO CONSULT, WITH COUNSEL OF THEIR CHOICE, HEREBY KNOWINGLY, VOLUNTARILY, AND INTENTIONALLY, FOR THEIR MUTUAL BENEFIT, WAIVES ANY RIGHT TO TRIAL BY JURY IN RESPECT TO ANY LITIGATION BETWEEN THEM, INCLUDING, BUT NOT LIMITED TO, ANY LITIGATION ARISING OUT OF OR IN CONNECTION WITH THIS GUARANTY. THIS PROVISION IS A MATERIAL INDUCEMENT FOR LENDER ENTERING INTO THIS GUARANTY AND THE TRANSACTIONS CONTEMPLATED HEREBY.

All rights, powers, privileges and immunities of LENDER hereunder shall inure to the benefit of the successors and assigns of LENDER, and shall be binding upon each of the undersigned, his/her personal representatives, heirs and assigns.

Electronic Signatures. The undersigned agree(s) that electronic signatures of any parties included in this Guaranty and in the Note (i) are intended to authenticate this writing and the Note, as applicable, and to have the same force and effect as manual signatures, and (ii) are deemed to satisfy all legal requirements regarding the validity and enforceability of electronic signatures, including without limitation the federal Electronic Signatures in Global and National Commerce Act, the UCC and state e-sign laws such as the Uniform Electronic Transactions Act; provided, however, that LENDER, in LENDER's sole discretion, may require any guarantor to execute this Guaranty with manual signatures.

[Signatures on next page]

EXHIBIT C
Page 2 of 3

Witness the hand and seal of the undersigned as of the day and year first above written.

_____    10/03/2017
HERMAN JEFFREY BAKER                     Date


STATE OF ___CT___                    COUNTY OF ___NEW HAVEN___

Before me the undersigned, a Notary Public in and for the said County and State, personally appeared the above-referred individual(s) who acknowledged the execution of the foregoing Unconditional and Continuing Guaranty this ___ of ___OCT___, ___2017___

_____    My Commission Expires: ___10/31/17___
(Notary Public Signature)

___MICHAEL FLANAGAN___                 My County of Residence: ___HARTFORD___
(Printed Name)


**EXHIBIT C**
Page 3 of 3

AFC Rev. 05/20/2017

# EXHIBIT B

STATE OF INDIANA ) MARION COUNTY CIRCUIT COURT 1
) SS:
COUNTY OF MARION ) CAUSE NO. 49D06-1812-CC-047850

AUOMOTIVE FINANCE CORP. )
          Plaintiff, )
 )
      v. )
 )
CT102 LLC D/B/A METRO )
MOTORS AND HERMAN BAKER )
Aka H. JEFFREY BAKER aka )
HERMAN J. BAKER aka H J )
BAKER aka JEFFREY BAKER aka )
JEFF BAKER, )
          Defendants. )

## AFFIDAVIT OF JEFF BAKER

Comes now Defendant, Jeff Baker, and for his Affidavit states as follows:

1.      Affiant is over 21, is competent to testify, and has personal knowledge of the facts set forth herein.

2.      On or about October 23, 2017, Metro Motors executed an agreement with AFC ("Agreement").

3.      Prior to May 28, 2018, I had been working in good faith with AFC to reach an agreement regarding all the vehicles in which Automotive Finance Corporation ("AFC") held a security interest ("Collateral"). When the Agreement with AFC was executed, CT102, LLC d/b/a Metro Motors consented to jurisdiction and venue in Indiana.

4.      When I executed the Personal Guaranty under the Agreement, I specifically refused consent to venue or jurisdiction in Indiana. I made clear to Mike Flanagan, the Branch Manager for AFC, that I was unwilling to execute the personal guaranty if the venue and jurisdiction was for Indiana. When I signed the Agreement, I crossed out lines which would

Page 1 of 4

cause me to consent to such jurisdiction or venue and wrote in that I would only submit to jurisdiction and venue in Rhode Island. I initialed next to each of these modifications. **Exhibit 5**. Flanagan agreed to my modifications and assured me that they were sufficient.

5.      The document AFC has designated as Exhibit A to its Motion for Summary Judgment does not contain the modifications I made. I believe that AFC switched out part of my original Agreement so that this case would take place in Indiana.

6.      On or about May 28, 2018, my attorney and I thought we had reached an agreement with AFC's counsel to resolve the issue amicably. The discussions of repayment were well underway and there was positive dialogue between the parties. AFC had also indicated that they would not repossess the Collateral. **Exhibit 2**.

7.      On or about May 29, 2018, AFC's agents arrived at my lot and repossessed the Collateral.

8.      Even after AFC repossessed the Collateral I was still willing to work with them to pay off the balance of the Agreement. **Exhibit 3**.

9.      Some of the Collateral included four-wheel-drive vehicles. It is common industry knowledge that four-wheel-drive vehicles have their rear wheels are locked in place when parked and require special handling when being towed. Failure to place rollers on the rear wheels or to tow on a flatbed causes severe damage to these kinds of vehicles.

10.     On or about May 29, 2018, agents of AFC repossessed and towed away the Collateral, including four-wheel drive vehicles. AFC's agents failed to place rollers on the rear wheels or to transport them on a flatbed. When they towed these vehicles away, they left skid marks in my parking lot.

11.     The failure of AFC's agents to properly tow away the Collateral almost certainly caused severe damage to the four-wheel-drive vehicles and would greatly reduce their value for auction.

12.     On or about June 15, 2018, I requested inspection reports of the Collateral prior to auction. AFC failed to respond to my request. **Exhibit 4**.

13.     Sale of collateral at private auction is not usual or customary in the car dealership industry. Standard industry practice in the car dealership industry is to sell repossessed cars at public auction so as to attract the highest number of bidders.

14.     Upon information and belief, AFC is planning to sell the inventory at a private auction. This will greatly reduce the number of potential bidders and prevent the Collateral from receiving the highest possible bids.

15.     On or about June 15, 2018, I requested from AFC the date and location of the auction the Collateral was to be sold at. **Exhibit 4**. AFC failed to reply to my request.

16.     I have not signed any post-default waiver of my right to receive notice regarding disposition of the Collateral.

17.     In a typical repossession case like this, auction of collateral typically occurs within two to three weeks of repossession, and very rarely occurs after one month. Even new or like-new vehicles depreciate quickly in value, so it is important to sell them as soon as possible. These vehicles lose substantial value once newer models come to market, which typically occurs in November or December each year.

18.     As of the date of this filing, AFC has not confirmed whether or not the Collateral has been sold at auction yet. It has been over eight months since AFC repossessed the Collateral. Had AFC not repossessed the Collateral, I would have been able to sell it all at market value for

substantially more than what AFC could receive at auction. Had I been allowed to do so, any amounts I owed to AFC would have been greatly reduced or eliminated altogether.

19.    I believe that if the Collateral had been auctioned off I would have been informed of it. Because I have not been informed of such sale, I do not believe that the Collateral has been sold at auction yet.


**FURTHER AFFIANT SAITH NOT.**

I AFFIRM UNDER THE PENALTIES FOR PERJURY THE FOREGOING REPRESENTATIONS ARE TRUE AND CORRECT.


Date: February 13, 2019

H. Jeffrey Baker
Member CT102 LLC

Page 4 of 4

STATE OF INDIANA          )
                          ) SS:
COUNTY OF MARION          )

MARION SUPERIOR COURT 6

CAUSE 49D06–1812CC047850

AUTOMOTIVE FINANCE CORP.    )
        Plaintiff,          )
                            )
v.                          )
                            )
CT102 LLC D/B/A METRO       )
MOTORS AND HERMAN BAKER     )
Aka H. JEFFREY BAKER aka    )
HERMAN BAKER aka HJ BAKER   )
Aka JEFFREY BAKER aka JEFF BAKER  )
        Defendants.         )

**FILED**

(257)  MAY 0 1 2019

Myla a. Eldridge
CLERK OF THE MARION CIRCUIT COURT

## ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

This matter came before this Court for a summary judgment hearing on April 10, 2019. Procedurally the case has progressed as follows:

1. On December 3, 2018, Automotive Finance Corp, (hereafter "Plaintiff") brought suit against CT102 LLC DBA Metro Motors and Herman Baker aka H. Jeffrey Baker aka Herman Baker aka HJ Baker, aka Jeffrey Baker, aka Jeff Baker (alternatively "Metro Motors" or "Baker" or collectively "Defendants") based on contracts entered on October 3, 2017. The suit alleges moneys owed under three theories:

- Count I -- Plaintiff demands moneys owed under a Promissory Note and foreclosure based on the Security Agreement entered by Metro Motors;
- Count II -- Plaintiff demands money owed under a Guaranty entered by Baker in consideration of the Promissory Note and Security Agreement; and
- Count III -- Plaintiff asserts Defendants committed Fraud and/or Conversion by not holding certain funds in trust pursuant to an agreement between the parties.

2. On February 8, 2019, Plaintiff filed its *Plaintiff's Motion for Partial Summary Judgment* as to Counts I and II only (hereafter "*Motion*")

3. On February 14, 2009, Defendants responded.

4. On February 21, 2019, Plaintiff requested a hearing on its *Motion.*

5. On February 27, 2019 the Court prematurely denied the *Motion.*

6. On March 6, 2019, the Court recognized its error and set the matter for hearing on April 10, 2019.

7.  On April 2, 2019, Plaintiff submitted additional evidence in support of its *Motion*.

## FINDINGS

Based on the submissions and argument at hearing, this Court denies *Plaintiff's Motion for Partial Summary Judgment* for the following reasons:

1.  **The amount of time it took to dispose of the collateral.** Plaintiff's April 2, 2019 filing included a supplemental affidavit of Eric Jackson.  Fourteen (14) vehicles were repossessed on May 29-30, 2018. (Jackson supplemental ¶ 6) Of the 14 vehicles, 13 were resold during the months of July, August, and September. (Jackson ¶ 12 ref. Ex. F.) (The last vehicle was sold in late October.) (Id.) Whether this was a commercially reasonable amount of time pursuant to I.C. § 26-1-9.1-610(b), and its impact on the value of the collateral are both material issues of fact.

2.  **The condition of the vehicles after the repossession**.  Defendant alleges that the vehicles were not properly removed from the premises potentially causing damage to the drive trains on the four-wheel drive vehicles. (Defendants Ex. 1, Baker affidavit ¶ 10). While the Vehicle Condition Reports submitted by Plaintiff suggest otherwise (Jackson supplemental affidavit ¶ 7, Ex. C), the condition of the four-wheel drive vehicles remains a material issue of fact.

3.  **Altered Guaranty**.  Defendant suggests that he would only submit to jurisdiction in Rhode Island and so indicated on the Guaranty by hand written changes on the Guaranty.  (Baker ¶ 4 and Ex. 5) This representation suggests a misrepresentation to the Court by one of the parties.  It is a material issue of fact concerning count II.

IT IS THEREFORE ORDERED THAT, the Plaintiff's Motion for Summary Judgment is **DENIED**.

All of which is ORDERED, this 1st day of May, 2019.

Kurt M. Eisgruber, JUDGE
Marion County Superior Court
Criminal Division, Room One

**DISTRIBUTION:**
For Plaintiff:    Curt Hochbein

For Defendants: Julie Camden and Matt Kestien