## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| CT102 LLC d/b/a Metro Motors and H. Jeffrey Baker<br><br>      Plaintiffs,<br><br>        v.<br><br>Automotive Finance Corporation d/b/a AFC; NextGear Capital, Inc.; Southern Auto Sales, Inc., AUTOTEC, LLC d/b/a AUTOACCESS, LLC; Manheim, Inc. and ADESA, Inc.,<br>      Defendants. | Civil Action No.:1:20-cv-356-MSM-PAS |

### AFFIDAVIT OF H. JEFFREY BAKER

I, H. Jeffrey Baker do hereby state upon oath the following:

1. I have been at all times the sole member of CT102, LLC, a Connecticut company doing business as JD Byrider of New Haven and subsequently Metro Motors.

2. I have been a citizen of Rhode Island residing in East Greenwich since 2015.

3. I signed a Personal Guaranty to NextGear Capital, Inc. which specifically, in handwriting, initialed and dated by me and initialed by NextGear's agent Dustin E. Wilkenson, changed the jurisdiction and venue form Indiana to Rhode Island. A copy is attached as Exhibit A. I raised this defense in the Indiana litigation.

4. I am familiar with Manheim, Inc., now Manheim Remarketing, Inc. ("Manheim") and NextGear Capital, Inc., ("NextGear") which area a major nationwide used car auction company and a leading lender to used car dealers, respectively.

5. They are affiliates of parent corporation Cox Automotive, Inc. and constitute one of two business groups that dominate the used vehicle markets for auctions and floor plan lending in the United States.

6. Upon information and belief, affiliates Manheim and NextGear have minimum contacts in Rhode Island marketing to auto dealers in this state. I know that in addition to its

website, Manheim and NextGear representatives contact dealers in Rhode Island via telephone, email and in person.

7. NextGear is registered as a foreign corporation to do business in Rhode Island. See attached Exhibit B, which is an Entity Summary from the Rhode Island Secretary of State.

8. Manheim's minimum contacts with Rhode Island upon information and belief, included services to dealerships such as Tasca Auto Group of Cranston, Flood Auto Group of East Greenwich, Grieco Auto Group of Johnston and Bald hill Auto Group of Warwick which have signed up with Manheim to buy and sell vehicles at Manheim's auctions and deliver vehicles to these dealers.

9. Manheim and NextGear's wrongful actions toward Metro and me included, but were not limited to, NextGear's improperly obtaining and retaining the proceeds from the sale of a Metro-owned vehicle from another auction company (explained in my prior Indiana affidavit at ¶14-21, attached hereto as Exhibit C), Manheim's blacklist of Metro, NextGear's gross mishandling of Metro's repossessed vehicles, and NextGear and Manheim's collusion with competitor AFC to put Metro out of business. Exhibit C at ¶29-40.

10. As to jurisdiction, I previously stated in an Indiana pleading that I signed an amendment to NextGear's Individual Guaranty changing the jurisdiction and venue from Indiana to Rhode Island which was initialed by NextGear's agent Dustin E. Wilkenson. See Exhibit B at ¶4-13, Exhibit A which is the actual page 4 of the Guaranty with the agreed upon changes, and exhibit D which is NextGear's falsified version of the Guaranty upon which it sued me in Indiana.

11. I changed the jurisdiction and venue because the dominant players in the used car dealer-financing industry were all located in Carmel, Indiana and I was concerned about their home-court advantage in the courts. I was careful, therefore, not to counterclaim in Indiana as I intended to reserve my right to litigate Metro's and my claims in Rhode Island.

12. Regarding Manheim's terms and conditions, I have no recollection or record of electronically accepting them.

13. The time stamp of 12:32 am is outside my work hours and internet access. (See Doc. 26-2).

14. The dealership is misidentified as Metro Motors.  On 11/24/2015 when I allegedly accepted their terms CT102, LLC was officially doing business as JD Byrider of New Haven.  CT102, LLC did not change to Metro Motors until after 11/24/2015.

15. NextGear has itself confused the different versions of the terms and conditions it alleges I accepted referring to both versions 1.6 (dated 2015) and 1.7 (dated 2017).

Signed upon oath and personal knowledge or upon information and belief.

_____

H. Jeffrey Baker

On the 30ᵗʰ day of November 2020 H. Jeffrey Baker did appear before me and subscribed and swore upon oath to the truth and accuracy of the foregoing Affidavit.

Notary                                    Date

My term expires on _____

JOSSETTI A FINAMORE
Notary Public-State of Rhode Island
My Commission Expires
October 17, 2021

# EXHIBIT A

to any term or condition of this Guaranty will operate as a waiver of such right, power, or privilege, and no single or partial exercise of any such right, power, or privilege will preclude any other or further exercise of such right, power, or privilege, or the exercise of any other right, power, or privilege by Lender.

(b) <u>Severability</u>. Any provision of this Guaranty that is invalid or unenforceable in any jurisdiction shall, as to that jurisdiction, be ineffective to the extent of such invalidity or unenforceability, without rendering invalid or unenforceable the remaining provisions of this Guaranty or affecting the validity or enforceability of any provision of this Guaranty in any other jurisdiction.

(c) <u>Governing Law</u>. Except with respect to the interpretation or enforcement of the arbitration and other provisions set forth in Section 5(i) (which shall be governed by the Federal Arbitration Act), the validity, enforceability, and interpretation of this Guaranty shall be governed by the internal Laws of the State of Indiana, without regard to conflicts of Laws provisions thereof.

(d) <u>Jurisdiction and Venue</u>. As evidenced by Guarantor's signature below, Guarantor submits to the personal jurisdiction and venue of the state and federal courts of Marion County and Hamilton County, Indiana, and agrees that any and all claims or disputes pertaining to this Guaranty, or to any matter arising out of or related to this Guaranty, initiated by Guarantor against Lender, shall be brought in the state or federal courts of Marion County or Hamilton County, Indiana. Further, Guarantor expressly consents to the jurisdiction and venue of the state and federal courts of Marion County and Hamilton County, Indiana, as to any legal or equitable action that may be brought in such court by Lender, and waives any objection based upon lack of personal jurisdiction, improper venue or forum non conveniens with respect to any such action. Guarantor acknowledges and agrees that Lender reserves the right to initiate and prosecute any action against Guarantor in any court of competent jurisdiction, and Guarantor consents to such forum as Lender may elect. — *Providenca nI ~HIS*  ~~

(e) <u>Dispute Resolution; Waiver of Class-Action Rights.</u>

   (i) In the unlikely event that Lender is unable to resolve a dispute or claim that Guarantor may have, Guarantor agrees to arbitrate any such dispute or claim. This agreement to arbitrate is intended to be broadly interpreted, and includes (i) all disputes, claims and counterclaims arising out of or relating to this Guaranty or any aspect of Guarantor's relationship with Lender, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory; (ii) all disputes, claims and counterclaims that may have arisen before this Guaranty or any prior contract or agreement between Guarantor and Lender; and (iii) any disputes, claims and counterclaims that may arise after the termination of this Guaranty. Additionally, Guarantor acknowledges that Lender may (but shall in no event be required to) arbitrate any dispute or claim that it may have against Guarantor, with any such arbitration being governed by the provisions of this Section 5(i). Guarantor, at his or her election, may opt-out of the arbitration provisions set forth in Sections 5(i)(i), 5(i)(iii) and 5(i)(iv) by providing written notice of his or her election to opt-out no later than thirty (30) days after Guarantor's execution of this Guaranty, which notice shall be provided to Lender pursuant to Section 5(d) ("Opt-Out Notice"), provided that such Opt-Out Notice shall become effective only upon Guarantor's receipt of written confirmation from Lender that such Opt-Out Notice has been received by Lender within the required time period. Guarantor acknowledges and agrees that, irrespective of any Opt-Out Notice or any written confirmation thereof, Guarantor shall in all events be subject to the provisions of Section 5(i)(ii).

   (ii) ANY ARBITRATION PROCEEDING UNDER THIS GUARANTY WILL TAKE PLACE ON AN INDIVIDUAL BASIS. CLASS ARBITRATIONS AND CLASS ACTIONS OF ANY KIND (WHETHER PURSUED THROUGH ARBITRATION OR THROUGH THE COURTS) ARE NOT PERMITTED. GUARANTOR AGREES THAT IT MAY BRING CLAIMS AGAINST LENDER ONLY IN HIS OR HER INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING. GUARANTOR AGREES THAT, BY ENTERING INTO THIS GUARANTY, GUARANTOR IS WAIVING HIS OR HER RIGHT TO PARTICIPATE IN ANY CLASS ACTION OR OTHER SIMILAR REPRESENTATIVE PROCEEDING. UNLESS CONSENTED TO IN WRITING BY LENDER, THE ARBITRATOR MAY NOT CONSOLIDATE MORE THAN ONE PERSON'S CLAIMS, AND MAY NOT OTHERWISE PRESIDE OVER ANY FORM OF A REPRESENTATIVE OR CLASS PROCEEDING. GUARANTOR ACKNOWLEDGES AND AGREES THAT THE SIZE OF BORROWER'S CREDIT LINE, THE INTEREST RATE TO WHICH ADVANCES ARE SUBJECT AND CERTAIN FEES CHARGED TO BORROWER, AS WELL AS THE SIZE AND DATES OF SPECIFIC ADVANCES AND WHAT (IF ANY) GUARANTIES ARE REQUIRED, ARE UNIQUE TO AND NEGOTIATED BY BORROWER (AND, IF APPLICABLE, GUARANTOR), AND THAT SUCH FACTORS WILL AND DO VARY AMONG BORROWERS AND OTHER GUARANTORS.

   (iii) Any dispute or claim subject to arbitration pursuant to this Section 5(i) shall be submitted to binding arbitration administered by the Judicial Arbitration and Mediation Service ("JAMS") pursuant to its Comprehensive Arbitration Rules and Procedures as then in effect (the "JAMS Comprehensive Rules"); provided, however, that any dispute or claim that is subject to arbitration pursuant to this Section 5(i) and that involves disputes or claims where the aggregate amount reasonably in dispute or controversy is less than $100,000, shall be submitted to binding arbitration administered by JAMS pursuant to its Streamlined Arbitration Rules and Procedures as in effect as of the effective date of this Guaranty (the "JAMS Streamlined Rules"). The disputes and claims subject to arbitration pursuant to this Section 5(i) will be resolved by a single arbitrator selected pursuant to the JAMS Comprehensive Rules or the JAMS Streamlined Rules, as the case may be. The arbitrator shall be bound by and shall strictly enforce the terms of this Guaranty and may not limit, expand or otherwise modify any term or provision of this Guaranty or any other contract or document between Guarantor and Lender. The arbitrator shall not have the power to award to Guarantor any damages that are excluded or that have been waived by Guarantor under this Guaranty, and Guarantor irrevocably waives any claim that it may have thereto. The arbitrator shall not have the power to order pre-hearing discovery of documents or the taking of depositions. The arbitrator shall render a written decision within six (6) months after being selected. Any arbitration will be held in Indianapolis, Indiana (or its greater metro area). Each Party will bear its own expenses in the arbitration and will share equally the costs of the arbitration; provided, however, that the arbitrator may, in his or

Page 4 of 5

NextGear Individual Guaranty (v. 1.0)

**INDIVIDUAL GUARANTY**

THIS INDIVIDUAL GUARANTY (this "Guaranty") is made and entered into by the undersigned guarantor ("Guarantor") in favor of NextGear Capital, Inc. ("Lender"), pursuant to that certain Demand Promissory Note and Loan and Security Agreement by and between Borrower (as defined below) and Lender (the "Note").

NOW, THEREFORE, in consideration of any loan or other financial accommodation heretofore or hereafter at any time made or granted to Borrower by Lender, and the mutual covenants, agreements, and conditions contained herein, Guarantor agrees as follows:

1.  DEFINITIONS. Capitalized terms used herein and not defined in this Section 1 or elsewhere in this Guaranty shall have the respective meanings as set forth in the Note (such meanings to be equally applicable to both the singular and plural forms of the terms defined). Any capitalized terms used herein, but not otherwise defined herein or in the Note, as the case may be, shall have the meanings ascribed to them in the UCC.

    (a)  "Borrower" shall mean the Person listed below, including any Affiliates of such Person, whether now in existence or hereinafter established or acquired:

    > Ct102 Llc, d/b/a JD Byrider of New Haven
    > 3 Liesl Ln , Branford, CT  064053036
    > Telephone: (203) 481-9000 Facsimile:

    (b)  "Liabilities" shall mean any and all Advances, debts, financial obligations, fees, charges, expenses, attorneys' fees, and costs of collection owing, arising, due, or payable from Borrower to Lender or any of its Affiliates, of any kind or nature, present or future, under any instrument, guaranty, or other document, whether arising under the Note or any other Loan Document, whether directly or indirectly, absolute or contingent, primary or secondary, due or to become due, now existing or hereafter arising, and however acquired.

2.  GUARANTY AND OTHER AGREEMENTS.

    (a)  Guaranty Obligations. Guarantor hereby voluntarily, unconditionally, and absolutely guarantees (i) the full and prompt payment when due, whether by acceleration or otherwise, and at all times hereafter, of all Liabilities; and (ii) the full and prompt performance of all the terms, covenants, conditions, and agreements related to the Liabilities. Guarantor further agrees to pay all expenses, including attorneys' fees and court costs (including, in each case, those relating to bankruptcy and appeals), paid or incurred by Lender or its Affiliates in endeavoring to collect on any Liabilities, and in enforcing this Guaranty or in defending any claims by Borrower or any Guarantor related to any of the Liabilities, plus interest on such amounts at the lesser of (A) thirteen percent (13%) per annum, compounded daily, or (B) the maximum rate permitted by Law. Interest on such amounts paid or incurred by Lender shall be computed from the date of payment made by Lender and shall be payable on demand.

    (b)  General Nature of Guaranty. Guarantor acknowledges that this Guaranty is a guaranty of payment and not of collection, and that his or her obligations hereunder shall be absolute, unconditional, and unaffected by: (i) the waiver of the performance or observance by Borrower or any Guarantor of any agreement, covenant, term, or condition to be performed or observed by Borrower or any such Guarantor, as the case may be; (ii) the extension of time for the payment of any sums owing or payable with respect to any of the Liabilities or the time for performance of any other obligation arising out of or relating to any of the Liabilities; (iii) the modification, alteration, or amendment of any obligation arising out of or relating to any of the Liabilities; (iv) any failure, delay, or omission by Lender to enforce, assert, or exercise any right, power, or remedy in connection with any of the Liabilities; (v) the genuineness, validity, or enforceability of any of the Liabilities or any document related thereto; (vi) the existence, value, or condition of, or failure of Lender to perfect its lien against, any security pledged in connection with the Liabilities; (vii) the release of any security pledged in connection with the Liabilities, or the release, modification, waiver, or failure to enforce any other guaranty, pledge, or security agreement; (viii) the voluntary or involuntary liquidation, dissolution, sale of all or substantially all of the property, marshalling of assets and liabilities, receivership, insolvency, bankruptcy, assignment for the benefit of creditors, reorganization, arrangement, composition, or readjustment or other similar application or proceeding affecting Borrower or any assets of Borrower; (ix) the release or discharge of Borrower or any other Guarantor from the performance or observance of any agreements, covenants, terms, or conditions in connection with any of the Liabilities, by operation of Law or otherwise; (x) the default of Borrower in any obligations to Guarantor or any torts committed by Borrower against Guarantor, even if Lender is alleged to be complicit or to have committed a direct tort against Guarantor; or (xi) any change in Borrower's ownership, entity type, legal structure, or state of organization or formation, or in Guarantor's relationship to Borrower or any other Guarantor.

    (c)  Continuing and Unlimited Nature of Guaranty. The obligations of Guarantor under this Guaranty shall be continuing and shall cover any and all Liabilities existing as of the effective date of this Guaranty and any and all Liabilities thereafter incurred by Borrwer, including any and all Liabilities existing at the time of any termination of this Guaranty. This Guaranty shall be unlimited in amount and shall continue in effect until this Guaranty is terminated pursuant to Section 3.

    (d)  Waivers by Guarantor. Guarantor hereby expressly waives: (i) notice of the acceptance by Lender of this Guaranty; (ii) notice of the existence, creation, or non-payment of all or any of the Liabilities; (iii) presentment, demand, notice of dishonor, protest, and all other notices whatsoever; (iv) diligence in collection or protection of, or realization upon any of the Liabilities, any obligation under this Guaranty, or any security for or guaranty of any of the foregoing; (v) impairment of any collateral securing the Liabilities; (vi) notice of any change in Borrower's credit terms or limits with Lender, including any temporary or permnant increases in Borrower's Credit Line (and Guarantor prospectively consents to any such change); (vii) any non-contractual duties of Lender to Borrower or any Guarantor; and (viii) the protections of any Laws intended to protect consumers or regulate consumer loans, as the Liabilities are commercial in nature.

Page 1 of 5



(e) Authorization. Guarantor authorizes Lender to obtain and share credit information relating to Guarantor from and with credit bureaus, financial institutions, trade creditors, affiliates, and others and to conduct such other credit investigations that Lender in its sole discretion deems necessary. Guarantor expressly authorizes Lender to obtain his or her consumer credit report from time to time at Lender's discretion, and expressly ratifies any such consumer credit report that may have been obtained by or on behalf of Lender prior to the effective date of this Guaranty. Guarantor also authorizes Lender to contact any third parties to disclose information for the purpose of, among other things, obtaining intercreditor agreements and perfecting Lender's security interest. Further, Guarantor authorizes Lender to periodically obtain additional credit information on Guarantor through any available medium.

(f) Communication. Guarantor hereby expressly authorizes Lender and its Affiliates to communicate with Guarantor via facsimile transmissions, email messages, telephonic transmissions, both to a residential telephone line and/or cell phone, including text messaging, using an automatic telephone dialing system or an artificial or prerecorded voice message, and/or any other forms of communication, for any purpose, including general business matters, account information, marketing materials, collection, and/or any other communication needs. Guarantor acknowledges and agrees that such express permission shall extend to any and all of the contact information that Guarantor has provided herein, including any physical and email addresses, phone numbers, fax numbers, etc., and to such other addresses, phone numbers, email addresses, online chat, social media platforms, etc. that Guarantor may provide to Lender or that Lender may obtain from any third party at a later date.

(g) Enforcement. In no event shall Lender have any obligation to proceed against Borrower, any other Guarantor or any other Person, or any security pledged in connection with the Liabilities, before seeking satisfaction from Guarantor. Lender may, at its option, proceed, prior or subsequent to, or simultaneously with, the enforcement of its rights hereunder, to exercise any right or remedy it may have against Borrower, any other Guarantor or other Person, or any security pledged in connection with the Liabilities. This Guaranty is in addition to, and not in substitution for, any other guaranty or other securities which Lender may now or hereafter hold.

(h) Reinstatement. Guarantor agrees that, if, at any time, all or any part of any payment theretofore applied by Lender to any of the Liabilities is or must be rescinded or returned by Lender for any reason whatsoever (including as a result of any insolvency, bankruptcy, or reorganization of Borrower or any of his or her Affiliates), such Liabilities shall, for purposes of this Guaranty, to the extent that such payment is or must be rescinded or returned, be deemed to have continued in existence, notwithstanding such application by Lender, and this Guaranty shall continue to be effective or reinstated, as applicable, as to all such Liabilities, all as though such application by Lender had not been made.

(i) Financial Statements. Upon Lender's request, Guarantor will provide Lender with Guarantor's audited financial statements, as certified by Guarantor's independent certified public accountant, and such other financial statements, information, and other materials as Lender may request from time to time.

(j) Application of Payments; Subrogation. Any amounts received by Lender from any source on account of the Liabilities may be applied by it toward the payment of such of the Liabilities, and in such order of application, as Lender may from time to time elect. Notwithstanding any payments made by or for the account of Guarantor, Guarantor shall not be subrogated to any rights of Lender.

3. TERMINATION.

(a) Payment of Liabilities and Termination of Credit Line. This Guaranty shall be terminated upon the occurrence of all of the following: (i) the payment by Borrower or any Guarantor, either jointly or severally, of all Liabilities outstanding; (ii) the payment of all obligations by Guarantor which may be due to Lender under this Guaranty; and (iii) the filing of a UCC termination statement as to Borrower by or on behalf of Lender, or other written verification from Lender that Borrower's Credit Line is terminated.

(b) Revocation of Guaranty. This Guaranty may be revoked by Guarantor upon written notice to Lender by certified mail, return receipt requested, to the address provided in Section 5(d). This Guaranty shall be deemed terminated upon the occurrence of a revocation in the manner provided in this Section 3(d). However, such revocation and termination shall in no way terminate or otherwise affect: (i) any obligations of Guarantor existing on or prior to the effective date of such revocation or termination; or (ii) any obligations of Guarantor arising after the effective date of such revocation or termination with respect to any Liabilities incurred by Borrower on or before the effective date of such revocation or termination.

4. EVENTS OF DEFAULT. The occurrence of any of the following events shall be considered an event of default under this Guaranty (each, an "Event of Default"):

(a) Guarantor fails to make full payment of any amount owed hereunder after notice from Lender;

(b) Guarantor fails to perform or observe any agreement, covenant, term, or condition contained in this Guaranty (other than any monetary obligation described in clause (a) above), and such failure continues for ten (10) days after notice from Lender;

(c) Guarantor makes an assignment for the benefit of creditors or fails to pay his or her debts as the same become due and payable;

(d) Guarantor petitions or applies to any tribunal for the appointment of a trustee or receiver of the business, estate, or assets or of any substantial portion of his or her business, estate, or assets, or commences any proceedings relating to Guarantor under any bankruptcy, reorganization, insolvency, readjustment of debt, dissolution, or liquidation Law of any jurisdiction, whether now or hereafter in effect (each, a "Bankruptcy Filing");

Page 2 of 5

NextGear Individual Guaranty (v. 1.0)

(e) any Bankruptcy Filing is filed or any related proceedings commenced against Guarantor, and Guarantor by any act indicates his or her approval thereof, consent thereto, or acquiescence therein, or any order is entered appointing any trustee or receiver, declaring Guarantor bankrupt or insolvent, or approving or accepting the Bankruptcy Filing in any such proceedings;

(f) any suit or proceeding is filed or any related proceedings commenced against Guarantor or any of his or her Affiliates, which, if adversely determined, could substantially impair the ability of Guarantor or Borrower to perform any of their respective obligations with respect to this Guaranty or any of the Liabilities, in each case as determined by Lender in its sole and absolute discretion; or

(g) there is any Event of Default by Guarantor under the Note.

If an Event of Default under this Guaranty shall have occurred, in addition to pursuing any remedies which may be available to Lender with respect to the Liabilities, Lender, at its option, may take whatever action at law or in equity Lender may deem necessary, regardless of whether Lender shall have exercised any of its rights or remedies with respect to any of the Liabilities, and Lender may demand, at its option, that Guarantor pay forthwith the full amount which would be due and payable hereunder as if all Liabilities were then due and payable.

5. GENERAL.

(a) <u>Assignment; Successors and Assigns</u>. This Guaranty may be assigned by Lender without notice to Guarantor, but Guarantor may not assign this Guaranty without the prior written consent of Lender. The guaranty and the other agreements contained herein shall bind the legal representatives, heirs, successors, and assigns of Guarantor, and shall inure to the benefit of Lender and its successors and assigns. Each reference to Guarantor herein shall be deemed to include the legal representatives, heirs, and agents of Guarantor, and their respective successors and assigns.

(b) <u>Amendment; Merger</u>. This Guaranty is intended by the Parties to be an amendment to and restatement of any prior Individual Guaranty or other similar document or instrument between Lender (or any predecessor of Lender, including Dealer Services Corporation and/or Manheim Automotive Financial Services, Inc.) and Guarantor, or otherwise executed by Guarantor for the benefit Lender (or any predecessor of Lender, including Dealer Services Corporation and/or Manheim Automotive Financial Services, Inc.). This Guaranty may be modified or amended only upon the written consent of Lender and Guarantor. The Parties acknowledge that Guarantor may have also acknowledged and cosented to the terms and conditions set forth in the Note, and, in such event, this Guaranty shall be deemed supplemental and in addition to the terms and conditions of the Note to which Guarantor has acknowledged and consented. In the event of any conflict between a term or provision set forth in this Guaranty, and a term or provision set forth in the Note, the term or provision set forth in this Guaranty shall, as between Lender and Guarantor, be deemed controlling.

(c) <u>Execution</u>. Guarantor may execute this Guaranty only by original signature of Guarantor, unless otherwise authorized by Lender. Lender may, in its sole discretion, permit Guarantor to execute this Guaranty by affixing to this Guaranty an electronic or digital signature. Guarantor acknowledges and agrees that any electronic or digital signature of Guarantor shall for all purposes be deemed effective and constitute the valid signature of Guarantor, and shall be deemed to satisfy all requirements imposed on electronic or digital signatures under the UCC, the Electronic Signatures in Global and National Commerce Act (the "E-Sign Act"), and any other similar Laws relating to the validity or enforceability of electronic or digital signatures, and such electronic or digital signature shall not be denied legal effect, validity, or enforceability solely because it is in electronic or digital form. A facsimile or photocopied reproduction of the signatures on this Guaranty shall be deemed original signatures for all intents and purposes.

(d) <u>Notices</u>. All notices, demands and requests required or permitted to be given under this Guaranty shall be (i) in writing, (ii) sent by facsimile with receipt confirmed by telephone (but only if a facsimile number is provided below), delivered by personal delivery or sent by commercial delivery service or certified mail, return receipt requested (except with respect to notices pursuant to Section 3(b), which notices may only be given by certified mail, return receipt requested), (iii) deemed to have been given on the date sent by facsimile with receipt confirmed by telephone, the date of personal delivery or the date set forth in the records of the delivery service or on the return receipt, and (iv) addressed as follows (or, in the case of Lender, to any other subsequent address that Lender may provide to Guarantor (through written notice or otherwise) for purposes of directing future notices, demands or requests):

If to Lender:          NextGear Capital, Inc., 1320 City Center Drive, Suite 100, Carmel, IN 46032
                         Telephone: (317) 571-3721  Facsimile:  (317) 571-3737

                         with a copy to:

                         NextGear Capital, Inc., 1320 City Center Drive, Suite 100, Carmel, IN 46032
                         Telephone: (317) 571-3721  Facsimile:  (317) 571-3737
                         Attention: Legal Department

If to Guarantor:       Herman Jeffrey Baker
                         10 Intervale RdProvidence, RI 029043720
                         Telephone: (401) 331-7585 Mobile: (401) 741-1800

(e) <u>No Waiver</u>. No failure or delay by Lender in exercising any right, power, or privilege or the granting of an exception by Lender with respect

                                              NextGear Individual Guaranty (v. 1.0)



to any term or condition of this Guaranty will operate as a waiver of such right, power, or privilege, and no single or partial exercise of any such right, power, or privilege will preclude any other or further exercise of such right, power, or privilege, or the exercise of any other right, power, or privilege by Lender.

(b) <u>Severability</u>. Any provision of this Guaranty that is invalid or unenforceable in any jurisdiction shall, as to that jurisdiction, be ineffective to the extent of such invalidity or unenforceability, without rendering invalid or unenforceable the remaining provisions of this Guaranty or affecting the validity or enforceability of any provision of this Guaranty in any other jurisdiction.

(c) <u>Governing Law</u>. Except with respect to the interpretation or enforcement of the arbitration and other provisions set forth in Section 5(i) (which shall be governed by the Federal Arbitration Act), the validity, enforceability, and interpretation of this Guaranty shall be governed by the internal Laws of the State of Indiana, without regard to conflicts of Laws provisions thereof.

(d) <u>Jurisdiction and Venue</u>. As evidenced by Guarantor's signature below, Guarantor submits to the personal jurisdiction and venue of the state ~~and federal courts of Marion County and Hamilton County,~~ Indiana, and agrees that any and all claims or disputes pertaining to this Guaranty, or to any matter arising out of or related to this Guaranty, initiated by Guarantor against Lender, shall be brought in the state or ~~federal courts of Marion County or Hamilton County,~~ Indiana. Further, Guarantor expressly consents to the jurisdiction and venue of the ~~state and federal courts of Marion County and Hamilton County,~~ Indiana, as to any legal or equitable action that may be brought in such court by Lender, and waives any objection based upon lack of personal jurisdiction, improper venue or forum non conveniens with respect to any such action. ~~Guarantor acknowledges and agrees that Lender reserves the right to initiate and prosecute any action against Guarantor in any court of competent jurisdiction, and Guarantor consents to such forum as Lender may elect.~~ *Providence RI (ATB)* DW

*Providence RI (ATB)* DW

(e) <u>Dispute Resolution; Waiver of Class Action Rights</u>.

(i) In the unlikely event that Lender is unable to resolve a dispute or claim that Guarantor may have, Guarantor agrees to arbitrate any such dispute or claim. This agreement to arbitrate is intended to be broadly interpreted, and includes (i) all disputes, claims and counterclaims arising out of or relating to this Guaranty or any aspect of Guarantor's relationship with Lender, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory; (ii) all disputes, claims and counterclaims that may have arisen before this Guaranty or any prior contract or agreement between Guarantor and Lender; and (iii) any disputes, claims and counterclaims that may arise after the termination of this Guaranty. Additionally, Guarantor acknowledges that Lender may (but shall in no event be required to) arbitrate any dispute or claim that it may have against Guarantor, with any such arbitration being governed by the provisions of this Section 5(i). Guarantor, at his or her election, may opt-out of the arbitration provisions set forth in Sections 5(i)(i), 5(i)(iii) and 5(i)(iv) by providing written notice of his or her election to opt-out no later than thirty (30) days after Guarantor's execution of this Guaranty, which notice shall be provided to Lender pursuant to Section 5(d) ("Opt-Out Notice"), provided that such Opt-Out Notice shall become effective only upon Guarantor's receipt of written confirmation from Lender that such Opt-Out Notice has been received by Lender within the required time period. Guarantor acknowledges and agrees that, irrespective of any Opt-Out Notice or any written confirmation thereof, Guarantor shall in all events be subject to the provisions of Section 5(i)(ii).

(ii) ANY ARBITRATION PROCEEDING UNDER THIS GUARANTY WILL TAKE PLACE ON AN INDIVIDUAL BASIS. CLASS ARBITRATIONS AND CLASS ACTIONS OF ANY KIND (WHETHER PURSUED THROUGH ARBITRATION OR THROUGH THE COURTS) ARE NOT PERMITTED. GUARANTOR AGREES THAT IT MAY BRING CLAIMS AGAINST LENDER ONLY IN HIS OR HER INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING. GUARANTOR AGREES THAT, BY ENTERING INTO THIS GUARANTY, GUARANTOR IS WAIVING HIS OR HER RIGHT TO PARTICIPATE IN ANY CLASS ACTION OR OTHER SIMILAR REPRESENTATIVE PROCEEDING. UNLESS CONSENTED TO IN WRITING BY LENDER, THE ARBITRATOR MAY NOT CONSOLIDATE MORE THAN ONE PERSON'S CLAIMS, AND MAY NOT OTHERWISE PRESIDE OVER ANY FORM OF A REPRESENTATIVE OR CLASS PROCEEDING. GUARANTOR ACKNOWLEDGES AND AGREES THAT THE SIZE OF BORROWER'S CREDIT LINE, THE INTEREST RATE TO WHICH ADVANCES ARE SUBJECT AND CERTAIN FEES CHARGED TO BORROWER, AS WELL AS THE SIZE AND DATES OF SPECIFIC ADVANCES AND WHAT (IF ANY) GUARANTIES ARE REQUIRED, ARE UNIQUE TO AND NEGOTIATED BY BORROWER (AND, IF APPLICABLE, GUARANTOR), AND THAT SUCH FACTORS WILL AND DO VARY AMONG BORROWERS AND OTHER GUARANTORS.

(iii) Any dispute or claim subject to arbitration pursuant to this Section 5(i) shall be submitted to binding arbitration administered by the Judicial Arbitration and Mediation Service ("JAMS") pursuant to its Comprehensive Arbitration Rules and Procedures as then in effect (the "JAMS Comprehensive Rules"); provided, however, that any dispute or claim that is subject to arbitration pursuant to this Section 5(i) and that involves disputes or claims where the aggregate amount reasonably in dispute or controversy is less than $100,000, shall be submitted to binding arbitration administered by JAMS pursuant to its Streamlined Arbitration Rules and Procedures as in effect as of the effective date of this Guaranty (the "JAMS Streamlined Rules"). The disputes and claims subject to arbitration pursuant to this Section 5(i) will be resolved by a single arbitrator selected pursuant to the JAMS Comprehensive Rules or the JAMS Streamlined Rules, as the case may be. The arbitrator shall be bound by and shall strictly enforce the terms of this Guaranty and may not limit, expand or otherwise modify any term or provision of this Guaranty or any other contract or document between Guarantor and Lender. The arbitrator shall not have the power to award to Guarantor any damages that are excluded or that have been waived by Guarantor under this Guaranty, and Guarantor irrevocably waives any claim that it may have thereto. The arbitrator shall not have the power to order pre-hearing discovery of documents or the taking of depositions. The arbitrator shall render a written decision within six (6) months after being selected. Any arbitration will be held in Indianapolis, Indiana (or its greater metro area). Each Party will bear its own expenses in the arbitration and will share equally the costs of the arbitration; provided, however, that the arbitrator may, in his or

her discretion, award costs and fees to the prevailing Party. The result of any arbitration shall be final and binding upon the Parties. Judgment upon any arbitration award may be entered in any court having jurisdiction over the award or over the applicable party or its assets.

(iv) This Guaranty evidences transactions in interstate commerce, and thus the Federal Arbitration Act governs the interpretation and enforcement of this Section 5(t), notwithstanding the provisions of Section 5(g).

(f) WAIVER OF JURY TRIAL. AFTER CONSULTING OR HAVING HAD THE OPPORTUNITY TO CONSULT WITH COUNSEL, LENDER AND GUARANTOR KNOWINGLY, VOLUNTARILY, AND INTENTIONALLY WAIVE ANY RIGHT EITHER PARTY MAY HAVE TO A TRIAL BY JURY IN ANY LITIGATION BASED UPON OR ARISING OUT OF THIS GUARANTY, OR ANY OF THE TRANSACTIONS CONTEMPLATED BY THIS GUARANTY, OR ANY COURSE OF CONDUCT, STATEMENT, WHETHER ORAL OR WRITTEN, OR ACTIONS OF LENDER OR GUARANTOR. NEITHER LENDER NOR GUARANTOR SHALL SEEK TO CONSOLIDATE, BY COUNTERCLAIM OR OTHERWISE, ANY ACTION IN WHICH A JURY TRIAL HAS BEEN WAIVED WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED. THESE PROVISIONS SHALL NOT HAVE BEEN DEEMED TO HAVE BEEN MODIFIED IN ANY RESPECT OR RELINQUISHED BY LENDER OR GUARANTOR EXCEPT BY WRITTEN INSTRUMENT EXECUTED BY BOTH LENDER AND GUARANTOR.

(g) LIMITATION OF LIABILITY. IN NO EVENT SHALL ANY LENDER PARTY BE LIABLE FOR ANY SPECIAL, INDIRECT, EXEMPLARY, PUNITIVE, INCIDENTAL, MULTIPLE OR CONSEQUENTIAL DAMAGES (INCLUDING ANY DAMAGES RESULTING FROM LOSS OF USE, LOSS OF PROFITS, LOSS OF BUSINESS OR OTHER ECONOMIC LOSS) ARISING OUT OF OR IN CONNECTION WITH THIS GUARANTY, EVEN IF SUCH LENDER PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. FURTHER, IN NO EVENT SHALL THE LENDER PARTIES, COLLECTIVELY, BE LIABLE FOR ANY DAMAGES UNDER THIS GUARANTY OR ANY OTHER LOAN DOCUMENT THAT EXCEED, IN THE AGGREGATE, AN AMOUNT EQUAL TO THE SUM OF THE INTEREST AND FLOORPLAN FEES ACTUALLY PAID TO LENDER BY BORROWER UNDER THE NOTE DURING THE TWELVE (12) MONTH PERIOD IMMEDIATELY PRECEDING THE EVENT GIVING RISE TO THE CLAIM AT ISSUE (OR, IN THE CASE OF MULTIPLE EVENTS, THE FIRST SUCH EVENT GIVING RISE TO THE CLAIM AT ISSUE).

(h) Descriptive Headings; Interpretation. The descriptive headings herein are for convenience of reference only and shall not control or affect the meaning or construction of any provision of this Guaranty. As used in this Guaranty, the terms "include," "includes," and "including" are deemed to be followed by "without limitation" whether or not they are in fact followed by such words or words of like import.

WHEREFORE, Guarantor has executed this Guaranty on the date set forth below.

GUARANTOR:

By: _____

Herman Jeffrey Baker

Date: 1/31/14

STATE OF: CT      )

                 ) ss: Branford

COUNTY OF: New Haven    )

Before me, a Notary Public in and for said County and State, personally appeared Herman Jeffrey Baker _____ who acknowledged the execution of the foregoing Individual Guaranty, and who, having been duly sworn, states that any representations contained therein are true

Witness my hand and Notarial Seal this 3 l day of Jan. 20 14

Notary Signature _____

Notary Name (Printed) Dustin E. Wilkinson

My Commission Expires: 10/3/2018     County of Residence: Tolland

Page 5 of 5

# EXHIBIT B

Rhode Island Department of State
**Nellie M. Gorbea**
Secretary of State

HOME    BUSINESS SERVICES    ELECTIONS    CIVICS AND EDUCATION

## Entity Summary

**ID Number: 000151547**    **Request certificate**    **New search**

**Summary for: NextGear Capital, Inc.**

| | |
|---|---|
| **The exact name of the Foreign Corporation:** NextGear Capital, Inc. | |
| **The name used to transact business in Rhode Island:** DSC of Indiana | |
| **The name was changed from:** Dealer Services Corporation **on** 02-12-2013 | |
| **The fictitious name of:** DSC of Indiana **was filed on** 03-07-2011<br>**The fictitious name of:** Field Logic **was filed on** 12-17-2007 **and was abandoned on** 12-22-2010<br>**The fictitious name of:** Discover DSC **was filed on** 11-01-2005 | |
| **Entity type:** Foreign Corporation | |
| **Identification Number:** 000151547 | |
| **Date of Qualification in Rhode Island:** 11-02-2005    **Effective Date:** 11-02-2005 | |
| **Organized under the laws of: State:** DE **Country:** USA | |

**The location of the Principal Office:**

Address:  6205-A PEACHTREE DUNWOODY ROAD

City or Town, State, Zip, Country:       ATLANTA,  GA  30328  USA

**The mailing address or specified office:**

Address:

City or Town, State, Zip, Country:

**Agent Resigned:** N    **Address Maintained:** Y

**The name and address of the Registered Agent:**

Name:    CORPORATION SERVICE COMPANY

Address:  222 JEFFERSON BOULEVARD, SUITE 200

City or Town, State, Zip, Country:       WARWICK,  RI  02888  USA

**The Officers and Directors of the Corporation:**

| Title | Individual Name | Address |
|---|---|---|
| PRESIDENT | SANFORD H SCHWARTZ | 6205-A PEACHTREE DUNWOODY RD. ATLANTA, GA 30328 USA |
| TREASURER | MARIA L FRIEDMAN | 6205-A PEACHTREE DUNWOODY RD. ATLANTA, GA 30328 USA |
| SECRETARY | JULIETTE W PRYOR | 6205-A PEACHTREE DUNWOODY RD. ATLANTA, GA 30328 USA |
| DIRECTOR | MARK F BOWSER | 6205-A PEACHTREE DUNWOODY RD. ATLANTA, GA 30328 USA |
| DIRECTOR | MARIA L FRIEDMAN | 6205-A PEACHTREE DUNWOODY RD. ATLANTA, GA 30328 USA |
| DIRECTOR | SANFORD H SCHWARTZ | 6205-A PEACHTREE DUNWOODY RD. ATLANTA, GA 30328 USA |

**The total number of shares and the par value, if any, of each class of stock which this business entity is authorized to issue:**

| Class of Stock | Series | Par value per share | Total Authorized<br>No. of shares | Total issued and outstanding<br>No. of shares |
|---|---|---|---|---|
| CWP | | $ 1.0000 | 1,000 | 100 |

**Purpose:**

AUTO DEALER INVENTORY FINANCE
TITLE: 7-1.2-1405

**North American Industry Classification System Code(NAICS):**

522220 Sales Financing

**View filings for this business entity:**

ALL FILINGS
Annual Report
Annual Report - Amended
Annual Report - Reinstatement
Annual Reports - Prior to 2006

Click here to access 2006 and 2007 annual reports filed prior to July 25, 2007. The corporate ID is required.

**View filings**

**New search**

---

Business Services Division |      Rhode Island Department of State

# EXHIBIT C

STATE OF INDIANA   )  HAMILTON COUNTY SUPERIOR COURT 2
           ) SS:
COUNTY OF HAMILTON  )  CAUSE NO. 29C01-1809-CC-008218

NEXTGEAR CAPITAL, INC.,  )
   Plaintiff,     )
v.          )
          )
CT102 LLC D/B/A JD BYRIDER )
OF NEW HAVEN AND METRO )
MOTORS, AND HERMAN  )
JEFFREY BAKER,    )
   Defendants.   )

## AFFIDAVIT OF H. JEFF BAKER

Comes now Defendant, H. Jeff Baker, and for his Affidavit states as follows:

1. I am over 18, competent to testify, and have personal knowledge of the facts set forth herein.

2. I am the Owner and Manager of CT102 LLC, a Defendant in this matter.

3. I reside in East Greenwich, Rhode Island.

**Dispute As To Jurisdiction, Venue and Authenticity Of Plaintiff's Designated Materials**

4. On or about January 31, 2014, Metro Motors executed an agreement ("Agreement") with the Plaintiff, NextGear Capital, Inc. ("NextGear").

5. As part of the Agreement, NextGear required that I execute an Individual Guaranty on behalf of Metro Motors.

6. When I executed the Individual Guaranty under the Agreement, I specifically refused to consent to venue or jurisdiction in Indiana. I made clear to NextGear that I was unwilling to execute the Individual Guaranty if the venue and jurisdiction was in Indiana.

7.      When I signed the Individual Guaranty, I crossed out lines which would cause me to consent to Indiana jurisdiction or venue, and wrote in that I would only submit to jurisdiction and venue in Rhode Island. I initialed next to each of these modifications. Ex. 2.

8.      NextGear's representative agreed to these modifications and also initialed next to the modifications regarding jurisdiction and venue. Ex. 2.

9.      NextGear's representative assured me that these modifications were acceptable and sufficient.

10.     I did not consent to jurisdiction or venue in Indiana.

11.     I made payments under the Agreement for several years, and NextGear accepted the benefits of my performance.

12.     The document NextGear has designated as Exhibit A to its Motion for Summary Judgment does not contain the modifications that I made, and which NextGear's representative agreed to.

13.     The document NextGear has designated as Exhibit A does not represent the agreement the parties made. When NextGear filed this Complaint, it switched out the original Agreement with its standard form so this case would take place in Indiana.

**Plaintiff's Intentional Interference With Sale of Stock #1020**

14.     On or about April 2, 2018, Metro Motors paid off Stock #1020, a vehicle that had been previously floored with NextGear ("Stock #1020").

15.     On or about April 2, 2018, Metro Motors sent Stock #1020 to Southern Auto Auctions ("SAA") for SAA to sell at auction.

16.     I requested NextGear send title for Stock #1020 directly to SAA in order for it to sell at the best possible price.

17.     Upon information and belief, NextGear sent title for Stock #1020 to SAA, as requested.

18.     For unknown reasons, however, NextGear also demanded that SAA remit any funds obtained for sale of Stock #1020 directly to NextGear. Exhibit 3.

19.     While Stock #1020 had previously been floored with NextGear, Metro Motors had paid it off in full before sending it to SAA. NextGear was not entitled to any proceeds from sale of Stock #1020.

20.     Neither NextGear nor SAA informed Defendants that NextGear had demanded SAA remit funds for auction of Stock #1020 to NextGear.

21.     SAA sold Stock #1020 at auction on or prior to April 16, 2018.

**NextGear's Intentional Interference With Third Party Contract**

22.     After the sale of Stock #1020 at auction, and without knowledge of NextGear's demand to SAA, Metro Motors reasonably expected SAA to remit the funds to Metro Motors.

23.     After sending Stock #1020 to SAA, Metro Motors had earmarked these expected funds for payment of amounts owed to other vendors, including Automotive Finance Company ("AFC").

24.     AFC is a company similar to NextGear which finances vehicles for car dealers.

25.     Metro Motors made payment to AFC under the belief that it had sufficient funds after the sale of Stock #1020.

26.     As a result of NextGear's demand to SAA, and SAA's compliance with that demand, there were insufficient funds for the payment Metro Motors made to Defendants.

27.     Shortly thereafter, on or about May 22, 2018, AFC repossessed all inventory it

Page 3 of 6

had floored with Metro Motors.

28.     As defined in the Agreement with NextGear, an Event of Default includes when "Borrower or any Guarantor, or any of their respective Parent Companies, has defaulted in the payment or performance of any debt or obligation under any other agreement, whether to Lender or to a third party." Ex. 2 at p. 7, § 6(e).

29.     Upon information and belief, a representative from AFC informed NextGear of the alleged default with AFC.

30.     Shortly thereafter, on or about May 23, 2018, NextGear repossessed all inventory it had floored with Metro Motors (the "Collateral").

31.     NextGear did not contact Defendants to inquire about the alleged default with AFC.

32.     NextGear improperly repossessed the Collateral and prevented Defendants from selling it at or near market rates.

33.     NextGear's conduct in improperly repossessing the Collateral has caused Defendants to be unable to make any more payments under the Agreement.

34.     Since the above-described events, NextGear has told Manheim Auctions to prohibit Defendants from selling any vehicles at Manheim auctions, and Manheim has complied.

35.     Since the above-described events, AFC has told SAA to prohibit Defendants from selling any vehicles at SAA auctions, and SAA has complied.

36.     As a result of Plaintiff's actions, Defendants are now prohibited from selling at Manheim or SAA auctions, Defendants have been unable to sell any other vehicles at auction.

37.     NextGear's conduct in demanding that SAA remit funds from the sale of the Vehicle to NextGear, and its subsequent conduct in repossessing Defendants' inventory and

prohibiting Defendants from selling at Manheim auctions is the sole cause of any damages NextGear has suffered.

38.     NextGear failed to act in a commercially reasonable manner in repossessing the inventory.

39.     I have asked NextGear for an explanation as to its conduct, but NextGear has failed to adequately explain its actions. Exhibit 3.

40.     NextGear failed to act in a commercially reasonable manner in requesting Defendants be barred from selling any vehicles at Manheim auctions.

### NextGear's Asserted Damages Are Inaccurate

41.     The amounts that NextGear claims I owe are inaccurate and incorrect.

42.     To date, I have not been informed of any amounts the Collateral sold for after NextGear repossessed it.

43.     If the Collateral was sold at auction, I would have been notified.

44.     The Collateral is worth far less now than it was at the time of repossession.

45.     NextGear has failed to resell the Collateral in a commercially reasonable time frame.

46.     NextGear has failed to act commercially reasonable in its repossession of the Collateral.

47.     The amounts NextGear claims I owe do not reflect amounts NextGear received for sale of the Collateral.

48.     I had paid on the items of Collateral for some time, and the amounts NextGear claims I owe, as shown by Exhibit C to NextGear's Motion for Summary Judgment, do not accurately reflect the equity I had built in each vehicle.

49.     The amounts NextGear claims I owe are incorrect.

50.     When I signed up with NextGear, I opted out of the NextGear Collateral Protection Program as I already had adequate Garage Keepers Insurance.

51.     NextGear charged Defendants for the Collateral Protection Program for over a year before it finally stopped charging for this program which Defendants had specifically declined.

52.     I have made due demand on NextGear for refund of the amounts I paid on the Collateral Protection Program and NextGear has failed or refused to pay Defendants back the amounts it owes.

**FURTHER AFFIANT SAITH NOT.**

I AFFIRM UNDER THE PENALTIES FOR PERJURY THE FOREGOING REPRESENTATIONS ARE TRUE AND CORRECT.

Date: 9/16/19

H. Jeff Baker
Member, CT102, LLC

Page 6 of 6

# EXHIBIT D

## INDIVIDUAL GUARANTY

THIS INDIVIDUAL GUARANTY (this "Guaranty") is made and entered into by the undersigned guarantor ("Guarantor") in favor of NextGear Capital, Inc. ("Lender"), pursuant to that certain Demand Promissory Note and Loan and Security Agreement by and between Borrower (as defined below) and Lender (the "Note").

NOW, THEREFORE, in consideration of any loan or other financial accommodation heretofore or hereafter at any time made or granted to Borrower by Lender, and the mutual covenants, agreements, and conditions contained herein, Guarantor agrees as follows:

1.   DEFINITIONS.  Capitalized terms used herein and not defined in this Section 1 or elsewhere in this Guaranty shall have the respective meanings as set forth in the Note (such meanings to be equally applicable to both the singular and plural forms of the terms defined).  Any capitalized terms used herein, but not otherwise defined herein or in the Note, as the case may be, shall have the meanings ascribed to them in the UCC.

   (a)   "Borrower" shall mean the Person listed below, including any Affiliates of such Person, whether now in existence or hereinafter established or acquired:

   Ct102 Llc, d/b/a JD Byrider of New Haven
   3 Liesl Ln , Branford, CT  064053036
   Telephone: (203) 481-9000 Facsimile:

   (b)   "Liabilities" shall mean any and all Advances, debts, financial obligations, fees, charges, expenses, attorneys' fees, and costs of collection owing, arising, due, or payable from Borrower to Lender or any of its Affiliates, of any kind or nature, present or future, under any instrument, guaranty, or other document, whether arising under the Note or any other Loan Document, whether directly or indirectly, absolute or contingent, primary or secondary, due or to become due, now existing or hereafter arising, and however acquired.

2.   GUARANTY AND OTHER AGREEMENTS.

   (a)   Guaranty Obligations.  Guarantor hereby voluntarily, unconditionally, and absolutely guarantees (i) the full and prompt payment when due, whether by acceleration or otherwise, and at all times hereafter, of all Liabilities; and (ii) the full and prompt performance of all the terms, covenants, conditions, and agreements related to the Liabilities.  Guarantor further agrees to pay all expenses, including attorneys' fees and court costs (including, in each case, those relating to bankruptcy and appeals), paid or incurred by Lender or its Affiliates in endeavoring to collect on any Liabilities, and in enforcing this Guaranty or in defending any claims by Borrower or any Guarantor related to any of the Liabilities, plus interest on such amounts at the lesser of (A) thirteen percent (13%) per annum, compounded daily, or (B) the maximum rate permitted by Law.  Interest on such amounts paid or incurred by Lender shall be computed from the date of payment made by Lender and shall be payable on demand.

   (b)   General Nature of Guaranty.  Guarantor acknowledges that this Guaranty is a guaranty of payment and not of collection, and that his or her obligations hereunder shall be absolute, unconditional, and unaffected by: (i) the waiver of the performance or observance by Borrower or any Guarantor of any agreement, covenant, term, or condition to be performed or observed by Borrower or any such Guarantor, as the case may be; (ii) the extension of time for the payment of any sums owing or payable with respect to any of the Liabilities or the time for performance of any other obligation arising out of or relating to any of the Liabilities; (iii) the modification, alteration, or amendment of any obligation arising out of or relating to any of the Liabilities; (iv) any failure, delay, or omission by Lender to enforce, assert, or exercise any right, power, or remedy in connection with any of the Liabilities; (v) the genuineness, validity, or enforceability of any of the Liabilities or any document related thereto; (vi) the existence, value, or condition of, or failure of Lender to perfect its lien against, any security pledged in connection with the Liabilities; (vii) the release of any security pledged in connection with the Liabilities, or the release, modification, waiver, or failure to enforce any other guaranty, pledge, or security agreement; (viii) the voluntary or involuntary liquidation, dissolution, sale of all or substantially all of the property, marshalling of assets and liabilities, receivership, insolvency, bankruptcy, assignment for the benefit of creditors, reorganization, arrangement, composition, or readjustment or other similar application or proceeding affecting Borrower or any assets of Borrower; (ix) the release or discharge of Borrower or any other Guarantor from the performance or observance of any agreements, covenants, terms, or conditions in connection with any of the Liabilities, by operation of Law or otherwise; (x) the default of Borrower in any obligations to Guarantor or any torts committed by Borrower against Guarantor, even if Lender is alleged to be complicit or to have committed a direct tort against Guarantor; or (xi) any change in Borrower's ownership, entity type, legal structure, or state of organization or formation, or in Guarantor's relationship to Borrower or any other Guarantor.

   (c)   Continuing and Unlimited Nature of Guaranty.  The obligations of Guarantor under this Guaranty shall be continuing and shall cover any and all Liabilities existing as of the effective date of this Guaranty and any and all Liabilities thereafter incurred by Borrwer, including any and all Liabilities existing at the time of any termination of this Guaranty.  This Guaranty shall be unlimited in amount and shall continue in effect until this Guaranty is terminated pursuant to Section 3.

   (d)   Waivers by Guarantor.  Guarantor hereby expressly waives: (i) notice of the acceptance by Lender of this Guaranty; (ii) notice of the existence, creation, or non-payment of all or any of the Liabilities; (iii) presentment, demand, notice of dishonor, protest, and all other notices whatsoever; (iv) diligence in collection or protection of, or realization upon any of the Liabilities, any obligation under this Guaranty, or any security for or guaranty of any of the foregoing; (v) impairment of any collateral securing the Liabilities; (vi) notice of any change in Borrower's credit terms or limits with Lender, including any temporary or permant increases in Borrower's Credit Line (and Guarantor prospectively consents to any such change); (vii) any non-contractual duties of Lender to Borrower or any Guarantor; and (viii) the protections of any Laws intended to protect consumers or regulate consumer loans, as the Liabilities are commercial in nature.

(e) **Authorization.** Guarantor authorizes Lender to obtain and share credit information relating to Guarantor from and with credit bureaus, financial institutions, trade creditors, affiliates, and others and to conduct such other credit investigations that Lender in its sole discretion deems necessary. Guarantor expressly authorizes Lender to obtain his or her consumer credit report from time to time at Lender's discretion, and expressly ratifies any such consumer credit report that may have been obtained by or on behalf of Lender prior to the effective date of this Guaranty. Guarantor also authorizes Lender to contact any third parties to disclose information for the purpose of, among other things, obtaining intercreditor agreements and perfecting Lender's security interest. Further, Guarantor authorizes Lender to periodically obtain additional credit information on Guarantor through any available medium.

(f) **Communication.** Guarantor hereby expressly authorizes Lender and its Affiliates to communicate with Guarantor via facsimile transmissions, email messages, telephonic transmissions, both to a residential telephone line and/or cell phone, including text messaging, using an automatic telephone dialing system or an artificial or prerecorded voice message, and/or any other forms of communication, for any purpose, including general business matters, account information, marketing materials, collection, and/or any other communication needs. Guarantor acknowledges and agrees that such express permission shall extend to any and all of the contact information that Guarantor has provided herein, including any physical and email addresses, phone numbers, fax numbers, etc., and to such other addresses, phone numbers, email addresses, online chat, social media platforms, etc. that Guarantor may provide to Lender or that Lender may obtain from any third party at a later date.

(g) **Enforcement.** In no event shall Lender have any obligation to proceed against Borrower, any other Guarantor or any other Person, or any security pledged in connection with the Liabilities, before seeking satisfaction from Guarantor. Lender may, at its option, proceed, prior or subsequent to, or simultaneously with, the enforcement of its rights hereunder, to exercise any right or remedy it may have against Borrower, any other Guarantor or other Person, or any security pledged in connection with the Liabilities. This Guaranty is in addition to, and not in substitution for, any other guaranty or other securites which Lender may now or hereafter hold.

(h) **Reinstatement.** Guarantor agrees that, if, at any time, all or any part of any payment theretofore applied by Lender to any of the Liabilities is or must be rescinded or returned by Lender for any reason whatsoever (including as a result of any insolvency, bankruptcy, or reorganization of Borrower or any of his or her Affiliates), such Liabilities shall, for purposes of this Guaranty, to the extent that such payment is or must be rescinded or returned, be deemed to have continued in existence, notwithstanding such application by Lender, and this Guaranty shall continue to be effective or reinstated, as applicable, as to all such Liabilities, all as though such application by Lender had not been made.

(i) **Financial Statements.** Upon Lender's request, Guarantor will provide Lender with Guarantor's audited financial statements, as certified by Guarantor's independent certified public accountant, and such other financial statements, information, and other materials as Lender may request from time to time.

(j) **Application of Payments; Subrogation.** Any amounts received by Lender from any source on account of the Liabilities may be applied by it toward the payment of such of the Liabilities, and in such order of application, as Lender may from time to time elect. Notwithstanding any payments made by or for the account of Guarantor, Guarantor shall not be subrogated to any rights of Lender.

3. TERMINATION.

(a) **Payment of Liabilities and Termination of Credit Line.** This Guaranty shall be terminated upon the occurrence of all of the following: (i) the payment by Borrower or any Guarantor, either jointly or severally, of all Liabilities outstanding; (ii) the payment of all obligations by Guarantor which may be due to Lender under this Guaranty; and (iii) the filing of a UCC termination statement as to Borrower by or on behalf of Lender, or other written verification from Lender that Borrower's Credit Line is terminated.

(b) **Revocation of Guaranty.** This Guaranty may be revoked by Guarantor upon written notice to Lender by certified mail, return receipt requested, to the address provided in Section 5(d). This Guaranty shall be deemed terminated upon the occurrence of a revocation in the manner provided in this Section 3(d). However, such revocation and termination shall in no way terminate or otherwise affect: (i) any obligations of Guarantor existing on or prior to the effective date of such revocation or termination; or (ii) any obligations of Guarantor arising after the effective date of such revocation or termination with respect to any Liabilities incurred by Borrower on or before the effective date of such revocation or termination.

4. EVENTS OF DEFAULT. The occurrence of any of the following events shall be considered an event of default under this Guaranty (each, an "Event of Default"):

(a) Guarantor fails to make full payment of any amount owed hereunder after notice from Lender;

(b) Guarantor fails to perform or observe any agreement, covenant, term, or condition contained in this Guaranty (other than any monetary obligation described in clause (a) above), and such failure continues for ten (10) days after notice from Lender;

(c) Guarantor makes an assignment for the benefit of creditors or fails to pay his or her debts as the same become due and payable;

(d) Guarantor petitions or applies to any tribunal for the appointment of a trustee or receiver of the business, estate, or assets or of any substantial portion of his or her business, estate, or assets, or commences any proceedings relating to Guarantor under any bankruptcy, reorganization, insolvency, readjustment of debt, dissolution, or liquidation Law of any jurisdiction, whether now or hereafter in effect (each, a "Bankruptcy Filing");

(e) any Bankruptcy Filing is filed or any related proceedings commenced against Guarantor, and Guarantor by any act indicates his or her approval thereof, consent thereto, or acquiescence therein, or any order is entered appointing any trustee or receiver, declaring Guarantor bankrupt or insolvent, or approving or accepting the Bankruptcy Filing in any such proceedings;

(f) any suit or proceeding is filed or any related proceedings commenced against Guarantor or any of his or her Affiliates, which, if adversely determined, could substantially impair the ability of Guarantor or Borrower to perform any of their respective obligations with respect to this Guaranty or any of the Liabilities, in each case as determined by Lender in its sole and absolute discretion; or

(g) there is any Event of Default by Guarantor under the Note.

If an Event of Default under this Guaranty shall have occurred, in addition to pursuing any remedies which may be available to Lender with respect to the Liabilities, Lender, at its option, may take whatever action at law or in equity Lender may deem necessary, regardless of whether Lender shall have exercised any of its rights or remedies with respect to any of the Liabilities, and Lender may demand, at its option, that Guarantor pay forthwith the full amount which would be due and payable hereunder as if all Liabilities were then due and payable.

5. GENERAL.

(a) _Assignment; Successors and Assigns_. This Guaranty may be assigned by Lender without notice to Guarantor, but Guarantor may not assign this Guaranty without the prior written consent of Lender. The guaranty and the other agreements contained herein shall bind the legal representatives, heirs, successors, and assigns of Guarantor, and shall inure to the benefit of Lender and its successors and assigns. Each reference to Guarantor herein shall be deemed to include the legal representatives, heirs, and agents of Guarantor, and their respective successors and assigns.

(b) _Amendment; Merger_. This Guaranty is intended by the Parties to be an amendment to and restatement of any prior Individual Guaranty or other similar document or instrument between Lender (or any predecessor of Lender, including Dealer Services Corporation and/or Manheim Automotive Financial Services, Inc.) and Guarantor, or otherwise executed by Guarantor for the benefit Lender (or any predecessor of Lender, including Dealer Services Corporation and/or Manheim Automotive Financial Services, Inc.). This Guaranty may be modified or amended only upon the written consent of Lender and Guarantor. The Parties acknowledge that Guarantor may have also acknowledged and cosented to the terms and conditions set forth in the Note, and, in such event, this Guaranty shall be deemed supplemental and in addition to the terms and conditions of the Note to which Guarantor has acknowledged and consented. In the event of any conflict between a term or provision set forth in this Guaranty, and a term or provision set forth in the Note, the term or provision set forth in this Guaranty shall, as between Lender and Guarantor, be deemed controlling.

(c) _Execution_. Guarantor may execute this Guaranty only by original signature of Guarantor, unless otherwise authorized by Lender. Lender may, in its sole discretion, permit Guarantor to execute this Guaranty by affixing to this Guaranty an electronic or digital signature. Guarantor acknowledges and agrees that any electronic or digital signature of Guarantor shall for all purposes be deemed effective and constitute the valid signature of Guarantor, and shall be deemed to satisfy all requirements imposed on electronic or digital signatures under the UCC, the Electronic Signatures in Global and National Commerce Act (the "_E-Sign Act_"), and any other similar Laws relating to the validity or enforceability of electronic or digital signatures, and such electronic or digital signature shall not be denied legal effect, validity, or enforceability solely because it is in electronic or digital form. A facsimile or photocopied reproduction of the signatures on this Guaranty shall be deemed original signatures for all intents and purposes.

(d) _Notices_. All notices, demands and requests required or permitted to be given under this Guaranty shall be (i) in writing, (ii) sent by facsimile with receipt confirmed by telephone (but only if a facsimile number is provided below), delivered by personal delivery or sent by commercial delivery service or certified mail, return receipt requested (except with respect to notices pursuant to Section 3(b), which notices may only be given by certified mail, return receipt requested), (iii) deemed to have been given on the date sent by facsimile with receipt confirmed by telephone, the date of personal delivery or the date set forth in the records of the delivery service or on the return receipt, and (iv) addressed as follows (or, in the case of Lender, to any other subsequent address that Lender may provide to Guarantor (through written notice or otherwise) for purposes of directing future notices, demands or requests):

| | |
|---|---|
| If to Lender: | NextGear Capital, Inc., 1320 City Center Drive, Suite 100, Carmel, IN 46032<br>Telephone: (317) 571-3721 Facsimile: (317) 571-3737 |
| | with a copy to: |
| | NextGear Capital, Inc., 1320 City Center Drive, Suite 100, Carmel, IN 46032<br>Telephone: (317) 571-3721 Facsimile: (317) 571-3737<br>Attention: Legal Department |
| If to Guarantor: | Herman Jeffrey Baker<br>10 Intervale RdProvidence, RI 029063720<br>Telephone: (401) 331-7585 Mobile: (401) 741-1800 |

(e) _No Waiver_. No failure or delay by Lender in exercising any right, power, or privilege or the granting of an exception by Lender with respect

to any term or condition of this Guaranty will operate as a waiver of such right, power, or privilege, and no single or partial exercise of any such right, power, or privilege will preclude any other or further exercise of such right, power, or privilege, or the exercise of any other right, power, or privilege by Lender.

(b) <u>Severability</u>. Any provision of this Guaranty that is invalid or unenforceable in any jurisdiction shall, as to that jurisdiction, be ineffective to the extent of such invalidity or unenforceability, without rendering invalid or unenforceable the remaining provisions of this Guaranty or affecting the validity or enforceability of any provision of this Guaranty in any other jurisdiction.

(c) <u>Governing Law</u>. Except with respect to the interpretation or enforcement of the arbitration and other provisions set forth in Section 5(i) (which shall be governed by the Federal Arbitration Act), the validity, enforceability, and interpretation of this Guaranty shall be governed by the internal Laws of the State of Indiana, without regard to conflicts of Laws provisions thereof.

(d) <u>Jurisdiction and Venue</u>. As evidenced by Guarantor's signature below, Guarantor submits to the personal jurisdiction and venue of the state and federal courts of Marion County and Hamilton County, Indiana, and agrees that any and all claims or disputes pertaining to this Guaranty, or to any matter arising out of or related to this Guaranty, initiated by Guarantor against Lender, shall be brought in the state or federal courts of Marion County or Hamilton County, Indiana. Further, Guarantor expressly consents to the jurisdiction and venue of the state and federal courts of Marion County and Hamilton County, Indiana, as to any legal or equitable action that may be brought in such court by Lender, and waives any objection based upon lack of personal jurisdiction, improper venue or forum non conveniens with respect to any such action. Guarantor acknowledges and agrees that Lender reserves the right to initiate and prosecute any action against Guarantor in any court of competent jurisdiction, and Guarantor consents to such forum as Lender may elect.

(e) <u>Dispute Resolution; Waiver of Class Action Rights</u>.

   (i) In the unlikely event that Lender is unable to resolve a dispute or claim that Guarantor may have, Guarantor agrees to arbitrate any such dispute or claim. This agreement to arbitrate is intended to be broadly interpreted, and includes (i) all disputes, claims and counterclaims arising out of or relating to this Guaranty or any aspect of Guarantor's relationship with Lender, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory; (ii) all disputes, claims and counterclaims that may have arisen before this Guaranty or any prior contract or agreement between Guarantor and Lender; and (iii) any disputes, claims and counterclaims that may arise after the termination of this Guaranty. Additionally, Guarantor acknowledges that Lender may (but shall in no event be required to) arbitrate any dispute or claim that it may have against Guarantor, with any such arbitration being governed by the provisions of this Section 5(i). Guarantor, at his or her election, may opt-out of the arbitration provisions set forth in Sections 5(i)(i), 5(i)(iii) and 5(i)(iv) by providing written notice of his or her election to opt-out no later than thirty (30) days after Guarantor's execution of this Guaranty, which notice shall be provided to Lender pursuant to Section 5(d) ("<u>Opt-Out Notice</u>"), provided that such Opt-Out Notice shall become effective only upon Guarantor's receipt of written confirmation from Lender that such Opt-Out Notice has been received by Lender within the required time period. Guarantor acknowledges and agrees that, irrespective of any Opt-Out Notice or any written confirmation thereof, Guarantor shall in all events be subject to the provisions of Section 5(i)(ii).

   (ii) ANY ARBITRATION PROCEEDING UNDER THIS GUARANTY WILL TAKE PLACE ON AN INDIVIDUAL BASIS. CLASS ARBITRATIONS AND CLASS ACTIONS OF ANY KIND (WHETHER PURSUED THROUGH ARBITRATION OR THROUGH THE COURTS) ARE NOT PERMITTED. GUARANTOR AGREES THAT IT MAY BRING CLAIMS AGAINST LENDER ONLY IN HIS OR HER INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING. GUARANTOR AGREES THAT, BY ENTERING INTO THIS GUARANTY, GUARANTOR IS WAIVING HIS OR HER RIGHT TO PARTICIPATE IN ANY CLASS ACTION OR OTHER SIMILAR REPRESENTATIVE PROCEEDING. UNLESS CONSENTED TO IN WRITING BY LENDER, THE ARBITRATOR MAY NOT CONSOLIDATE MORE THAN ONE PERSON'S CLAIMS, AND MAY NOT OTHERWISE PRESIDE OVER ANY FORM OF A REPRESENTATIVE OR CLASS PROCEEDING. GUARANTOR ACKNOWLEDGES AND AGREES THAT THE SIZE OF BORROWER'S CREDIT LINE, THE INTEREST RATE TO WHICH ADVANCES ARE SUBJECT AND CERTAIN FEES CHARGED TO BORROWER, AS WELL AS THE SIZE AND DATES OF SPECIFIC ADVANCES AND WHAT (IF ANY) GUARANTIES ARE REQUIRED, ARE UNIQUE TO AND NEGOTIATED BY BORROWER (AND, IF APPLICABLE, GUARANTOR), AND THAT SUCH FACTORS WILL AND DO VARY AMONG BORROWERS AND OTHER GUARANTORS.

   (iii) Any dispute or claim subject to arbitration pursuant to this Section 5(i) shall be submitted to binding arbitration administered by the Judicial Arbitration and Mediation Service ("<u>JAMS</u>") pursuant to its Comprehensive Arbitration Rules and Procedures as then in effect (the "<u>JAMS Comprehensive Rules</u>"); <u>provided</u>, <u>however</u>, that any dispute or claim that is subject to arbitration pursuant to this Section 5(i) and that involves disputes or claims where the aggregate amount reasonably in dispute or controversy is less than $100,000, shall be submitted to binding arbitration administered by JAMS pursuant to its Streamlined Arbitration Rules and Procedures as in effect as of the effective date of this Guaranty (the "<u>JAMS Streamlined Rules</u>"). The disputes and claims subject to arbitration pursuant to this Section 5(i) shall be resolved by a single arbitrator selected pursuant to the JAMS Comprehensive Rules or the JAMS Streamlined Rules, as the case may be. The arbitrator shall be bound by and shall strictly enforce the terms of this Guaranty and may not limit, expand or otherwise modify any term or provision of this Guaranty or any other contract or document between Guarantor and Lender. The arbitrator shall not have the power to award to Guarantor any damages that are excluded or that have been waived by Guarantor under this Guaranty, and Guarantor irrevocably waives any claim that it may have thereto. The arbitrator shall not have the power to order pre-hearing discovery of documents or the taking of depositions. The arbitrator shall render a written decision within six (6) months after being selected. Any arbitration will be held in Indianapolis, Indiana (or its greater metro area). Each Party will bear its own expenses in the arbitration and will share equally the costs of the arbitration; <u>provided</u>, <u>however</u>, that the arbitrator may, in his or

Page 4 of 5

her discretion, award costs and fees to the prevailing Party. The result of any arbitration shall be final and binding upon the Parties. Judgment upon any arbitration award may be entered in any court having jurisdiction over the award or over the applicable party or its assets.

(iv) This Guaranty evidences transactions in interstate commerce, and thus the Federal Arbitration Act governs the interpretation and enforcement of this Section 5(i), notwithstanding the provisions of Section 5(g).

(f) <u>WAIVER OF JURY TRIAL</u>. AFTER CONSULTING OR HAVING HAD THE OPPORTUNITY TO CONSULT WITH COUNSEL, LENDER AND GUARANTOR KNOWINGLY, VOLUNTARILY, AND INTENTIONALLY WAIVE ANY RIGHT EITHER PARTY MAY HAVE TO A TRIAL BY JURY IN ANY LITIGATION BASED UPON OR ARISING OUT OF THIS GUARANTY, OR ANY OF THE TRANSACTIONS CONTEMPLATED BY THIS GUARANTY, OR ANY COURSE OF CONDUCT, STATEMENT, WHETHER ORAL OR WRITTEN, OR ACTIONS OF LENDER OR GUARANTOR. NEITHER LENDER NOR GUARANTOR SHALL SEEK TO CONSOLIDATE, BY COUNTERCLAIM OR OTHERWISE, ANY ACTION IN WHICH A JURY TRIAL HAS BEEN WAIVED WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED. THESE PROVISIONS SHALL NOT HAVE BEEN DEEMED TO HAVE BEEN MODIFIED IN ANY RESPECT OR RELINQUISHED BY LENDER OR GUARANTOR EXCEPT BY WRITTEN INSTRUMENT EXECUTED BY BOTH LENDER AND GUARANTOR.

(g) <u>LIMITATION OF LIABILITY</u>. IN NO EVENT SHALL ANY LENDER PARTY BE LIABLE FOR ANY SPECIAL, INDIRECT, EXEMPLARY, PUNITIVE, INCIDENTAL, MULTIPLE OR CONSEQUENTIAL DAMAGES (INCLUDING ANY DAMAGES RESULTING FROM LOSS OF USE, LOSS OF PROFITS, LOSS OF BUSINESS OR OTHER ECONOMIC LOSS) ARISING OUT OF OR IN CONNECTION WITH THIS GUARANTY, EVEN IF SUCH LENDER PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. FURTHER, IN NO EVENT SHALL THE LENDER PARTIES, COLLECTIVELY, BE LIABLE FOR ANY DAMAGES UNDER THIS GUARANTY OR ANY OTHER LOAN DOCUMENT THAT EXCEED, IN THE AGGREGATE, AN AMOUNT EQUAL TO THE SUM OF THE INTEREST AND FLOORPLAN FEES ACTUALLY PAID TO LENDER BY BORROWER UNDER THE NOTE DURING THE TWELVE (12) MONTH PERIOD IMMEDIATELY PRECEDING THE EVENT GIVING RISE TO THE CLAIM AT ISSUE (OR, IN THE CASE OF MULTIPLE EVENTS, THE FIRST SUCH EVENT GIVING RISE TO THE CLAIM AT ISSUE).

(h) <u>Descriptive Headings; Interpretation</u>. The descriptive headings herein are for convenience of reference only and shall not control or affect the meaning or construction of any provision of this Guaranty. As used in this Guaranty, the terms "include," "includes," and "including" are deemed to be followed by "without limitation" whether or not they are in fact followed by such words or words of like import.

WHEREFORE, Guarantor has executed this Guaranty on the date set forth below.

GUARANTOR:

By: _____

Herman Jeffrey Baker

Date: 1/31/14

STATE OF: CT )
                        ) ss: Branford
COUNTY OF: New Haven )

Before me, a Notary Public in and for said County and State, personally appeared Herman Jeffrey Baker , who acknowledged the execution of the foregoing Individual Guaranty, and who, having been duly sworn, states that any representations contained therein are true.

Witness my hand and Notarial Seal this 31 day of Jan. , 20 14 .

Notary Signature _____

Notary Name (Printed) Dushn E. Wilkinson

My Commission Expires: 10/31/2018      County of Residence: Tolland

Account #80590                                                                 NextGear Individual Guaranty (v. 1.0)

**29C01-1809-CC-008218**

Hamilton Circuit Court

Filed: 9/4/2018 1:48 PM
Tammy Baitz
Clerk
Hamilton County, Indiana

| | | |
|---|---|---|
| STATE OF INDIANA | ) | IN THE HAMILTON COUNTY COURTS |
| | )SS: | |
| COUNTY OF HAMILTON | ) | CAUSE NO. |

| | |
|---|---|
| NEXTGEAR CAPITAL, INC., | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| CT102 LLC, | ) |
| d/b/a JD BYRIDER OF NEW HAVEN | ) |
| AND METRO MOTORS, and | ) |
| HERMAN JEFFREY BAKER, | ) |
| | ) |
| Defendants. | ) |

## E-FILING APPEARANCE BY ATTORNEY IN CIVIL CASE

1. The party on whose behalf this form is being filed is:

   Initiating __X__     Responding _____     Intervening _____ ; and

   the undersigned attorney and all attorneys listed on this form now appear in this case for the following parties: NextGear Capital, Inc.

   1320 City Center Drive, Suite 100

   Carmel, IN 46032

   (317) 660-2507

2. Applicable attorney information for service as required by Trial Rule 5(B)(2) and for case information as required by Trial Rules 3.1 and 77(B) is as follows:

   | | | |
   |---|---|---|
   | Name: | Michael G. Gibson | Attorney No.: 29665-49 |
   | Address: | 1320 City Center Drive | Phone: 317- 660-2507 |
   | | Suite 100 | FAX: 855-836-8799 |
   | | Carmel, IN 46032 | E-mail Address: michael.gibson2@coxautoinc.com |

   | | | |
   |---|---|---|
   | Name: | Amanda D. Stafford | Attorney No.: 30869-49 |
   | Address: | 1320 City Center Drive | Phone: 317- 688-9243 |
   | | Suite 100 | FAX: 855-836-8799 |
   | | Carmel, IN 46032 | E-mail Address: mandy.stafford@coxautoinc.com |

Each attorney specified on this appearance:

a.  certifies that the contact information listed for him/her on the Indiana Supreme Court Roll of Attorneys is current and accurate as of the date of this Appearance.
b.  acknowledges that all orders, opinions, and notices from the court in this matter that are served under Trial Rule 86(G) will be sent to the attorney at the email address(es) specified by the attorney on the Roll of Attorneys regardless of the contact information listed above for the attorneys; and
c.  understands that he/she is solely responsible for keeping his/her Roll of Attorneys contact information current and accurate. see Ind. Admis. Disc. R. 2(A).

3.   This is a __CC__ case as defined under Administrative Rule 8(b)(3).

4.   This case involves child support issues. Yes ____ No _X_ *(If yes, supply social security numbers for all family members on continuation page.)*

5.   This case involves a protection from abuse order, a workplace violence restraining order, or a no – contact order.  Yes ____ No _X_

6.   This case involves a petition for involuntary commitment. Yes ____ No _X_

7.   There are related cases: Yes ____ No _X_ *(If yes, list on continuation page)*

8.   Additional information required by local rule:  NONE.

9.   There are other party members: Yes____ No_X_ *(If yes, list on continuation page.)*

10.  This form has been served on all other parties and Certificate of Service is attached: Yes ____ No _X_

Date: __August 27__ , 2018.

Michael G. Gibson (#29665-49)
Amanda D. Stafford (#30869-49)
1320 City Center Drive, Suite 100
Carmel, IN 46032
Telephone: (317) 660-2507
Facsimile: (855) 836-8799
*Attorneys for NextGear Capital, Inc.*