

FILED
Nov 02 2021, 7:58 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

**ATTORNEY FOR APPELLANTS**

Julie A. Camden
Camden & Meridew, P.C.
Fishers, Indiana

**ATTORNEY FOR APPELLEE**

Cassandra A. Nielsen
Rubin & Levin, P.C.
Indianapolis, Indiana

# IN THE
## COURT OF APPEALS OF INDIANA

| | |
|---|---|
| CT102 LLC d/b/a Metro Motors and Herman Jeffrey Baker, *Appellants-Defendants/Cross-Appellees,* v. Automotive Finance Corporation, *Appellee-Plaintiff/Cross-Appellant.* | November 2, 2021<br><br>Court of Appeals Case No. 21A-CC-904<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Kurt M. Eisgruber, Judge<br><br>Trial Court Cause No. 49D06-1812-CC-47850 |

**Najam, Judge.**

## Statement of the Case

[1]     CT102 LLC d/b/a Metro Motors and Herman Jeffrey Baker (collectively "Metro") appeal the trial court's judgment in favor of Automotive Finance Corporation ("AFC") on the first count of AFC's complaint alleging breach of

contract. Metro presents a single issue for our review, namely, whether the trial court abused its discretion when it calculated damages. AFC cross-appeals and presents a single issue for our review, namely, whether the trial court erred when it found against AFC on the second count of its complaint, which alleged conversion and sought treble damages.

[2]  We affirm in part, reverse in part, and remand with instructions.

## Facts and Procedural History

[3]  In 2017, Metro and AFC executed an agreement ("the agreement") whereby "AFC provided to Metro . . . financing enabling Metro to purchase vehicles for sale in the course of its business." Appellant's App. Vol. 2 at 185. In addition, Baker executed a personal guaranty for "all amounts due and owing to AFC" under the terms of the agreement. *Id.* The agreement provided that, upon the sale of any vehicle financed by AFC, Metro would "hold the amount received from the disposition of inventory in trust for the benefit of [AFC]" and would "remit the proceeds of [the] sale of any AFC-financed vehicle within forty-eight (48) hours of disposition." *Id.* at 186. This financing arrangement is commonly known as a "floor plan."

[4]  In early 2018, AFC "received numerous returned checks from Metro." *Id.* at 187. In April, Michael Flanagan, a branch manager with AFC, conducted an audit at Metro and discovered that Metro had sold eight vehicles "out of trust," meaning that Metro had not remitted the proceeds from the sale of those vehicles to AFC as provided under the agreement. *Id.* Additional audits

revealed that Metro had sold other vehicles out of trust ("SOT"). Metro promised to make the payments to AFC, and AFC gave Metro additional time to pay, but Metro was unable to make the payments.

[5] On May 28, Flanagan returned to the Metro lot "to conduct a lot audit and request vehicle keys, intending to amicably secure possession of AFC's collateral" under the terms of the agreement. *Id.* at 188. Metro refused to give Flanagan the keys. Flanagan also discovered that an additional six vehicles had been sold out of trust, and four vehicles financed by AFC were missing from the lot. Metro owed AFC a total of $78,996.46 for those ten vehicles ("the SOT vehicles").

[6] On May 29, AFC repossessed fifteen AFC-financed vehicles from Metro's lot and later sold them at auction for a total of $64,651.39. AFC applied that amount to the balance Metro owed for each AFC-financed vehicle "to reduce the total indebtedness due" under the agreement. *Id.* at 190. After the $64,651.39 was applied to Metro's debt, "a deficiency balance existed" under the agreement totaling $123,666.66. *Id.*

[7] On December 4, AFC filed a complaint against Metro alleging breach of contract and conversion, seeking, in part, treble damages under the Crime Victim's Relief Act, Indiana Code Section 34-24-3-1. Following a bench trial, the trial court entered judgment in favor of AFC on its breach of contract claim in the amount of $202,663.12 plus 15% interest and attorney's fees, for a total

judgment of $322,315.97.  But the trial court found that Metro did not commit conversion.  The trial court found and concluded in relevant part as follows:

> 43. Based upon the evidence before the Court, Metro breached the unambiguous terms of the [agreement] by failing to make payment to AFC when due, constituting an event of default under paragraph 7.1 of the [agreement].
>
> * * *
>
> 49. Metro readily admits it failed to remit the proceeds of six (6) of the SOT Vehicles, totaling $37,502.78, to AFC as required by the clear, unambiguous terms of the [agreement].
>
> 50. As to the remaining four (4) Missing AFC Inventory, on numerous occasions prior to the repossession, Mr. Flanagan returned to Metro to perform lot audits and noted the Missing AFC Inventory.  From discussions with Metro's sales' manager, Jay Wanczyk, Mr. Flanagan learned that at least one (1) vehicle had been sold to a buyer in Connecticut, one (1) vehicle was possibly with a customer, and the remaining vehicles were all unaccounted for.
>
> * * *
>
> 52. Neither the Missing AFC Inventory, [n]or proceeds therefrom, has been returned to AFC.  Accordingly, the Court concludes the Missing AFC Inventory constitute additional vehicles sold out of trust.  In total, ten (10) SOT Vehicles were sold by Metro in contravention of the [agreement].
>
> 53. The total amount owed to AFC for the ten (10) SOT Vehicles is $78,996.46.  Metro's failure to remit the proceeds of the SOT Vehicles does not constitute conversion pursuant to the Indiana Crime Victims Relief Act.  The Note provides the

remedy.  The contractual Default Rate of 15% is applied as of the date of default—May 30, 2018.

*Id.* at 192-95 (citations omitted).  Metro filed a motion to correct error, which the trial court denied.  This appeal and cross-appeal ensued.

## Discussion and Decision

[8]  Metro contends that the trial court abused its discretion when it calculated damages.  The trial court's award of damages is subject to review for an abuse of discretion.  *Roche Diagnostics Operations, Inc. v. Marsh Supermarkets, LLC*, 987 N.E.2d 72, 89 (Ind. Ct. App. 2013), *trans. denied*.  This court will not reverse a damage award upon appeal unless it is based on insufficient evidence or is contrary to law.  *Id.*  The appropriate measure of damages in a breach of contract case is the loss actually suffered as a result of the breach.  *Id.*  The non-breaching party is not entitled to be placed in a better position than it would have been if the contract had not been broken.  *Id.*

[9]  Metro asserts, and AFC agrees, that the undisputed evidence shows that its actual debt to AFC under the terms of the agreement is in the amount of $123,666.66, plus interest and attorney's fees.[1]  *See* Plaintiff's Ex. 4.  But in calculating the damages award, the trial court double-counted the $78,996.46 representing the amount owed for the ten SOT vehicles.  Because it is

---

[1] While AFC concedes that the extra $78,996.46 was double-counted, it nevertheless contends that it is entitled to that additional amount as damages for conversion.

undisputed that the trial court's award of $202,663.12[2] includes the same $78,996.46 twice, we reverse and remand with instructions that the trial court enter judgment in favor of AFC in the amount of $123,666.66, plus 15% interest from May 30, 2018, and $32,618.75 in attorney's fees and expenses.

### Cross-appeal

[10]  In its cross-appeal, AFC contends that the trial court clearly erred when it concluded that Metro had not committed conversion. In particular, AFC maintains that the trial court's findings show that Metro was aware of a high probability that its control over the proceeds from the sales of the SOT vehicles was unauthorized. Thus, AFC asserts that the court's findings support a single conclusion, namely, that Metro committed conversion. We cannot agree.

[11]  At trial, AFC bore the burden to prove conversion and, as such, now appeals from a negative judgment. Our Supreme Court has explained that

> [a] judgment entered against a party bearing the burden of proof is a negative judgment. *Smith v. Dermatology Assocs. of Fort Wayne*, 977 N.E.2d 1, 4 (Ind. Ct. App. 2012). On appeal from a negative judgment, this Court will reverse the trial court only if the judgment is contrary to law. *Comm'r, Ind. Dep't. of Envtl. Mgmt. v. RLG, Inc.*, 755 N.E.2d 556, 559 (Ind. 2001). A judgment is contrary to law if the evidence leads to but one conclusion and the trial court reached an opposite conclusion. *Infinity Prods., Inc. v. Quandt*, 810 N.E.2d 1028, 1032 (Ind. 2004) (citation omitted). In determining whether the trial court's judgment is contrary to

---

[2] $123,666.66 plus $78,996.46=$202,663.12.

> law, we will consider the evidence in the light most favorable to the prevailing party, together with all reasonable inferences therefrom. *Smith*, 977 N.E.2d at 4. We neither reweigh the evidence nor judge the credibility of witnesses. *See Brand v. Monumental Life Ins. Co.*, 275 Ind. 308, 417 N.E.2d 297, 298 (1981). Further, "[w]hen appealing from a negative judgment, a party has a heavy burden to establish to the satisfaction of the reviewing court that there was no basis in fact for the judgment rendered." *Ind. & Mich. Elec. Co. v. Schnuck*, 260 Ind. 632, 298 N.E.2d 436, 440 (1973).

*Burnell v. State*, 56 N.E.3d 1146, 1149-50 (Ind. 2016).

[12] The Crime Victim's Relief Act ("the Act") provides that a person who has suffered a pecuniary loss as a result of a criminal conversion may bring a civil action to recover the loss. *Larson v. Karagan*, 979 N.E.2d 655, 661 (Ind. Ct. App. 2012). Unlike in a criminal trial, a claimant need prove by only a preponderance of the evidence that the defendant committed the criminal act. *Id.* A conviction of conversion is not a condition precedent to recovery in a civil action brought under the Act, but the claimant must prove all the elements of the criminal act. *Id.* Indiana Code Section 35-43-4-3 (2021) provides that a person who knowingly or intentionally exerts unauthorized control over property of another commits criminal conversion, a Class A misdemeanor.

[13] However, this court has held that the criminal conversion statute "does not apply to the failure to pay a debt." *Tobin v. Ruman*, 819 N.E.2d 78, 89 (Ind. Ct. App. 2004), *trans. denied*. "Moreover, money may be the subject of a conversion action only if it is 'a determinate sum with which the defendant was

entrusted to apply to a certain purpose.'" *Id.* (quoting *Huff v. Biomet, Inc.*, 654 N.E.2d 830, 836 (Ind. Ct. App. 1995), *abrogated on other grounds*, *St. Vincent Hosp. and Health Care Ctr., Inc. v. Steele*, 766 N.E.2d 699 (Ind. 2002)). A determinate sum entrusted to apply to a certain purpose is known as a "special chattel." *See Bowden v. Agnew*, 2 N.E.3d 743, 750 (Ind. Ct. App. 2014). And "money may be the subject of an action for conversion *only* if it is capable of being identified as a special chattel." *Id.* (emphasis added).

[14] Here, Metro points out that AFC did not argue at trial that its debt under the agreement constituted a "special chattel." *See id.* Thus, Metro asserts that the record supports the trial court's conclusion on this issue. We agree.

[15] In its complaint, AFC alleged that Metro had "agreed to hold proceeds received from the disposition of purchase money inventory in trust for the benefit of" AFC. Appellant's App. Vol. 2 at 26. However, at trial, AFC did not contend that the proceeds were special chattel. In its closing argument, AFC asserted only that Metro "knowingly" did not pay AFC the proceeds from the sales of the SOT vehicles. Tr. Vol. 3 at 50. An assertion that a debtor knowingly failed to pay what he owed, without more, is insufficient as a matter of law to prove conversion. On this record, AFC has not shown that the trial court erred when it denied AFC's conversion claim.

[16] Now, for the first time on appeal, and only in its reply brief, AFC argues that the proceeds from the sale of the SOT vehicles constituted special chattel because, under the agreement, the proceeds were "entrusted for a particular

purpose." Cross-Appellant's Reply Br. at 4. But it is well settled that an argument presented for the first time on appeal is waived for purposes of appellate review. *Ind. Bureau of Motor Vehicles v. Gurtner*, 27 N.E.3d 306, 311 (Ind. Ct. App. 2015). Further, it is well settled that "grounds for error may only be framed in an appellant's initial brief and if addressed for the first time in the reply brief, they are waived." *Monroe Guar. Ins. Co. v. Magwerks Corp.*, 829 N.E.2d 968, 977 (Ind. 2005). Accordingly, we cannot consider this argument.

[17] In sum, the trial court concluded that Metro did not commit conversion. Without any argument or evidence that the proceeds from the sale of the SOT vehicles constituted special chattel, AFC did not satisfy its burden to prove conversion. *See Bowden*, 2 N.E.3d at 750. We hold that the trial court did not err when it concluded that Metro did not commit conversion.

[18] Affirmed in part, reversed in part, and remanded with instructions.

Riley, J., and Brown, J., concur.