UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| CT102 LLC d/b/a METRO MOTORS and<br>H. JEFFREY BAKER,<br>                    Plaintiffs,<br><br>              v.<br><br>AUTOMOTIVE FINANCE CORPORATION<br>d/b/a AFC; NEXTGEAR CAPITAL, INC.;<br>MANHEIM, INC.; and ADESA, INC.,<br>                    Defendants. | C.A. No. 1:20-CV-00356-MSM-PAS |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT
as to DEFENDANT AUTOMOTIVE FINANCE CORPORATION d/b/a AFC**

Defendant Automotive Finance Corporation d/b/a AFC ("AFC"), by counsel, for its

Memorandum of Law in Support of Motion to Dismiss Plaintiffs' Second Amended Complaint

states as follows:

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

After Order of the Court on August 26, 2021, Plaintiffs CT102 LLC d/b/a Metro Motors

("Metro") and H. Jeffrey Baker ("Baker," and sometimes together with Metro, the "Plaintiffs")

filed their Second Amended Complaint ("Second Complaint") alleging fraud, negligence, unjust

enrichment, various breaches, and interference with contracts against AFC.  With little exception,

Plaintiffs' Second Complaint is an unadorned repackaging of its First Amended Complaint and

suffers the same fatal defects.

Most notably, each of the operative facts alleged in the Second Complaint are barred from

consideration by *res judicata* and represent an impermissible attempt to relitigate final judgments

rendered in Indiana concerning the same claims and transactions.  Furthermore, Plaintiffs'

contracts with AFC contain valid and enforceable forum selection clauses requiring litigation of

all claims asserted in the Second Complaint in Indiana—an opportunity which has now come and gone.

Even assuming Plaintiffs' claims were not precluded by res judicata and this Court were to determine it is the proper venue with the requisite jurisdiction over the parties' dispute, Plaintiffs nevertheless fail to state cognizable claims under Indiana law. Count I of the Second Complaint fails to particularly plead fraud as required by FRCP 9(b), including the failure to identify *any* false statements of past or existing fact. Counts II and III defy credulity as it is axiomatic that a party cannot interfere with its own contract, and because performance under the express terms of a contract cannot give rise to liability for tortious interference. Similarly, conspiracy to commit tortious interference is not a recognized tort in Indiana, and all of the allegedly conspiratorial communication was authorized by Plaintiffs in signed contracts as recognized in the final judgments of the Indiana courts.

Plaintiffs' admission that valid and enforceable contracts exist between the parties precludes relief on claims of negligence or in equity, and Counts IV and VI must therefore be dismissed. In reality, Plaintiffs are just arguing for a different result to the contract dispute than that rendered by the Indiana Court, which is not a proper invocation of this Court's jurisdiction and may be barred by the *Rooker-Feldman* doctrine. Established law provides no independent cause of action for an alleged breach of the duty of good faith and fair dealing, which duty is not implied into all contracts under Indiana law. Such necessitates dismissal of Count V.

Furthermore, Counts II through VI are barred by Indiana's two (2) year statute of limitations, which this court should apply in accordance with Rhode Island choice of law principles. Finally, Count VII of the Second Complaint fails because Plaintiffs have not identified any signed writings that could give rise to claims under the Indiana Lender Liability Act, and, to

the extent AFC is deemed a lender under such statute, it possesses complete defenses under the contractual terms which preclude liability.

Accordingly, the entirety of the Second Complaint against AFC should be dismissed.

## II.      CONSIDERATION OF MATTERS OUTSIDE THE COMPLAINT

As an exception to the general rule that matters filed in support of a 12(b)(6) motion convert it to one for summary judgment, documents which are "central to the plaintiff's claim or sufficiently referred to in the complaint, even if those documents are not physically attached to the pleading" may be considered by the court. *Carrero-Ojeda v. Autoridad De Energía Eléctrica*, 755 F.3d 711, 717 (1st Cir. 2014). Specifically, where "a complaint's factual allegations are expressly linked to -- and admittedly dependent upon -- a document . . . that document effectively merges into the pleadings." *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008). Plaintiffs readily acknowledge the existence of a contract with AFC, and the existence of a contractual relationship with AFC is essential to most of the counts pled against AFC, but Plaintiffs inexplicably failed to attach the Note which governs the parties' dealings. [See Exhibit A].

As the contract itself is clearly central to the Plaintiffs' claims of interference with contractual relations and/or breach of any duty of good faith and fair dealing, this Court's review of Exhibit A is not only proper, but essential. *See* 5 Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1327, at 762-63 (2d ed. 1990) ("when [the] plaintiff fails to introduce a pertinent document as part of his pleading, [the] defendant may introduce the exhibit as part of his motion attacking the pleading"); *accord, Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 34 (1st Cir. 2001) ("Under First Circuit precedent, when a complaint's factual allegations are expressly linked to … a document, then the

3

court can review it upon a motion to dismiss.") (internal quotation omitted).

Pursuant to Rule 201 of the Federal Rules of Evidence, AFC also requests the Court take judicial notice of the documents attached to this motion as Exhibit B along with all notices of the related proceedings previously filed herein [e.g., Doc. Nos. 22, 27, 35, 37, 41, 45], as documents "not subject to reasonable dispute [and] . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Specifically, a court may consider "matters of public record, and other matters susceptible to judicial notice." *Giragosian v. Ryan*, 547 F.3d 59, 65 (1st Cir. 2008). Such necessarily includes proceedings in other courts. *Kowalski v. Gagne*, 914 F.2d 299, 305 (1st Cir. 1990) ("[i]t is well-accepted that federal courts may take judicial notice of proceedings in other courts"). The judicial notice of documents does not convert a motion to dismiss into a motion for summary judgment. *Cruz v. Melecio*, 204 F.3d 14, 21 (1st Cir. 2000) (a court reviewing a 12(b)(6) motion may consider "not only the complaint but also matters fairly incorporated within it and matters susceptible to judicial notice."). Furthermore, where, as here, a "motion to dismiss is premised on a defense of [claim preclusion] . . . the court may take into account the record in the original action." *Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co.*, 547 F.3d 48, 51 (1st Cir. 2008); *see also Boateng v. InterAmerican Univ., Inc.,* 210 F.3d 56, 60 (1st Cir. 2000) (documents from prior state adjudications are "ordinarily" treated as public records).

Exhibit B, along with all notices of the related proceedings previously filed herein [e.g., Doc. Nos. 22, 27, 35, 37, 41, 45], are public records of prior and preclusive matters in which final judgment has been rendered, are appropriate for judicial notice pursuant to FRE 201, and this Court's necessary consideration of them does not convert this Motion to one for Summary Judgment under FRCP 12(d).

### III.    THE INDIANA LITIGATION

On December 3, 2018, AFC filed its Complaint in the Marion County (Indiana) Superior Court against the Plaintiffs for breach of a Demand Promissory Note and Security Agreement ("Note") [Exhibit "A"], liability on an Unconditional and Continuing Guaranty ("Guaranty") [Exhibit "C" to Ex. A], and damages arising from Plaintiffs' defaults under those agreements (the "Indiana Litigation") [*See also*, Doc. No. 22]. On January 5 and 6, 2021, the trial court in the Indiana Litigation held a virtual bench trial after which it awarded judgment on the merits to AFC in its Order on Bench Trial and subsequent Entry of Final Judgment (collectively, the "Final Judgment") [collectively filed as Ex. B]. The Final Judgment (directly or by incorporation) includes the following findings of fact and conclusions of law:

a.    Metro executed the Note and Baker executed the Guaranty [Ex. B, ¶¶ 1, 42];

b.    Metro and Baker waived any and all defenses based upon suretyship or impairment of collateral [Ex. B, ¶¶ 13, 14, 59];

c.    AFC's representative did not initial any alterations to the Guaranty nor did he have any recollection of any alterations to the Guaranty [Ex. B, ¶¶ 3, 40];

d.    Pursuant to the Note and Guaranty, Metro and Baker submitted to Indiana jurisdiction and venue in Marion County, Indiana [Ex. B, ¶¶ 39-40];

e.    At no time did Metro or Baker contest execution of the Note or Guaranty or move to change venue and the Note and Guaranty are presumed under [Indiana Trial Rule] 9.2(D) and establish venue in Marion County" with respect ao any claims and/or allegations arising from or relating to the Note or Guaranty [Ex. B, ¶¶ 3, 40];

f.    Pursuant to the terms of the Note, AFC provided to Metro, and Metro received, financing enabling Metro to purchase vehicles for sale in the course of its business [Ex. B, ¶ 2];

g.    Pursuant to paragraph 3.0 of the Note, AFC holds fully perfected security interests in all financed vehicles and their corresponding titles [Ex. B, ¶ 6];

h.    Metro breached the unambiguous terms of the Note by failing to make payment to AFC, when due, constituting an event of default under paragraph 7.1 of the Note

[Ex. B, ¶¶ 18, 43];

i.     Purchase Money Inventory was sold by Metro and the proceeds therefrom were not held in trust for AFC as required by the Note and at no time were such proceeds remitted to AFC [Ex. B, ¶¶ 22-24, 49, 52];

j.     Pursuant to paragraph 8.1 of the Note, upon an event of default, AFC may "(a) notify any and all creditors, account debtors or obligors of [Metro's] default and/or of the security interest of AFC in [Metro's] accounts and . . . (f) take possession of the Collateral and sell the same" [Ex. B, ¶ 11];

k.     AFC's repossession of vehicles from Metro "was conducted in a commercially reasonable fashion" [Ex. B, ¶ 60];

l.     Each vehicle repossessed from Metro "was subjected to competitive bidding at auction and sold for market value" [Ex. B, ¶ 63]; and,

m.     AFC's testimony "concerning the conduct of the auctions and the commercial reasonableness of the sales [is] persuasive.  Accordingly . . . both auctions utilized for the sale of the Repossessed Vehicles comport with relevant industry standards" [Ex. B, ¶ 65].

On May 17, 2021, Plaintiffs filed their Notice of Appeal of the Final Judgment, which appeal has been fully briefed.  The Appeal challenged *only* the amount and calculation of damages awarded to AFC in the Indiana Litigation [Doc. No. 41].  On November 2, 2021, the Indiana Court of Appeals reversed in part and affirmed in part, leaving all factual findings undisturbed but directing the trial court to enter a revised judgment reducing the amount of damages awarded to AFC from $202,663.12 to $123,666.66, plus interest and attorney's fees and expenses.  [Doc. No. 45, Ex. 1, pg. 6].

## IV.    LEGAL ARGUMENT

**A.    Standard of Review under FRCP 12(b)(6).**

To survive a motion to dismiss, a "complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[1]  The plaintiff must allege facts supporting "each material element necessary to sustain recovery under some actionable legal theory." *Campagna v. Mass. Dep't of Envtl. Prot.*, 334 F.3d 150, 155 (1st Cir. 2003) (citations omitted). When allegations in the complaint "do not permit the court to infer more than the mere possibility of misconduct," a plaintiff has failed to state a claim.  *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 570 (requiring factual allegations in complaint "be enough to raise a right to relief above the speculative level").

This standard does not permit a plaintiff to rely on "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements ... ." *Id*. at 678. The Court must ignore "statements in the complaint that simply offer legal labels and conclusions or merely re-hash cause-of-action elements." *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012).  It is axiomatic that this Court need not accept as true factual averments in the Second Complaint which are contradicted by the factual and legal findings contained in final orders of the other courts to have considered the same issues.  *See*, e.g., *Banco Santander de P.R. v. Lopez-Stubbe (In re Colonial Mortg. Bankers Corp.)*, 324 F.3d. 12, 15 (1st Cir. 2003) (Applying res judicata principles to affirm 12(b)(6) dismissal; "[w]e are not bound, however, to credit bald assertions, unsupportable conclusions, and opprobrious epithets woven into the fabric of the complaint.")(internal quotation and additional citations omitted).

**B.    The Entirety of the Second Complaint Should Be Dismissed as Barred by *Res Judicata*.**

---

[1]  *Twombly* also involved unsubstantiated claims of conspiracy between market actors.  550 U.S. at 548-49.  In reaching the determination that plaintiff's claims failed to meet the requisite plausibility test to survive the 12(b)(6) motion, the Supreme Court noted there was "an obvious alternative explanation" to the defendants' allegedly conspiratorial conduct.  *Id*. at 567.  The same is true here, and equally obvious: defendants chose to no longer do business with Plaintiffs because Plaintiffs admittedly and repeatedly breached their contracts with AFC and NextGear, all as found by the Indiana courts that have conclusively weighed in on these disputes.

**(i)      Claim Preclusion, Generally.**

Within the First Circuit, res judicata is "a valid defense to a later suit if (1) there is a final judgment on the merits of an earlier action, and (2) there is identity of the parties and (3) identity of the claims in both suits." *Efreom v. McKee*, 2021 U.S. Dist. LEXIS 72813, *10-11 (1st Cir. 2021), *quoting, Reppert v. Marvin Lumber and Cedar Co*., 359 F.2d 53, 56 (1st Cir. 2004). Stated another way, where "the causes of action asserted in the earlier and later suits are sufficiently identical or related and ... the parties in the two suits are sufficiently identical or closely related," claim preclusion will apply to bar a litigant from a proverbial second bite at the apple. *Airframe Sys. v. Raytheon Co*., 601 F.3d 9, 14 (1st Cir. 2010). Indeed, res judicata or claim preclusion "bars parties from relitigating claims that could have been made in an earlier suit, not just claims that were actually made" to ensure "[p]laintiffs cannot obtain a second chance at a different outcome by bringing related claims against closely related defendants at a later date." *Id.*

"When a federal court considers the preclusive effect of an earlier state court judgment, it must apply [that] state's preclusion principles." *Goldstein v. Galvin*, 719 F.3d 16, 22 (1st Cir. 2013). Under Indiana law, claim preclusion has four requirements: "(1) the former judgment must have been rendered by a court of competent jurisdiction; (2) the former judgment must have been rendered on the merits; (3) the matter now in issue was, or could have been, determined in the prior action; and (4) the controversy adjudicated in the former action must have been between the parties to the present suit or their privies." *Marion Cty. Circuit Court v. King*, 150 N.E.3d 666,672 (Ind. Ct. App. 2020); *see also Thrasher Buschmann & Voelkel, P.C. v. Adpoint, Inc*., 24 N.E.3d 487 (Ind. Ct. App. 2015) ("Res judicata applies as an absolute bar to a subsequent claim when: (1) the earlier claim involved the same set of factual circumstances; (2)

the earlier claim involved the same parties or their privies; (3) there was a final judgment on the merits; and (4) the estopped party had a full and fair opportunity to litigate the matter."). Where "identical evidence will support the issues involved in both actions," preclusion applies. *Biggs v. Marsh*, 446 N.E2d 977, 982 (Ind. Ct. App. 1983).

It is not the claim labels which matter, but rather "whether the causes of action arise out of a common nucleus of operative facts." *Mass Sch. Of Law at Andover, Inc. v. Am. Bar. Ass'n.*, 142 F.3d 26, 28 (1st Cir. 1998). *See also* C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 4406 (2d ed. 2002) (formal pleadings and other filings are relevant to determining the claims and defenses advanced in a prior suit.). "The terms res judicata and claim preclusion often are used interchangeably." *Brownback v. King*, 141 S. Ct. 740, 752, n.3 (2021)(citations omitted) "[R]es judicata "comprises two distinct doctrines. The first is issue preclusion, also known as collateral estoppel. *It precludes a party from relitigating an issue actually decided in a prior case and necessary to the judgment*." *Id*. (emphasis added).

### (ii)    Plaintiffs are Collaterally Estopped from Asserting Many of the Facts Alleged in the Second Complaint

Nearly all of the operative, factual allegations contained in the Second Complaint have been specifically controverted by the Final Judgment, none of which findings were disturbed on appeal. [Doc. No. 45-1]. Paragraphs 8, 10, and 21 of the Second Complaint allege jurisdiction and venue in Rhode Island based upon allegedly modified agreements between Plaintiffs and AFC. The Final Judgment, however, found that AFC's representative did not initial any allege alterations to the Guaranty and instead that Plaintiffs each submitted to jurisdiction and venue in Marion County, Indiana. [Ex. B, ¶¶ 3, 39-40]. [2] Paragraphs 35, 36, 41, 58(c), 63, 68-69, and 86-

---

[2]  That Baker claims existence of another version of the Guaranty where he changed the jurisdiction provision does not affect this conclusion as the Indiana trial court was presented with

87 of the Second Complaint each allege AFC contacted other entities to inform them of Metro's default status and thereby breached an alleged contractual duties and interfered with other relationships.  Such allegations belie the Final Judgment's findings that not only was Metro in default to AFC, but also that AFC is a secured creditor with respect to all inventory and possesses an unqualified right "to notify any and all creditors, account debtors or obligors of [Metro's] default and/or of the security interest of AFC in [Metro's] accounts[.]"  [Ex. B, ¶¶ 6, 11, 18, 43].

Plaintiffs' claims of damage are predicated on allegedly wrongful and commercially unreasonable repossessions by AFC, damage to vehicles, and commercial unreasonable vehicle

---

competing testimony but found AFC's witness more credible in holding that AFC's copy of Baker's Guaranty controlled.  Baker's attempt to circumvent this ruling is not permitted due to res judicata and pursuant to the *Rooker-Feldman* doctrine, which "stands for the principle that federal district courts lack jurisdiction to hear cases seeking review of state court judgments." *Smith v. Asquith*, 2020 U.S. Dist. LEXIS 3652 *3 FN1; 2020 WL 65089 (D.R.I. 2020), citing, *Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923): *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983).

Even if the *Rooker-Feldman* doctrine's temporal requirements could be challenged given the filing of this lawsuit just prior to final judgments being rendered in Indiana, it is clear that Plaintiffs are precisely the "state court losers … invit[ing] district court review and rejection of those judgments" that the doctrine is designed to prevent.  *Klimowicz v. Deutsche Bank Nat'l Trust Co.*, 907 F.3d 61, 65 (1st Cir. 2018).  Just as in *Klimkowicz*, this Court can grant relief to Plaintiffs "only by deciding—either explicitly or implicitly—that the state courts had wrongly decided …" the forum selection clause issue and other "facts" asserted by Plaintiffs. *Id.* at 66.  The Plaintiffs herein have engaged in the same "magical thinking [that] a plaintiff [can] escape the *Rooker-Feldman* bar through the simple expedient of introducing a new legal theory in the federal forum that was not broached in the state courts." *Id.*  Going further, the First Circuit noted:

> Put simply, a federal court's application of the *Rooker-Feldman* doctrine is not contingent upon an identity between the issues actually litigated in the prior state-court proceedings and the issues proffered in the subsequent federal suit. Instead, the critical datum is whether the plaintiff's federal suit is, in effect, an end-run around a final state-court judgment.

*Id.* (citations omitted)

sales in paragraphs 38-40, 42, 45, 58(a), 80, 86-87, 92 and 95 of the Second Complaint. Again, the Final Judgment holds otherwise. Specifically the Final Judgment found not only was AFC entitled to repossess its collateral upon Plaintiffs' default [Ex. B, ¶ 11], but also that its repossession "was conducted in a commercially reasonable fashion" [Ex. B, ¶ 60] and any damage to the repossessed vehicles was "*de minimus*." [Ex. B. ¶ 58]. Additionally, the repossessed vehicles were "subjected to competitive bidding at auction and sold for market value" and "both auctions utilized for the sale of the Repossessed Vehicles comport with relevant industry standards." [Ex. B, ¶¶ 63, 65].

As evidenced by the Exhibits, each claim raised by the Second Complaint arises from the same set of factual circumstances, same transactions, and same evidence as that adjudicated by the Final Judgment in the Indiana Litigation. *See Airframe*, 601 F.3d at 15-16. The Second Complaint contains no factual allegations (as opposed to legal conclusions properly ignored by a court considering a 12(b)(6) motion) independent of the defenses raised and adjudicated in the Indiana Litigation, wherein the trial court specifically found not only that AFC's repossession efforts and subsequent sale of repossessed vehicles was commercially reasonable, but also that AFC possessed an unqualified contractual right to "notify any and all creditors, account debtors or obligors of [Metro's] default[.]" [Ex. B, ¶ 11] *See Giragosian v. Ryan*, 547 F.3d 59 (1st Cir. 2008) (holding res judicata barred federal § 1983 action where facts described in state and federal complaints were identical, derived from the same transaction or series of transactions, and were previously adjudicated by the state court).

Even assuming the Second Complaint's claims are different from the defenses asserted in the Indiana Litigation, such causes of action could have been raised therein and are therefore barred. The affirmative defenses raised in the Indiana Litigation and adjudicated in the Final

11

Judgment mirror the allegations underlying the Second Complaint.  Plaintiffs had the relevant facts concerning their claims during the pendency of the Indiana Litigation and therefore had "every opportunity to fully litigate its various claims against [AFC] in an earlier suit and made the strategic choice not to do so."  *Airframe*, 601 F.3d at 14; s*ee also Torromeo v. Town of Fremont*, 438 F.3d 113 (1st Cir. 2006) (takings claim litigated to final judgment in state court precluded later federal suit.).  Accordingly, the Second Complaint is precluded and should be dismissed.

## C.  The Entirety of the Second Complaint Should Be Dismissed Due to the Forum Selection Clauses in the Note and Guaranty.

Courts in the First Circuit, "treat a motion to dismiss based on a forum selection clause as a motion alleging the failure to state a claim for which relief can be granted under Rule 12(b)(6)." *Claudio-de León v. Sistema Universitario Ana G. Méndez*, 775 F.3d 41, 46 (1st Cir. 2014)(citations omitted).  "A forum selection clause is 'prima facie valid' and, absent a 'strong showing' by the resisting party that the clause is 'unreasonable under the circumstances' it should not be set aside." *Id.* at 48 (*citing M/S Bremen v. Zapata Off-Shore Co.* 407 U.S. 10, 15 (1972)).  Plaintiffs filed the Second Complaint in contravention of the enforceable forum selection clause and in direct violation of the Final Judgment's explicit finding that the Note and Guaranty "establish venue in Marion County." [Ex. B, ¶¶ 39-40].

Even without that finding, there is no challenge to Metro's execution of the Note providing for exclusive jurisdiction in Indiana, and Baker's only claims against the Defendants are derivative of his ownership of Metro.  Plaintiffs do not attempt to make any showing as to why Metro would not be bound by the forum selection clause (also determined to be enforceable in the Indiana Litigation), much less the "strong showing" required to overcome it.  Quite clearly, the Second Complaint was improperly filed in Rhode Island and should be dismissed.

**D.      Counts I through VII of the Second Complaint should be dismissed for failure to state claims upon which relief can be granted.**

Even if the exclusive forum and venue provisions requiring all claims be brought in Indiana (which provisions have been fully and finally adjudicated to be enforceable) do not prevent this Court from addressing the merits of Plaintiffs' claims, the Second Complaint still fails to state claims upon which relief can be granted as the Second Complaint cures none of the pleading deficiencies from Plaintiffs' First Amended Complaint.

**(i)      Count I of the Second Complaint fails because Plaintiffs fail to particularly plead fraud, and fraud cannot be based on future promises.**

Under Indiana law, a complaining party must "specifically allege the elements of fraud, the time, the place, the substance of false reports, and any facts that were misrepresented, as well as the identity of what was procured by fraud." *Kapoor v. Dybwad*, 49 N.E.3d 108, 132 (Ind. Ct. App. 2015) (citations omitted). The "[f]ailure to comply with the rule's specificity requirements constitutes a failure to state a claim upon which relief may be granted." *Id.* Such specificity ensures "vague and unsubstantiated accusations of fraud do not lead to costly discovery and public obloquy." *Id.* (citations omitted). Most critically, "fraud may not be based on representations of future conduct, on broken promises, or on representations of existing intent that are not executed." *Am. Heritage Banco, Inc. v. McNaughton*, 879 N.E.2d 1110, 1115 (Ind. Ct. App. 2008), *citing*, *Wallem v. CLS Indus., Inc.*, 725 N.E.2d 880, 889 (Ind. Ct. App. 2000).

Rather than allege the exact time, place, by whom any statements were made, and what exactly was procured by the alleged fraud, Plaintiffs ambiguously claim that "[d]uring negotiations AFC advised [Metro] that it should reduce its monthly payments"[3] and that "[AFC]

---

[3] Such statements regarding potential settlement negotiations would also be inadmissible pursuant to IRE 408 and FRE 408.

would not repossess the vehicles." [Second Complaint, ¶¶ 47-48].

These vague allegations fail to rise to the specificity required to state a claim for fraud, and (if true) are nothing more than statements of future intent which cannot give rise to a claim of fraud as a matter of law. The only factual allegation that could potentially be considered a statement of past fact relates to the condition of the repossessed vehicles, an issue that has been fully and finally litigated in Indiana. [Ex. B, ¶¶ 58-60]. Further, Plaintiffs fail to allege any definitive injury, let alone how the alleged fraud proximately caused any injuries. It is settled law that "fraud without damage gives no cause of action." *Bodkin v. Merit*, 1 N.E. 625, 628 (Ind. 1885); *see also, Baxter v. I.S.T.A. Ins. Trust*, 749 N.E.2d 47, 50 (Ind. Ct. App. 2001). Having failed to plead fraud with the required specificity or to show any conceivable damage from the alleged fraud, Count I of the Second Complaint must be dismissed for failure to state a claim.

### (ii)    Counts II and III of the Complaint fail to state claims because a party cannot tortiously interfere with its own contract and Plaintiffs consented to the alleged conduct in the Note.

The Second Complaint alleges AFC "knew or should have known that [Metro] had contractual . . . relations with AFC," that "[AFC] knowingly and improperly interfered with these contractual arrangements." [Second Complaint, ¶¶ 54, 58].[4] Logic and law provide that "[a] party cannot 'interfere' with its own contracts, so the tort itself can be committed only by a third party." *Trail v. Boys & Girls Clubs of Northwest Ind.*, 845 N.E.2d 130, 138 (Ind. 2006); *see also Winkler v. V.G. Reed & Sons*, 638 N.E.2d 1228 (Ind. 1994). The alleged interference of which Plaintiffs complain involves the Note itself—to which AFC and Plaintiffs are parties—and therefore a claim cannot be maintained.

---

[4] Plaintiffs rely exclusively upon their claim that the Note was violated as the basis for a claim of conspiracy to tortiously interfere. Accordingly, the two claims fail together.

Indiana law also requires "at the very least a description of the tortious conduct." *Trail*, 845 N.E.2d at 141 (citations omitted). A plaintiff must "state more than a mere assertion that the defendant's conduct was unjustified." *Morgan Asset Holding Corp. v. CoBank, ACB*, 736 N.E.2d 1268, 1272 (Ind. Ct. App. 2000). Further, alleged tortious conduct cannot be something the parties had the contractual right to do as "the existence of a legitimate reason for the defendant's actions provides the necessary justification to avoid liability." *Id.*, at 1272; *see also Trail*, 845 N.E.2d at 139.

The Final Judgment held, and the unambiguous terms of the Note provide, that upon an event of default AFC is entitled to "notify any and all creditors, account debtors or obligors of [Plaintiffs'] default . . . and direct payment of same to [AFC]" and to "take possession of the Collateral[.]" [Ex. A, § 8.1; Ex. B, ¶ 11]. It is undisputed that Plaintiffs were in default under the Note. [Ex. B, ¶¶ 18, 43]. Accordingly, the "interference" of which Plaintiffs complain is nothing more than an exercise of AFC's contractual rights under the Note and corresponding rights and/or duties under Article 9 of the Uniform Commercial Code. *See* Ind. Code § 26-1-9.1-601, *et. seq.* AFC has an obviously legitimate interest in preventing Plaintiffs from buying additional vehicles and incurring additional debt when they have admittedly failed to pay for the outstanding loans owed to AFC. Finally, the conspiracy claims must fail as Indiana does not recognize civil conspiracy as an independent cause of action. *Birge v. Town of Linden*, 57 N.E.3d 839, 846 (Ind. Ct. App. 2016).

**(iii)    Counts IV and VI of the Complaint for negligence and unjust enrichment are barred by the existence of enforceable contracts and the economic loss doctrine.**

Under Indiana law, where "the rights of parties are controlled by an express contract, recovery cannot be based on a theory implied in law." *Zoeller v. E. Chi. Second Century, Inc.*,

15

904 N.E.2d 213, 217 (Ind. 2009).  More specifically, "[t]he existence of an express contract precludes a claim for unjust enrichment because . . . a plaintiff may not pursue an equitable remedy when there is a remedy at law." *Coppolillo v. Cort*, 947 N.E.2d 994, 998 (Ind. Ct. App. 2011); *see also Greg Allen Constr. Co. v. Estelle*, 798 N.E.2d 171, 175 (Ind. 2003).

The Complaint acknowledges the execution of the Note and Guaranty.  [Second Complaint, ¶¶ 18-19].  The allegations underlying Plaintiffs' negligence and unjust enrichment claims are that AFC "wrongfully retained equity belonging to Metro" through "wrongful repossessions and commercially unreasonable sales [which] went beyond the lenders' authority." [Second Complaint, ¶¶ 83, 90-91].  As noted above, those allegations of fact are precluded due to the Final Judgment's holding that AFC's repossession and subsequent sales were commercially reasonable.  Even without res judicata, it remains the very promises upon which Plaintiffs base their claims are the same promises contained in the Note.  The Note provides that AFC "may comply with . . . any applicable state or federal law requirements in connection with a disposition of the Collateral" and grants AFC all rights of a secured creditor with respect to financed vehicles.  [Ex. A, ¶ 8.2].  There exists no duty owed to Plaintiffs separate from those in the Note. Accordingly, this dispute lies in contract, not in equity or tort, and no separate claims for negligence and/or unjust enrichment may be maintained.

Further bar to Plaintiffs negligence claim in Count IV is the economic loss doctrine.  "As [the Indiana] Supreme Court has explained, where parties have a contractual relationship, the economic loss rule reflects that the resolution of liability for purely economic loss caused by negligence is more appropriately determined by commercial rather than tort law.  In other words, the economic loss rule provides that a defendant is not liable under a tort theory for any purely economic loss caused by its negligence." *CW Farms, LLC v. Egg Innovations, LLC*, 169 N.E.3d

16

874, 881 (Ind. Ct. App. 2021), citing, *Indianapolis-Marion County Public Library v. Charlier Clark & Linard, P.C.*, 929 N.E.2d 722, 729 (Ind. 2010).

The only "claims" asserted against AFC in Counts IV or VI relate to the repossession of Metro's vehicles, actions that have been adjudicated proper in decisions that are binding on this Court. Even if they were not, the terms of the contract and commercial law provide the remedy, not tort or equity, and those claims must be dismissed.

### (iv) Count V of the Second Complaint fails to state a claim because there is no duty of good faith and fair dealing imposed by the Note.

It is settled law that "a breach of good faith cannot be maintained as an independent cause of action." *Best Distrib. Co. v. Seyfert Foods*, 714 N.E.2d 1196, 1205 (Ind. Ct. App. 1999); *Pain Ctr. of SE Ind. LLC v. Origin Healthcare Sols. LLC*, 893 F.3d 454, 462 (7th Cir. 2018) ("this section of the UCC 'does not support an independent cause of action for failure to perform or enforce in good faith.'") (applying Indiana law). Contrary to the conclusory allegations in Count V of the Second Complaint, "Indiana law does not impose a generalized duty of good faith and fair dealing on every contract; the recognition of an implied covenant is generally limited to employment contracts and insurance contracts." *Gerdon Auto Sales, Inc. v. John Jones Chrysler Dodge Jeep*, 98 N.E.3d 73, 82 (Ind. Ct. App. 2018) (quoting *Old Nat'l Bank v. Kelly*, 31 N.E.3d 522, 531 (Ind. Ct. App. 2015)).

Indiana "courts will only impose a duty of good faith and fair dealing if the contract is ambiguous or expressly imposes such a duty on the parties." *Id.* The Note is not an employment or insurance contract, nor does it expressly impose a duty of good faith and fair dealing on the parties. Plaintiffs do not claim the contracts are ambiguous. Finally, even if a duty of good faith existed (which it does not), "[t]he obligation of good faith and fair dealing does not permit a party to enforce an obligation not present in the contract." *Acheron Med. Supply, LLC v. Cook*

*Med. Inc.*, 958 F.3d 637, 643 (7th Cir. Ind. 2020)(quotation and ellipses omitted).  The Second Complaint fails to identify any conduct by AFC that was not permitted by the Note, and Count V of the Second Complaint therefore fails to state a claim.

### (v)    Counts II, III, IV, and V are Barred by the Statute of Limitations

Rhode Island does not automatically apply the statute of limitations of the forum state and conducts a policy weighing test as to whether to apply the statute of limitations of another state. *Harodite v. Warren Elec. Co.,* 24 A.3d 514 (R.I. 2011).  Those policy considerations include:

(1) Predictability of results.
(2) Maintenance of interstate and international order.
(3) Simplification of the judicial task.
(4) Advancement of the forum's governmental interests.
(5) Application of the better rule of law.

In addition, in a case sounding in tort … the following additional factors are to be considered:

(a) the place where the injury occurred,
(b) the place where the conduct causing the injury occurred,
(c) the domicil[e], residence, nationality, place of incorporation and place of business of the parties, and
(d) the place where the relationship, if any, between the parties is centered.

24 A.3d. at 534.

These factors weigh strongly in favor of applying Indiana's two (2) year statute of limitations, in particular: (i) the parties agreed that Indiana law would control; [5] (ii) the importance of certainty in relationships concerning the free marketability of automobiles and access to credit; (iii) application of Indiana's statute would terminate this litigation, thus simplifying the judicial task; and, (iv) all of the defendants are located in Indiana, with only one

---

[5]  Plaintiffs admit Indiana substantive law controls. [Second Complaint ¶ 22].

party plaintiff (Baker) having any connection to Rhode Island, but his claims are entirely derivative of Metro, a Connecticut LLC that operated in Connecticut. Perhaps most instructive to the analysis of which statute of limitations to apply is that *none* of the allegedly tortious conduct occurred in Rhode Island. Rather, any actions occurred in Connecticut (or perhaps Indiana, where AFC and other defendants reside), and Connecticut would also apply the same two (2) year statute applicable in Indiana. *See*, Conn. Gen. Stat. Ann. § 52-584.

Pursuant to Indiana Code § 34-11-2-4, an action for tortious interference with a contract must be commenced within two (2) years of the alleged injury. *C & E Corp. v. Ramco Indus*., 717 N.E.2d 642 (Ind. Ct. App. 1999); *McLaughlin Equip. Co. v. Newcourt Credit Group, Inc*., 2004 U.S. Dist. LEXIS 13939 (S.D. Ind. 2004). As noted above, there was no implied duty of good faith in Plaintiffs' agreements with AFC and Indiana does not recognize an independent claim for violation of any such duty if one existed. Instead, "a claim that an implied covenant of good faith and fair dealing has been breached is really a claim of breach of fiduciary duty ... and is governed by the same two-year statute of limitation as breach of fiduciary duty." *Del Vechio v. Conseco, Inc.*, 788 N.E.2d 446, 451 (Ind. Ct. App. 2003)*, citing* Ind. Code § 34-11-2-4(2)(other citations omitted).

As detailed herein, all of Plaintiffs' claims are barred by res judicata and other fatal deficiencies. Further, all of the allegedly tortious conduct occurred in or around April 2018 [Second Complaint, ¶¶ 23-24]. Accordingly, Counts II, III, IV and V of Plaintiffs' Second Complaint filed on September 24, 2021 and relating back to August 14, 2020 are barred by Indiana's two (2) year statute of limitations for such claims.

 **(vi) Lender liability is not an independent tort recognized in Indiana, and Plaintiffs have failed to meet the requirements of Indiana's Lender Liability Act to bring a claim or defense against AFC, so Count VII must also be dismissed.**

Plaintiffs allege AFC "breached their loan agreements and guarantees," thereby entitling Plaintiffs to relief under Indiana Lender Liability Act, Indiana Code § 26-2-9-1, *et. seq.* [Second Complaint, ¶ 95]. As noted, the legal conclusion of "breach" is entitled no deference, and the factual allegations of "wrongful repossession and mishandling of collateral by AFC and NextGear, failure to account, credit, offset or remit improperly withheld auction or private sale proceeds by AFC and NextGear ..." are precluded by the judgments in favor of AFC and NextGear in Indiana. Even if Plaintiffs were entitled to seek review of those judgments by this Court (under *Rooker-Feldman*, they are not), the allegations fail to give rise to actionable claims as a matter of law.

The Indiana Lender Liability Act (I.C. § 26-2-9-1, *et seq.*) provides neither an independent cause of action nor affirmative relief. Instead, the Act is a statute of frauds limiting actions and defenses to the terms of any written loan or credit agreement executed by the statutorily defined lender. *See, e.g., Sees v. Bank One, Ind., N.A.*, 839 N.E.2d 154 (Ind. 2005). No such writing has been put forth, nor have the factual or legal bases for any "common law" claims been alleged. [Second Complaint, ¶ 94]. Put simply, no separate "lender liability" cause of action exists, and if one did the Plaintiffs would be required by Indiana Statute to put forth a writing, signed by AFC, in order to proceed. I.C. § 29-2-9-4(b).

Fundamentally, Plaintiffs' "Lender Liability" claims are nothing more than repackaging of the Plaintiffs' claims and defenses adjudicated, or which could have been adjudicated, in the Indiana Litigation. Accordingly, Counts VII fails to state claims upon which relief can be granted and should be dismissed.

## V. CONCLUSION

Plaintiffs' Second Complaint should be dismissed in its entirety against AFC pursuant to

FRCP 12(b)(6).  The Second Complaint represents causes of action that are barred by res judicata and which cannot be maintained in this court due to the forum selection provisions of the Note.  Moreover, each alleged claim fails in light of the express and unambiguous terms of the Note, the related statute of limitations, and the dictates of established Indiana law.

Respectfully submitted,

/s/ Joseph V. Cavanagh, III
Joseph V. Cavanagh, III (#6907)
Blish & Cavanagh, LLP
30 Exchange Terrace
Providence, RI 02903-1765
Tel: (401) 831-8900; Fax: (401) 751-7542
Email: jvc3@blishcavlaw.com

/s/Reynold T. Berry
Reynold T. Berry (Ind. Atty #25482-49)
Admitted Pro Hac Vice
RUBIN & LEVIN, P.C.
135 N. Pennsylvania St., Suite 1400
Indianapolis, IN 46204
(317) 634-0300 - FAX No. (317) 263-9410
Email: rberry@rubin-levin.net

*Attorneys for Automotive Finance Corporation d/b/a AFC and ADESA, Inc.*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 8, 2021, I caused a true copy of the foregoing document to be filed using the CM/ECF System and it is available for viewing and downloading by all counsel of record as follows:

Harris K. Weiner
Salter McGowan Sylvia & Leonard, Inc.
Email: <u>hweiner@smsllaw.com</u>

Katharine E. Kohm
Pierce Atwood LLP
Email: <u>kkohm@pierceatwood.com</u>

David J. Jurkiewicz
Bose, McKinney & Evans LLP
Email: <u>djurkiewicz@boselaw.com</u>

<u>/s/ Joseph V. Cavanagh, III</u>