UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| CT102 LLC d/b/a METRO MOTORS and<br>H. JEFFREY BAKER,<br>      Plaintiffs,<br><br>      v.<br><br>AUTOMOTIVE FINANCE CORPORATION<br>d/b/a AFC; NEXTGEAR CAPITAL, INC.;<br>MANHEIM, INC.; and ADESA, INC.,<br>      Defendants. | C.A. No. 1:20-CV-00356-MSM-PAS |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED COMPLAINT as to DEFENDANT ADESA, INC.**

Defendant ADESA, Inc. ("ADESA"), by counsel, for its Memorandum of Law in Support of Motion to Dismiss Plaintiffs' Second Amended Complaint as to Defendant ADESA, Inc. states as follows:

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

After Order of the Court on August 26, 2021, Plaintiffs CT102 LLC d/b/a Metro Motors ("Metro") and H. Jeffrey Baker ("Baker," and sometimes together with Metro, the "Plaintiffs") filed their Second Amended Complaint ("Second Complaint"). ADESA is named in three counts of the Second Complaint: (a) Count II titled "Intentional Tortious Interference with Contractual Relations by all Defendants"; (b) Count III titled "Conspiracy to Tortiously Interfere with Contracts Against All Defendants"; and, (c) Count V titled "Breach of Covenant of Good Faith and Fair Dealing Against all Defendants" (capitalization in original). The Second Complaint largely mirrors the First Amended Complaint and suffers the same fatal defects as to ADESA.

Foremost, none of the alleged facts and occurrences giving rise to the Second Complaint occurred in Rhode Island, and there is no colorable legal or factual basis for the assertion of general personal jurisdiction over ADESA in this state. Accordingly, the Second Complaint must

be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2).  Moreover, even were ADESA subject to the general personal jurisdiction of a state in which it has no presence and conducts no business, Plaintiffs' contract with ADESA contains a valid and enforceable forum selection clause requiring litigation of Plaintiffs' claims in Indiana.

Even were Plaintiffs' claims in the Second Complaint properly brought in Indiana, those allegations of the Second Complaint which this Court must accept to be true still fail to state cognizable claims against ADESA and the Second Complaint should be dismissed pursuant to FRCP 12(b)(6).  Specifically, (i) a party's exercise of contractual rights pursuant to written, agreed terms cannot give rise to liability for tortious interference or any breach of duty; (ii) Indiana does not recognize civil conspiracy as a separate cause of action; and, (iii) Indiana does not impose a duty of good faith and fair dealing in all contracts, and there are no facts alleged in the Second Complaint which justify this court doing so.  Finally, even if Plaintiff's Second Complaint could overcome these high jurisdictional and substantive hurdles, the allegedly tortious acts first occurred more than two (2) years prior to the filing of this action and are therefore barred by Indiana's controlling statute of limitations.  For a plethora of reasons, the entirety of the Second Complaint against ADESA should be summarily dismissed.

## II.  CONSIDERATION OF MATTERS OUTSIDE THE COMPLAINT

As an exception to the general rule that matters filed in support of a 12(b)(6) motion convert it to one for summary judgment, documents which are "central to the plaintiff's claim or sufficiently referred to in the complaint, even if those documents are not physically attached to the pleading" may be considered by the court.  *Carrero-Ojeda v. Autoridad De Energía Eléctrica*, 755 F.3d 711, 717 (1st Cir. 2014).  Specifically, where "a complaint's factual allegations are expressly linked to -- and admittedly dependent upon -- a document . . . that document effectively

merges into the pleadings." *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008). Plaintiffs readily acknowledge the existence of a contract with ADESA [Second Complaint, ¶ 84]. Indeed the existence of a contractual relationship with ADESA is essential to each of the three (3) counts pled against ADESA, but Plaintiffs inexplicably failed to attach the ADESA Terms and Conditions which governs the parties' dealings. [See Exhibit A].

As the contract itself is clearly central to the Plaintiffs' claims of interference with contractual relations and/or breach of any duty of good faith and fair dealing, this Court's review of Exhibit A is not only proper, but essential. *See* 5 Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1327, at 762-63 (2d ed. 1990) ("when [the] plaintiff fails to introduce a pertinent document as part of his pleading, [the] defendant may introduce the exhibit as part of his motion attacking the pleading"); *accord, Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 34 (1st Cir. 2001) ("Under First Circuit precedent, when a complaint's factual allegations are expressly linked to … a document, then the court can review it upon a motion to dismiss.") (internal quotation omitted).

The Second Complaint alleges without support that "Defendants have sufficient minimum contacts with this jurisdiction as they conduct business in Rhode Island." As shown by the Affidavit submitted herewith as Exhibit B, however, ADESA does not have contacts which subject it to personal jurisdiction in Rhode Island. "It is clear beyond hope of contradiction that a district court confronted with a motion to dismiss under [12(b)(2)] must …look beyond the pleadings to examine not only the plaintiff's properly documented evidentiary proffers but also the defendant's undisputed jurisdictional facts." *Chen v. United States Sports Acad., Inc.*, 956 F.3d 45, 56 (1st Cir. 2020), citing *PREP Tours, Inc. v. Am. Youth Soccer Org.*, 913 F.3d 11, 16-17 (1st Cir. 2019); *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 51 (1st

3

Cir. 2002). "Such jurisdictional facts may be adduced by means of an affidavit made by a person who … has adequate knowledge of the situation." *Id.* (citations omitted). Accordingly, this Court's consideration of Exhibit B, the Declaration of Michael Caggiono (Executive Vice President of U.S. Operations for ADESA) to determine whether it may exercise jurisdiction over ADESA does not convert this motion to one for summary judgment under FRCP 12(d).

Another well-settled exception to the general requirement that a court considering an FRCP 12(b) motion not look beyond the complaint are those matters for which a Court can take judicial notice. Unquestionably, "[a] court may consider matters of public record in resolving a Rule 12(b)(6) motion to dismiss." *Giragosian v. Ryan*, 547 F.3d 59, 66 (1st Cir. 2008)(additional citations omitted). "Matters of public record ordinarily include 'documents from prior state court adjudications.'" *Id., quoting, Boateng v. InterAmerican Univ., Inc.*, 210 F.3d 56, 60 (1st Cir. 2000). Other defendants in this matter have filed multiple notices of related actions or proceedings concerning prior and preclusive litigation in Indiana. [*See,* Doc. Nos. 22, 27, 35, 37, 41, 45]. It is axiomatic that this Court need not accept as true factual averments in the Second Complaint which are contradicted by the factual and legal findings contained in final orders of the other courts to have considered the same issues. See, e.g., *Banco Santander de P.R. v. Lopez-Stubbe (In re Colonial Mortg. Bankers Corp.)*, 324 F.3d. 12, 15 (1st Cir. 2003) (Applying res judicata principles to affirm 12(b)(6) dismissal; "[w]e are not bound, however, to credit bald assertions, unsupportable conclusions, and opprobrious epithets woven into the fabric of the complaint.")(internal quotation and additional citations omitted).

### III. ADESA'S OPERATIONS AND THE TERMS AND CONDITIONS

ADESA is a Delaware Corporation with its principal place of business and headquarters located in Carmel, Indiana. [Ex. B, ¶¶ 2-3]. ADESA conducts no business in Rhode Island, is not

4

licensed by Rhode Island authorities, and is not registered to do business in Rhode Island. [Ex. B; ¶¶ 4-5]It does not own any property, maintain any office, mailing address, or post office box in the State of Rhode Island, and does not maintain any bank or other form of account therein. [Ex. B; ¶¶ 6-7].

Prior to being permitted to purchase cars at auctions held by ADESA,[1] Metro entered into a written contract with ADESA. [See Exhibit A]. The ADESA Terms and Conditions, bearing Baker's signature of behalf of Metro, provide that Metro:

> submits to the exclusive jurisdiction of the courts of the State of Indiana and to venue in the Circuit and Superior Courts of Marion County Indiana and the federal courts of the Unites States, sitting in Indiana, for the adjudication of any matters arising under or in connection with these Terms and Conditions and Auction Rules. ***Any action initiated by Customer relating to these Terms and Conditions shall be filed and conducted in said Courts.***

[Ex. A, ¶ 32] (emphasis added).

Elsewhere, the ADESA Terms and Conditions make clear that ADESA "reserves the right to refuse to or terminate doing business with any Customer, and to place additional conditions or restrictions upon any Customer's activities at Auction, including but not limited to, limiting or barring access to one or more Auction locations." [Ex. A, ¶ 7]. Metro (via signature by Baker on said agreement) agreed that ADESA may "release any information whatsoever concerning [Metro] to any subsidiary or affiliate of [ADESA] *and [Metro's] active floorplan company*, including but not limited to Automotive Finance Corporation ("AFC")". [*Id.*](emphasis added). Section 12 of the Terms and Conditions specifically authorizes ADESA to investigate Metro's financial position and "at [ADESA's] sole discretion, impose whatever purchase of payment restrictions[ADESA] may deem necessary to protect [ADESA's] interest." Furthermore, Metro's

---

[1] There is no claim by Plaintiffs that any auctions occurred in Rhode Island.

5

failure to comply with the ADESA Terms and Conditions "may result in the suspension or termination of Customer's . . . privileges of transacting business with [ADESA] and its affiliates." [*Id*.].

## IV. LEGAL ARGUMENT

**A.  ADESA is not subject to Personal Jurisdiction in Rhode Island.**

"The burden of proving that personal jurisdiction may be exercised in the forum state lies squarely with the plaintiff." *Chen v. United States Sports Acad., Inc.*, 956 F.3d 45, 54 (1st Cir. 2020) (*citing Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28, 34 (1st Cir. 2016). "When assessing whether personal jurisdiction exists with respect to a non-resident defendant, a federal court exercising diversity jurisdiction acts as the 'functional equivalent of a state court sitting in the forum state.'" *Id.* "The Due Process Clause dictates that, as a prerequisite to the exercise of personal jurisdiction, an out-of-state defendant must have certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* at 54-55 (*citing Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (citations omitted))*.* Specifically, "'[t]he prima facie showing of personal jurisdiction must be based on evidence of specific facts set forth in the record,'" requiring "'[t]he plaintiff . . . go beyond the pleadings and make *affirmative proof*.'" *Negron-Torres v. Verizon Communs., Inc*., 478 F.3d 19, 23 (1st Cir. 2007) (*citing Boit v. Gar-Tec Prods., Inc*., 967 F.2d 671, 675 (1st Cir. 1992)) (emphasis added).

The Second Complaint does not allege any of the acts giving rise to this dispute occurred in Rhode Island. Instead, the only jurisdictional basis given as to ADESA is the conclusory and unsupported allegation that "[u]pon information and belief, Defendants have sufficient minimum contacts with this jurisdiction as they conduct business in Rhode Island." [Second Complaint, ¶

9]. In response to ADESA's prior motion to dismiss plaintiffs' *First Amended Complaint* [Doc. No. 23], Plaintiffs admitted to be relying on general, rather than specific, jurisdiction of the Rhode Island court over ADESA.[2]

As established by Exhibit B, ADESA has no contacts with Rhode Island that would "render [it] essentially at home in the forum state" as recognized by the First Circuit as the "lodestar of the inquiry" for determining whether a foreign "corporation's general business contacts with the forum are sufficiently continuous and systematic" to exercise general jurisdiction over it. *Chen*, 956 F.3d at 57 (alteration in original, citations omitted). The Second Complaint's conclusory "upon information and belief" allegation that ADESA conducts business in Rhode Island is insufficient as a matter of law to subject ADESA to general personal jurisdiction in Rhode Island. Accordingly, the Second Complaint must be dismissed as against ADESA pursuant to FRCP 12(b)(2).

**B.      The Second Complaint Fails to State Claims against ADESA upon which Relief Can be Granted.**

**(i)      Legal Standard for FRCP 12(b)(6) Motion.**

To survive a motion to dismiss, a "complaint must contain sufficient factual matter . . . to

---

[2] See, Doc. No. 31-1, at 2, 10-12 (alleging only general, and not specific, jurisdiction). The Supreme Court addressed the general versus generic jurisdiction distinction in *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal citations omitted; emphasis added):

> A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are s*o continuous and systematic as to render them essentially at home in the forum State*. Specific jurisdiction, on the other hand, depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation. In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.

7

'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)[3]. The plaintiff must allege facts supporting "each material element necessary to sustain recovery under some actionable legal theory." *Campagna v. Mass. Dep't of Envtl. Prot.*, 334 F.3d 150, 155 (1st Cir. 2003) (citations omitted). When allegations in the complaint "do not permit the court to infer more than the mere possibility of misconduct," a plaintiff has failed to state a claim. *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 570 (requiring factual allegations in complaint "be enough to raise a right to relief above the speculative level"). This standard does not permit a plaintiff to rely on "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements ...." *Id*. at 678. The Court must ignore "statements in the complaint that simply offer legal labels and conclusions or merely re-hash cause-of-action elements." *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012).

### (ii) The Second Complaint was filed in this Court in Contravention of an Enforceable Forum Selection Clause.

Courts in the First Circuit "treat a motion to dismiss based on a forum selection clause as a motion alleging the failure to state a claim for which relief can be granted under Rule 12(b)(6)." *Claudio-de León v. Sistema Universitario Ana G. Méndez*, 775 F.3d 41, 46 (1st Cir. 2014), quoting *Rivera v. Centro Médico de Turabo, Inc.*, 575 F.3d 10, 15 (1st Cir. 2009). "A forum selection clause is 'prima facie valid' and, absent a 'strong showing' by the resisting party

---

[3] *Twombly* also involved unsubstantiated claims of conspiracy between market actors. 550 U.S. at 548-49. In reaching the determination that plaintiff's claims failed to meet the requisite plausibility test to survive the 12(b)(6) motion, the Supreme Court noted there was "an obvious alternative explanation" to the defendants' allegedly conspiratorial conduct. *Id*. at 567. The same is true here, and equally obvious: defendants chose to no longer do business with Plaintiffs because Plaintiffs admittedly and repeatedly breached their contracts with AFC and NextGear, all as found by the Indiana courts that have conclusively weighed in on these disputes.

that the clause is 'unreasonable under the circumstances' it should not be set aside." *Id.,* at 48, citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 10, 15 (1972). The Second Complaint does not provide any basis why the forum selection clause should not be enforced, much less the "strong showing" required to meet such burden. The ADESA Terms and Conditions were signed by plaintiff Baker as "owner" of plaintiff Metro, and explicitly provide for exclusive venue and jurisdiction in the State of Indiana. [Exhibit A, ¶ 32; pg. 16]. Accordingly, the Second Complaint must be dismissed for failure to state a claim upon which relief can be granted by this Court as the plaintiffs have agreed to litigate any claims against ADESA in Indiana. Whether under FRCP 12(b)(2) as discussed above, or FRCP12(b)(6), the result is the same: the Second Complaint cannot proceed against ADESA in this Court.

### (iii) Jurisdictional Issues Aside, Plaintiffs Claims Against ADESA Fail Under Indiana Law.

Even if this Court found it can exercise general jurisdiction over ADESA, and then it found the binding jurisdiction and venue provisions of the ADESA Terms and Conditions were somehow not controlling, Counts II, III and V still fail to state cognizable claims against ADESA under Indiana law. [4] Plaintiffs allege ADESA "knew or should have known that [Metro] had contractual . . . relations with AFC and NextGear," that "Plaintiffs had ordinary trade creditors," and that "Defendants knowingly and improperly interfered with these contractual arrangements" through "misplaced obedience." [Second Complaint, ¶¶ 54, 56, 58].

To survive a 12(b)(6) motion to dismiss a tortious interference claim, the complainant must provide "at the very least a description of the tortious conduct." *Trail v. Boys & Girls*

---

[4] Pursuant to the ADESA Terms and Conditions, Metro agreed to be bound by the "substantive laws of the State of Indiana[.]" [Exhibit A, ¶32] Plaintiffs do not contest that Indiana substantive law controls this action. [Second Complaint ¶ 22].

9

*Clubs of Northwest Ind.*, 845 N.E.2d 130, 141 (Ind. 2006). Such description must "state more than a mere assertion that the defendant's conduct was unjustified." *Morgan Asset Holding Corp. v. CoBank, ACB*, 736 N.E.2d 1268, 1272 (Ind. Ct. App. 2000). Furthermore, the alleged unjustified conduct cannot be something the allegedly offending party had a contractual right to do. *Trail*, 845 N.E.2d at 139. Specifically, Indiana law provides that "the existence of a legitimate reason for the defendant's actions provides the necessary justification to avoid liability" for a claim of tortious interference. *Morgan*, 736 N.E.2d at 1272.

The ADESA Terms and Conditions make clear that ADESA had the absolute, unqualified right to stop doing business with Metro for any reason or no reason. [Exhibit A, ¶ 7]. ADESA has an obviously legitimate business interest in preventing Plaintiffs from buying additional vehicles and/or incurring debt to it when Plaintiffs have defaulted on obligations to other entities.[5] The conspiracy claim in Count III of the Second Complaint also must fail as Indiana does not recognize civil conspiracy as an independent cause of action, especially in claims (such as this) where there is no underlying tort. *Birge v. Town of Linden*, 57 N.E.3d 839, 846 (Ind. Ct. App. 2016). Put otherwise, there was no tortious interference because each party had the legitimate business right to take the alleged actions of which Plaintiffs complain, so there cannot be any corresponding claim for conspiracy.

---

[5] Notably, the Indiana Courts have found that plaintiffs violated the terms of their agreements with AFC (and with NextGear, for that matter) in final orders that have all been affirmed on appeal. [Doc. Nos. 35, 36, 41, 45]. Plaintiffs are barred by res judicata from making the factual statements that have been controverted by final judicial rulings of other courts. "The terms res judicata and claim preclusion often are used interchangeably." *Brownback v. King*, 141 S. Ct. 740, 752, n.3 (2021)(citations omitted) "[R]es judicata "comprises two distinct doctrines. The first is issue preclusion, also known as collateral estoppel. *It precludes a party from relitigating an issue actually decided in a prior case and necessary to the judgment.*" *Id.* (emphasis added). The Indiana Courts directly addressed the Plaintiffs defaults and propriety of the AFC's subsequent actions in connection therewith. [Doc. No. 35, Ex. 1, ¶¶ 11, 43, 60].

Count V of the Second Complaint fails because "Indiana does not impute into every contract a duty of good faith and fair dealing." *Del Vecchio v. Conseco, Inc.*, 788 N.E.2d 446, 451 (Ind. Ct. App. 2003)(citations omitted). "[S]uch a duty arises only in limited circumstances, such as when a fiduciary relationship exists." *Id.* No such fiduciary relationship has been alleged by Plaintiffs, nor does one arise by operation of law.[6] Finally, even if a duty of good faith existed (which it does not), "[t]he obligation of good faith and fair dealing does not permit a party to enforce an obligation not present in the contract." *Acheron Med. Supply, LLC v. Cook Med. Inc.*, 958 F.3d 637, 643 (7th Cir. Ind. 2020)(quotation and ellipses omitted). The Second Complaint fails to identify any conduct by ADESA that was not permitted by the Terms and Conditions and therefore fails to state a claim.

Furthermore, "a claim that an implied covenant of good faith and fair dealing has been breached is really a claim of breach of fiduciary duty ... and is governed by the same two-year statute of limitation as breach of fiduciary duty." *Del Vechio*, 788 N.E.2d at 451, *citing* Ind. Code § 34-11-2-4(2)(other citations omitted). An action for tortious interference with contract must also be commenced within two (2) years of the alleged injury. *C & E Corp. v. Ramco Indus.*, 717 N.E.2d 642 (Ind. Ct. App. 1999); *McLaughlin Equip. Co. v. Newcourt Credit Group, Inc.*, 2004

---

[6] Indiana "does not impose a generalized duty of good faith and fair dealing on every contract; the recognition of an implied covenant is generally limited to employment contracts and insurance contracts." *Gerdon Auto Sales, Inc. v. John Jones Chrysler Dodge Jeep Ram*, 98 N.E.3d 73, 82 (Ind. Ct. App. 2018) (internal quotation marks and citation omitted). Section 1-203 of the Uniform Commercial Code as adopted in Indiana (I.C § 26-1-1-203) imposes an obligation of good faith in performance and enforcement of contracts, but the IUCC covers only contracts for the sale of goods and certain other specified transactions, not contracts for services. *Insul-Mark Midwest, Inc. v. Modern Materials, Inc.*, 612 N.E.2d 550, 553–56 (Ind. 1993). The ADESA Terms and Conditions is a contract for services: namely, the provision of auction services by ADESA, and such terms make clear that ADESA is not the seller of any automobiles. [Ex. A, ¶ 10].

U.S. Dist. LEXIS 13939 (S.D. Ind. 2004).[7] As all of the actions underlying the alleged tort occurred in or around April 2018 [Second Complaint ¶¶ 23-24], Plaintiffs' Second Complaint filed on September 24, 2021 and relating back to August 14, 2020 is barred by Indiana's two (2) year statute of limitations applicable to such claims. Accordingly, Counts II, III and V fail to state claims upon which relief can be granted and should be summarily dismissed against ADESA.

### V.     CONCLUSION

---

[7] Rhode Island does not automatically apply the statute of limitations of the forum state and conducts a policy weighing test as to whether to apply the statute of limitations of another state. *Harodite v. Warren Elec. Co.,* 24 A.3d 514 (R.I. 2011). Those policy considerations include:

> (1) Predictability of results.
> (2) Maintenance of interstate and international order.
> (3) Simplification of the judicial task.
> (4) Advancement of the forum's governmental interests.
> (5) Application of the better rule of law.
>
> In addition, in a case sounding in tort … the following additional factors are to be considered:
>
> (a) the place where the injury occurred,
> (b) the place where the conduct causing the injury occurred,
>
> (c) the domicil[e], residence, nationality, place of incorporation and place of business of the parties, and
> (d) the place where the relationship, if any, between the parties is centered.

24 A.3d. at 534. These factors weigh strongly in favor of applying Indiana's two (2) year statute of limitations, in particular: (i) the parties agreed that Indiana law would control; (ii) the importance of certainty in relationships concerning the free marketability of automobiles and access to credit; (iii) application of Indiana's statute would terminate this litigation, thus simplifying the judicial task; and, (iv) all of the defendants are located in Indiana, and only one party plaintiff (Baker) has any connection to Rhode Island, but his claims are entirely derivative of Metro, a Connecticut LLC that operated in Connecticut. Perhaps most instructive to this analysis is that none of the allegedly tortious conduct occurred in Rhode Island, but rather in Connecticut (or Indiana, where defendants all reside), but Connecticut would also apply the same two (2) year statute applicable in Indiana. *See*, Conn. Gen. Stat. Ann. § 52-584.

Plaintiffs' Second Complaint should be dismissed in its entirety against ADESA pursuant to FRCP 12(b)(2) and 12(b)(6). The Court lacks personal jurisdiction over ADESA and the Second Complaint represents causes of action that not only fail to state cognizable claims but also which cannot be maintained in this Court due to the forum selection provisions of the ADESA Terms and Conditions. Each alleged claim fails in light of the express and unambiguous terms of the parties' agreements, the related statute of limitations, and the dictates of established Indiana law.

Respectfully submitted,

/s/ Joseph V. Cavanagh, III
Joseph V. Cavanagh, III (#6907)
Blish & Cavanagh, LLP
30 Exchange Terrace
Providence, RI 02903-1765
Tel: (401) 831-8900; Fax: (401) 751-7542
Email: jvc3@blishcavlaw.com

/s/Reynold T. Berry
Reynold T. Berry (Ind. Atty #25482-49)
Admitted Pro Hac Vice
RUBIN & LEVIN, P.C.
135 N. Pennsylvania St., Suite 1400
Indianapolis, IN 46204
(317) 634-0300 - FAX No. (317) 263-9410
Email: rberry@rubin-levin.net

*Attorneys for Automotive Finance Corporation d/b/a AFC and ADESA, Inc.*

## CERTIFICATE OF SERVICE

      I hereby certify that on November 8, 2021, I caused a true copy of the foregoing document to be filed using the CM/ECF System and it is available for viewing and downloading by all counsel of record as follows:

Harris K. Weiner
Salter McGowan Sylvia & Leonard, Inc.
Email: hweiner@smsllaw.com

Katharine E. Kohm
Pierce Atwood LLP
Email: kkohm@pierceatwood.com

David J. Jurkiewicz
Bose, McKinney & Evans LLP
Email: djurkiewicz@boselaw.com

                                            /s/ Joseph V. Cavanagh, III