## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

CT102 LLC d/b/a Metro Motors and H.
Jeffrey Baker,

        Plaintiffs,

      v.                                  Civil Action No.:1:20-cv-356-MSM-PAS

Automotive Finance Corporation d/b/a AFC;
NextGear Capital, Inc; Manheim, Inc.;
and ADESA, Inc.

        Defendants.

## MEMORANDUM IN SUPPORT OF
## NEXTGEAR CAPITAL, INC.'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT OR IN THE ALTERNATIVE TO STAY PENDING COMPLETION OF MANDATORY ARBITRATION

Defendant NextGear Capital, Inc. ("NextGear") based upon the doctrine of *res judicata* and pursuant to the Federal Rules of Civil Procedure 12(b)(6), respectfully moves this Court to dismiss all counts against NextGear in the Second Amended Complaint ("Federal Complaint") filed by Plaintiffs, CT102 LLC d/b/a Metro Motors ("Metro Motors") and H. Jeffrey Baker ("Baker") (collectively "Plaintiffs") or, in the alternative, to stay the same pending completion of the mandatory arbitration provisions in the contract between the parties.

## I. INTRODUCTION

The August 26 Text Order on the Motions to Dismiss granted Plaintiffs 30 days to file an Amended Complaint, which Plaintiff did. [ECF Doc. 42] (also referred to as the "Federal Complaint" herein).  Plaintiff's Second Amended Complaint is substantially similar to the Plaintiff's First Amended Complaint and the arguments made by NextGear in this Memorandum tracks the arguments previously made in response to the First Amended Complaint.

This Court should dismiss the above action for at least two reasons. First, Plaintiffs failed to raise their claims against NextGear in an action in Indiana[1] that resulted in final judgment in favor of NextGear and as such the compulsory counterclaims are barred. Second, Plaintiffs have improperly filed suit in Rhode Island Federal District Court instead filing for arbitration in Indianapolis as required or in Hamilton County, Indiana, where venue is required.

Plaintiffs improperly bring claims against NextGear in their Federal Complaint. All of the Plaintiffs' claims against NextGear were—or were required to have been—litigated to conclusion in a civil lawsuit in Indiana state court (the "Indiana Action").[2] The proper application of both federal and Indiana law results in the inescapable conclusion that Plaintiffs are precluded from re-litigating these claims in any court, including the United States District Court for the District of Rhode Island. *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 481-82 (1982); *R.G. Financial Corp. v. Vergara-Nunez*, 446 F.3d 178, 184-85 (1st Cir. 2006). This Court should not allow Plaintiffs another bite at the apple, and should instead dismiss all of Plaintiffs' claims against NextGear.

---

[1] Defendant NextGear has filed a "Notice of Related Actions or Proceedings" for the Indiana Action per LR cv 9.1 of the Local Rules of the United States District Court for the District of Rhode Island. Notwithstanding that Plaintiffs are defendants in the Indiana Action, neither Plaintiff filed the required LR cv 9.1 notice. [See ECF Nos. 27; 36]

[2] Hamilton County Circuit Court, Cause No. 29C01-1809-CC-008218. The Complaint in the Indiana Action was filed on September 4, 2018 and is attached as **Exhibit A** ("State Complaint") The Plaintiffs' Third Party Answer and Affirmative Defenses was filed in the Indiana Action on October 8, 2018 and is attached hereto as **Exhibit B** ("Answer and Affirmative Defenses"). The Summary Judgment Order was entered on October 4, 2019 and is attached hereto as **Exhibit C** ("Order Entering Summ. J."). The Memorandum Opinion from the Indiana Court of Appeals was entered on April 1, 2020 and is attached hereto as **Exhibit D** ("Appeal Opinion"). The Order on Trial October 6, 2020 is attached hereto as **Exhibit E** ("Final Judgment"). The Memorandum Opinion from the Indiana Court of Appeals upholding the Final Judgment was entered on March 19, 2021 and is attached hereto as **Exhibit F** ("Appeal Opinion 2"). NextGear asks that the Court take judicial notice of and give full faith and credit to the relevant state court filings and final judgment in the Indiana Action to "supplement the facts contained in the pleadings." *R.G. Financial Corp. v. Vergara-Nunez*, 446 F.3d 178, 182 (1st Cir. 2006) (citing *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 15-16 (1st Cir. 2004) (holding that on motion to dismiss for failure to state cause of action, court must consider not only the complaint but also matters fairly incorporated within it and matters susceptible of judicial notice); *see also* Fed. R. Evid. 201(b).

Alternatively, Plaintiffs have improperly filed suit in the Rhode Island Federal District Court instead of filing an arbitration action in Indianapolis, Indiana, as both Plaintiffs contractually agreed in separate agreements with NextGear. All of Plaintiffs' claims in their Federal Complaint relate to services memorialized in agreements between NextGear and the Plaintiffs marked as exhibit A ("Note") and exhibit B ("Guaranty") (collectively the "Loan Documents") to the State Complaint, which is **Exhibit A**. The Loan Documents have mandatory arbitration provisions. The Loan Documents also include a fall-back forum-selection clause, which unequivocally state that for any disputes not arbitrated, the jurisdiction and venue for any suit against NextGear shall be "in the state or federal courts of Marion County or Hamilton County, Indiana," to the exclusion of all other venues. Plaintiffs' Federal Complaint ignores the mandatory arbitration provision and exclusive venue provisions and instead alleges–in conclusory fashion–that venue is appropriate in Rhode Island simply because Baker, the sole member of Metro Motors, a Connecticut limited liability company, resides there. The First Circuit Court of Appeals, like all federal circuits, strongly favors arbitration and regularly compels disputes to be arbitrated in accordance with contract language. Likewise, the First Circuit has also held that a valid forum-selection clause, such as contained in the Loan Documents, requires dismissal under Fed. R. Civ. Pro. 12(b)(6) for failing to state a claim for which relief can be granted. *Claudio-De Leon v. Sistema Universitario Ana G. Mendez*, 775 F.3d 41, 46 (1st Cir. 2014); *Rivera v. Centro Médico de Turabo, Inc.*, 575 F.3d 10, 15 (1st Cir. 2009). The United States Supreme Court recently affirmed this principle as well, in *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612 (2018) ("The policy may be debatable but the law is clear: Congress has instructed that arbitration agreements like those before us must be enforced as written.") Therefore, NextGear respectfully requests that relying on either route—

arbitration or the required Indiana forum--that this Court dismiss all claims against it alleged by Plaintiffs' Federal Complaint.

## II. INDIANA ACTION - FACTS AND PROCEDURAL HISTORY

On September 4, 2018, NextGear, as plaintiff, commenced the Indiana Action against Metro Motors and Baker for breach of contract, breach of guaranty, and conversion. (State Complaint p. 3-5 at "COUNT I-III"). NextGear's claims arose from a Demand Promissory Note and Loan and Security Agreement between NextGear and Metro Motors (State Complaint p.2 at ¶5; State Complaint at exh. A), which Baker personally guaranteed by executing an Individual Guaranty (State Complaint p.2 at ¶6; State Complaint at exh. B). Through the Note, NextGear agreed to provide a line of credit to Metro Motors in order to finance Metro Motors' vehicle inventory, up to $300,000.00, and Baker personally guaranteed full and prompt repayment of all sums advanced. (State Complaint p.2 at ¶5; State Complaint at exh. A, p. 2; State Complaint p.2 at ¶6).

Metro Motors failed to repay those sums, thereby defaulting on the Note and prompting the Indiana Action. (State Complaint p.2-3 at ¶¶9-10). Baker, as guarantor, was also named as a defendant. After almost a year of litigation, on October 22, 2019, the Indiana state court granted summary judgment in favor of NextGear against Metro Motors and Baker on the breach of contract claims. The Indiana state court held that: "[Metro Motors] failed to make payments of principal and/or interest when due under the [Loan Documents]," (Order Entering Summ. J. p.2 at ¶6); "[Metro Motor's] default constitutes a breach of contract for which [NextGear] is entitled to recover its damages," (Order Entering Summ. J. p. 3 at ¶18); and that "[NextGear] has the right to pursue collection of [Metro Motor's] Indebtedness from [Baker] as a primary, and not secondary, obligor." (Order Entering Summ. J. p. 3 at ¶21). Accordingly, the Indiana state court entered

judgment against the Plaintiffs, jointly and severally, for NextGear's damages arising under the Loan Documents. (Order Entering Summ. J. p. 4-5 at ¶¶(a)-(f)).

The Plaintiffs appealed the Order Entering Summ. J. and on April 1, 2020, the Indiana Court of Appeals entered a Memorandum decision which upheld the trial court's finding that the Plaintiffs executed the Loan Documents and that the Plaintiffs breached the Loan Documents holding in part:

> In adjudging Dealer liable for a breach of contract, the trial court found that 'the Note and Guaranty were valid and binding' and Dealer had breached the Agreement by failure to make payments due. Appealed Order at 1. Dealer does not dispute the existence of an enforceable contract. Dealer does not explicitly dispute that there was a breach of contract on its part, inasmuch as Dealer admitted that it failed to pay a third-party creditor, which was an event of default under the Agreement, and Dealer does not claim to have timely satisfied its obligations to Lender.

(Appeal Opinion 1 p. 6). The case was remanded to the Hamilton County Circuit Court for an evidentiary hearing on damages.

On October 6, 2020, the Indiana state court conducted a bench trial on damages. Baker appeared in person and by counsel. On October 15, 2020, the Indiana state court entered the Final Judgment granting judgment in favor of NextGear against Metro Motors and Baker for breach of the Note and breach of the Guaranty in the amount of $205,494.11 and denying any counterclaims of Metro Motors and Baker against NextGear, of which none were filed.

Thereafter, CT102 and Baker appealed to the Court of Appeals of Indiana raising a single issue for appellate review concerning the business records exception to the rule against hearsay. On March 19, 2021, the Court of Appeals of Indiana rejected CT102's and Baker's evidentiary arguments and affirmed the trial court's decision on the damages due and owing to NextGear (Appeal Opinion 2).

Importantly, Metro Motors and Baker brought no counterclaims against NextGear in the Indiana Action and did not attempt to join any additional parties. (Answer and Affirmative Defenses).  Instead, on September 24, 2021, more than two years after the Indiana Action was filed and after the Final Judgment was entered and finally upheld by Appeal Opinion 2, the Plaintiffs filed this new and separate, seven-count Federal Complaint against NextGear, along with the other defendants in this action.  In the Federal Complaint, Plaintiffs allege claims against NextGear[3] for:

> (1) Intentional Tortious Interference with Contractual Relations;
>
> (2) Conspiracy to Tortuously Interfere with Loan Documents;
>
> (3) Negligence;
>
> (4) Breach of Covenant of Good Faith and Fair Dealing;
>
> (5) Unjust Enrichment; and
>
> (6) Lender Liability.

(Federal Complaint pgs. 8-15 at "COUNT II-VII").  The Federal Complaint's alleged facts and claims asserted against NextGear arise solely from the Loan Documents and the subsequent actions related to Plaintiffs' breach of the Loan Documents.

## III.  LEGAL STANDARD

### A.    Indiana's *Res Judicata* law applies

The preclusive effect of a state court judgment in a subsequent federal lawsuit is determined by the full faith and credit statute, which provides that state judicial proceedings "shall have the same full faith and credit within the United States…as they have by law or usage in the courts of such State…from which they are taken." 28 U.S.C. § 1738. This statute directs a federal court to refer to the preclusion law of the state in which judgment was rendered. *See Kermer*, 456

---

[3] The first count/claim in the Federal Complaint was not plead against NextGear.

U.S. at 481-82 (1982) (holding that "[i]t has long been established that § 1738 does not allow federal courts to employ their own rules of *res judicata* in determining the effect of state judgments. Rather, it goes beyond the common law and commands a federal court to accept the rules chosen by the State from which the judgment is taken"). *See also R.G. Financial Corp.*, 446 F.3d at 182-83 (holding that Puerto Rico courts would function as state courts and Puerto Rico's *res judicata* state law would govern the preclusion issues at hand). Therefore, Indiana's *res judicata* statutes and case law govern whether Plaintiffs should be barred from bringing these claims against NextGear.

### B.    Indiana's Compulsory Counterclaim Standard

Indiana allows motions to dismiss, based on Indiana Trial Rule 13(A), for failure to assert compulsory counterclaims. *Estate of McCullough*, 492 N.E.2d 1093, 1095 (Ind. Ct. App. 1986). Indiana Trial Rule 13(A) addresses compulsory counterclaims and provides, in pertinent part:

> A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, *if it arises out of the transaction or occurrence* that is the subject-matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction…

(emphasis added). When a party fails to bring a compulsory counterclaim in an initial action, that claim is forever barred: "As required by Trial Rule 13(A), a compulsory counterclaim must be stated at the first opportunity if it exists at the time the plaintiff's complaint is served and if it arises out of the transaction or occurrence which is the subject matter of the plaintiff's complaint." *Crider v. State Exch. Bank of Culver*, 487 N.E.2d 1345, 1349 (Ind. Ct. App. 1986) (transfer denied).

## IV.  LEGAL ARGUMENT

**A.      Plaintiffs have waived all claims against NextGear in the Federal Complaint by failing to assert them in the Indiana Action**

Plaintiffs, by filing the Federal Complaint, have done exactly what Indiana's compulsory counterclaim statue and case law was established to avoid—duplicative litigation between the same parties arising from the same events. Indiana Trial Rule 13(A) addresses compulsory counterclaims and provides, in pertinent part:

> A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, *if it arises out of the transaction or occurrence* that is the subject-matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction…

(Emphasis added).

"The phrase 'transaction or occurrence' should be broadly defined so as to effectuate the rule's intended purpose of avoiding multiple lawsuits between the same parties arising from the same event or events." *Ratcliff v. Citizens Bank of Western Indiana*, 768 N.E.2d 964, 967 (Ind. Ct. App. 2002) (transfer denied). Causes of action "arise from the same transaction or occurrence if there is a logical relationship between them, meaning that the counterclaim arises from the same aggregate set of operative facts as the opposing party's claim." *Id.* (citing *Hotmix & Bituminous Equip. Inc. v. Hardrock Equip. Corp.*, 719 N.E.2d 824 (Ind. Ct. App. 1999)).

In *Citizens Bank of Western Indiana*, the Ratcliffs sought financing through a bank and were assisted by the bank's president, Fehrenbach, in receiving a series of loans. 768 N.E.2d 964. After allegedly receiving bad advice from Fehrenbach, the Ratcliffs defaulted on their loans, and the bank instituted foreclosure proceedings in December 1997. *Id.* at 965-67. In November of 1998, during receivership, the Ratcliffs sued the bank and Fehrenbach, alleging, *inter alia*, breach

of the duty of good faith and fair dealing and tortious interference with a business relationship. *Id.* at 966.

The bank and Fehrenbach filed a motion to dismiss the Ratcliffs' claims, which the trial court granted. That court found, among other things, that the Ratcliffs' claims were compulsory counterclaims that should have been filed during the foreclosure and receivership proceedings. *Id.* The Ratcliffs appealed, and the appellate court affirmed, holding that the parties' "interaction created a logical relationship or aggregate set of operative facts that spawned the foreclosure and receivership actions as well as the Ratcliffs' subsequent civil claims against the defendants." *Id* at 696.

> 1.     **Plaintiffs' claims against NextGear arise out of the same transaction or occurrence that is the subject matter of the Indiana Action**

This Court has an easier job than the court in *Citizens Bank of Western*, as the Indiana Action and the allegations in the Federal Complaint all arise out of the Loan Documents—and the subsequent default by the Plaintiffs under the Loan Documents—rather than a series of loans. 764 N.E.2d at 966. Plaintiffs' claims in the Federal Complaint against NextGear are inherently part of an "interaction [that] created a logical relationship or aggregate set of operative facts that spawned" the Indiana Action. *Id*. at 969. Hence, all of the claims in the Federal Complaint against NextGear should be dismissed since they are precluded under Indiana's compulsory counterclaim law. *Id.* at 967. For the sake of thoroughness, a brief review of each of the claims alleged against NextGear in the Federal Complaint follows.

> (a)     **Plaintiffs' claim against NextGear for Intentional Tortious Interference With Contractual Relations is precluded**

Plaintiffs allege that all the defendants in the Federal Complaint "knew or should have known that Metro Motors had contractual borrower/lender relations with AFC and NextGear,"

(Federal Complaint p.8 at ¶54); that all the defendants "knew or should have known that these financial arrangements were personally guaranteed by the principal of CT102 LLC (i.e., Baker)," (Federal Complaint p.8 at ¶55); and that all the defendants "knowingly and improperly interfered with these contractual arrangements by intentionally inducing breaches of these two loan agreements, as well as ordinary trade creditors…" (Federal Complaint p.9 at ¶58). Regardless of the veracity of these allegations, each of these allegations is based on interactions arising from the Loan Documents, the obligations pursuant to the terms in the Loan Documents, the Plaintiffs' default under the Loan Documents, and/or "contractual borrower/lender relations." The logical relationship or aggregate set of operative facts that spawned the Indiana Action for breach of the Loan Documents are the same as those spawning the claims against NextGear in the Federal Complaint. *Ratcliff*, 768 N.E.2d at 969. Therefore, Plaintiffs have waived their right to assert this claim, as they were compelled under Indiana law to bring it against NextGear as a counterclaim in the Indiana Action which resulted in final judgment holding that Plaintiff breached the agreements that are the basis of the tortious interference claim.[4] *Id* at 966-967.

(b)     **Plaintiffs' claim against NextGear for Conspiracy to Tortiously Interfere with the Agreements is precluded**

Under this claim, Plaintiffs generally allege that the all of the defendants were in a conspiracy to prevent the Plaintiffs from going to public auctions and getting a fair price for their automobiles. Additionally, Plaintiffs alleged that "the actions of Michael Flanagan and AFC show collusion between AFC and NextGear to wrongfully wipe out Metro Motors' inventory in a commercially unreasonable manner." (Federal Complaint p.11 at ¶69). Plaintiffs also allege that "by fiat, either AFC or NextGear through their control of auctions, can put a dealership out of

---

[4] Plaintiffs fail to explain how it is possible for a defendant to tortiously interfere with a contract that had been breached by the Plaintiffs.

business." (Federal Complaint p.11 at ¶67). Once again, the allegations in this claim arise solely out of the Loan Documents, particularly the default and collateral provisions of the Loan Documents. The logical relationship or aggregate set of operative facts that spawned the Indiana Action are the same as those spawning this claim of the Federal Complaint. *Ratcliff*, 768 N.E.2d at 969. Therefore, Plaintiffs have waived their right to assert this claim, as they were compelled under Indiana law to bring this claim against NextGear as a counterclaim in the Indiana Action. *Id* at 966-967.

### (c)    Plaintiffs' claim against NextGear for negligence is precluded

Under this claim, Plaintiffs allege that "NextGear owed Metro Motors a duty to supply Metro Motors with the title to the paid-off vehicle auctioned off by Southern." (Federal Complaint p.12 at ¶76). Additionally, Plaintiffs allege that "NextGear wrongfully directed Southern to pay the proceeds to NextGear instead of Metro Motors." (Federal Complaint p.12 at ¶78). And, Plaintiffs allege that "NextGear had a duty to Metro Motors to repossess in a commercially reasonable manner which it failed to do." (Federal Complaint p.12 at ¶79). In fact, titles, auction sale proceeds and repossession relate directly to the Loan Documents deficiency judgment damages awarded to NextGear in the Indiana Action.  Here NextGear owes no duty to Defendants, save for those set forth in the Loan Documents.  Any alleged duty under the Loan Documents and resulting breach of such duty should have been brought in the Indiana Action. The logical relationship or aggregate set of operative facts that spawned the Indiana Action are the same as those spawning this claim of the Federal Complaint. *Ratcliff*, 768 N.E.2d at 969. Therefore, Plaintiffs have waived their right to assert this claim, as they were compelled under Indiana law to bring it against NextGear as a counterclaim in the Indiana Action. *Id* at 966-967.

       **(d)**    **Plaintiffs' claim against NextGear for Breach of Covenant of Good Faith and Fair Dealing is precluded**

Under this claim, Plaintiffs allege that "all transactions referenced above including repossession and auction exclusion, are subject to section 1-203 of the Uniform Commercial Code requires good faith and fair dealings." (Federal Complaint p.13 at ¶83). Additionally, Plaintiffs allege that NextGear, as a lender, had—and breached—an additional duty to Baker and Metro Motors. (See Federal Complaint p.13 at ¶85-87. This claim specifically indicates that there was a secured transaction agreement between NextGear and the Plaintiffs, the very Loan Documents that are the subject matter of the Indiana Action. The logical relationship or aggregate set of operative facts that spawned the Indiana Action are the same as those spawning this claim of the Federal Complaint. *Ratcliff*, 768 N.E.2d at 969. Therefore, Plaintiffs have waived their right to assert this claim, as they were compelled under Indiana law to bring this claim against NextGear as a counterclaim in the Indiana Action. *Id* at 966-967.

       **(e)**    **Plaintiffs' claim against NextGear for Unjust Enrichment is precluded**

Under this claim, Plaintiffs allege that "[b]y retaining the repossessed vehicles and/or liquidation proceeds, defendants AFC and NextGear knowingly, intentionally, and wrongfully retained equity belonging to Metro Motors." (Federal Complaint p.14 at ¶90). Additionally, Plaintiffs allege that "these wrongful repossessions and commercially unreasonable sales went beyond the lender's authority under their respective agreements." (Federal Complaint p.14 at ¶91). Again, this claim is directly tied to the damages awarded to NextGear in the Indiana Action. This claim specifically relies on the existence and terms of the Loan Documents. The logical relationship or aggregate set of operative facts that spawned the Indiana Action are the same as those spawning this claim of the Federal Complaint. *Ratcliff*, 768 N.E.2d at 969. Therefore,

Plaintiffs have waived their right to assert this claim, as they were compelled under Indiana law to bring it against NextGear as a counterclaim in the Indiana Action. *Id* at 966-967.

### (f) Plaintiffs' claim against NextGear for Lender Liability is precluded

Under this claim, Plaintiffs allege that "Defendants AFC and NextGear breached their loan agreements and guarantees with [Metro Motor and Baker]…" (Federal Complaint p.14 at ¶95). Once again, this claim specifically references the Loan Documents and their governance over this claim. (Federal Complaint p.14 at ¶95). The logical relationship or aggregate set of operative facts that spawned the Indiana Action are the same as those spawning this claim of the Federal Complaint. *Ratcliff*, 768 N.E.2d at 969. Therefore, as with the other claims, Plaintiffs have waived their right to assert this claim, as they were compelled under Indiana law to bring this claim against NextGear as a counterclaim in the Indiana Action. *Id* at 966-967.

It is clear that all of the claims against NextGear in the Federal Complaint have a logical relationship or the same aggregate set of operative facts that spawned the Indiana Action, as they all concern the Loan Documents, the parties' interactions pursuant to the Loan Documents, and the default terms of the Loan Documents. Therefore, they arise out of the same transaction or occurrence that is the subject matter of the Indiana Action under Indiana Trial Rule 13(A). *Ratcliff*, 768 N.E.2d at 967. Additionally, Plaintiffs acknowledge their ability to bring additional claims and parties in the Indiana Action by pleading seventeen affirmative defenses in their Answer. (See Answer and Affirmative Defenses pgs. 4-5 at ¶¶1-17). Some of the more relevant affirmative defenses are: NextGear being in breach of contract; the acts/omissions alleged are by third parties and not by Metro Motors or Bakers; NextGear's own conduct/unclean hands; NextGear being unjustly enriched; accord and satisfaction; and good faith by NextGear. (See Answer and Affirmative Defenses pgs. 4-5 at ¶¶ 5, 7, 9, 11, 12, 14). Accordingly, Plaintiffs have waived their

right to assert the claims against NextGear in the Federal Complaint, as they were required to bring them as compulsory counterclaims in the Indiana Action. *Id.*

> **(g)** **Plaintiffs' failure to join defendants to the Indiana Action does not permit them to bring the Federal Complaint claims against NextGear**

Plaintiffs may argue that their claims against NextGear in the Federal Complaint are not compulsory counterclaims, since they include other defendants that were not part of the Indiana Action. However, Indiana law has firmly established that "'Trial Rule 13(A) does not limit compulsory counterclaims to only those individuals named in the original complaint; rather, a party is required to file a compulsory counterclaim that arises from the same transaction or occurrence against third parties over whom the court *can acquire jurisdiction*.'" *New Albany Residential, Inc. v. Hupp*, 872 N.E.2d 627, 630 (Ind. Ct. App. 2007) (quoting *Ratcliff*, 768 N.E.2d at 969) (emphasis in the original). Since the Plaintiffs were both parties to the Indiana Action, they were required to join the additional defendants named in the Federal Complaint to the Indiana Action and raise the claims they now bring, all of which arise under the Loan Documents. *See New Albany Residential, Inc.*, 872 N.E.2d at 630-31. By failing to do so, Plaintiffs are now barred from pleading the claims against NextGear in the Federal Complaint, since they are compulsory counterclaims to the Indiana Action, and they could have joined additional parties to the Indiana Action. *Crider*, 487 N.E.2d at 1349.

## V. <u>ARBITRATION AND IMPROPER VENUE - BACKGROUND</u>

The facts supporting this motion to dismiss based on a valid arbitration provision and forum-selection clause are uncomplicated. Baker, as the sole member of Metro Motors and as guarantor, entered into the Loan Documents. The Loan Documents deal with all of the parties' interactions specifically surrounding financing of automobile inventory. The Loan Documents

include, in relevant part, the following arbitration provision (the "Arbitration Provision"), which

appears in the Note at Section 22 and in the Guaranty at Section 5(e)(i):

> In the unlikely event that Lender is unable to resolve a dispute or claim that [Borrower or Guarantor] may have, [Borrower or Guarantor] agrees to arbitrate any such dispute or claim. This agreement to arbitrate is intended to be broadly interpreted, and includes (i) all disputes, claims and counterclaims arising out of or relating to [the Note or Guaranty] or any aspect of [Borrower or Guarantor]'s relationship with Lender, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory; (ii) all disputes, claims and counterclaims that may have arisen before this [Note or Guaranty] or any prior contract or agreement between [Borrower or Guarantor] and Lender (including all disputes, claims and counterclaims relating to any marketing or advertising by Lender); and (iii) any disputes, claims and counterclaim that may arise after the termination of this [Note or Guaranty]. Additionally, [Borrower or Guarantor] acknowledges that Lender may (but shall in no event be required to) arbitrate any dispute or Claim that it may have against [Borrower or Guarantor], with any such arbitration being governed by the provisions of [this Section].

(Note p. 18 at ¶22); (Guaranty p. 4 at ¶ 5(e)(i)).  (The Note Arbitration Provision and the Guaranty

Arbitration Provision are collectively referred to as the "Arbitration Provisions").  Both Arbitration

Provisions likewise include the sentence "Any arbitration will be held in Indianapolis, Indiana (or

its greater metro area).  (Note p. 18 at ¶22); (Guaranty p. 4 at ¶ 5(e)(iii)).[5]

The Loan Documents also include a forum-selection provision.  The Note Forum Selection

Provision states, in relevant part:

> JURISDICTION AND VENUE.  As evidenced by Borrower's signature below, [...] Borrower submits to the personal jurisdiction and venue of the state and federal courts of Marion County and Hamilton County, Indiana, and agrees that any and all claims or disputes pertaining to this Note or any other Loan Document, or to any matter arising out of or related to this Note or any other Loan Document, initiated by Borrower against Lender, shall be brought in the state or federal courts of Marion County or Hamilton County, Indiana.  Further, Borrower expressly consents to the jurisdiction and venue of the state and federal courts of Marion County and Hamilton County, Indiana, as to any legal or equitable action that may be brought in such court by Lender, and waives any objection based upon lack of personal jurisdiction, improper venue, or forum non conveniens with respect to any such

---

[5] The Arbitration Provisions each include a clause allowing the Borrower or Guarantor to opt out in writing, see Note at p. 18 at ¶ 22(a) and Guaranty at ¶ 5(e)(i),  but neither Plaintiff did so.  Accordingly, the Arbitration Provisions control.

action.  Borrower acknowledges and agrees that Lender reserves the right to initiate and prosecute any action against Borrower in any court of competent jurisdiction, and Borrower consents to such forum as Lender may elect.

(Note p.10 at ¶21).  Likewise, the Guaranty includes, in relevant part, the following forum-selection provision as well (the "Guaranty Forum Selection Provision"):

> <u>Jurisdiction and Venue</u>.  As evidenced by Guarantor's signature below, Guarantor submits to the personal jurisdiction and venue of the state and federal courts of Marion County and Hamilton County, Indiana, and agrees that any and all claims or disputes pertaining to this Guaranty, or to any matter arising out of or related to this Guaranty, initiated by Guarantor against NextGear, shall be brought in the state or federal courts of Marion County or Hamilton County, Indiana.  Further, Guarantor expressly consents to the jurisdiction and venue of the state and federal courts of Marion County and Hamilton County, Indiana, as to any legal or equitable action that may be brought in such court by NextGear, and waives any objection based upon lack of personal jurisdiction, improper venue or forum non conveniens with respect to any such action.  Guarantor acknowledges and agrees that NextGear reserves the right to initiate and prosecute any action against Guarantor in any court of competent jurisdiction, and Guarantor consents to such forum as NextGear may elect.

(Guaranty p. 4 at ¶5(d)). (The Note Forum Selection Provision and the Guaranty Forum Selection Provision are collectively referred to as "Forum Selection Provisions").[6]

Despite the clarity of both Arbitration Provisions that all disputes brought by Plaintiffs must be arbitrated, and the Forum Selection Provisions that prohibit Plaintiffs from suing NextGear in any jurisdiction except the state and federal courts of Marion County and Hamilton County, Indiana, on September 24, 2021, Plaintiffs filed the Federal Complaint against NextGear in this Court.

## VI.  <u>LEGAL STANDARD</u>

Federal Courts applying the Federal Arbitration Act ("FAA") strongly favor arbitration and apply a presumption in favor of finding that disputes are arbitrable.  *Proulx v. Brookdale Living*

---

[6] The Final Judgment upholds the enforceability of the Note and Guaranty as drafted, including the forum selection of the state and federal courts of Marion County and Hamilton County, Indiana.

*Communities Inc.*, 88 F.Supp.3d 27, 31 (D.R.I. 2015) ("Accordingly, if there is any doubt whether a matter is arbitrable or not, federal policy requires that such doubt is resolved in favor of arbitration.").  And as a result of this strong preference for arbitration, if all issues in an action are arbitrable, a court can dismiss the entire action. *See Large v. Conseco Fin. Serv. Corp.*, 167 F. Supp. 2d 203, 207 (D.R.I. 2001) (collecting cases and holding that "several Courts of Appeals-including the First Circuit-recognize that where all the issues presented in a lawsuit are arbitrable, the district court may exercise its discretion to dismiss the complaint"); *see also* 9 U.S.C. § 3 ("upon being satisfied that the issue involved in such suit . . . is referable to arbitration under such an agreement," a court "shall . . .stay the trial of the action until such arbitration has been had.").

Likewise in the First Circuit, courts apply Rule 12(b)(6) to dismiss claims governed by valid forum-selection clauses. *Claudio-De Le*on, 775 F.3d at 46. As such, "the district court must accept as true the well-pleaded factual allegations of the complaints, draw all reasonable inferences therefrom in the plaintiffs' favor, and determine whether the complaint, so read, limns facts sufficient to justify recovery on any cognizable theory." *Rivera*, 575 F.3d at 15 (internal quotations omitted).

"'Under Rule 12(b)(6), the district court may properly consider only facts and documents that are part of or incorporated in to the complaint; if matters outside the pleadings are considered, the motion must be decided under the more stringent standards applicable to a Rule 56 motion for summary judgment.'" *Id*. at 15 (quoting *Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc.*, 524 F.3d 315, 321 (1st Cir. 2008). However, the First Circuit has "recognized an exception to this rule ' . . . for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the compliant,' which courts may properly consider on Rule 12(b)(6) motions." *Rivera*, 575 F.3d at 15 (quoting *Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.*, 267

F.3d 30, 33 (1st Cir. 2001)); *see also Newman v. Lehman Brothers Holdings Inc.*, 901 F.3d 19, 25 (1st Cir. 2018) (holding that "certain extrinsic documents" may be considered on a motion to dismiss "without turning the 12(b)(6) motion into a motion for summary judgment") (quoting *Freeman v. Town of Hudson*, 714 F.3d 29, 35 (1st Cir. 2013) and *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)).

Although Plaintiffs attempted to bring this suit on the basis of diversity jurisdiction, this Court "need not reach the unsettled issue of whether 'forum-selection clauses are to be treated as substantive or procedural for Erie purposes.'" *Rivera*, 575 F.3d at 16 (quoting *Lambert v. Kysar*, 983 F.2d 1110, 1116 & n. 10 (1st Cir. 1993)). This is because, like Rhode Island, Indiana has adopted the United States Supreme Court's analysis regarding the enforcement of forum selection clauses. *Horner v. Tilton*, 650 N.E.2d 759, 763 (Ind. Ct. App. 1995). Therefore, this Court can apply federal common law. See *Rivera*, 575 F.3d at 16.

# VII.  LEGAL ARGUMENT

## A.    Arbitration is Mandatory

Pursuant to the Loan Documents, the Plaintiffs are required to arbitrate all claims and disputes arising out of the Loan Documents or any aspect of Plaintiffs' relationship with NextGear. In addition, the Loan Documents expressly provide that any matters related to arbitration are governed by the FAA.

### 1.    Federal Law Strongly Favors Agreements to Arbitrate

The FAA, 9 U.S.C. §1, *et. seq.*, "declare[s] a national policy favoring arbitration of claims that parties contract to settle in that manner." *Vaden v. Discover Bank*, 556 U.S. 49, 58 (2009) (internal quotation marks omitted); *see also Am. Exp. Co. v. Italian Colors Rest.*, 133 S.Ct. 2304, 2308-09 (2013); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).  As the Supreme

Court has emphasized in several cases upholding the validity of mandatory arbitration provisions like those at issue here, Congress enacted the FAA to overcome judicial resistance to arbitration. *Italian Colors*, 133 S.Ct. at 2308-09; *Concepcion*, 563 U.S. at 339. To promote this purpose, "the FAA compels judicial enforcement of a wide range of written arbitration agreements." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111 (2001).

The FAA mandates that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. It further provides that a party may seek a stay of litigation and petition a court of competent jurisdiction to compel arbitration. If the dispute is arbitrable, then the court must order that arbitration proceed in accordance with the agreement. *Id*. §§3, 4. The FAA applies to all contracts "affecting commerce," which "ordinarily signal[s] the broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003); *Epic Systems,* 138 S. Ct. 1612 (2018). In addition to their presumed validity, arbitration agreements are necessarily enforceable if the following elements are met: (1) existence of a written agreement to arbitrate; (2) the underlying transaction affects interstate commerce; and (3) the substantive claims are covered by the scope of the arbitration clause. *Id.* at 1632. The Arbitration Provisions at Section 22 of the Note and Section 5(e)(i) of the Guaranty, as well as the conduct of the parties, together satisfy the first two elements of the FAA, and the breadth of the Arbitration Provisions clearly covers the claims at issue in this case. Accordingly, all of the elements of the FAA are present in this case.

Consistent with this policy, where a contract contains an arbitration clause, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also Dialysis Access*

*Center, LLC v. RMS Lifeline, Inc.*, 638 F.3d 367, 376 (1st Cir. 2011). "[O]nly the most forceful evidence of a purpose to exclude the claim from arbitration can prevail," *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (internal punctuation omitted), and any claims that "touch matters" covered by the agreement must be arbitrated. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 624 n.13 (1985). If a court determines that an arbitration agreement is valid and enforceable, "the court must direct the parties to arbitrate all issues as to which an arbitration agreement has been signed." *Escobar-Noble v. Luxury Hotels Intern. Of Puerto Rico, Inc.* 680 F.3d 118, 122 (1st Cir. 2012) (internal quotation marks omitted).

### 2.     The Arbitration Provisions Should be Enforced

By executing the Loan Documents, Plaintiffs agreed to arbitrate any dispute they may have with NextGear. The broad language of the Arbitration Provisions covers any past, present, or future claims that might raise under any legal theory. There is no question the Arbitration Provisions are valid, and the disputes raised by Plaintiffs are within the scope of the Arbitration Provisions.

First, the Arbitration Provisions in the Loan Documents are valid agreements to arbitrate. A signed arbitration agreement is presumed to be valid and enforceable, and courts (or arbitrators) must resolve all doubts in favor of arbitration. 9 U.S.C. §2 (written arbitration agreements "shall be valid, irrevocable, and enforceable"). The Arbitration Provisions contain an internal opt-out process, and the Plaintiffs failed to exercise the right to opt out.

Second, the claims at issue in this case are well within the broad scope of the Arbitration Provisions. The provisions cover "all disputes, claims and counterclaims arising out of or relating to this Note or any other Loan Document or any aspect of Borrower's relationship with Lender." (NextGear Loan Documents [Ex. A] §26(a).) A broad arbitration clause that "memorializing [the

parties] intention to arbitrate 'any dispute…' is one that the parties clearly anticipated would be resolved by an arbitrator, not a court." *See Biller v. S-H OpCo Greenwich Bay Manor, LLC*, 961 F.3d 502, 515-16 (1st Cir. 2020). The Plaintiffs have therefore agreed that they would arbitrate all disputes and claims asserted against NextGear in the Federal Complaint. *See, e.g., PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401, 407 (2003); *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 242 (1987); *Brown Pontiac-Olds, Inc. v. General Motors Corp.*, No. 05-204-P-H, 2006 WL 318827 at *3-4 (D. Me. Feb. 9, 2006) (requiring arbitration of claims connected with plaintiffs' contracts).

This Court has held that arbitration provisions similar to the one here apply to claims or conduct that fall within the scope of the provision, whether they arose or occurred before or after the agreement was reached. *See, e.g., International Brotherhood of Electrical workers, Local 1228 v. Freedom WLNE-TV, Inc.*, 760 F.2d 8, 11 (1st Cir. 1985) (holding that the employer was required to submit to arbitration the question of whether its agreement with the union continued in effect beyond its stated expiration date; based on the broad arbitration clause that covered "[a]ll problems arising out of grievances or out of the application or interpretation of [the a]greement or the performance of any party under it."); *Biller* 961 F.3d at 515-16 (finding that barring a provision in the new implied contract that extinguishes the original contract, the actions under the new implied contract were governed by the original arbitration agreement); *Warren Bros. Co. v. Cardi Corp.*, 471 F.2d 1304, 1309 (1st Cir. 1973) (holding that an arbitration clause of subcontract on a public construction contact which provided that any disputes concerning question of fact arising out of the parties shall be decided by arbitration, did not preclude arbitration in disputes arising after completion of work under the subcontract) *cf., e.g. Employers Ins. Co. v. OneBeacon American*

*Ins. Co.*, 744 F.3d 25, 27-28 (1st Cir. 2014) (holding that the language in prior arbitration agreements related to the scope of the preclusive effect in future arbitrations).

## B.    The Forum Selection Provisions are Applicable and Enforceable

"'Under federal law, the threshold question in interpreting a forum selection clause is whether the clause at issue is permissive or mandatory.'" *Claudio-De Leon*, 775 F.3d at 46 (quoting *Rivera*, 575 F.3d at 17). "Permissive forum selection clauses…authorize jurisdiction and venue in a designated forum, but do not prohibit litigation elsewhere…In contrast, mandatory forum selection clauses contain clear language indicating that jurisdiction and venue are appropriate exclusivity in the designated forum." *Id*.

In *Redondo Constr. Corp. v. Banco Exterior de España, S.A*., 11 F.3d 3 (1st Cir.1993), the First Circuit considered language providing that "each [party] hereby expressly submits to jurisdiction of all Federal and State Courts located in the State of Florida." *Id*. at 5 (emphasis omitted). The Court explained that "[a]ffirmatively conferring Florida jurisdiction by consent does not negatively exclude any other proper jurisdiction." *Id*. at 6.

Here, the Forum Selection Provisions have the mandatory language regarding jurisdiction and venue that was lacking in *Redondo*.[7] 11 F.3d at 5. The Forum Selection Provisions, in relevant part, state that Plaintiffs "submit to the personal jurisdiction and venue of the state and federal courts of Marion County and Hamilton County, Indiana, and agree that any and all claims or disputes pertaining to this Guaranty or any other matter arising out of or related to the Guaranty initiated by Guarantor against NextGear, shall be brought in the state and federal courts of Marion County or Hamilton County, Indiana.  (Note p. 9 at ¶25; Guaranty p.4 at ¶5(d)).

---

[7] Here, the Forum Selection Provisions cover choice of law, jurisdiction and venue. However, for 12(b)6) motions based on forum selection clauses, validity, enforceability, and reasonableness are the threshold issues. *See Rivera*, 575 F.3d 10.

"The next step in evaluating the applicability of a forum-selection clause is ascertaining its scope." *Claudio-De Leon*, 775 F.3d at 47; *Rafael Rodríguez Barril, Inc. Conbraco., Inc.*, 619 F.3d 90, 92-93 (1st Cir. 2010). This is a clause-specific analysis, so "it is the language of the forum-selection clause itself that determines which claims fall within its scope." *Claudio-De Leon*, 775 F.3d at 47 (quoting *Rivera*, 575 F.3d at 19). The Note Forum Selection Provision states:

> JURISDICTION AND VENUE. As evidenced by Plaintiffs' signature below, Plaintiffs submit to the personal jurisdiction and venue of the state and federal courts of Marion County and Hamilton County, Indiana, and *agrees that any and all claims or disputes pertaining to this Note or any other Loan Document, or to any matter arising out of or related to this Note or any other Loan Document, initiated by Plaintiffs against NextGear*, shall be brought in the state or federal courts of Marion county or Hamilton County, Indiana.

(Note p.10 at ¶21) (emphasis added).

The Guaranty Forum Selection Provision states:

> Jurisdiction and Venue. As evidenced by Guarantor's signature below, Guarantor submits to the personal jurisdiction and venue of the state and federal courts of Marion County and Hamilton County, Indiana, and *agrees that any and all claims or disputes pertaining to this Guaranty, or to any matter arising out of or related to this Guaranty, initiated by Guarantor against NextGear, shall be brought in the state or federal courts of Marion County or Hamilton County, Indiana.*

(Guaranty p. 4, ¶5(d) (emphasis added).

Those provisions preclude Plaintiffs from suing NextGear in any other jurisdiction or venue not located in Marion County or Hamilton County, Indiana. Thus, looking at the Forum Selection Provisions as a whole, the clear, specific language mandates that Plaintiffs sue NextGear, if at all, solely in the state or federal courts located in Marion County or Hamilton County, Indiana.

### 1.    The Forum Selection Provisions Are Reasonable

Having established that the Forum Selection Provisions are mandatory and the scope covers any claims or disputes that Plaintiffs could allege against NextGear arising under the Loan Documents, the final step involves asking "whether there is some reason the presumption of

enforceability should not apply." *Claudio-De Leon*, 775 F.3d at 48 (quoting *Rafael Rodríguez Barril*, 619 F.3d at 93). Forum selection clauses are "*prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). Unreasonableness requires a showing that:

> (1) the clause was the product of "fraud or overreaching"; (2) enforcement would be unreasonable and unjust"; (3) proceedings in the contractual forum will be so gravely difficult and inconvenient that the party challenging the clause will for all practical purposes be deprived of his day in court; or (4) enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision.

*Rafael Rodríguez Barril,* 619 F.3d at 93 (quoting *M/S Bremen*, 407 U.S. at 15, 18). Plaintiffs cannot surmount this high bar of demonstrating that the Forum Selection Provision is unreasonable.

First, the Order Entering Summ. J., the Final Judgment, Appeal Opinion 1 and Appeal Opinion 2 all hold that the Note and Guaranty attached to the State Complaint, rather than the Note and Guaranty versions attached to the Federal Complaint, were each executed and breached by the Plaintiffs and are enforceable such that NextGear was awarded damages against Plaintiffs.

Second, there is nothing in the record or the State Complaint that suggests that the Forum Selection Provisions would be unreasonable or unjust.

Third, there is nothing in the record or the Federal Complaint that suggests Plaintiffs cannot have their day in court, albeit in Hamilton County, Indiana.[8] Additionally, there is nothing to suggest Plaintiffs would for ***all practical purposes be deprived*** of their day in court because of grave inconvenience or unfairness of having proceedings in Hamilton County, Indiana, where they have previously appeared and defended the Indiana Action. *M/S Breman,* 407 U.S. at 304 (emphasis added).

---

[8] Plaintiffs have already had their day in Court before the Hamilton County Circuit Court, and lost.

Fourth, "the internal laws of the State of Indiana" supply the substantive law and remedies to Plaintiffs regardless of whether claims are pursued in the federal court of Rhode Island or Hamilton County, Indiana. (Note p.10 at ¶20). All of Plaintiffs' claims and relief asserted against NextGear are not exclusive to the federal court of Rhode Island, and can, if not barred by *res judicata*, be brought in the state or federal courts located in Marion County or-Hamilton County, Indiana.

Finally, there is nothing to suggest that the Forum Selection Provisions would be unreasonable or against holdings in the First Circuit as evidenced by *Rivera* and *Claudia-De Leon*. 575 F.3d 10; 775 F.3d 41. Consequently, the Forum Selection Provisions are not unreasonable, meaning they are enforceable.

### 2. The Loan Documents Merge Into The Pleadings and Consideration Under 12(b)(6) Is Proper

Lastly, to the extent Plaintiffs argue that this Court should disregard the Loan Documents or convert this motion into one for summary judgment, that argument must fail. When a document is central to a plaintiff's complaint (the authenticity of which is not challenged), the document "merges into the pleadings" and may be properly considered by the court in determining a motion to dismiss. *See Claudia-De Leon*, 775 F.3d at 46 (quoting *Alt. Energy, Inc.*, 267 F.3d at 3); *see also Ironshore Specialty Insurance Company v. United States*, 871 F.3d 131, 135-136 (1st Cir. 2017). Here, authenticity and enforceability of the Loan Documents have been judicially determined in Indiana.

As summarized in Section I of this Brief, the Plaintiffs' claims against NextGear in the Federal Complaint are based on the Loan Documents. The Plaintiffs should not be able to hide behind the insufficiency of their pleadings to avoid dismissal via Rule 12(b)(6), or apply the higher standard of review under Rule 56.

## VIII. <u>CONCLUSION</u>

This Court granted the Plaintiffs' a 30-day window to address the defects of the Amended Complaint. What did Plaintiffs do with this opportunity? They filed the Second Amended Complaint, a slightly modified duplicate of the original Amended Complaint. Undeterred by the Final Judgment, Appeal Opinion 1 and Appeal Opinion 2, Plaintiffs attempt to grab a third bite of the apple by improperly bringing claims against NextGear before this Court. The Indiana Action was the appropriate vehicle for litigating Plaintiffs' claims, as each arises under the same transaction or occurrence that was the subject matter of that action. Plaintiffs failed to raise those claims prior to judgment in that action. Plaintiffs were parties to the Indiana Action, and their failure to raise counterclaims and join other alleged responsible parties was their choice. Therefore, their claims are precluded by *res judicata* under Indiana's compulsory counterclaim law.

Furthermore, Plaintiffs ignore valid and enforceable arbitration provisions and forum selection clauses by improperly bringing claims against NextGear before this Court. The Loan Documents are central to each claim asserted against NextGear in the Federal Complaint and the authenticity of which cannot be disputed. Hence, the Arbitration Provisions and Forum Selection Provisions in the Loan Documents require that Plaintiffs either arbitrate all disputes in Indianapolis, Indiana, or sue NextGear in the state or federal courts located in Marion County or Hamilton County, Indiana.

WHEREFORE, Defendant, NextGear Capital, Inc., respectfully requests that that this Court enter an order dismissing all counts against NextGear Capital, Inc. in Plaintiffs' Second Amended Complaint, or in the alternative stay this action to permit mandatory arbitration to proceed, and for such other relief as this Court deems just and proper.

Respectfully submitted,
**DEFENDANT**
**NEXTGEAR CAPITAL, INC.**
by counsel,

Dated : Nov. 8, 2021

*/s/ Katharine E. Kohm*
Katharine E. Kohm (#8194)
PIERCE ATWOOD LLP
One Financial Plaza, Suite 2600
Providence, Rhode Island 02903
Tel: (401) 588-5113
kkohm@pierceatwood.com


*/s/ David J. Jurkiewicz*
David J. Jurkiewicz (IN #18018-53)
*(admitted pro hac vice)*
BOSE MCKINNEY & EVANS LLP
111 Monument Circle, Suite 2700
Indianapolis, Indiana 46204
djurkiewicz@boselaw.com

4236839.2

## CERTIFICATE OF SERVICE

       I certify that the foregoing document was electronically filed with the Clerk of the Court on the 8th day of November, 2021, and that it is available for viewing and downloading from the Court's CM/ECF system. All counsel of record for represented parties have been served by electronic means on the date this document was filed. All parties who are self-represented or whose counsel have not yet entered an appearance have been served by U.S. Mail, first class postage prepaid, and email on the date this document was filed.

***Counsel for Plaintiffs (e-filing)***
Harris K. Weiner (#3779)
Salter, McGowan, Sylvia & Leonard, Inc.
56 Exchange Terrace, Suite 500
Providence, RI 02903
Office: (401) 274-0300
Fax: (401) 453-0073
hweiner@smsllaw.com

***Counsel for Defendants Automotive Finance Corporation d/b/a AFC and ADESA, Inc. (e-filing)***
Joseph V. Cavanagh , III (#6907)
Blish & Cavanagh LLP
30 Exchange Terrace
Providence, RI 02903
Office: (401) 831-8900
Fax: (401) 490-7640
jvc3@blishcavlaw.com

Reynold T. Berry (Ind. Atty #25482-49)
*(admitted pro hac vice)*
RUBIN & LEVIN, P.C.
135 N. Pennsylvania St., Suite 1400
Indianapolis, IN 46204
Office: (317) 634-0300
Fax: (317) 263-9410
rberry@rubin-levin.net

*/s/ Katharine E. Kohm*