# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

CT102 LLC d/b/a Metro Motors and H.
Jeffrey Baker,

      Plaintiffs,

      v.                                    Civil Action No.:1:20-cv-356-MSM-PAS

Automotive Finance Corporation d/b/a AFC;
NextGear Capital, Inc.; Manheim, Inc.;
and ADESA, Inc.

      Defendants.

### MEMORANDUM IN SUPPORT OF
### MANHEIM REMARKETING, INC.'S MOTION TO DISMISS OR IN THE ALTERNATIVE TO STAY PENDING COMPLETION OF MANDATORY ARBITRATION

Defendant, Manheim Remarketing, Inc. ("Manheim"), pursuant to the Rule 12(b)(6) of the Federal Rules of Civil Procedure, and the Federal Arbitration Act ("FAA"), 9 U.S.C. §1 *et seq*., hereby moves this Court to dismiss all counts against Manheim in the Second Amended Complaint ("Complaint") [ECF Doc. No. 42] filed by Plaintiffs, CT102 LLC d/b/a Metro Motors ("Metro Motors") and H. Jeffrey Baker ("Baker") (collectively "Plaintiffs") or, in the alternative, to stay the same pending completion of the mandatory arbitration provisions in the contract between the parties.

### INTRODUCTION

Plaintiff's Second Amended Complaint is substantially similar to the Plaintiff's First Amended Complaint and the arguments made by Manheim in this Memorandum track the arguments previously made in response to the First Amended Complaint. Plaintiffs have improperly filed suit in the Rhode Island Federal District Court instead of filing for mandatory arbitration as required or, if Manheim were to consent to waive the required arbitration, then bring

suit in Fulton County, Georgia, where venue is required. All of Plaintiffs' claims in their Complaint relate to services memorialized in an agreement between Manheim and the Plaintiffs marked as Exhibit "A" ("Contract") in the Affidavits of Veronica Tai ("Tai Affidavit") and Dorcas Morris ("Morris Affidavit"), which are attached hereto as **Exhibit 1** and **Exhibit 2**, respectively.[1] The Contract has a mandatory arbitration provision (See Contract p. 10-11 at ¶ 26). It also includes a fall-back forum-selection clause, which unequivocally states that for any disputes not arbitrated, the jurisdiction and venue for any suit brought against Manheim is Fulton County, Georgia to the exclusion of all others. (See Contract p. 9 at ¶25). Plaintiffs' Complaint ignores the mandatory arbitration provision and exclusive venue provision and instead alleges – in conclusory fashion – that venue is appropriate in Rhode Island simply because Baker, the sole member of Metro Motors, a Connecticut limited liability company, resides there. [Doc. 42 at ¶ 10]

The First Circuit Court of Appeals, like all federal circuits, strongly favors arbitration and regularly compels disputes be resolved in that forum in accordance with contract language. Likewise the First Circuit has also held that a valid forum-selection clause, such as the one in the Contract, requires dismissal under Fed. R. Civ. Pro. 12(b)(6) for failing to state a claim for which relief can be granted. *Claudio-De Leon v. Sistema Universitario Ana G. Mendez*, 775 F.3d 41, 46 (1st Cir. 2014); *Rivera v. Centro Médico de Turabo, Inc.*, 575 F.3d 10, 15 (1st Cir. 2009). Therefore, Manheim respectfully requests that relying on either route—arbitration or the required Georgia forum--that this Court dismiss all claims against it alleged by Plaintiffs' Complaint.

---

[1] Because the Contract is central to Plaintiffs' claims this Court may consider the Contract in this dispositive motion to dismiss. *See infra* at Part. III.C; Tai Affidavit; Morris Affidavit.

4237352                                                   2

## I.    FACTUAL BACKGROUND

The facts supporting this motion to dismiss based on a valid arbitration and forum-selection clause are uncomplicated. Baker, as the sole member of Metro Motors, and Manheim entered into the Contract. See [Doc. 42 at ¶ 14]. The Contract deals with all of the parties' interactions specifically surrounding automobile auctions. Manheim serves as a live and online marketplace and auction site for used automobiles that offers a reliable and secure platform for wholesale consigners, such as automobile dealerships, and other volume buyers or sellers to buy and sell a variety of wholesale used vehicles to one another through competitive bidding. *See* Tai Affidavit at ¶ 5, attached as **Exhibit 1**. Manheim's function is to provide a marketplace for wholesale buyers and sellers to convene and transact business involving the purchase and sale of used vehicles. *See* Contract attached as exhibit "B" to the Tai Affidavit.

All of Manheim's customers must review its written terms and conditions for conducting business at its auction and are required to affirmatively accept and agree to the terms and conditions in the Contract as a prerequisite to purchasing vehicles. *See generally* Tai Affidavit. The current version of the Contract is available online, and the online system that Manheim has implemented and utilized since 2015 "require[s] all participants in a sale of a motor vehicle at Manheim auctions to agree to Manheim's Terms and Conditions when logging in to their Manheim accounts or registering, in-person, at the auction." Affidavit of Veronica Tai, attached as **Exhibit 1**, at ¶ 7.

As a representative for Plaintiff Metro Motors, Plaintiff H. Jeffrey Baker logged onto his Manheim account online and affirmatively indicated on behalf of himself and Metro Motors that Plaintiffs were accepting Version 1.6 of the Contract. *Id.*, at ¶¶ 11-13, exhs. A and B; *see also generally* Morris Affidavit.

Under the express language of the Contract, Plaintiffs agreed to arbitrate any disputes arising from their transactions with Manheim when Plaintiffs accepted the terms and conditions of the Contract at the time Plaintiff Jeff Baker logged into his Manheim account on November 24, 2015. *See generally* Tai Affidavit and Morris Affidavit. The Contract includes, in relevant part, the following arbitration provision (the "Arbitration Provision"):

> YOU AGREE TO ARBITRATE ANY DISPUTE OR CLAIM THAT YOU MAY HAVE WITH MANHEIM THAT ARISES OUT OF OR RELATES IN ANY WAY TO THESE TERMS AND CONDITIONS; ANY PURCHASE, SALE, OR OTHER AUCTION OR CREDIT TRANSACTION WITH MANHEIM; YOUR USE OF ANY MANHEIM WEBSITE, ONLINE PORTAL OR ANY MANHEIM PRODUCT OR SERVICE; OR ANY OTHER AGREEMENT BETWEEN YOU AND MANHEIM. ARBITRATION CONDUCTED HEREUNDER SHALL BE FINAL AND BINDING. **THIS ARBITRATION PROVISION MEANS THAT YOUR CLAIMS AGAINST MANHEIM WILL BE RESOLVED THROUGH ARBITRATION RATHER THAN LITIGATION IN COURT.** YOU ACKNOWLEDGE THAT MANHEIM MAY (BUT SHALL NOT BE REQUIRED TO) SUBMIT TO ARBITRATION ANY DISPUTE OR CLAIM THAT IT MAY HAVE AGAINST YOU, WITH ANY SUCH ARBITRATION BEING GOVERNED BY THE PROVISIONS OF THIS SECTION 26.

(Contract p. 10-11 at ¶26) (capitalization emphasis in original).[2] The Contract also includes, in relevant part a forum-selection provision (the "Forum Selection Provision"):

> **In the event that any claim or dispute between Manheim and you is not arbitrated under Section 26 hereof**, you agree that non-exclusive jurisdiction and venue for such claims and disputes shall exist in the federal and state courts located in Fulton County, Georgia. **You further agree and acknowledge that you may not sue Manheim in any jurisdiction or venue except Fulton County, Georgia.**

(Contract p. 9 at ¶25).

Despite the unambiguous Arbitration Provision that all disputes brought by Plaintiffs must be arbitrated and the Forum Selection Provision that prohibits Plaintiffs from suing Manheim in any jurisdiction except Fulton County Georgia, on August 20, 2020, Plaintiffs filed the Complaint against Manheim in this Court.

---

[2] The Arbitration Provision includes a clause allowing a dealer to opt out in writing, see Contract at p. 11 at 26(b) but Plaintiffs did not do so. Accordingly, the Arbitration Provision controls.

Manheim therefore respectfully request this Court to enter an Order that dismisses Plaintiffs' Complaint due to lack of subject of matter jurisdiction. In further support of this Motion, Manheim states as follows:

## II.     LEGAL STANDARD

Federal Courts applying the Federal Arbitration Act ("FAA") strongly favor arbitration and apply a presumption in favor finding that disputes are arbitrable. *Proulx v. Brookdale Living Communities Inc.*, 88 F. Supp .3d 27, 31 (D.R.I. 2015) ("Accordingly, if there is any doubt whether a matter is arbitrable or not, federal policy requires that such doubt is resolved in favor of arbitration."). And as a result of this strong preference for arbitration, if all issues in an action are arbitrable, a court can dismiss the entire action. *See Large v. Conseco Fin. Serv. Corp.*, 167 F. Supp. 2d 203, 207 (D.R.I. 2001) (collecting cases and holding that "several Courts of Appeals-including the First Circuit-recognize that where all the issues presented in a lawsuit are arbitrable, the district court may exercise its discretion to dismiss the complaint"); *see also* 9 U.S.C. § 3 ("upon being satisfied that the issue involved in such suit . . . is referable to arbitration under such an agreement," a court "shall . . .stay the trial of the action until such arbitration has been had.").

Likewise in the First Circuit courts apply Rule 12(b)(6) to dismiss claims governed by valid forum-selection clauses. *Claudio-De Le*on, 775 F.3d at 46. As such, "the district court must accept as true the well-pleaded factual allegations of the complaints, draw all reasonable inferences therefrom in the plaintiffs' favor, and determine whether the complaint, so read, limns facts sufficient to justify recovery on any cognizable theory." *Rivera,* 575 F.3d at 15 (internal quotations omitted).

"'Under Rule 12(b)(6), the district court may properly consider only facts and documents that are part of or incorporated in to the complaint; if matters outside the pleadings are considered, the motion must be decided under the more stringent standards applicable to a Rule 56 motion for

summary judgment.'" *Id*. at 15 (quoting *Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc.*, 524 F.3d 315, 321 (1st Cir. 2008). However, the First Circuit has "recognized an exception to this rule . . . for documents central to plaintiffs' claim; or for documents sufficiently referred to in the compliant,' which courts may properly consider on Rule 12(b)(6) motions." *Rivera*, 575 F.3d at 15 (quoting *Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001); *see also* Newman v. Lehman Brothers Holdings Inc., 901 F.3d 19, 25 (1st Cir. 2018) (holding that "certain extrinsic documents" may be considered on a motion to dismiss "without turning the 12(b)(6) motion into a motion for summary judgment") (quoting *Freeman v. Town of Hudson*, 714 F.3d 29, 35 (1st Cir. 2013) and *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)).

Although Plaintiffs bring this suit on the basis of diversity jurisdiction, this Court "need not reach the unsettled issue of whether 'forum-selection clauses are to be treated as substantive or procedural for Erie purposes.'" *Rivera*, 575 F.3d at 16 (quoting *Lambert v. Kysar*, 983 F.2d 1110, 1116 & n. 10 (1st Cir. 1993)). This is because, like Rhode Island, "Georgia has adopted the United States Supreme Court's analysis regarding the enforcement of forum selection clauses." *Iero v. Mohawk Finishing Products, Inc.*, 534 S.E.2d 136, 138 (Ga. App. 2000). Therefore, this Court can apply federal common law. See *Rivera*, 575 F.3d at 16.

### III.   LEGAL ARGUMENT

#### A.   Arbitration is Mandatory

Pursuant to the Contract, the Plaintiffs are required to arbitrate all claims and disputes arising out of the Contract or any aspect of Plaintiffs' relationship with Manheim. In addition, the Contract expressly provides that any matters related to arbitration are governed by the FAA.

1.     *Federal Law Strongly Favors Agreements to Arbitrate*

The FAA, 9 U.S.C. §1, *et. seq.*, "declare[s] a national policy favoring arbitration of claims that parties contract to settle in that manner." *Vaden v. Discover Bank*, 556 U.S. 49, 58 (2009) (internal quotation marks omitted); *see also Am. Exp. Co. v. Italian Colors Rest.*, 133 S.Ct. 2304, 2308-09 (2013); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). As the Supreme Court has emphasized in several cases upholding the validity of mandatory arbitration provisions like those at issue here, Congress enacted the FAA to overcome judicial resistance to arbitration. *Italian Colors*, 133 S.Ct. at 2308-09; *Concepcion*, 563 U.S. at 339. To promote this purpose, "the FAA compels judicial enforcement of a wide range of written arbitration agreements." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111 (2001).

The FAA mandates that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. It further provides that a party may seek a stay of litigation and petition a court of competent jurisdiction to compel arbitration. If the dispute is arbitrable, then the court must order that arbitration proceed in accordance with the agreement. *Id*. §§3, 4. The FAA applies to all contracts "affecting commerce," which "ordinarily signal[s] the broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003).

Consistent with this policy, where a contract contains an arbitration clause, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also Dialysis Access Center, LLC v. RMS Lifeline, Inc.*, 638 F.3d 367, 376 (1st Cir. 2011). "[O]nly the most forceful evidence of a purpose to exclude the claim from arbitration can prevail," *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (internal punctuation omitted), and any

claims that "touch matters" covered by the agreement must be arbitrated. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 624 n.13 (1985). If a court determines that an arbitration agreement is valid and enforceable, "the court must direct the parties to arbitrate all issues as to which an arbitration agreement has been signed." *Escobar-Noble v. Luxury Hotels Intern. Of Puerto Rico, Inc.* 680 F.3d 118, 122 (1st Cir. 2012) (internal quotation marks omitted).

### 2. *The Valid Agreement by Plaintiffs to Arbitrate Should be Enforced*

By agreeing to the Contract, Plaintiffs agreed to arbitrate any dispute they may have with Manheim. The broad language of the Arbitration Provision covers any past, present, or future claims that might raise under any legal theory. There is no question the Arbitration Provision is valid, and the disputes raised by Plaintiffs are within the scope of the Arbitration Provision.

First, the Arbitration Provision in the Contract is a valid agreement to arbitrate. *Feldman v. Google, Inc.*, 513 F. Supp. 2d 229, 236-37 (E.D. Pa. 2007); *see also Hodosh, Lyon & Hammer, Ltd. v. Barracuda Networks, Inc.*, 2016 WL 705272, at *7 (D.R.I. 2016) (recounting that "click-wrap," "click-through," mechanisms are "generally found to be valid and enforceable because the click constitutes the affirmative manifestation of assent"). A signed arbitration agreement is presumed to be valid and enforceable, and courts (or arbitrators) must resolve all doubts in favor of arbitration. 9 U.S.C. §2 (written arbitration agreements "shall be valid, irrevocable, and enforceable"). The Arbitration Provision contains an internal opt-out process, and the Plaintiffs failed to exercise the right to opt out.

Second, the claims at issue in this case are well within the broad scope of the Arbitration Provision. The provision covers "any dispute or claim that you may have with Manheim that arises out of or relates in any way to these terms and conditions; any purchase, sale, or other auction or credit transaction with Manheim; your use of any Manheim website, online portal or any Manheim

product or service; or any other agreement between you and Manheim." (Manheim Contract [Ex. A] §26(a))  A broad arbitration clause "memorializing [the parties] intention to arbitrate 'any dispute…' is one that the parties clearly anticipated would be resolved by an arbitrator, not a court." *See Biller v. S-H OpCo Greenwich Bay Manor, LLC*, 961 F.3d 502, 515-16 (1st Cir. 2020). The Plaintiffs have therefore agreed that they would arbitrate all disputes and claims asserted against Manheim in the Complaint. *See, e.g., PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401, 407 (2003); *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 242 (1987); *Brown Pontiac-Olds, Inc. v. General Motors Corp.*, No. 05-204-P-H, 2006 WL 318827 at *3-4 (D. Me. Feb. 9, 2006) (requiring arbitration of claims connected with plaintiffs' contracts).

This Court has held that arbitration provisions similar to the one here apply to claims or conduct that fall within the scope of the provision, whether they arose or occurred before or after the agreement was reached. *See, e.g., International Brotherhood of Electrical workers, Local 1228 v. Freedom WLNE-TV, Inc.*, 760 F.2d 8, 11 (1st Cir. 1985) (holding that the employer was required to submit to arbitration the question of whether its agreement with the union continued in effect beyond its stated expiration date; based on the broad arbitration clause that covered"[a]ll problems arising out of grievances or out of the application or interpretation of [the a]greement or the performance of any party under it."); *Biller* 961 F.3d at 515-16 (finding that barring a provision in the new implied contract that extinguishes the original contract, the actions under the new implied contract were governed by the original arbitration agreement); *Warren Bros. Co. v. Cardi Corp.*, 471 F.2d 1304, 1309 (1st Cir. 1973) (holding that an arbitration clause of subcontract on a public construction contact which provided that any disputes concerning question of fact arising out of the parties shall be decided by arbitration, did not preclude arbitration in disputes arising after completion of work under the subcontract) *cf., e.g. Employers Ins. Co. v. OneBeacon American*

*Ins. Co.*, 744 F.3d 25, 27-28 (1st Cir. 2014) (holding that the language in prior arbitration agreements related to the scope of the preclusive effect in future arbitrations). The Plaintiffs agreed to arbitrate disputes with Manheim and this Court should order just that.

**B.     The Forum Selection Provision is Applicable and Enforceable**

*1.     The Forum Selection Provision is Mandatory.*

"'Under federal law, the threshold question in interpreting a forum selection clause is whether the clause at issue is permissive or mandatory.'" *Claudio-De Leon*, 775 F.3d at 46 (quoting *Rivera*, 575 F.3d at 17). "Permissive forum selection clauses . . . authorize jurisdiction and venue in a designated forum, but do not prohibit litigation elsewhere . . . In contrast, mandatory forum selection clauses contain clear language indicating that jurisdiction and venue are appropriate exclusively in the designated forum." *Id*.

In *Redondo Constr. Corp. v. Banco Exterior de España, S.A.*, 11 F.3d 3 (1st Cir. 1993), the First Circuit considered language providing that "each [party] hereby expressly submits to jurisdiction of all Federal and State Courts located in the State of Florida." *Id*. at 5 (emphasis omitted). The Court explained that "[a]ffirmatively conferring Florida jurisdiction by consent does not negatively exclude any other proper jurisdiction." *Id*. at 6.

Here, the Forum Selection Provision has the mandatory language regarding jurisdiction and venue that was lacking in *Redondo*.[3] 11 F.3d at 5. In relevant part, it states that Plaintiffs "further agree and acknowledge that **[Plaintiffs] may not sue Manheim in any jurisdiction or venue except Fulton County, Georgia.**" (Contract p. 9 at ¶25) (emphasis added). This is clear language excluding jurisdiction and venue from any other court except Fulton County, Georgia.

---

[3] Here, the Forum Selection Provision covers choice of law, jurisdiction and venue. However, for 12(b)6 motions based on forum selection clauses, validity, enforceability, and reasonableness are the threshold issues. *See Rivera*, 575 F.3d 10.

4237352                                                10

Additionally, the introductory phrase that Plaintiffs "further agree and acknowledge" to the exclusion of all other jurisdictions and venues requires that Plaintiffs bring any lawsuits against Manheim in Fulton County, Georgia. (Contract p.9 at ¶25); *See Rivera*, 575 F.3d at 17-18. Therefore, the clear language of the Forum Selection Provision is mandatory.

### 2. *The Forum Selection Provision is Clear in Scope.*

"The next step in evaluating the applicability of a forum-selection clause is ascertaining its scope." *Claudio-De Leon*, 775 F.3d at 47; *Rafael Rodríguez Barril, Inc. Conbraco., Inc.*, 619 F.3d 90, 92-93 (1st Cir. 2010). This is a clause-specific analysis, so "it is the language of the forum selection clause itself that determines which claims fall within its scope." *Claudio-De Leon*, 775 F.3d at 47 (quoting *Rivera*, 575 F.3d at 19). The Forum Selection Provision is direct, specific, and on point to the matter at hand as it concerns cases where *the Plaintiff* is filing suit. That provision precludes Plaintiffs from suing Manheim in any other jurisdiction or venue not located in Fulton County, Georgia. (Contract p. 9 at ¶25*); see Rhode Island Hosp. v. United Nurses and Allied Professionals*, 2010 WL 282413, at *5 (D.R.I. 2010) ("it is a familiar precept of contract interpretation that the specific controls the general" (citing *Lawson v. F.D.I.C.* 3 F.3d 11, 17 (1st Cir. 1993)) Thus, looking at the Forum Selection Provision as a whole, the clear, specific language mandates that Plaintiffs sue Manheim in Fulton County, Georgia.

### 3. *The Forum Selection Provision Is Reasonable*

Having established that the Forum Selection Provision is mandatory and its scope covers any claims or disputes that Plaintiffs could allege against Manheim arising under the Contract, the final step involves asking "whether there is some reason the presumption of enforceability should not apply." *Claudio-De Leon*, 775 F.3d at 48 (quoting *Rafael Rodríguez Barril*, 619 F.3d at 93). Forum selection clauses are "*prima facie* valid and should be enforced unless enforcement is

shown by the resisting party to be unreasonable under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). Unreasonableness requires a showing that:

> (1) the clause was the product of "fraud or overreaching"; (2) enforcement would be unreasonable and unjust; (3) proceedings in the contractual forum will be so gravely difficult and inconvenient that the party challenging the clause will for all practical purposes be deprived of his day in court; or (4) enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision.

*Rafael Rodríguez Barril,* 619 F.3d at 93 (quoting *M/S Bremen*, 407 U.S. at 15, 18). Plaintiffs cannot surmount this high bar of demonstrating that the Forum Selection Provision is unreasonable.

First, Plaintiffs did not allege in the Complaint that the Contract was produced by fraud. "[A]lthough there is some ambiguity as to the precise boundaries of what constitutes 'overreaching,' a nebulous concept at best," we understand "overreaching" to refer to one party's unfair exploitation of its overwhelming bargaining power or influence over the other party." *Rivera* at 575 F.3d at 21 (quoting *Haynsworth v. The Corporation*, 121 F.3d 956, 965 (5th Cir. 1997)); *See, e.g., Silva v. Encyclopedia Britannica Inc.,* 239 F.3d 385, 389 (1st Cir. 2001) (inquiring whether one party inappropriately used its bargaining power to coerce or exploit another).But the mere fact of this inequality is not enough to render an agreement unenforceable. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 32 (1991) (making this observation in context of agreement to arbitrate). For the sake of argument, even if Manheim had more bargaining power than the Plaintiffs, there must be some evidence that Manheim exploited this bargaining power in a way that the courts will not tolerate, which there is none here. *Rivera*, 575 F.3d at 21.

Second, there is nothing in the record or the Complaint that suggests that the Forum Selection Provision would be unreasonable or unjust.

Third, there is nothing in the record or the Complaint that suggests Plaintiffs cannot have their day in court, albeit in Fulton County, Georgia (or in arbitration). Additionally, there is nothing

to suggest Plaintiffs would for *all practical purposes be deprived* of their day in court because of grave inconvenience or unfairness of having proceedings in Fulton County, Georgia. *M/S Breman*, 407 U.S. at 304 (emphasis added).

Fourth, "the internal laws of the State of Georgia" supply the substantive law and remedies to Plaintiffs regardless of whether claims are pursued in the federal court of Rhode Island or Fulton County, Georgia. (Contract p. 9 at ¶25). All of Plaintiffs' claims and relief asserted against Manheim are not exclusive to the federal court of Rhode Island, and can be brought in Fulton County, Georgia, as the parties agreed.

Finally, there is nothing to suggest that the Forum Selection Provision would be unreasonable or against holdings in the First Circuit as evidenced by *Rivera* and *Claudia-De Leon*. 575 F.3d 10; 775 F.3d 41. Consequently, the Forum Selection Provision is not unreasonable and therefore must be enforced.

**C.     The Contract Merges Into the Pleadings and Consideration Under 12(b)(6) Is Proper**

Lastly, to the extent Plaintiffs argue that this Court should disregard the Contract or convert this motion into one for summary judgment, that argument must fail. When a document is central to a plaintiff's complaint, the document "merges into the pleadings" and may be properly considered by the court in determining a motion to dismiss. *See Claudia-De Leon*, 775 F.3d at 46 (quoting *Alt. Energy, Inc.*, 267 F.3d at 3); *see also Ironshore Specialty Insurance Company v. United States*, 871 F.3d 131, 135-136 (1st Cir. 2017)

Indeed, Plaintiffs' allegations in the Complaint against Manheim are few and sparse. The Complaint does not explicitly reference the Contract between Manheim and Plaintiffs. Nonetheless, the majority of the allegations center upon automobile auctions, which the Contract clearly governs. (See Complaint at ¶¶ 8, 38, 58, 59(h), 62, 63, 64, 66, 72, 87, 89); Contract at p. 1 ("[B]y attending any of Manheim's auctions or using any of Manheim's services, whether at a

Manheim location or online, you agree, for yourself, your dealership, your company, and your representatives (collectively "you") . . . to abide by the following terms and conditions[.]"). Taking all of the allegations together, each of Plaintiffs' claims against Manheim involve interactions that are squarely governed by the Contract. Hence, the Contract is central to Plaintiffs' Complaint and must merge to into the pleadings. *See Alt. Energy, Inc.*, 267 F.3d at 34 (holding that the complaint fails to state a claim unless appellee retains some measure of liability, which depends upon the interpretation of the agreement); *see Ironshore*, 871 F.3d at 135-136 (holding that the claims at hand required an examination of the contractual relationship between the parties); *Barkan v. Dunkin' Donuts, Inc.,* 520 F.Supp.2d 333, 335–36 (D.R.I. 2007) (applying *Watterson* and considering, on a motion to dismiss, the parties' franchise agreements and store development agreements (SDAs) notwithstanding neither the SDAs nor franchise agreements were attached as exhibits to complaint). Simply put, the Plaintiffs cannot hide behind the insufficiency of their pleadings to avoid dismissal via Rule 12(b)(6).

## IV. CONCLUSION

Plaintiffs ignore a valid and enforceable mandatory arbitration provision and forum selection clause by improperly bringing claims against Manheim before this Court in violation of the parties' Contract. As the Contract is central to each claim asserted against Manheim in the Complaint this Court must dismiss this lawsuit or require Plaintiffs to comply with the Arbitration Provision and Forum Selection Provision

WHEREFORE, Defendant, Manheim Remarketing, Inc., respectfully requests that that this Court enter an order dismissing all counts against Manheim, Inc. in Plaintiffs' Second Amended Complaint, or in the alternative stay this action to permit mandatory arbitration to proceed, and for such other relief as this Court deems just and proper.

|  |  |
|---|---|
|  | Respectfully submitted,<br>**DEFENDANT**<br>**MANHEIM REMARKETING, INC.**<br>by counsel, |
| Dated : Nov. 8, 2021 | */s/ Katharine E. Kohm*<br>Katharine E. Kohm (#8194)<br>PIERCE ATWOOD LLP<br>One Financial Plaza, Suite 2600<br>Providence, Rhode Island 02903<br>Tel: (401) 588-5113<br>kkohm@pierceatwood.com |
|  | */s/ David J. Jurkiewicz*<br>David J. Jurkiewicz (IN #18018-53)<br>*(admitted pro hac vice)*<br>BOSE MCKINNEY & EVANS LLP<br>111 Monument Circle, Suite 2700<br>Indianapolis, Indiana 46204<br>djurkiewicz@boselaw.com |

## **CERTIFICATE OF SERVICE**

I certify that the foregoing document was electronically filed with the Clerk of the Court on the 8th day of November, 2021, and that it is available for viewing and downloading from the Court's CM/ECF system. All counsel of record for represented parties have been served by electronic means on the date this document was filed. All parties who are self-represented or whose counsel have not yet entered an appearance have been served by U.S. Mail, first class postage prepaid, and email on the date this document was filed.

*Counsel for Plaintiffs (e-filing)*
Harris K. Weiner (#3779)
Salter, McGowan, Sylvia & Leonard, Inc.
56 Exchange Terrace, Suite 500
Providence, RI 02903
Office: (401) 274-0300
Fax: (401) 453-0073
hweiner@smsllaw.com

*Counsel for Defendants Automotive Finance Corporation d/b/a AFC and ADESA, Inc. (e-filing)*
Joseph V. Cavanagh , III (#6907)
Blish & Cavanagh LLP
30 Exchange Terrace
Providence, RI 02903
Office: (401) 831-8900
Fax: (401) 490-7640
jvc3@blishcavlaw.com

Reynold T. Berry (Ind. Atty #25482-49)
*(admitted pro hac vice)*
RUBIN & LEVIN, P.C.
135 N. Pennsylvania St., Suite 1400
Indianapolis, IN 46204
Office: (317) 634-0300
Fax: (317) 263-9410
rberry@rubin-levin.net

                                                                /s/ Katharine E. Kohm