UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

CT102 LLC d/b/a Metro Motors and H.
Jeffrey Baker,

      Plaintiffs,

      v.                               Civil Action No.:1:20-cv-356-MSM-PAS

Automotive Finance Corporation d/b/a AFC;
NextGear Capital, Inc.; Manheim, Inc.;
and ADESA, Inc.

      Defendants.

**REPLY IN SUPPORT OF MOTIONS OF DEFENDANTS,
NEXTGEAR CAPITAL, INC. AND MANHEIM REMARKETING, INC. TO
DISMISS SECOND AMENDED COMPLAINT OR IN THE ALTERNATIVE TO STAY
PENDING COMPLETION OF MANDATORY ARBITRATION AND NEXTGEAR
CAPITAL, INC.'S MOTION TO STRIKE JURY DEMAND**

Defendants, NextGear Capital, Inc. ("NextGear") and Manheim Remarketing, Inc. ("Manheim"), by counsel, respectfully submit this Reply in support of their Motions to Dismiss Plaintiff's Second Amended Complaint or in the Alternative to Stay Pending Completion of Mandatory Arbitration and NextGear Capital, Inc.'s Motion to Strike Jury Demand (Doc. 49, 50 and 51) as to NextGear and Manheim (collectively, the "Motions") and in response to the Opposition of Plaintiffs, CT102 LLC d/b/a Metro Motors ("Metro Motors") and H. Jeffrey Baker ("Baker") to the Motions filed on January 21, 2022 (Doc. 55) (the "Response"), state as follows:[1]

**I. SUMMARY OF ARGUMENT**

This Court allowed Plaintiffs a third opportunity to remedy the Complaint defects. What did the Plaintiffs do with this opportunity? They filed the Second Amended Complaint ("SAC")

---

[1] The Plaintiffs' response is a rehash of their Response to the prior Motion to Dismiss filed by NextGear and Manheim as it even purports to be a response to Docs. 26 and 28, which were the NextGear and Manheim Motions to Dismiss the First Amended Complaint.

which is a rehash of the two prior Complaints, but with the omission of defendants Autotec, LLC ("Autotec") and Southern Auto Sales, Inc. ("SAA"). Here the third time is not the charm. Simply put, the tread worn claims against Manheim and NextGear (collectively, the "Defendants") in Plaintiffs' SAC are too late, already decided, or brought in the improper place, and therefore must be dismissed. The Plaintiffs' Response does nothing to change this outcome. Plaintiffs agreed to arbitrate all claims against Defendants and consented to exclusive venue for any lawsuits in the state and federal courts of Marion County and Hamilton County, Indiana as to NextGear, and Fulton County, Georgia as to Manheim.

Furthermore, as to NextGear, the full faith and credit and preclusive consequences of the Indiana Final Judgment[2] against Plaintiffs require dismissal of the SAC.

Plaintiffs' claims are defeated by the language of the contracts between the parties and an adverse judgment. The SAC should therefore be dismissed for failure to state a claim for which relief may be granted, under Fed. R. Civ. Pro. 12(b)(6), as to both NextGear and Manheim.

## II. LEGAL ARGUMENT

A.  **Jury Waiver**.

Aside from a perfunctory, uncited sentence asserting unconstitutionality (Doc, 55-1 at pg. 20), the Plaintiffs completely fail to respond to NextGear Capital, Inc.'s Motion to Strike Jury Demand (Doc. 50). The Response erroneously makes passing reference to a non-existent Motion to Strike Jury Demand of Manheim. Otherwise the Response offers no case law analysis as to why Plaintiffs' contractual waiver of trial by jury should not be honored. This Court should enter an order striking Plaintiffs' request for a trial by jury.

---

[2] Capitalized terms not defined herein are defined in the Motions.

B. **Conversion to Summary Judgment is not Required by the Exhibits to the Motions.**

First, a housekeeping issue must be addressed. The Response incorrectly argues that conversion to a motion for summary judgment is required because Defendants introduced documents that are neither central to the action nor appropriate for judicial review. (Doc.55-1 at pg. 8). Specifically, the documents attached to the NextGear Motion relate to a now resolved by Final Judgment Indiana state court litigation and include the State Complaint and exhibits thereto, the Answer and Affirmative Defenses, the Order Entering Summ. J., the Appeal Opinion and Final Judgment (collectively the "NextGear Documents") (Doc. 49). The documents attached to the Manheim Motion include the Contract as supported by the Tai Affidavit and Morris Affidavit (collectively the "Manheim Documents") (Doc. 51).

The NextGear Documents and the Manheim Documents fall squarely within the First Circuit's well-defined summary judgment conversion exception for consideration of documents "that are central to the plaintiff's claim or sufficiently referred to in the complaint, even if those documents are not physically attached to the pleading." *Carrero-Ojeda v. Autoridad De Energia Eléctrica*, 755 F.3d 711, 717 (1st Cir. 2014) (additional citations omitted). Plaintiffs readily admit to business relationships with NextGear and Manheim, so the NextGear Documents and Manheim Documents governing those relationships are clearly "central to plaintiff's claim or sufficiently referred to in the complaint…" *Id.* Nowhere do the Plaintiffs deny the authenticity of the NextGear Documents and Manheim Documents, which clearly require all claims be arbitrated or litigated in Indiana or Georgia, respectively.

Contracts central to Plaintiffs' claims aside, the NextGear Documents include filings from the Indiana Action and therefore are "matters of public record … susceptible to judicial notice," *Giragosian v. Ryan*, 547 F.3d 59, 65 (1st Cir. 2008). The NextGear Documents from

the Indiana Action show that the claims raised by Plaintiffs against NextGear were litigated to conclusion in Indiana and were decided against the Plaintiffs.  This Court must accord full faith and credit to the Final Judgment against Metro Motors and Baker, and may take judicial notice of the relevant state court filings in the Indiana Action to "supplement the facts contained in the pleadings." *R.G. Financial Corp. v. The Vergara-Nunev*, 446 F.3d 178, 182 (1st Cir. 2006).

## **ARBITRATION PROVISIONS AND FORUM SELECTION PROVISIONS**

Plaintiffs have improperly filed suit in the Rhode Island Federal District Court instead of filing for arbitration or litigating in Marion County or Hamilton County, Indiana (NextGear) as required, or arbitrating or litigating in Fulton County, Georgia (Manheim), as likewise required. All of Plaintiffs' claims in their SAC relate to services memorialized in the Contract agreement between Manheim and the Plaintiffs[3] and the Note and Guaranty Agreements with NextGear.

For Manheim, the Contract has a mandatory Arbitration Provision (See Contract pgs. 10-11 at ¶ 26) (Doc. 51-2 at pgs. 17-19).  It also includes a fall-back forum-selection clause, which unequivocally states that for any disputes not arbitrated, the jurisdiction and venue for any suit brought against Manheim is Fulton County, Georgia to the exclusion of all others. (See Contract pg. 9 at ¶25) (Doc. 51-2 at pg. 16).

For NextGear, both Agreements require arbitration (Note Section 22, Doc. 49-2 at pg. 18) and Guaranty, Section 5(e)(i), Doc. 49-2 at pg. 32)) and also include a fall-back forum-selection clause, which unequivocally states that for any disputes not arbitrated, the jurisdiction and venue for any suit against NextGear is Marion County, Indiana or Hamilton County, Indiana to the

---

[3] Plaintiffs may not recall electronically accepting the Contract, but Plaintiffs do not dispute "click through" execution of the Contract.  (Baker Affidavit ¶12).

4

exclusion of all others.  (Note Section 21, Doc. 49-2 at pg. 18) and Guaranty, Section 5(d), Doc. 49-2 at 32).[4]

The First Circuit Court of Appeals, like all federal circuits, strongly favors arbitration and regularly compels disputes be resolved in that forum in accordance with contract language. Likewise, the First Circuit has held that a valid forum-selection clause, such as contained in the Agreements, requires dismissal under Fed. R. Civ. Pro. 12(b)(6) for failing to state a claim for which relief can be granted. *Claudio-De Leon v. Sistema Universitario Ana G. Mendez*, 775 F.3d 41, 46 (1st Cir.2014); *Rivera v. Centro Médico de Turabo, Inc.*, 575 F.3d 10, 15 (1st Cir.2009).

In the Response (Doc. 55-1 at pg. 6), Plaintiffs claim without support that the Agreements and Contract are *per se* unconscionable because they allow Defendants but not Plaintiffs to seek judicial relief rather than arbitration.  Plaintiffs' assertion regarding unconscionability is incorrect.  Rather "[a] forum selection clause in a contract is conscionable even where one party must arbitrate while the counter-party may elect either to litigate or arbitrate." *Unconscionable Arbitral Contracts*, 138 Am. Jur. Trials 301.  Indeed, Georgia law, which applies to the Manheim Agreement (Doc. 51-2 at pg. 16), and Indiana law, which applies to the NextGear Note and Guaranty (Doc. 49-2 at pgs. 18 and 32), unanimously conclude that unequal obligations – such as the unilateral choice whether to litigate or arbitrate – do not render an agreement unconscionable.[5]  *See, e.g.*, *Crawford v. Great American Cash Advance, Inc.*, 644

---

[4] Baker claims that "he expressly amended the NextGear individual guaranty contract to change jurisdiction and venue from Indiana to Rhode Island." (Resp., pg. 3).  However this claim has been adjudicated and denied in the Indiana Action.  Furthermore, Baker and Metro Motors make no claims that either of the Plaintiffs made any amendment to the venue provisions in the Note or the Arbitration Provisions in the Note and Guaranty and these apply to the present case.

[5] "Arbitration is a matter of contract, and for the most part, general principles of state contract law control the determination of whether a valid agreement to arbitrate exists." *Campbell v. Gen. Dynamics Gov't Sys. Corp.*, 407 F.3d 546, 552 (1st Cir. 2005). Here, the undisputed contractual choice of law provisions selecting Indiana and Georgia law are controlling.  Rhode Island law does not apply.  But, in any event, Rhode Island is in accord with Georgia and Indiana rejecting that the unilateral choice as to the dispute resolution method fails for lack of mutuality. See *Britto v. Prospect Chartercare SJHSRI, LLC*, 909 F.3d 506, 514 (1st Cir. 2018) (applying Rhode

5

S.E.2d 522, 525 (Ga. App. Ct. 2007) (rejecting that an "arbitration clause [in pay day loan contract] is unconscionable because it allows [the lender] the alternative remedy of enforcing payment obligations through the judicial process, in addition to arbitration, but does not afford [borrower] the same right"); *Doe 1 v. Carmel Operator, LLC*, 144 N.E.3d 743, 754 (Ind. App. Ct. 2020) (rejecting the plaintiff's argument that "prohibiting judicial review" in an "arbitration agreement is both substantively and procedurally unconscionable" and purportedly "one-sided and harsh" and instead holding that "a contact is not unenforceable merely because one party enjoys advantages over another, [] an adhesion contract is not per se unconscionable" and that an "arbitration agreement [for a nursing home resident was] valid, enforceable, and applicable" notwithstanding it precluded litigation). In sum, the subject Contract, Note, and Guaranty are all conscionable. Moreover, both the Manheim and NextGear Arbitration Provisions provided a mechanism for Plaintiffs to opt out of arbitration. Plaintiffs chose not to avail themselves of this opt out.

It bears emphasizing that in each of the cases cited above the complaining parties were consumers. Here, affording one party unilateral rights under a contract is even further reasonable where Plaintiffs confirmed that they are commercial parties. *See Interstate Sec. Police, Inc. v. Citizens and Southern Emory Bank*, 226 S.E.2d 583, 584 (Ga. 1976) (holding that "we do not find this commercial loan transaction between the borrower corporation and lender bank to be unreasonable or 'unconscionable.' Rather, it appears to be a negotiated arm's length business transaction between sophisticated commercial parties. Unless invalid for some other reason, the

---

Island law and observing that the plaintiff cited no authority for "his theory . . . that because the offer letter gave [employer] the exclusive right to alter the arbitration agreement [the employer's] promise to arbitrate was illusory making the agreement unenforceable regardless of whether [employer's contract as a whole] was non-illusory and thus satisfactory consideration" and holding also that the arbitration agreement was not unconscionable where the plaintiff failed to meet the two-part test from <u>Grady</u> in that "(1) there is an absence of meaningful choice on the part of one of the parties; <u>and</u> (2) the challenged contract terms are unreasonably favorable to the other party").

court has no right to excuse the parties from compliance with these agreements"); *Petroleum Helicopters, Inc. v. Rolls-Royce Corp.*, 2016 WL 7179362, at *5 (S.D.Ind. 2016) (holding that "sophisticated commercial actors should be free to allocate risks as they see fit, and courts should not interfere simply because such risks have materialized" (citing *Rheem Mfg. Co. v. Phelps Heating & Air Conditioning, Inc.*, 746 N.E.2d 941, 948 (Ind. 2001)). The Manheim Contract Agreement stated that "[Plaintiffs] acknowledge and agree that [they] are a sophisticated commercial part[ies.]"  (Doc. 51-2 at pg. 9).  NextGear's Note stated that "[t]his Note and all Advances requested or made hereunder shall be requested and made only for commercial purposes and [Plaintiffs] hereby expressly and unconditionally waives, to the fullest extent permitted by Law, the protections of any Law intended to protect consumers or regulate consumer loans" (Doc. 49-2 at pg. 12) and, likewise, NextGear's Guaranty stated that "[Plaintiff Baker] hereby expressly waives . . . protections of any Laws intended to protect consumers or regulate consumer loans, as the Liabilities are commercial in nature" (Doc. 49-2 at pg. 29).

       Finally, Manheim and NextGear note that Plaintiffs have challenged the Agreements as whole because they are "unconscionable."  (Doc. 55-1 at pg. 4).  "Even within the 'validity challenge' realm, there's another distinction: A challenge to the validity of an entire contract containing an arbitration provision must go to an arbitrator. [ ] Meanwhile, a challenge to the validity of the arbitration provision itself must be decided by the court." *National Federation of the Blind v. The Container Store, Inc.*, 904 F.3d 70, 81 (1st Cir. 2018) (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443-45 (2006) & *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402-04 (1967)). So, for yet another reason, because Plaintiffs have challenged the validity of the entire contract, Plaintiffs must allow the arbitrator to decide this dispute.

7

As for Plaintiffs' other challenge to the breadth of the Arbitration Provisions, all the claims at issue in this case are well within the broad scope of the Arbitration Provisions. All of Plaintiffs' claims are rooted in the services provided by Manheim and NextGear pursuant to the Contract and Agreements and to the consequences that flowed from Plaintiffs' breach thereof. As to Manheim, the provision covers "any dispute or claim that you may have with Manheim that arises out of *or relates in any way* to these terms and conditions; any purchase, sale, or other auction or credit transaction with Manheim; your use of any Manheim website, online portal or any Manheim product or service; or any other agreement between you and Manheim." (Manheim Contract [Ex. A] §26(a), (Doc. 51-2 at 16) (emphasis added). As to NextGear, the Arbitration Provisions cover "all disputes, claims and counterclaims arising out of or relating to this Note [Guaranty] or any other Loan Document *or any aspect of Borrower's [Guarantor's] relationship with Lender*." (Note §22(a), Doc. 49-2 at pg. 18) and (Guaranty 5(e)(i), Doc. 49-2 at pg. 32)) (emphasis added)  A broad arbitration clause that "memorializ[es] [the parties] intention to arbitrate 'any dispute…' is one that the parties clearly anticipated would be resolved by an arbitrator, not a court." *See Biller v. S-H OpCo Greenwich Bay Manor, LLC*, 961 F.3d 502, 515-16 (1st Cir. 2020). The Plaintiffs have therefore agreed that they would arbitrate all disputes and claims asserted against NextGear and Manheim in the SAC.

## NEXTGEAR – COMPULSORY COUNTERCLAIMS

As set forth in NextGear's Motion, this Court should dismiss the above action for at least two reasons. First, as detailed in the prior section, Plaintiffs have improperly filed suit in Rhode Island Federal District Court instead of filing for arbitration as required or in Hamilton County, Indiana, where venue is required and where the concluded Indiana Action resulted in a final

judgment for NextGear.  Second, Plaintiffs failed to raise their compulsory counterclaims against NextGear in the Indiana Action, and as such, the claims in the SAC are barred.

## SAC FACTS

As a starting point let's review the precise claims of the SAC.  In the Response, Plaintiffs assert that the facts supporting the following claims were not before the court in the Indiana Litigation:  fraud, tortious interference, conspiracy to tortiously interfere, negligence, breach of good faith and fair dealings, unjust enrichment, and lender liability.  To further explain, Plaintiffs state in their Response:

> The gravamen of the SAC is that NextGear's wrongful conduct in collusion with Manheim drove Plaintiff Metro Motors out of business and improperly exposed Plaintiff Baker to liability on his personal guaranty through NextGear's bad acts which included: wrongfully seizing Metro Motors' auction proceeds from a third-party auction company by falsely claiming title to Metros' vehicle, refusing to correct the problem, failing to privately notify Metro, and blacklisting Metro from using NextGear's affiliate, Manheim.  For its part, Manheim participated in a conspiracy to bar Metro from auto auctions. (Doc. 55, pg. 4)

The Plaintiffs then demonstrate that the above assertion is totally false.  Exhibit C attached to Plaintiffs' Response is the Affidavit of Mr. Baker ("Baker Affidavit") filed in the Indiana Action.  (Doc. 55-2, p. 14)  It is clear from the Baker Affidavit that the factual assertions and claim of the SAC were indeed raised by Metro Motors and Baker in the Indiana Action.

> "18.   For unknown reasons, however, NextGear also demanded that SAA remit any funds obtained for sale of Stock #1020 directly to NextGear."
>
> "26.   As a result of NextGear's demand to SAA, and SAA's compliance with that demand, there were insufficient funds for the payment Metro Motors made to Defendants."
>
> "27.   Shortly thereafter, on or about May 22, 2018, AFC repossessed all inventory it had floored with Metro Motors."
>
> "32.   NextGear improperly repossessed the Collateral and prevented Defendants from selling it at or near market rates."

> "34. Since the above-described events, NextGear has told Manheim Auctions to prohibit Defendants from selling any vehicles at Manheim auctions, and Manheim has complied."
>
> "37. NextGear's conduct in demanding that SAA remit funds from the sale of the vehicles to NextGear, and its subsequent conduct in repossessing Defendants' inventory and prohibiting Defendants from selling at Manheim Auctions was the sole cause of any damages NextGear has suffered."

Plaintiffs cannot dispute that they pled the same facts and causes of action in both the SAC and the Indiana Action and that the Indiana Action was resolved after trial against Metro Motors and Baker and in favor of NextGear. Now Plaintiffs reiterate the same losing facts in the SAC.

Plaintiffs improperly bring barred compulsory counterclaims against NextGear in their SAC. All of the Plaintiffs' claims against NextGear were–or were required to have been–litigated in the Indiana Action. The proper application of both federal and Indiana law results in the inescapable conclusion that Plaintiffs are precluded from re-litigating these claims in any court, including the United States District Court for the District of Rhode Island. *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 481-82 (1982); *R.G. Financial Corp. v. Vergara-Nunez*, 446 F.3d 178, 184-85 (1st Cir. 2006).

In their Response, Plaintiffs claim that the compulsory counterclaims are not pertinent to the substance of the SAC because those causes of action are outside of the "unconscionable" NextGear Contract. (Resp., Doc. 55-1 at pg. 4). However, both the Indiana Action and this Court employ the same standard for compulsory counterclaims, i.e. did the claim "arise out of the transaction or occurrence that is the subject of the opposing party's claim." Fed. R. Civ. P. 13(a), Ind. R. of Trial P. 13(a). Whether or not the NextGear Note and Guaranty are unconscionable, which they are not, it is irrelevant to this analysis.

10

All of the Plaintiffs' claims in the SAC relate to Plaintiffs' secured lending relationship with NextGear and the associated contractual remedies invoked upon Plaintiffs' default. As detailed in NextGear's Motion, Plaintiffs' **Count II** alleging tortious interference with contractual relations relies on the borrower-lender relationship with NextGear (SAC, Doc. 42 at pg. 8 at ¶34) and Baker's personal Guaranty of this borrower-lender relationship (SAC, Doc. 42 at pg. 8 at ¶55). Similarly, **Count III** alleging conspiracy to tortiously interfere arises solely out of the Note and Guaranty, particularly the default and collateral provisions of the Note. (SAC, Doc. 42 at pg. 11 at ¶69). Likewise, **Count IV** alleging negligence is precluded as it is founded upon NextGear's repossession of its collateral. (SAC, Doc. 42 at pg. 12 at ¶79). **Count V** alleging breach of the covenant of good faith and fair dealing necessarily acknowledges that this claim arises from the NextGear contractual relationship under the Note and Guaranty. (SAC, Doc. 42 at pg. 13 at ¶¶84 and 85.) Finally, **Count VI** alleging unjust enrichment is fabricated upon NextGear's repossession of collateral remedies. (SAC, Doc. 42 at pg. 14 at ¶90.)

Plaintiffs then argue "compulsory counterclaims, which are a procedural matter to be analyzed under the Federal Rules of Procedure (and not Indiana rules), are not compelled." (Resp., Doc. 33-1 at pg. 3). This is not an accurate statement of the law. Rather, "Full Faith and Credit does require the federal courts to honor state-court judgments, however, and thus similarly to bar compulsory counterclaims *defined under comparable state compulsory-counterclaim rules but omitted from state-court judgments*" 6 *Fed. Prac. & Proc. Civ*. § 1417 Compulsory Counterclaims—Effect of Failing to Plead a Compulsory Counterclaim (3d ed.) (emphasis added). As NextGear explained in its memorandum of law [Doc. 49-1 at pgs 6-14], Indiana law on compulsory counterclaims applies. All of the claims asserted against NextGear directly relate to the contractual relationship between Metro Motors and Baker on the one hand, and NextGear

on the other. The logical relationship or aggregate set of operative facts that spawned the Indiana action are the same as those spawning the claims in the SAC. *Ratliff v. Citizens Bank of Western Indiana*, 768 N.E.2d 964, 969 (Ind. Ct. App. 2002). Therefore Plaintiffs have waived all right to assert such claims as they were compelled under the Indiana Trial Rules and Indiana case law to bring claims against NextGear as a counterclaim in the Indiana Action. *Id.* at 966-967.

Lastly Plaintiffs argue that the claims of the SAC are not barred as compulsory counterclaims from the Indiana Action because there were necessary third parties (Autotec and SAA) for whom the Indiana court could not acquire jurisdiction. This argument holds no water. Autotec and SAA, defendants in the first two Complaints, were not included as defendants on the SAC. Plaintiffs' own SAC pleading omission shows that Autotec and SAA were not "necessary" so as to break the compulsory preclusion of the same claims in the SAC.

## **LIMITATION OF LIABILITY**

Additionally, the Note and Guaranty make clear that NextGear cannot be held liable for "any special, indirect, exemplary, punitive, incidental, multiple or consequential damages (including any damages resulting from loss of use, loss of profits, loss of business or other economic loss) arising out of or in connection with this Note [Guaranty]." (Doc. 49-2, pg. 19, ¶ 24; Doc. 49-2, pg. 33, ¶ 5(g))  As such, Plaintiffs' claims for these types of damages are barred as a matter of law.

## **III. CONCLUSION**

Valid and enforceable Arbitration Provisions and Forum Selection provisions contained in the NextGear Note, Guaranty and Manheim Contract require that the SAC be dismissed. These agreements are central to each claim asserted against Defendants in the SAC and the Arbitration Provisions and Forum Selection Provisions require that Plaintiffs either arbitrate all disputes against Defendants or sue NextGear in Indiana and Manheim in Georgia.

As an additional basis for dismissal of NextGear, Plaintiffs attempt a third post-Final Judgment bite at the apple by improperly bringing claims against NextGear that have been fully adjudicated in the Indiana Action. Plaintiffs appeared, filed an answer and affirmative defenses in the Indiana Action. Plaintiffs vigorously litigated summary judgment and lost. Plaintiffs initiated an appeal and also lost. The Indiana Court of Appeals found Plaintiffs liable for breach of contract and remanded for a damages trial. Thereafter Plaintiffs lost at trial. For Plaintiffs to relitigate the loss in Rhode Island federal court is absurd. The Indiana Action was the original and appropriate vehicle for addressing Plaintiffs' claims, as each arises under the same transaction or occurrence that was the subject matter of the Indiana Action. Therefore, Plaintiffs' claims against NextGear are precluded by *res judicata*.

WHEREFORE, Defendants, NextGear Capital, Inc. and Manheim Remarketing, Inc., respectfully request that that this Court enter an order dismissing all counts against NextGear Capital, Inc. and Manheim Remarketing, Inc. in Plaintiffs' Second Amended Complaint, or in the alternative stay this action to permit mandatory arbitration to proceed, and for such other relief as this Court deems just and proper.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | **DEFENDANTS<br>NEXTGEAR CAPITAL, INC. and<br>MANHEIM REMARKETING, INC.**<br>by their counsel, |
| Dated: February 11, 2022 | /s/ *Katharine E. Kohm*<br>Katharine E. Kohm (#8194)<br>PIERCE ATWOOD LLP<br>One Financial Plaza, Suite 2600<br>Providence, Rhode Island 02903<br>Tel: (401) 588-5113<br>kkohm@pierceatwood.com<br><br>David J. Jurkiewicz, Esq.<br>*(pro hac vice per text order 7/30/21)*<br>BOSE MCKINNEY & EVANS LLP<br>111 Monument Circle, Suite 2700<br>Indianapolis, Indiana 46204<br>DJurkiewicz@boselaw.com |

**CERTIFICATE OF SERVICE**

      I certify that the foregoing document was electronically filed with the Clerk of the Court on the 11th day of February, 2022, and that it is available for viewing and downloading from the Court's CM/ECF system. All counsel of record for represented parties have been served by electronic means on the date this document was filed. All parties who are self-represented or whose counsel have not yet entered an appearance have been served by U.S. Mail, first class postage prepaid, and email on the date this document was filed.

***Counsel for Plaintiffs (e-filing)***
Harris K. Weiner (#3779)
Harris K. Weiner Law
197 Taunton Avenue
East Providence, RI 02914
Tel.: 401-437-4450
Fax.: 401-438-1630
harris@hkweinerlaw.com

***Counsel for Defendants Automotive Finance Corporation d/b/a AFC and ADESA, Inc. (e-filing)***
Joseph V. Cavanagh, III (#6907)
Blish & Cavanagh LLP
30 Exchange Terrace
Providence, RI 02903
Office: (401) 831-8900
Fax: (401) 490-7640
jvc3@blishcavlaw.com

Reynold T. Berry, Esq. *(pro hac vice)*
RUBIN & LEVIN, P.C.
135 N. Pennsylvania St., Suite 1400
Indianapolis, IN 46204
317/860-2922 (Direct)
317/453-8622 (Fax)
rberry@rubin-levin.net

                                                                           /s/ Katharine E. Kohm