# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| CT102 LLC d/b/a METRO MOTORS and H. JEFFREY BAKER,<br><br>Plaintiffs,<br><br>v.<br><br>AUTOMOTIVE FINANCE CORPORATION d/b/a AFC; NEXTGEAR CAPITAL, INC.; MANHEIM, INC.; and ADESA, INC.,<br><br>Defendants. | C.A. No. 1:20-cv-00356-MSM-PAS |

### REPLY OF DEFENDANT AUTOMOTIVE FINANCE CORPORATION dba AFC IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT

Defendant Automotive Finance Corporation dba AFC ("AFC"), by counsel, respectfully submits this Reply in Support of its *Motion of Defendant Automotive Finance Corporation dba AFC to Dismiss Second Amended Complaint* filed herein on November 8, 2021 (Doc 47, the "Motion")[1], and in response to the *Memorandum of Law in Support of Opposition of Plaintiff's CT102, LLC ("Metro") and H. Jeffrey Baker* ("Baker" and together with Metro, the "Plaintiffs") *to Defendants Automotive Finance Corporation D/B/A AFC and ADESA, Inc.'s Motion to Dismiss* (Doc 56, the "Response"), states as follows:

### I. Summary of Argument

Every material fact alleged against AFC in the Second Amended Complaint has been

---

[1] See Doc 47. All capitalized terms and exhibit references not otherwise defined or identified herein shall have the meanings ascribed to them in the Motion and exhibits thereto. Supplementing the Exhibits to the Motion, Plaintiff tenders herewith Exhibit "C", which was filed by Plaintiffs in the Superior Court for Kent County, S.C. on or about February 3, 2022. AFC asks this Court to take judicial notice of such filing in accordance with FRE 201(c)(2).

determined non-existent or non-actionable by the Final Judgment and is barred from consideration by *res judicata.* Not one cause of action asserted by Plaintiffs against AFC can proceed in this Court without trampling on or completely ignoring the fully litigated findings in the Indiana Litigation and the Final Judgment. That is precisely what *res judicata* prohibits, and the Second Amended Complaint must be dismissed as against AFC.

Even if Plaintiffs' claims were not precluded by *res judicata* and this Court overlooked the enforceable forum selection clauses requiring all such claims to be brought in Indiana, the Second Amended Complaint still fails to state cognizable claims against AFC under Indiana law due to, *inter alia*: (i) Plaintiffs' failure to plead fraud with specificity; (ii) the applicable statutes of limitation in light of Rhode Island choice-of-law principles; (iii) provisions of the parties' agreements; (iv) legitimate business justification for any alleged conduct; (v) the Economic Loss doctrine; and/or (iv) because the causes of action are not recognized in Indiana. Accordingly, the Second Amended Complaint fails to state a claim against AFC for which relief can be granted and should be dismissed pursuant to FRCP 12(b)(6).

## II.  Legal Argument

**A.     Conversion of the Motion to a Motion for Summary Judgment is Not Required.**

Although acknowledging the Court may take judicial notice of the Indiana Litigation, Plaintiffs incorrectly contend "it is improper for the Court to go beyond the existence of a pleading to the *unresolved* merits" [Response pp. 10-11 (emphasis added)][2] and argue the Court

---

[2] This sentence appears to have been copied from Plaintiffs *Memorandum of Law* filed in opposition of AFC's prior *Motion to Dismiss* Plaintiffs' *First Amended Complaint* [Doc 31-1, p. 8]. Notably, however, the merits of AFC's claims in the Indiana Litigation were not "*unresolved*" at the time of the filing of the Second Amended Complaint. Plaintiffs' reliance on the same, now patently false, statements concerning those proceedings is indicative of the lack of merit persistent in all of Plaintiffs' claims made so far in this Court.

must treat the Motion as one for summary judgment. This legal fallacy is belied by established law and by Plaintiff's own Response.

"Respect for prior judgments is deeply ingrained in our legal regime — the Constitution's full-faith-and-credit clause ... combine[s] with the common law's claim-preclusion doctrine to help make it so." *Newman v. Krintzman*, 723 F.3d 308, 310 (1st Cir. 2013). Courts have a duty to take judicial notice of public records and facts "not subject to reasonable dispute [and] ... capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned." Fed. R. Evid. 201(b). Public records necessarily include "documents from prior state court adjudications." *Giragosin v. Ryan*, 547 F.3d 59, 66 (1st Cir. 2008). Where, as here, a "motion to dismiss is premised on a defense of [claim preclusion] ... the court may take into account the record in the original action." *Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co.*, 547 F.3d 48, 51 (1st Cir. 2008).

As Plaintiffs concede, "the Court may take judicial notice of the related state court documents 'to establish the existence of the [related] litigation, *what claims were asserted, and what issues were argued and decided*.'" [Response p. 10] (citations omitted) (emphasis added). Such necessarily entails going beyond the mere existence of a document to its actual substance, including the Final Judgment. The parties may thereafter "present material pertinent to the documents' effect on [their] federal action" to the extent such exists. *Giragosian*, 547 F.3d at 66. The exhibits to the Motion, the *Objection of Defendants to Plaintiff's Request for Filing Foreign Judgment* attached hereto as Exhibit "C," and the notices of the related proceedings all represent public records appropriate for judicial notice pursuant to FRE 201 and do not require conversion to a motion for summary judgment under FRCP 56. *See Cruz v. Melecio*, 204 F.3d 14, 21 (1st

Cir. 2000) (a court reviewing a 12(b)(6) motion may consider "not only the complaint but also matters fairly incorporated within it and matters susceptible to judicial notice.").

**B.      The Second Amended Complaint is Barred by *Res Judicata*.**

Plaintiffs argue "there is no identity of claims and no identity of parties between the Indiana litigations and this Rhode Island dispute" and instead the "substantive claims raised in this action are different from those adjudicated in Indiana." [Response, pp. 3-4]. Plaintiffs offer no legal citation and provide no factual differentiation between the claims/defenses raised in, and determined by the Indiana Litigation, and the Second Amended Complaint. That is because there is none.

As detailed in the Motion, *res judicata* bars consideration of nearly every operative fact alleged in the Second Amended Complaint. It matters not, as Plaintiffs allege, that the "Indiana litigation is not identical as to parties and claims raised." Rather, the determining factors are "whether the causes of action arise out of a common nucleus of operative facts," *Mass Sch. Of Law at Andover, Inc. v. Am. Bar. Ass'n.*, 142 F.3d 26, 28 (1st Cir. 1998), and whether Plaintiffs had "every opportunity to fully litigate its various claims against [AFC] in an earlier suit and made the strategic choice not to do so." *Airframe Sys. v. Raytheon Co.*, 601 F.3d 9, 14 (1st Cir. 2010).

The Final Judgment specifically held:

   a. Metro and Baker waived any and all defenses based upon suretyship or impairment of collateral [Ex. B, ¶¶ 13, 14, 59];

   b. AFC's representative did not initial any alterations to the Guaranty nor did he have any recollection of any alterations to the Guaranty [Ex. B, ¶¶ 3, 40];

   c. Pursuant to the Note and Guaranty, Metro and Baker submitted to Indiana jurisdiction and venue in Marion County, Indiana [Ex. B, ¶¶ 39-40];

   d. At no time did Metro or Baker contest execution of the Note or Guaranty or move

4

      to change venue and the Note and Guaranty are presumed under [Indiana Trial Rule] 9.2(D) and establish venue in Marion County" with respect to any claims and/or allegations arising from or relating to the Note or Guaranty [Ex. B, ¶¶ 3, 40];

e. Pursuant to the terms of the Note, AFC provided to Metro, and Metro received, financing enabling Metro to purchase vehicles for sale in the course of its business [Ex. B, ¶ 2];

f. Pursuant to paragraph 3.0 of the Note, AFC holds fully perfected security interests in all financed vehicles and their corresponding titles [Ex. B, ¶ 6];

g. Metro breached the unambiguous terms of the Note by failing to make payment to AFC, when due, constituting an event of default under paragraph 7.1 of the Note [Ex. B, ¶¶ 18, 43];

h. Purchase Money Inventory was sold by Metro and the proceeds therefrom were not held in trust for AFC as required by the Note and at no time were such proceeds remitted to AFC [Ex. B, ¶¶ 22-24, 49, 52];

i. Pursuant to paragraph 8.1 of the Note, upon an event of default, AFC may "(a) notify any and all creditors, account debtors or obligors of [Metro's] default and/or of the security interest of AFC in [Metro's] accounts and . . . (f) take possession of the Collateral and sell the same" [Ex. B, ¶ 11];

j. AFC's repossession of vehicles from Metro "was conducted in a commercially reasonable fashion" [Ex. B, ¶ 60];

k. Each vehicle repossessed from Metro "was subjected to competitive bidding at auction and sold for market value" [Ex. B, ¶ 63]; and,

l. AFC's testimony "concerning the conduct of the auctions and the commercial reasonableness of the sales [is] persuasive. Accordingly . . . both auctions utilized for the sale of the Repossessed Vehicles comport with relevant industry standards" [Ex. B, ¶ 65].

These fully litigated findings preclude the claims alleged against AFC in the Second Amended Complaint. Baker admits raising the jurisdictional defense in the Indiana litigation,[3] [Response,

---

[3] At no time has Metro challenged its execution of the Note containing the mandatory Indiana jurisdiction and venue for its claims.

5

pp. 3, 4, 9], and the Indiana Court's explicit rejection of his contradicted testimony concerning the allegedly modified guaranty further bars his current claims.

Finally, Plaintiffs' contentions regarding Southern and AUTOTEC as "integral to Plaintiffs' theories of recovery" and that "the absence of jurisdiction over AUTOTEC and Southern exempts these claims from the [compulsory counterclaim] mandate" [Response, p. 3] and the dictates of *res judicata* are both logical and legal fallacies. Neither AUTOTEC nor Southern are parties to the Second Amended Complaint[4] and their inclusion, or lack thereof, cannot serve as an end-run around jurisdiction or the dictates of *res judicata*. Indeed, Plaintiffs found such parties so "integral" to their claims that they were voluntarily dismissed prior to the filing of the Second Amended Complaint.[5]

Even assuming Southern and/or AUTOTEC remained parties to this case, "[t]he modern rule [of collateral estoppel] has dispensed with the rigid requirements of mutuality and identity of parties. Instead, the prime consideration is whether the party against whom the prior judgment is pled had a full and fair opportunity to litigate the issue[.]" *Sullivan v. American Casualty Co.*, 605 N.E.2d 134, 138 (Ind. 1992) (citations omitted); *see also Blonder-Tongue Labs. v. University of Illinois Found.*, 402 U.S. 313, 325 (1972) (holding "the achievement of substantial

---

[4] Only one (1) count of the Second Amended Complaint against AFC references AUTOTEC.

[5] Incredibly, Plaintiffs assert they could not name AUTOTEC and Southern to the Indiana Litigation because they may not have been amenable to Indiana jurisdiction. This red herring argument (as they are not parties to the Second Amended Complaint) is wholly unpersuasive when Plaintiffs have not shown those parties would have been subject to Rhode Island jurisdiction either, and becomes shameless in the face of Plaintiffs naming Mannheim and ADESA to this suit. Put otherwise, Plaintiffs' irrelevant (and clearly contrived) fidelity to jurisdictional mandates is far from determinative on the issue of *res judicata* when every claim asserted by Plaintiffs against AFC could, and indeed must, have been brought in Indiana.

justice rather than symmetry is the measure of the fairness of the rules of *res judicata.*") (emphasis in original).

At all times prior to the Final Judgment, Plaintiffs had the relevant facts concerning their claims and possessed "every opportunity to fully litigate [the] various claims against [AFC] in an earlier suit *and made the strategic choice not to do so.*" *Airframe*, 601 F.3d at 14 (emphasis added). By Plaintiffs' own admission, "the [Final Judgment] ... is related to an action currently pending" in this Court. [See, Ex. "C"]. In such admission Plaintiffs tacitly concede the Second Amended Complaint is an impermissible attempt to circumvent the rulings of the Indiana Litigation and the relitigate the Final Judgment. *Res judicata* precludes arguments advanced by the "state court loser", barring them "from relitigating claims that *could have been made* in an earlier suit, not just claims that *were actually made*" and prohibiting "a second chance at a different outcome by bringing related claims against closely related defendants at a later date."[6]

---

[6] Plaintiffs' continued attempts to dispute Indiana jurisdiction over Baker and assert facts disproven by the Final Judgment [See, Ex. B., ¶ 40] are prohibited by the *Rooker-Feldman* doctrine, which "stands for the principle that federal district courts lack jurisdiction to hear cases seeking review of state court judgments." *Smith v. Asquith*, 2020 U.S. Dist. LEXIS 3652 *3 FN1; 2020 WL 65089 (D.R.I. 2020), citing, *Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923): *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983). By filing the Second Amended Complaint after entry of the Final Judgment Plaintiffs engage in the same "magical thinking [that] a plaintiff [can] escape the *Rooker-Feldman* bar through the simple expedient of introducing a new legal theory in the federal forum that was not broached in the state courts." *Klimowicz v. Deutsche Bank Nat'l Trust Co.*, 907 F.3d 61, 65 (1st Cir. 2018).

As shown by Exhibit "C", Plaintiffs admit their improper attempt to use this suit as an impermissible collateral attack on the Judgment, as they have listed it as reason to object to the registration of the Final Judgment in Rhode Island. Asking a Federal Court to review the propriety of a State Court judgment is precisely what the *Rooker-Feldman* doctrine prohibits. Despite the window dressing of still otherwise meritless claims asserted by Plaintiffs, seeking an overruling of the Final Judgment is exactly what Plaintiffs are asking this Court to do by filing the Second Amended Complaint after entry of the Final Judgment explicitly rejecting the underlying facts supporting Plaintiff's claims. [Compare, Second Amended Complaint ¶¶ 38-45, 48-50 to Ex. B., ¶¶ 52-60, 62-65].

*Id.* (emphasis added). The Second Amended Complaint must be dismissed against AFC on principles of *res judicata* and pursuant to the *Rooker-Feldman* doctrine.

**C.     The Allegations of the Second Amended Complaint Fail to State Claims against AFC upon which Relief can be Granted.**

Even if this Court ignores the Final Judgment, the dictates of *res judicata*, and the forum and venue provisions of the parties' agreements requiring suit be brought in Indiana, the Second Amended Complaint still fails to state claims upon which relief can be granted and must be dismissed as a matter of law. The vague and speculative allegations of Count I not only fail to rise to the heightened pleading standard required for fraud required under Indiana law, but nearly all of the allegations have been conclusively disproven by the Final Judgment. [Ex. B ¶¶ 40, 58-60 (finding the Baker Guaranty was not enforceably altered, the repossession by AFC was proper and commercially reasonable, and the waiver of impairment of collateral in the parties' agreements was enforceable)].

Count II (tortious interference) and Count III (conspiracy) similarly fail. Plaintiffs' continued insistence on the propriety of Rhode Island's jurisdiction and statute of limitations represents another desperate attempt to relitigate that which has been conclusively determined by the Final Judgment. [Ex. B ¶¶ 39-40]. Even if these interrelated claims were timely brought,[7]

---

[7] The Motion moved to dismiss Counts II, III, IV and V under Indiana's two (2) year statute of limitations for tort claims. The Response does not address or challenge the Rhode Island Supreme Court analysis cited in AFC's Motion concerning which statute of limitations applies. Instead Plaintiffs glibly cite *Morel v. Daimler-Chrysler AG*, 565 F.3d 20 (1st. Cir. 2009) and *Spain v. Haseotes,* 1997 U.S. App. LEXIS 13624 (1st. Cir. 1997) for the generally accepted proposition that "[a] statute of limitations is procedural and therefore governed by the forum state." [Response, p. 15].

*Morel* concerned tolling of a statute of limitations for parties not named to the original complaint under relation-back doctrine, and settled a conflict between FRCP 15 and Puerto Rico procedural law on that issue. 565 F.3rd at 23-26. *Haseotes* is even less helpful to Plaintiffs as the 1st Circuit

which they were not, they are nevertheless precluded by the Note. The Final Judgment recognized, and the Note provides, that upon an event of default AFC is entitled to "notify any and all creditors, account debtors or obligors of [Plaintiffs'] default . . . and direct payment of same to [AFC]" and to "take possession of the Collateral[.]" [Ex. A, § 8.1; Ex. B, ¶ 11]. Plaintiffs admit default under the Note; accordingly, the allegedly nefarious conduct by AFC was merely an exercise of its contractual and Article 9 rights. Because "the existence of a legitimate reason for the defendant's actions provides the necessary justification to avoid liability" Counts II and III must be dismissed. *Morgan Asset Holding Corp. v. CoBank, ACB*, 736 N.E.2d 1268, 1272 (Ind. Ct. App. 2000).

The claims raised in Count IV (negligence) and Count VI (unjust enrichment), have, yet again, been explicitly conclusively adjudicated by the Final Judgment. Although alleging AFC's "hapless repossession and mishandling of the collateral was commercially unreasonable," [Response, p. 16], the Final Judgment explicitly determined AFC's repossession "was conducted in a commercially reasonable fashion" and the vehicle sales by AFC were commercially reasonable. [Ex. B., ¶¶ 60-65]. Moreover, Plaintiffs acknowledge execution of the Note and Guaranty and "[t]he existence of an express contract precludes a claim [in tort] because ... a plaintiff may not pursue an equitable remedy when there is one at law." *Coppolillo v. Cort*, 947

---

recognized "the federal district court must apply the forum state's choice-of-law rules." 1997 U.S. App. LEXIS 13624 at *1.

As noted in AFC's Motion, Rhode Island's choice-of-law rules apply a policy weighing test to consider whether another State's statute of limitations controls. *Harodite v. Warren Elec. Co.*, 24 A.3d 514, 534 (R.I. 2011). Plaintiffs' Response completely ignores this binding precedent, likely recognizing the *Harodite* factors strongly weigh in favor of applying Indiana's two-year statute (or Connecticut's, where the result would be the same): [*See,* Indiana Code § 34-11-2-4; Conn. Gen. Stat. Ann. § 52-584]. All of the conduct by AFC alleged by Plaintiffs occurred in April of 2018, more than two (2) years prior to Plaintiffs' initial complaint filed in this matter in August of 2020, and Counts II, III, IV and V are therefore time barred.

N.E.2d 994, 998 (Ind. Ct. App. 2011).  Relief is further precluded by the Plaintiffs' waiver of "all defenses based upon . . . impairment of collateral" [Ex. B, ¶ 59] and by application of the Economic Loss doctrine, which prohibits liability "under a tort theory for any purely economic loss caused by ... negligence."  *CW Farms, LLC v. Egg Innovations, LLC*, 169 N.E.3d 874, 881 (Ind. Ct. App. 2021). Counts IV and VI fail to state claims against AFC and must be dismissed under FRCP 12(b)(6).

Despite the unambiguous terms of the Note and the Final Judgment's pronouncements that AFC acted reasonably in exercising its rights, Count V of the Second Amended Complaint alleges an amorphous breach of the duty of good faith.  Even assuming such claim could stand alone, which it cannot under established Indiana law,[8] "a duty *owing* under the UCC must first be established."  *Brown v. Indiana Nat'l Bank*, 476 N.E.2d 888, 894 (Ind. Ct. App. 1995) (emphasis added).  Plaintiffs fail to allege "a duty independent of the duties of notification or commercially reasonable disposition of the collateral [they] claim[] were owed [them] by [AFC]" which were specifically found to have been met by the Final Judgment.  *Id*.  The Second Amended Complaint fails to identify any conduct by AFC that was not permitted by the Note or required under the Uniform Commercial Code, all of which conduct was also found permissible by the Indiana court in the Final Judgment. [Ex. B].

Finally, Plaintiffs' "lender liability" claim in Count VII is just a repackaging of its breach claims and defenses previously adjudicated by the Final Judgment.  [Response, p. 17].  Even if Plaintiffs could seek review of the Final Judgment by this Court (which they cannot due both to

---

[8] "[B]reach of good faith cannot be maintained as an independent cause of action." *Best Distrib. Co. v. Seyfert Foods*, 714 N.E.2d 1196, 1205 (Ind. Ct. App. 1999); *See also Pain Ctr. of SE Ind. LLC v. Origin Healthcare Sols. LLC*, 893 F.3d 454, 462 (7th Cir. 2018) ("this section of the UCC 'does not support an independent cause of action for failure to perform or enforce in good faith.'") (applying Indiana law).

principles of *res judicata* and the *Rooker-Feldman* Doctrine), no actionable claim exists. The Indiana Lender Liability Act (I.C. § 26-2-9-1, *et seq*.) serves not as a separate claim of action, but rather a statute of frauds limiting actions and defenses to the terms of any written document executed by the statutorily defined creditor. *See, e.g., Sees v. Bank One, Ind., N.A.*, 839 N.E.2d 154 (Ind. 2005). AFC is not a "creditor" within the meaning of the Act (I.C. § 26-2-9-2) and, even if it met the statutory definition, any claim or defense is precluded by the express terms of the Note and Guaranty which provide for waiver of "any defenses . . . including but not limited to . . . lender liability." [Ex. A, p. 1]. Count VII fails to state a claim against AFC upon which relief can be granted and should be dismissed.

### III.  Conclusion

Plaintiffs' cannot obtain any relief on the Second Amended Complaint as against AFC due to *res judicata*, the enforceable terms of the Note and Guaranty (as found by the Indiana Court), and clear dictates of well-established Indiana law. To the extent any of the claims asserted against AFC were ever viable, they must have been brought as counterclaims in the Indiana Litigation and/or are now barred by the applicable statutes of limitation. The claims asserted by Plaintiffs are the same issues and defenses (or rely on the same alleged facts) that were fully litigated and rejected by the Indiana Court, as admitted by Plaintiffs when seeking to prevent its enforcement on the grounds of this pending matter [See, Ex. "C"]. This Court cannot review the findings of the Indiana Court in the Final Judgment, but even without it Plaintiffs still fail to assert plausible claims against AFC in light of the statutes of limitation, contractual language and Indiana law. The Second Amendment Complaint as against AFC should be dismissed in accordance with FRCP 12(b)(6)

                                        Respectfully submitted,

                                        /s/ Joseph V. Cavanagh, III
                                        Joseph V. Cavanagh, III (#6907)
                                        Blish & Cavanagh, LLP
                                        30 Exchange Terrace
                                        Providence, RI 02903-1765
                                        Tel: (401) 831-8900; Fax: (401) 751-7542
                                        Email: jvc3@blishcavlaw.com

                                        /s/ Reynold T. Berry
                                        Reynold T. Berry (Ind. Atty #25482-49)
                                        Admitted Pro Hac Vice
                                        RUBIN & LEVIN, P.C.
                                        135 N. Pennsylvania St., Suite 1400
                                        Indianapolis, IN 46204
                                        (317) 634-0300 - FAX No. (317) 263-9410
                                        Email: rberry@rubin-levin.net

                                        *Attorneys for Automotive Finance Corporation d/b/a AFC*

## CERTIFICATE OF SERVICE

     I hereby certify that on February 11, 2022, a copy of the foregoing document was filed electronically and is available for viewing and downloading by counsel of record through the Court's Electronic Case Filing System.

                                        /s/ Joseph V. Cavanagh, III