**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| H. JEFFREY BAKER and CT102 LLC<br>d/b/a METRO MOTORS,<br>    Plaintiffs,<br><br>    v.<br><br>AUTOMOTIVE FINANCE<br>CORPORATION, NEXTGEAR<br>CAPITAL, INC., MANHEIM, INC.,<br>and ADESA, INC.,<br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)  C.A. No. 1:20-CV-00356-MSM-PAS<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM AND ORDER**

Mary S. McElroy, United States District Judge.

Before the Court are four motions to dismiss filed by the defendants, Automotive Financing Corporation ("AFC") (ECF No. 47), ADESA, Inc. ("ADESA") (ECF No. 48), NextGear Capital, Inc. ("NextGear") (ECF No. 49), and Manheim Marketing, Inc. ("Manheim") (ECF No. 51). Each seeks to dismiss in its entirety the Second Amended Complaint ("SAC") (ECF No. 42) filed by the plaintiffs, CT102 LLC d/b/a Metro Motors ("Metro Motors"), a Connecticut Limited Liability Company, and H. Jeffrey Baker, a resident of East Greenwich, Rhode Island. Each Motion is brought pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted, and each relies in part on forum selection clauses which preclude litigation in Rhode Island. For the following reasons, the Court concludes that the plaintiffs are bound by valid and enforceable forum selection

1

clauses provided in the plaintiffs' contracts with AFC, NextGear, Manheim. The Court also concludes there is no jurisdiction under Rule 12(b)(2) over ADESA. The Court therefore GRANTS the Motions to Dismiss (ECF Nos. 47, 48, 49, and 51) and the plaintiffs' Second Amended Complaint is DISMISSED without prejudice.[1]

## I. BACKGROUND

The plaintiffs' SAC puts forth seven counts: fraud by AFC; intentional tortious interference with contractual relations by all defendants; conspiracy to tortiously interfere with contractual relations by all defendants; negligence by AFC and NextGear; breach of the covenant of good faith and fair dealing by all defendants; unjust enrichment of AFC and NextGear; and, finally, a lender liability claim against AFC and NextGear. (ECF No. 42.) In essence, the plaintiffs claim that they were systematically excluded from the used car dealership industry and intentionally put out of business by the cooperative effort of the defendants.

The plaintiffs operated a car dealership, first as a J.D. Byrider franchise and later as Metro Motors, in Branford, Connecticut. (ECF No. 42 ¶ 1.) Metro Motors purchased and sold vehicles at auctions conducted by two of the defendants, Manheim and ADESA. *Id.* ¶14. Those purchases and sales were financed by loans from the

---

[1] In the First Circuit, "dismissals due to forum selection clauses [are] to be dismissed without prejudice so the case may be re-filed in the appropriate forum." *Claudio-De Leon v. Sistema Universitario Ana G. Mendez*, 775 F.3d 41, 49 (1st Cir. 2014) (citing cases).

remaining defendants, AFC and NextGear.[2]  *Id.* ¶ 15.  These essential used car dealership functions–financing, purchasing, and selling inventory–form the basis of the various and interconnected relationships among the parties now before the Court.

To acquire inventory, the plaintiffs sought "used automobile dealer floor financing" from NextGear and AFC.   In January 2014, the plaintiffs agreed to the terms of NextGear's Promissory Note and Security Agreement (together "NextGear Loan Agreement") and Mr. Baker executed NextGear's Individual Guaranty ("NextGear Guaranty"), personally guaranteeing the NextGear Loan Agreement.  *Id.* Then, in October 2017, the plaintiffs executed AFC's Promissory Note and Security Agreement (together "AFC Loan Agreement") and Mr. Baker signed AFC's Unconditional and Continuing Guaranty ("AFC Guaranty"), again personally guaranteeing the AFC Loan Agreement. *Id.* ¶¶ 18-19.

These dealer floor financing agreements are central to the Court's ruling on NextGear and AFC's respective Motions to Dismiss.   Both the NextGear Loan Agreement and Guaranty and the AFC Loan Agreement and Guaranty contained forum selection clauses specifying jurisdiction and venue in the state and federal courts of Indiana.  It is Mr. Baker's preliminary contention, as it must be for this

---

[2] Manheim and NextGear are both subsidiaries of Cox Enterprises, Inc. (ECF No. 42 ¶¶ 5-6.)  Manheim is a Georgia corporation with its principal place of business in Georgia.  *Id.* ¶ 6.   NextGear is a Delaware corporation with its principal place of business in Indiana.   *Id.* ¶ 7.   AFC and ADESA are subsidiaries of KAR Global and both have principal places of business in Indiana.  *Id.* ¶¶ 4, 7.  While the plaintiffs are suspicious of the defendants' shared parent companies, the plaintiffs make no argument as to invalidity of the forum selection clauses on this basis apart from vague assertions of unfairness. (ECF No. 55-1 at 13.)

Court to have jurisdiction over his claims against NextGear and AFC, that the NextGear and AFC Guaranties were altered, and that the forum selection clauses were "modified to establish Rhode Island as the applicable jurisdiction and venue" instead of Indiana. *Id.* ¶¶ 8, 21. The plaintiffs submitted copies of the modified Guaranties (ECF No. 42-1, Exhibits A and B) with the SAC. These submissions show Mr. Baker's handwritten alterations. In response, AFC and NextGear submitted unaltered versions of the Guaranties executed by Mr. Baker (ECF No. 47-2 at 17-19).[3] AFC's version reads as follows:

> BY EXECUTION OF THIS GUARANTY, THE UNDERSIGNED SUBMITS TO THE PERSONAL JURISDICTION OF THE STATE AND FEDERAL COURTS OF THE STATE OF INDIANA AND TO VENUE IN THE CIRCUIT AND SUPERIOR COURTS OF HAMILTON COUNTY, INDIANA AND MARION COUNTY, INDIANA AND IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF INDIANA. ANY ACTION INITIATED BY THE UNDERSIGNED AGAINST LENDER SHALL BE FILED AND CONDUCTED SOLELY IN SAID COURTS.

*Id.* at 18 (emphasis in original). Similarly, the NextGear Guaranty provides that

---

[3] Although Mr. Baker disputes the authenticity of documents submitted by AFC and NextGear and whether the Court can consider them in adjudicating the Motions to Dismiss, the Court finds that the unaltered Guaranties appended to the AFC and NextGear Motions to Dismiss are properly before the Court. The First Circuit has held that "[w]hen . . . a complaint's factual allegations are expressly linked to – and admittedly dependent upon – a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008) (quoting *Beddall v. State St. Bank & Tr. Co.*, 137 F.3d 12, 16-17 (1st Cir. 1998)) (internal quotations marks omitted) (alterations in original). The SAC's allegations and claims are admittedly dependent upon the AFC and NextGear contracts and the plaintiffs' challenge as to their authenticity fails. *See* pp. 15-22, *infra,* discussing res judicata.

> As evidenced by the Guarantor's signature below, Guarantor submits to the personal jurisdiction of and venue of the state and federal courts of Marion County and Hamilton County, Indiana, and agrees that any and all claims or disputes pertaining to this Guaranty, or to any matter arising out of or related to this Guaranty, initiated by Guarantor against Lender, shall be brought in the state or federal courts of Marion County or Hamilton County, Indiana.   Further, Guarantor expressly consents to the jurisdiction of and venue of the state and federal courts of Marion County or Hamilton County, Indiana, as to any legal or equitable action that may be brought in such court by Lender and waives any objection based on lack of personal jurisdiction, improper venue or forum non conveniens with respect to any such action.   Guarantor acknowledges and agrees that Lender reserves the right to initiate and prosecute any action against Guarantor in any court of competent jurisdiction and Guarantor consents to such forum as Lender may elect.

(ECF No. 49-2 at 32).  Despite the plaintiffs' protestations as to the validity of the AFC and NextGear forum selection clauses, the plaintiffs themselves readily acknowledge that they have already submitted to the jurisdiction of the state courts of Indiana in lawsuits initiated by AFC and NextGear.  (ECF No. 42 ¶ 12.)  That jurisdiction was exercised under these very same, unaltered clauses.

Indeed, AFC and NextGear seek dismissal of the claims against them based on previous litigation resulting in final judgments in the State of Indiana. (ECF No. 47-1 at 1; ECF No. 49 at 1.)  Both AFC and NextGear have provided this Court with the decisions and judgments rendered in their favor by the courts of Marion County and Hamilton County, respectively, as well as by the Court of Appeals of Indiana.  (ECF Nos. 35, 36, 37, 45, 47-3, 49-4, 49-5.)

5

The timeline of the parties' relationships is necessary for the Court's ultimate determination of AFC and NextGear's pending motions.  The decisions rendered by the Indiana state courts supply the details omitted from the SAC.[4]

### A. AFC and NextGear – Prior Indiana Litigation

AFC filed a lawsuit against CT102, LLC d/b/a Metro Motors and Herman Jeffrey Baker on December 4, 2018 "alleging indebtedness due under the terms of the [Promissory] Note, the liability of Baker under the Guaranty, and treble damages as a result of Metro's conversion of proceeds of the sale of AFC's collateral."[5]  (ECF No. 47-3 at 12.)  The Marion Superior Court entered an Order on Bench Trial on February 24, 2021, and a corresponding Final Judgment on April 23, 2021, in favor of AFC after finding that Metro Motors and Mr. Baker had defaulted on the Note and that Metro Motors and Mr. Baker were jointly and severally indebted to AFC for $202,663.12 plus interest.  (ECF No. 47-3 at 20.)  In reaching its decision, the Marion Superior

---

[4] The plaintiffs argue that this Court may not properly consider the Indiana state court decisions because they fall outside the universe of documents appropriate for review at the motion to dismiss stage and urge conversion of these motions to dismiss to motions for summary judgment, allowing the plaintiffs an opportunity to conduct discovery.  (ECF No. 56-1 at 10-11.)  The plaintiffs' arguments must fail.  "A court may consider matters of public record in resolving a Rule 12(b)(6) motion to dismiss." *Giragosian v. Ryan*, 547 F.3d 59, 66 (1st Cir. 2008) (citing *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 15-16 (1st Cir. 2003)).  "Matters of public record ordinarily include 'documents from prior state court adjudications.'" *Id.* (quoting *Boateng v. InterAmerican Univ. Inc.*, 210 F.3d 56, 60 (1st Cir. 2000)).  As the Court may consider the Indiana state courts' decisions in deciding this Motion to Dismiss, conversion to summary judgment is unnecessary.

[5] The matter is captioned Automotive Finance Corporation v. CT102, LLC and Herman Jeffrey Baker, Cause No. 49D06-1812-CC-047850 in the Marion Superior Court.

Court considered the AFC Loan Agreement and Guaranty, including the forum selection clause which the plaintiffs now contest.  The court explained that Mr. Baker "submitted his Altered Guaranty at trial . . . but it was not part of the pleadings and the disputed alteration is not initialed by Plaintiff's witness" who "testified that he has no recollection of any alterations to the document" which he notarized.  *Id.* at 12. Ultimately, the Marion County Court found the AFC Guaranty, as originally drafted, valid and enforceable and that it established jurisdiction in Indiana.  *Id.*    On November 2, 2021, the Court of Appeals of Indiana issued a decision affirming in part and reversing and remanding as to the damages calculations, with instructions to reduce by $78,996.46 the award amount which had been "double-counted" by the trial court. (ECF No. 45-1 at 5-6.)  The trial court's findings and conclusions were otherwise undisturbed.

NextGear, much like AFC, sued Metro Motors and Mr. Baker, alleging breach of contract in the Hamilton Circuit Court in Hamilton County, Indiana.[6]  The trajectory of the NextGear litigation followed a now familiar path.  NextGear's Indiana lawsuit involved the same Loan Agreement and Guaranty between NextGear, Metro Motors, and Mr. Baker that are involved here.  The plaintiffs do not dispute this fact, except to the extent that Mr. Baker suggests that he modified the NextGear Loan Agreement's forum selection clause, just as he had modified the AFC Loan Agreement.  Like the Marion County Superior Court, the Hamilton Circuit

---

[6] The matter is captioned NextGear Capital v. CT102, LLC and Herman Jeffrey Baker, Cause No. 29-C01-1809-CC-008218 in the Hamilton Circuit Court Civil Division. (ECF No. 49-4 at 2.)

Court reviewed the contractual language governing the relationship between NextGear, Metro Motors, and Mr. Baker. (ECF No. 49-4 at 3.) When confronted with competing versions of the "[t]he jurisdiction, venue, and choice of laws provisions of the Note and Guaranty," the Hamilton Circuit Court concluded that the unmodified clause presented by NextGear was valid and enforceable. *Id.* at 4. Mr. Baker and Metro Motors appealed. The single issue before the Indiana Court of Appeals was "whether the trial court improvidently granted summary judgment because there is a genuine issue of material fact as to the appropriate amount of damages." (ECF No. 49-5 at 4.) The case was remanded for a trial as to damages only, with the appellate court noting that Mr. Baker and Metro Motors "initially raised defenses such as improper venue and falsification of a document but has abandoned those contentions." *Id.* at 5. On October 15, 2020, following remand, the Hamilton Circuit Court issued an Order on Trial. (ECF No. 49-6.) That court concluded, for a second time, that "[t]he Note and the Guaranty grant the courts of Hamilton County, Indiana jurisdiction over all matters arising between the parties under either the Note or the Guaranty." *Id.* at 3.

### B. Manheim

Manheim, like AFC and NextGear, bases its Motion to Dismiss in part on a forum selection clause included in its contract with the plaintiffs. The plaintiffs allege that Manheim "had [an] actual or implied contract[] with the Plaintiff Metro Motors" (ECF No. 42) but make no allegations about the terms of such a contract. Manheim, however, has submitted a contract which it asserts memorializes the terms

agreed to by the plaintiffs.  (ECF No. 51-2 at 8.)   According to Manheim, customers – like the plaintiffs – seeking to participate in its auctions are required to review the Manheim Terms and Conditions when logging in to their online account and must affirmatively accept the Terms and Conditions before proceeding to buy or sell vehicles at auction.  (ECF No. 51-1 at 3.)  In its Motion to Dismiss, Manheim argues that the plaintiff's acceptance of a forum selection clause in the Terms and Conditions makes that clause part of its contract with the plaintiffs.[7]  (ECF No. 51-1.)  Manheim has provided a copy of its Terms and Conditions ("Manheim Terms and Conditions") which provides, in relevant part:

> These terms and conditions shall be governed by the internal laws of the State of Georgia (U.S.A.), where Manheim maintains its headquarters, and without regard to Georgia's internal conflicts of law analysis.  In the event that any claim or dispute between Manheim and you is not arbitrated under Section 26 hereof, you agree that non-exclusive jurisdiction and venue for such claims and disputes shall exist in the federal and state courts located in Fulton County, Georgia.   You further agree and acknowledge that you may not sue Manheim in any jurisdiction or venue except Fulton County, Georgia.

(ECF No. 51-2 at 16.)   Manheim has also provided a copy of the corporate log, supported by the affidavit of its Director of Product Management, Veronica Tai, showing Metro Motors' acceptance of the Manheim Contract through its representative, Mr. Baker, on November 24, 2015, at 12:32:48 AM.  *Id.* at 2, 6.

---

[7] Manheim alternatively seeks a stay pending mandatory arbitration pursuant to its contract with the plaintiffs.  Because the Court finds that the forum selection clause binds parties, however, it need not analyze the arbitrability of the plaintiffs' claims.

The plaintiffs challenge the contract submitted by Manheim as (1) unconscionable and violative of public policy; and (2) because its execution is disputed. (ECF No. 55-1 at 6.) The plaintiffs combined their opposition to NextGear and Manheim's Motions to Dismiss.[8]  This consolidation is based on NextGear and Manheim's shared parent company as well as the plaintiffs' theory that NextGear and Manheim are "colluding affiliates." *Id.* at 13.   The plaintiffs argue that it is unreasonable and unjust to enforce the Manheim Contract forum selection clause because it would require the plaintiffs to litigate in two separate fora resulting in "piecemeal" litigation, because the NextGear forum selection clause requires litigation in Indiana and the Manheim forum selection clause requires litigation in Georgia.[9]  *Id.*  As to his acceptance of Manheim's Terms and Conditions, Mr. Baker attests that he has "no recollection or record of electronically accepting [the terms and conditions]" and that "[t]he time stamp of 12:32 am is outside [his] work hours and internet access." (ECF No. 55-2 at 2.)  Mr. Baker also attests that the Manheim record for Metro Motors' acceptance of its Terms and Conditions "misidentified" the dealership, which as of November 24, 2015, was doing business as J.D. Byrider of

---

[8]  Besides simultaneously addressing two defendants' motions to dismiss, the plaintiffs also appear to have devised a combined argument challenging the validity and enforceability of both the Manheim Contract's forum selection clause and arbitration clause, another basis for Manheim's Motion to Dismiss, as well as the NextGear Guaranty's forum selection clause.  The Court attempts to parse these arguments as best it can to decipher the plaintiffs' meaning.

[9] The Court notes, however, that the plaintiffs' own efforts in this forum, if successful, could lead to piecemeal litigation given the Indiana state courts' determinations of the validity of the AFC and NextGear forum selection clauses. See pp. 15-20 *infra*, discussing prior litigation in Indiana.

New Haven, not Metro Motors. *Id.* at 3. Finally, Mr. Baker suggests, without explanation or reason, that the "click" system on Manheim's website and its recordkeeping "must be investigated." (ECF No. 55-1 at 19.) These assertions form the plaintiffs' opposition to Manheim's Motion to Dismiss and the argument that the Court should convert Manheim's Motion to one for summary judgment and permit the plaintiffs an opportunity to engage in discovery. *Id.*

### C. ADESA

Lastly, the plaintiffs have asserted three counts against ADESA: intentional tortious interference with contractual relations; conspiracy to tortiously interfere with contractual relations; and breach of the duty of good faith and fair dealing. ADESA has moved to dismiss these claims under both Rule 12(b)(2) for lack of personal jurisdiction and Rule 12(b)(6) for failure to state a claim for which relief may be granted.

ADESA challenges jurisdiction because it conducts no business in Rhode Island, has no business license in Rhode Island, and is not registered to do business in Rhode Island. (ECF No. 48-1 at 4-5.) ADESA asserts that it owns no property and maintains no business address or bank accounts in the state. *Id.* In response, the plaintiffs contend that ADESA has marketed its services to Rhode Island car dealerships and contacted those dealers by phone, by email, and in person to complete vehicle purchases and sales at auction. (ECF No. 56-1 at 13.) Mr. Baker supports these assertions with an affidavit in which he identifies the various Rhode Island dealerships with which ADESA has contact. (ECF No. 56-2 at 2.) Mr. Baker alleges

that four Rhode Island car dealerships have used ADESA's services and four Rhode Island car dealerships buy and sell vehicles at ADESA's auctions. *Id.* ADESA challenges these assertions as failing to establish the level of contact necessary to render it "at home" in Rhode Island and therefore insufficient for the exercise of general jurisdiction.

In support of its Rule 12(b)(6) argument, ADESA submitted a copy of the ADESA and OPENLANE Terms and Conditions ("ADESA Contract") executed by Mr. Baker as owner of CT102, LLC and dated February 18, 2014. (ECF No. 48-2.)[10] The ADESA Contract provides, in relevant part:

> These Terms and Conditions, and any and all agreements or authorizations executed by Customer, Authorized Representative, or Auction Company in connection herewith shall be governed by and interpreted in accordance with the substantive laws of the State of Indiana without resort to principles of conflicts of law. By execution of these Terms and Conditions, Customer submits to the personal exclusive jurisdiction of the courts of the State of Indiana and to venue in the Circuit and Superior Courts of Marion County, Indiana and the federal courts of the United States, sitting in Indiana for the adjudication of any matters arising under or in connection with these Terms and Conditions and Auction Rules. Any action initiated by Customer against Auction Company relating to these Terms and Conditions shall be filed and conducted in said Courts.

*Id.* at 12.

This contract, like the AFC and NextGear contracts, includes a forum selection clause specifying jurisdiction and venue in the state and federal courts of Indiana.

---

[10] Unlike the AFC and NextGear contracts, a copy of the ADESA contract was not appended to the SAC.

The plaintiffs offer no rejoinder to the language of the forum selection clause in the ADESA contract apart from Mr. Baker's sworn statement that he has "no record or recollection of agreeing to the ADESA terms and conditions." (ECF No. 56-2 at 1.) Instead, the plaintiffs double down on the argument that Rhode Island may exercise general jurisdiction over ADESA given its "multiple sufficient contacts with Rhode Island." (ECF No. 56-1 at 4.)

## II. MOTION TO DISMISS STANDARD

On a motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007). To survive a motion to dismiss, the complaint must state a claim "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The relevant question . . . in assessing plausibility is not whether the complaint makes any particular factual allegations but, rather, whether 'the complaint warrant[s] dismissal because it failed *in toto* to render plaintiffs' entitlement to relief plausible'." *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 55 (1st Cir. 2013) (quoting *Twombly*, 550 U.S. at 569 n.14) (alteration in original).

"In this Circuit, 'we treat a motion to dismiss based on a forum selection clause as a motion alleging the failure to state a claim for which relief may be granted under Rule 12(b)(6).'" *Claudio-DeLeon v. Sistema Universitario Ana G. Mendez*, 775 F.3d 41, 46 (1st Cir. 2014) (quoting *Rivera v. Centro Medico de Turabo, Inc.*, 575 F.3d 10, 15 (1st Cir. 2009)). *See also* e.g., *Silva v. Encyclopedia Britannica Inc.*, 239 F.3d 385,

387 (1st Cir. 2001).  The Court "may consider 'documents the authenticity of which are not disputed by the parties,' 'documents central to the plaintiffs' claim,' and 'documents sufficiently referred to in the complaint.'"  *Id.* (quoting *Rivera*, 575 F.3d at 15).

## III. DISCUSSION

There are four forum selection clauses relevant to this litigation.  AFC, NextGear and ADESA all maintain the plaintiffs are contractually bound to litigate in Indiana.  Manheim contends that any litigation against it is proper only in Georgia.  Enforcement of these forum selection clauses would lead to dismissal without prejudice.  *Claudio-De Leon*, 775 F.3d at 49 (citing cases).[11]

There are two steps to an analysis of a forum selection clause.  First, the Court must determine whether the clause is valid and enforceable under the contract.  Second, it must decide whether it is reasonable to apply it in the context of the pending case.

---

[11] The defendants maintain separate, additional grounds for dismissal including the following:  AFC and NextGear argue that the plaintiffs are barred by res judicata from litigating these claims against them because they involve issues previously decided against Metro Motors and Mr. Baker in Indiana, Manheim argues that the plaintiffs are bound to engage in mandatory arbitration,  and ADESA challenges this Court's jurisdiction because ADESA lacks sufficient minimum contacts with the State of Rhode Island. The Court does not decide at this time whether res judicata bars litigation on the merits.  Because it finds that the litigation against AFC and NextGear was inappropriately brought in Rhode Island and must be dismissed, it is not in the interest of the parties or the Court to go further down the road.  If the plaintiffs choose to file new litigation in Indiana in compliance with the proper forum determination, the Indiana state courts would decide whether res judicata bars the plaintiff from re-litigating there, applying Indiana law.

## A. Validity and Enforceability of AFC and NextGear Forum Selection Clauses

AFC and NextGear maintain that the Indiana courts have already found valid and enforceable the original, unaltered Indiana forum selection clauses in each guaranty executed by Mr. Baker.  Mr. Baker maintains that he altered the clauses in both the AFC and NextGear contracts to specify Rhode Island as the appropriate forum, and that the modified forum clauses should be enforced.  He claims the NextGear and AFC Guaranties were "expressly modified to establish Rhode Island as the applicable jurisdiction and venue."  (ECF No. 42 ¶¶ 12, 21.)  Mr. Baker presented to the Indiana state courts the very same modified forum selection clauses that he now presents to this Court.

During the NextGear and AFC Indiana lawsuits, therefore, the Hamilton Circuit Court and Marion Superior Court, respectively, had occasion to review the contractual language included in the NextGear and AFC Guaranties, as well as Mr. Baker's altered versions.  (ECF Nos. 47-3 at 6; 49-4 at 3.)

For both the AFC and NextGear forum selection clauses, the Indiana state courts, as affirmed by the Indiana Court of Appeals, held the original, unaltered clauses valid and enforceable.[12]   Those determinations bind the plaintiffs in this Court as well.  "The Full Faith and Credit Act, 28 U.S.C. § 1738 . . . requires the

---

[12] The Court notes that Indiana has adopted the Supreme Court's three-part inquiry for assessing enforceability of a forum selection clause.  *Horner v. Tilton*, 650 N.E.2d 759, 763 (Ind. Ct. App. 1995) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972)) (identifying three elements that must be satisfied to determine enforceability: "justness, reasonableness, and freedom of negotiation.")

federal court to 'give the same preclusive effect to a state-court judgment as another court of that State would give.'" *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005) (quoting *Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518, 523 (1986)) and citing *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 373 (1996) and *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380-81 (1985). In Indiana, "[t]he doctrine of *res judicata*[13] bars the litigation of a claim after a final judgment has been rendered in a prior action involving the same claim between the same parties or their privies." *MicroVote General Corp. v. Indiana Election Com'n*, 924 N.E.2d 184, 191 (Ind. Ct. App. 2010) (citing *Small v. Centocor, Inc.*, 731 N.E.2d 22, 26 (Ind. Ct. App. 2000)). To avoid "repetitive litigation of the same dispute," the Indiana state courts preclude claims when four requirements are satisfied:

---

[13] The plaintiffs oppose the application of res judicata in response to AFC and NextGear's Motions to Dismiss. The gist of the plaintiffs' argument is that the Indiana lawsuits have no preclusive effect on the case now before the Court due to a lack of identity between parties to the lawsuits because two entities, AUTOTEC, LLC and Southern Auto Sales, Inc., "were integral to the Plaintiffs' theories of recovery" and were not susceptible to service in the Indiana lawsuits and so "there is no identity of claims and no identity of parties between the Indiana litigations and this Rhode Island dispute . . . ." (ECF Nos. 55-1 at 3; 56-1 at 3.) As it stands, however, AUTOTEC, LLC and Southern Auto Sales, Inc. were voluntarily dismissed from this case *before* the plaintiffs *filed* the SAC. That leaves AFC, NextGear, Manheim, and ADESA. The plaintiffs assert that the claims made here could not have been made in Indiana, thereby defeating claim preclusion, because "Indian would not likely have jurisdiction over . . . Manheim . . . ." (ECF No. 55-1 at 17.) Without Manheim, the plaintiffs suggest that "[j]oinder of all necessary parties for complete relief might not have been feasible." *Id.* As already noted, the merits of the plaintiffs' claims are not reached by this decision. Instead, this Court's concern is whether the plaintiffs are bound by AFC and NextGear's original forum selection clauses. Manheim's susceptibility to jurisdiction in Indiana is not a factor in that determination.

> 1) the former judgment must have been rendered by a court of competent jurisdiction; 2) the former judgment must have been rendered on the merits; 3) the matter now in issue was, or could have been, determined in the prior action; and 4) the controversy adjudicated must have been between the parties to the present suit or their privies.

*Id.* (citing *Small*, 731 N.E.2d at 26).

First, this Court is satisfied that the Marion County Superior Court, Hamilton County Circuit Court, and the Court of Appeals of Indiana, were courts of competent jurisdiction. According to the Court of Appeals of Indiana, "[a] court of 'competent jurisdiction' is any court which has jurisdiction over the defendant (personal jurisdiction), jurisdiction over the particular case, and jurisdiction over the subject matter of the dispute, and is thus competent to render a binding judgment in the case." *George S. May Int'l Co. v. King*, 629 N.E.2d 257, 262 (Ind. Ct. App. 1994) (citing *U.S. v. Morton*, 467 U.S. 822, 828 (1984)). In both the previous NextGear and AFC lawsuits, the state courts, at both the trial and appellate level, had occasion to assess jurisdiction over Metro Motors and Mr. Baker. Consideration of the AFC Guaranty by the Marion County Superior Court and the NextGear Guaranty by the Hamilton County Circuit Court, as well as consideration of the modified guaranties presented by Mr. Baker in both cases, led to the courts' respective determinations of valid and enforceable forum selection clauses submitting Metro Motors and Mr. Baker to the jurisdiction of the Indiana state courts. These determinations were undisturbed by the Court of Appeals of Indiana.

As to the second element required for application of res judicata, the AFC and NextGear lawsuits ended in final judgments on the merits. Under Indiana's Rule of

17

Trial Procedure 54, "'[j]udgment', as used in these rules includes a decree and any order from which an appeal lies." Ind. R. Trial P. 54. The plaintiffs dispute the existence of a final judgment on the merits because "[t]he Indiana litigation is not identical as to parties and claims raised here," "the merits of [such claims] have not been determined by any jurisdiction," and therefore that "the claims in the SAC were not adjudicated in Indiana." (ECF Nos. 55-1 at 9; 56-1 at 11.) The Court disagrees. The plaintiffs seemingly ignore the fact that "[t]he doctrine of res judicata consists of two distinct components, claim preclusion and issue preclusion." *Perry v. Gulf Stream Coach, Inc.*, 871 N.E.2d 1038, 1048 (Ind. Ct. App. 2007) (citing *Dawson v. Estate of Ott*, 796 N.E.2d 1190, 1195 (Ind. Ct. App. 2003)). "[I]ssue preclusion 'applies where the causes of action are not the same, but where some fact or question has been determined and adjudicated in the former suit, and the same fact or question is again put in issue in a subsequent suit between the same parties.'" *Id.* (quoting *Peterson v. Culver Educ. Found.*, 402 N.Ed.2d 448, 460 (Ind. Ct. App. 1980)).

The issues of validity and enforceability of the forum selection clauses provided in the NextGear and AFC Guaranties "has been determined and adjudicated in the former suits." *Id.* Furthermore, Metro Motors and Mr. Baker had the opportunity to and did appeal the Indiana trial courts' decisions, but chose to do so only as to issues related to damages. In both cases, the appellate court reversed and remanded only for a recalculation of damages in the AFC lawsuit and for a trial on damages in the NextGear lawsuit. There is no question, in this Court's view, that determinations of Indiana's proper jurisdiction over AFC, NextGear, Metro Motors, and Mr. Baker –

18

based on the forum selection clauses in the AFC Guaranty and NextGear Guaranty – were already made in the context of final judgments on the merits.

The third and fourth elements of res judicata, that "the matter now at issue was, *or could have been*, determined in the prior action" and that "the controversy adjudicated in the former action was between parties to the present suit or their privies," are no doubt satisfied in this case.  *Perry*, 871 N.E.2d at 1048 (quoting *Dawson*, 796 N.E.2d at 1195) (emphasis in original).  The original NextGear and AFC forum selection clauses were found to be valid and enforceable despite Mr. Baker's arguments to the contrary.  There is no question and no dispute that Mr. Baker and Metro Motors were parties to lawsuits initiated by NextGear and AFC in Indiana, all parties now before the Court.

The Marion County Superior Court concluded that Metro Motors and Mr. Baker consented "to personal jurisdiction of the state and federal courts of the State of Indiana and to venue in the Circuit and Superior Courts of Hamilton County Indiana and Marion County, Indiana, and the United States District Court for the Southern District of Indiana." (ECF Nos. 47-2 at 18; 47-3 at 12-13.)  Moreover, "[a]ny action initiated by [Mr. Baker] against [AFC] shall be filed and conducted solely in said courts." (ECF No. 47-2 at 2.) The Hamilton County Court considered the original NextGear Guaranty as well as Mr. Baker's modifications and found that "[t]he jurisdiction, venue, and choice of law provisions of the [unaltered] Note and the Guaranty are valid and enforceable." (ECF No. 49-4 at 4.)  The plaintiffs are, therefore, precluded from litigating the validity and enforceability of the NextGear

and AFC forum selection clauses, issues that have been previously determined in state court.

Because the Court finds that the NextGear and AFC forum selection clauses are valid, the Court must next determine whether those forum selection clauses are exclusive.  Exclusive forum selection clauses are those "that contain[] clear language showing that jurisdiction is appropriate only in the designated forum." *Heckler & Koch, Inc. v. German Sport Guns GmbH*, 71 F. Supp. 3d 866, 900 (S.D. Ind. 2014) (quoting *Duggan O'Rourke, Inc. v. Intel. Off. Sys., LLC*, 2012 WL 4057215, at *2 (S.D. Ind. Sept. 14, 2012)) (internal quotation marks omitted).  In *O'Bryant v. Adams*, the Indiana Supreme Court considered a forum selection clause which provided "that suit must be brought in 'this state'."  123 N.E.3d 689, 693 (Ind. 2019).  There, the court held, simply, that the clause "requires O'Bryant to bring suit, if at all, in the specified forum."  *Id.*  Here, the AFC and NextGear Guaranties contain similarly exclusive language.  Lawsuits brought against AFC "shall be filed and conducted solely in said [Indiana] courts."  Similarly, lawsuits initiated against NextGear "shall be brought in the state or federal courts of Marion County or Hamilton County, Indiana."  These clauses use compulsory language and identify the designated jurisdiction and venue.  The Court concludes that the NextGear and AFC forum selection clauses are mandatory.

Turning to the plaintiffs' claims, the Court finds that they readily fall within the broad scopes of the Next Gear and AFC forum selections clauses.  The AFC Guaranty provides, in relevant part: "ANY ACTION INITIATED BY THE

UNDERSIGNED AGAINST LENDER SHALL BE FILED AND CONDUCTED
SOLELY IN SAID COURTS." (ECF No. 47-2 at 18) (emphasis in original).  The
plaintiffs' claims against AFC in the SAC are easily categorized as "any action"
against AFC.  The NextGear language is similarly comprehensive and far-reaching.
(ECF No. 49-2 at ) ("any and all claims or disputes pertaining to this Guaranty, or to
any matter arising out of or related to this Guaranty . . . ").  The plaintiffs' claims
against NextGear relate to (1) plaintiffs' credit status, (2) vehicle sale proceeds, (3)
vehicle title, (4) repossession, and (5) breach of contract.  (ECF No. 42.)  There is no
question in the Court's estimation that the claims asserted against NextGear pertain
to the Guaranty or, at the very least, arise out of or relate to the Guaranty of the
NextGear Loan Agreement for the plaintiffs' dealership financing.

As for the plaintiffs' claims sounding in tort and not in contract, the Court is
satisfied that they are contemplated by both AFC and NextGear's forum selection
clauses.  The Court of Appeals of Indiana has held that forum selection clauses cover
both contract and tort claims.  *Dexter Axle Co. v. Baan USA, Inc.*, 833 N.E.2d 43, 51
(Ind. Ct. App. 2005), overruled on other grounds by *O'Bryant*, 123 N.Ed.3d 689 (Ind.
2019).  A plaintiff cannot "defeat a forum-selection clause by its choice of provisions
to sue on, of legal theories to press, and of defendants to name in the suit" because
"[i]f this were true, such clauses would be empty." *Id.* (quoting *Am. Patriot Ins.
Agency, Inc. v. Mut. Risk Mgmt., Ltd.*, 364 F.3d 884, 888 (7th Cir. 2004)).

The Court finds that the NextGear and AFC Guaranties contain valid mandatory forum selection clauses.  The Court therefore GRANTS NextGear and AFC's Motions to Dismiss (ECF Nos. 47 and 49) without prejudice.

### B. Validity and Enforceability of Manheim's Click-Wrap Terms and Conditions

Manheim seeks dismissal based on the forum selection clause in its contract with the plaintiffs.  Manheim asserts that its Terms and Conditions are properly before the Court on a motion to dismiss because the plaintiffs have already acknowledged that an "implied or actual contract[]" existed between the plaintiffs and, as a result, the Manheim Terms and Conditions have been sufficiently referenced such that they may be considered along with the pleadings. (ECF No. 51-1 at 5-6.)  Plaintiffs, on the other hand, argue they are not.

 "When . . . a complaint's factual allegations are expressly linked to–and admittedly dependent upon–a document (the authenticity of which is not challenged), that document effectively merges into the pleading and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." *Beddall*, 137 F.3d at 17 (citing *Fudge v. Penthouse Int'l, Ltd.*, 840 F.2d 1012, 1015 (1st Cir. 1988) and *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994)).

The plaintiffs argue against the Court's consideration of the affidavits submitted by Manheim because they include statements "that must be tested by discovery" and refer to what the plaintiffs describe as "inaccurate and unspecified records." (ECF No. 55-1 at 19.)  As for the contract submitted by Manheim, Mr. Baker attests in his affidavit that he has no memory of accepting the Manheim Terms and

Conditions, that the 12:32 AM timestamp in Manheim's records is "outside his work hours and internet access," and that as of the date the Manheim records reflect Metro Motors' acceptance the Manheim Terms and Conditions, CT102 LLC was doing business as J.D. Byrider of New Haven.[14]  (ECF No. 55-2 at 2-3.)   These assertions are made to try to persuade the Court that there are material facts in dispute over the Manheim Terms and Conditions.  *Id.*  The Court is not persuaded.  Mr. Baker does not claim that he did not agree to the Manheim Terms and Conditions, nor does he challenge their authenticity.  He merely offers that he has no recollection of the event and that the timing of acceptance was irregular given his normal schedule.  The Court finds that the authenticity of the Manheim Terms and Conditions is not truly in dispute.

The plaintiffs also do not dispute that Mr. Baker, on behalf of Metro Motors, accessed and used Manheim's vehicle auction services.  To the contrary, the plaintiffs' access to and subsequent exclusion from Manheim's auctions is a fundamental element of the SAC.  The plaintiffs also do not dispute that "[a]ll of Manheim's customers must review its written terms and conditions" and "affirmatively accept and agree to the terms and conditions" to participate in vehicle auctions.  (ECF 51-1 at 3.)  While plaintiffs suggest that "the precise nature of Manheim's 'click' system and recordkeeping must be investigated," they offer no factual support or argument

---

[14] The plaintiffs fail to explain the significance of Metro Motors listed as the Account Name on the Manheim Terms and Conditions Report (ECF No. 51-2 at 6).  The Court notes that the Representative Name listed is Herman Jeffrey Baker, the sole member of CT102, LLC, which has done business as both J.D. Byrider of New Haven and Metro Motors.  (ECF No. 42 ¶¶ 1-3.)

for such an inquiry.  (ECF No. 55-1 at 19.)  The mere assertion of a dispute does not make it so.  With the contract properly before the Court, the Court proceeds to assess its impact on the plaintiffs' claims.[15]

First, the Court must determine which state's law applies to the validity and applicability of the Manheim Terms and Conditions.  The plaintiffs make no argument about which law applies, and the Court discerns no difference between Rhode Island law, Georgia law, and federal common law on these issues.  *See Hodosh, Lyon & Hammer, Ltd. v. Barracuda Networks, Inc.*, C.A. No. 15-316S, 2016 WL 705272, *5 (D.R.I. Jan. 4, 2016) (recognizing Rhode Island and California both relied on the Second Circuit's application of California law to determine online contract's validity); *Thornton v. Uber Tech., Inc.*, 858 S.E.2d 255, 258 (Ga. App. 2021) (applying California law used by the Second Circuit to determine validity of online contract); *Rivera*, 575 F.3d at 16-17 (quoting *Silva v. Encyclopedia Britannica Inc.*, 239 F.3d 385, 387 n. 1 (1st Cir. 2001)) (finding no difference between Puerto Rico law and federal common law and applying federal common law).

The Manheim Terms and Conditions fall into a category of online contracts called "click-through" or "click-wrap".  When a contract is formed online with a click-wrap agreement, "website users are required to click on an 'I agree' box after being

---

[15] The First Circuit has affirmed a court's consideration of a contract under similar circumstances.  *See In re Fidelity Erisa Fee Litigation*, 990 F.3d 50, 54 (1st Cir. 2021) (affirming trial court's decision to consider portions of a contract over the plaintiffs' objection based on "lack of authenticity" where the complaint referenced a contract, the defendant submitted copies of relevant excerpts and where the plaintiffs argued only that they could not verify the documents' authenticity without discovery).

presented with a list of terms and conditions of use . . . ." *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1175-76 (9th Cir. 2014) (citing *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 428-30 (2d Cir. 2004)).  "Click-through agreements are formed when the user is required to affirmatively click 'I agree' or 'I accept' before proceeding with use of the website, software or other on-line product." *Hodosh*, 2016 WL 705272, at *6 (citing *Nguyen*, 763 F.3d at 1176-77).  The First Circuit has held that "[forum selection] clauses will be enforced provided they have been reasonably communicated and accepted." *Cullinane v. Uber Tech., Inc.*, 893 F.3d 53, 61 (1st Cir. 2018) (quoting *Ajemian v. Yahoo!, Inc.*, 987 N.E.2d 604, 611 (Mass. App. Ct. 2013)) (internal quotation marks omitted).

Manheim has described the way its customers agree to its Terms and Conditions and submitted a corporate record of Mr. Baker's acceptance of the Manheim Terms and Conditions on behalf of Metro Motors. (ECF Nos. 51-1 at 3, 51-2 at 6.)  According to Manheim, every customer must review the Manheim Terms and Conditions and then affirmatively accept them.  (ECF no. 51-1 at 3.)   When a Manheim customer accesses their online account, they must first affirmatively agree to the terms and conditions before participating in a vehicle auction.[16]  *Id.*  Manheim's record of the plaintiffs' acceptance of these terms show that Mr. Baker accessed his Manheim account on November 24, 2015 at 12:32 AM and accepted the Manheim Terms and Conditions Version 1.6.

---

[16] The same process is repeated for customers attending Manheim auctions in person. (ECF No. 51-1 at 3.)

Manheim has "use[d] a common method of conspicuously informing users of the existence and location of terms and conditions: requiring users to click a box stating that they agree to a set of terms . . . before continuing to the next screen." *Cullinane*, 893 F.3d at 62. Click-wrap agreements like the Manheim Terms and Conditions "are generally found to be valid and enforceable because the click constitutes the affirmative manifestation of assent." *Hodosh*, 2016 WL 705272, at *6. The Court is satisfied that the Manheim Terms and Conditions were reasonably communicated–and the plaintiffs make no discernable argument to the contrary–and that Mr. Baker accepted them.

The language of the Manheim forum selection clause provides that: "You further agree and acknowledge that you may not sue Manheim in any jurisdiction or venue except Fulton County, Georgia."[17] (ECF No. 51-2 at 16.) "Under federal law, the threshold question in interpreting a forum selection clause is whether the clause

---

[17] The Manheim Terms and Conditions also provide that "[i]n the event that any claim or dispute between Manheim and you is not arbitrated under Section 26 hereof, you agree that non-exclusive jurisdiction and venue for such claims and disputes shall exist in the federal and state courts located in Fulton County, Georgia." *Id.* at 4. The Court construes this reference to "non-exclusive jurisdiction" as pertaining to Manheim's freedom to litigate outside Fulton County, while the plaintiffs are restricted to the jurisdiction and venue of the courts located in Fulton County, Georgia. As the First Circuit has articulated, "words are not viewed in isolation within a contract." *Rivera v. Centro Medico de Turabo, Inc.*, 575 F.3d 10, 17 (1st Cir. 2009) (quoting *McAdams v. Mass. Mut. Life Ins. Co.*, 391 F.3d 287, 298 (1st Cir. 2004) and citing *Smart v. Gillette Co. Long-Term Disability Plan*, 70 F.3d 173, 179 (1st Cir. 1995)) (internal quotation marks omitted). Here, the non-exclusive language of the preceding clause is modified by the added restriction imposed on the customer limiting the forum and venue in which lawsuits may be initiated *against* Manheim. While both parties agreed to non-exclusive jurisdiction and venue for lawsuits filed by Manheim, only the plaintiffs, as customers, agreed to exclusive jurisdiction and venue in Fulton County, Georgia.

at issue is permissive or mandatory." *Rivera*, 575 F.3d at 17.  A forum selection clause is considered permissive when it "authorize[s] jurisdiction and venue in a designated forum, but do[es] not prohibit litigation elsewhere" and is considered mandatory when it "contain[s] clear language indicating that jurisdiction and venue are appropriate exclusively in the designated forum." *Id.* (quoting 14D Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3803.1 (3d ed. 1998)) (internal quotation marks omitted).

The Court finds the Manheim forum selection clause is mandatory and prohibits the plaintiffs from initiating a lawsuit in any jurisdiction or venue that is not located in Fulton County, Georgia.  The Court need not undertake a thorough analysis to reach this conclusion.  In *Rivera*, the First Circuit considered the following clause included in the contract executed by the appellant: "In the event that by act or omission I consider that physical, emotional or economic damages have been caused to me, I expressly agree to submit to the Jurisdiction of the Court of First Instance of the Commonwealth of Puerto Rico, for any possible claim." *Id.* at 14.   There, the Court determined that the language of the clause exclusively restricted the appellant's *assertion* of a claim to a particular jurisdiction and venue, rather than merely representing the appellant's consent to jurisdiction as a defendant. *Id.*  Here, the Manheim forum selection clause requires the plaintiffs to *initiate* a lawsuit *only* in Fulton County, Georgia.

Finding the Manheim forum selection clause mandatory, the Court proceeds to the next stage of inquiry: reasonableness.  "It is well established that forum

selection clauses are 'prima facie valid and should be enforced unless enforcement is shown by the resisting party to be "unreasonable" under the circumstances.'" *Id.* (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)). While reasonableness is typically determined by the Court's assessment of the factors set forth in *M/S Bremen*, the plaintiffs have made only a superficial challenge to the reasonableness of the Manheim forum selection clause.[18] The Court finds that the plaintiffs have not "overcome this strong presumption of enforceability" and thus finds the Manheim Terms and Conditions include a valid and enforceable mandatory forum selection clause. The Court GRANTS Manheim's Motion to Dismiss without prejudice.

### C. ADESA's Motion to Dismiss for Lack of Personal Jurisdiction

Unlike the other defendants, ADESA's preliminary argument for dismissal of the three claims asserted against it is that it is not subject to general personal jurisdiction in Rhode Island.[19] (ECF No. 48-1 at 6-7.) The plaintiffs contend that ADESA's vehicle sales services are used by several Rhode Island car dealerships, that ADESA communicates with Rhode Island car dealerships via email and by phone, as

---

[18] In opposition to Manheim's Motions to Dismiss, the plaintiffs baldly suggest that Manheim's contract is an "unconscionable violation[] of public policy" and spend much of their Opposition arguing that the claims against Manheim are not subject to arbitration and that, as mentioned *supra*, it would be unfair to require the plaintiffs to comply with both the Manheim and NextGear forum selection clauses. (ECF No. 55-1 at 6.)

[19] While personal jurisdiction may be either general or specific, the plaintiffs make no argument about this Court's specific jurisdiction over the plaintiffs' claims against ADESA.

well as in person, and that ADESA markets its services to Rhode Island car dealerships. (ECF No. 56-1 at 13.)

"General jurisdiction exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state." *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 618 (1st Cir. 2001) (quoting *United Elec., Radio and Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1088 (1st Cir. 1992) (*Pleasant St. I*)) (internal quotation marks omitted). The Court employs the prima facie standard to decide ADESA's Motion to Dismiss for lack of personal jurisdiction. *Id.* (citing *United Elec. Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 987 F.2d 39, 43 (1st Cir. 1993) (*Pleasant St. II*)). Under the prima facie standard, "the district court considers 'only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction.'" *Negron-Torres v. Verizon Commc'n, Inc.*, 478 F.3d 19, 23 (1st Cir. 2007) (quoting *Boit v. Gar-Tec Prods., Inc.*, 967 F.2d 671, 675 (1st Cir. 1992)). To meet the standard, "the plaintiff must go beyond the pleadings and make affirmative proof" of personal jurisdiction "based on evidence of specific facts set forth in the record." *Id.* (quoting *Boit*, 967 F.2d at 675) (internal quotation marks omitted). Any "facts put forward by the defendant 'become part of the mix only to the extent that they are uncontradicted.'" *Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 8 (1st Cir. 2009) (quoting *Adelson v. Hananel*, 510 F.3d 43, 48 (1st Cir. 2007)).

A federal Court sitting in diversity "assessing personal jurisdiction over a non-resident defendant" assumes the role "of a state court sitting in the forum state." *Id.* (quoting *Northern Laminate Sales, Inc. v. Davis*, 403 F.3d 14, 24 (1st Cir. 2005)) (internal quotation marks omitted). The Court must, therefore, determine whether the plaintiffs have "demonstrate[d] that Rhode Island's long-arm statute grants jurisdiction and that the exercise of jurisdiction under the statute is consistent with the Due Process Clause of the United States Constitution." *Id.* (citing *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 52 (1st Cir. 2002)). Rhode Island's long-arm statute corresponds with the extent of Due Process and so "the due process inquiry controls." *Id.* at 8-9 (citing *North Am. Catholic Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 16 (1st Cir. 2009); *Nicholas v. Buchanan*, 806 F.2d 305, 306-07 (1st Cir. 1986); *Cerberus Partners, L.P. v. Gadsby & Hannah, LLP*, 836 A.2d 1113, 1118 (R.I. 2003); *Almeida v. Radovsky*, 506 A.2d 1373, 1374 (1986)). Due process is satisfied when a defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). In the context of general jurisdiction, which the plaintiffs have asserted here, minimum contacts means that "the defendant must have continuous and systematic contacts within the state." *Astro-Med*, 591 F.3d at 9 (quoting *Harlow v. Children's Hosp.*, 432 F.3d 50, 57 (1st Cir. 2005)) (internal quotation marks omitted). Additionally, "the plaintiff must show that the exercise of general jurisdiction would be reasonable."

30

*Swiss Am. Bank*, 274 F.3d at 619 (citing *Donatelli v. Nat'l Hockey League*, 893 F.2d 459, 465 (1st Cir. 1990)).  This is no easy task for the plaintiffs.  As the First Circuit has emphasized, "[i]t is well-established that the standard for finding general jurisdiction 'is considerably more stringent than that applied to specific jurisdiction questions." *Negron-Torres*, 478 F.3d at 27 (quoting *Noonan v. Winston, Co.*, 135 F.3d 85, 93 (1st Cir. 1998)).

In this case, the inquiry into the exercise of general jurisdiction begins and ends with ADESA's contacts with Rhode Island.  Because the Court finds that ADESA's forum contacts "do not exist in sufficient abundance . . . the inquiry ends." *Swiss Am. Bank*, 274 F.3d at 19 (quoting *Donatelli*, 893 F.2d at 465) (internal quotation marks omitted).   The inquiry is "a fact-specific evaluation" and, as such, the Court turns to the evidence set out by the plaintiffs to establish ADESA's contacts with Rhode Island.  *Id.* at 620 (quoting *Noonan*, 135 F.3d at 93) (internal quotation marks omitted).

The plaintiffs' allegations of ADESA's contacts with Rhode Island are few and feeble.  The plaintiffs – vaguely and with no factual support or details – suggest that ADESA advertises to car dealers in Rhode Island and communicates with Rhode Island car dealerships that are purchasing and selling cars at auction, along with making in-state deliveries.  (ECF No. 56-1 at 13.)  Decisions reached by both the First Circuit and the Supreme Court place the plaintiffs' assertions in perspective.   In *Negron-Torres*, when the plaintiff asserted that the defendant had a local telephone number in the forum state, operated and advertised its services in the forum state,

and made philanthropic gifts in the forum state, the First Circuit concluded that such contacts were insufficient to support the exercise of general jurisdiction. 478 F.3d at 26.  In *Helicopteros Nacionales de Colombia, S.A. v. Hall*, the Supreme Court found insufficient contacts even where the petitioner had sent its chief executive officer to the forum state to negotiate a contract, purchased helicopters in the forum state, obtained training services in the forum state, and sent employees to the forum state for training.  466 U.S. 408, 416 (1984).  There, the Supreme Court specifically noted "that purchases and related trips, standing alone, are not a sufficient basis for a state's assertion of jurisdiction."  *Id.* at 417 (citing *Rosenberg Bros. & Co. v. Curtis Brown Co.*, 260 U.S. 516 (1923)).

The plaintiffs have not established that ADESA's contacts with Rhode Island support this Court's exercise of general jurisdiction.  The plaintiffs' broad assertions about ADESA's contacts cannot be said to equal even the inadequate contacts asserted in *Negron-Torres* or *Helicopteros Nacionales*.  ADESA's Motion to Dismiss is GRANTED.

## IV. CONCLUSION

For all these reasons the Court GRANTS the defendants' Motions to Dismiss (ECF Nos. 47, 48, 49, 51) without prejudice.

IT IS SO ORDERED.

_____
Mary S. McElroy
United States District Judge
June 28, 2022